JONES DAY
HAROLD K. GORDON, ESQ.
(*pro hac vice*)
hkgordon@jonesday.com
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

CAMPBELL & WILLIAMS
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

JONES DAY
RANDALL E. KAY, ESQ.
(*pro hac vice*)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1139
Facsimile: (844) 345-3178

JONES DAY
ANNA E. RAIMER, ESQ.
(*pro hac vice*)
aeraimer@jonesday.com
717 Texas Street, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3786
Facsimile: (832) 239-3600

*Attorneys for Defendants*
*Light & Wonder, Inc., LNW Gaming, Inc.,*
*and SciPlay Corporation*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Defendants, | CASE NO.:  2:24-cv-00382-GMN-MDC <br><br> **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND .................................................................................................. 2

III. LEGAL STANDARD ........................................................................................... 5

IV. ARGUMENT ....................................................................................................... 6

    A. ARISTOCRAT FAILS TO MEET THE PLEADING STANDARDS TO STATE A TRADE SECRET CLAIM ................................................................. 6

        1. Claims of Trade Secret Misappropriation Require Pleading of Protectable Trade Secrets With Sufficient Particularity ......................... 6

        2. Aristocrat's Complaint Fails to Plead a Protectable Trade Secret ............ 8

        3. Aristocrat Fails to Plausibly Plead Misappropriation ............................. 10

    B. ARISTOCRAT'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS ....... 14

        1. Aristocrat Fails to Allege the Specific Copyright Subject to its Claim .................................................................................................... 15

        2. Aristocrat Fails To Plausibly Allege Infringement ................................. 18

        3. In the Alternative, Aristocrat's Failure to Timely Register Any Copyright Precludes Statutory Damages and Attorneys' Fees ................ 19

    C. ARISTOCRAT FAILS TO STATE A PLAUSIBLE CLAIM FOR TRADE DRESS INFRINGEMENT ................................................................. 19

        1. Aristocrat Fails to Provide Fair Notice of Its Claimed Trade Dress ........ 19

        2. Aristocrat's Trade Dress Claim Is Precluded By Copyright Law ............ 21

        3. Aristocrat Fails to Plausibly Plead Acquired Distinctiveness ................. 22

        4. Aristocrat Fails to Plausibly Allege Its Trade Dress Is Non-Functional .............................................................................................. 23

        5. Aristocrat Fails to Provide Notice of Alleged Likelihood of Confusion ............................................................................................. 23

    D. ARISTOCRAT FAILS TO STATE A PLAUSIBLE CLAIM FOR DECEPTIVE TRADE PRACTICES ............................................................... 24

V. CONCLUSION .................................................................................................. 24

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

-ii-

# TABLE OF AUTHORITIES

**Page**

CASES

*Apple Inc. v. Rivos, Inc.*,
    No. 5:22-CV-02637-EJD, 2023 WL 5183034 (N.D. Cal. Aug. 11, 2023) ........................... 12

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
    581 F.3d 1138 (9th Cir. 2009)................................................................................................ 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................... 5, 9

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
    No. 18-cv-00933-MMC, 2018 WL 2298500 (N.D. Cal. May 21, 2018).................................. 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................... 5

*Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
    727 F.3d 917 (9th Cir. 2013).................................................................................................. 14

*Brown v. Adidas Int.*,
    938 F. Supp. 628 (S.D. Cal. 1996) ........................................................................................ 13

*Christianson v. W. Publ'g Co.*,
    149 F.2d 202 (9th Cir. 1945).................................................................................................. 15

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010)................................................................................................... 5

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ................................................................................................................ 21

*Data E. USA, Inc. v. Epyx, Inc.*,
    862 F.2d 204 (9th Cir. 1988).................................................................................................. 17

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
    No. CV 15-769 PSG (SSX), 2015 WL 12731929 (C.D. Cal. May 8, 2015) ......................... 23

*Delphix Corp. v. Actifo, Inc.*,
    No. C 13-4613 RS, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ....................................... 14

*Elko, Inc. v. WTH Com. Servs., LLC*,
    No. 3:22-cv-00015-MMD-CLB, 2023 WL 6141623 (D. Nev. Sept. 20, 2023) ......... 7, 8, 9, 11

*EVIG, LLC v. Natures Nutra Co.*,
    --- F.Supp.3d ----, 2023 WL 4934339 (D. Nev. Aug. 2, 2023).............................................. 20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) .......................................................................................................... 14, 17

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
    No. CV-14-03954 DDP (MAN), 2014 WL 6892141 (C.D. Cal. Nov. 5, 2014).................... 21

*Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*,
   No. 18-cv-1656-WQH-LL, 2018 WL 6617633 (S.D. Cal. Dec. 18, 2018) ............................ 7

*Jackson v. Netflix, Inc.*,
   506 F.Supp.3d 1007, 1017 (C.D. Cal. 2020) ................................................................. 16

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) ...................................................................................... 24

*LTTB LLC v. Redbubble, Inc.*,
   840 F. App'x 148, 152 (9th Cir. 2021) .......................................................................... 23

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010), *as amended* (Oct. 21, 2010) ........................................... 17

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
   No. 2:20-CV-04556-AB-JCx, 2020 WL 6821013 (C.D. Cal. Oct. 29, 2020) ..................... 20

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
   No. CV-16-3975-DMG-AJWX, 2017 WL 5664996 (C.D. Cal. Sept. 14, 2017) ................. 15

*Murray v. Cable Nat'l Broad. Co.*,
   86 F.3d 858 (9th Cir. 1996), *as amended* (Aug. 6, 1996) .............................................. 24

*Navigation Holdings, LLC v. Molavi*,
   445 F. Supp. 3d 69 (N.D. Cal. 2020) ................................................................ 10, 11, 14

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012) ........................................................................... 12

*Perrin Bernard Supowitz, LLC v. Morales*,
   No. 23-55189, 2024 WL 411714 (9th Cir. Feb. 5, 2024) ................................................ 13

*Power Integrations, Inc. v. De Lara*,
   No. 20-CV-410-MMA (MSB), 2020 WL 1467406 (S.D. Cal. Mar. 26, 2020) ...................... 7

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
   514 U.S. 159 (1995) .................................................................................................... 23

*RBC Bearings Inc. v. Caliber Aero, LLC*,
   No. SACV-12-1442-FMO-PLA, 2016 WL 6562068 (C.D. Cal. Aug. 1, 2016) ................... 12

*RDF Media Ltd. v. Fox Broad. Co.*,
   372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................................................... 19, 22

*Salt Optics, Inc. v. Jand, Inc.*,
   No. SACV 10-0828 DOC, 2010 WL 4961702 (C.D. Cal. Nov. 19, 2010) .................... 16, 17

*SCG Characters, LLC v. Telebrands Corp.*,
   No. CV-15-00374-DDP-AGRX, 2015 WL 4624200 (C.D. Cal. Aug. 3, 2015) .................... 21

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990) ...................................................................................... 22

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ...................................................................................... 14

*Sleep Sci. Partners v. Lieberman*,
   No. 09-04200 CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010) .................................... 20

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

*Space Data Corp. v. X,*
No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ........................ 7

*Sunlighten, Inc. v. Finnmark Designs, LLC,*
595 F. Supp. 3d 957 (D. Nev. 2022) ..................................................... 22

*Switch, Ltd. v. Uptime Inst., LLC,*
426 F. Supp. 3d 636 (D. Nev. 2019) ..................................................... 24

*Synopsys, Inc. v. ATopTech, Inc.,*
No. C 13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ........................ 8, 9

*Tangle Inc. v. Aritzia, Inc.,*
--- F. Supp. 3d ---, 2023 WL 6883369 (N.D. Cal. Oct. 18, 2023) ........................ 18

*Vendavo, Inc. v. Price f(x) AG,*
No. 17-cv-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ........................ 7

*Wal-Mart Stores, Inc. v. Samara Bros.,*
529 U.S. 205 (2000) ..................................................... 22

*West v. Bank of Am., N.A.,*
No. 2:10-CV-1966 JCM GWF, 2011 WL 2491295 (D. Nev. June 22, 2011) ........................ 10

*YZ Prods. v. Redbubble, Inc.,*
545 F. Supp. 3d 756 (N.D. Cal. 2021) ..................................................... 20

**STATUTES**

17 U.S.C.
§ 412(2) ..................................................... 19

18 U.S.C.
§ 1839(3)(B) ..................................................... 7
§ 1839(6)(A) ..................................................... 11

Federal Copyright Act ..................................................... 22

§ 43(a) of the Lanham Act ..................................................... 19, 21, 22

Nev. Rev. Stat.
§ 598.0915(2) ..................................................... 24
§ 600A.030(5)(a)(1) ..................................................... 7

Nevada Deceptive Trade Practices Act ..................................................... 24

Nevada UTSA ..................................................... 6, 7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b) ..................................................... 24

Federal Rule of Civil Procedure 12(b)(6) ..................................................... 1, 5, 24

Federal Rule of Civil Procedure 8 ..................................................... 6, 7, 15

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (collectively, "L&W" or "Defendants") submit this Motion to Dismiss ("Motion") the Complaint filed by Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. (collectively, "Aristocrat" or "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6) and respectfully request that this Court dismiss all claims asserted in the Complaint.

I.    **INTRODUCTION**

Aristocrat's Complaint impermissibly seeks to leverage trade secret, copyright, and trade dress law to undermine legitimate competition with L&W, one of the leading global games companies—and Aristocrat's primary competitor. However, the purpose of fair notice pleading is to protect L&W from the burden of discovery into its proprietary products' features based on its competitor's threadbare allegations and speculative conclusions. Aristocrat does not clear this bar.

Aristocrat's trade secret misappropriation claims are entirely speculative. Aristocrat's Complaint fails to plausibly identify *any* information—let alone trade secret information—that L&W acquired or used to develop its Dragon Train games. Instead, despite acknowledging that L&W has been creating successful casino games for decades, Aristocrat speculates (based exclusively on "information and belief") that L&W *must have* stolen and used Aristocrat's trade secrets simply because L&W's Dragon Train games allegedly "feel similar" to Aristocrat's Dragon Link games. As courts in this Circuit have routinely held, such threadbare, circumstantial allegations do not state a plausible claim for trade secret misappropriation.

Aristocrat's copyright and trade dress claims similarly lack facts sufficient to put L&W on fair notice of what Aristocrat contends has been infringed or what Aristocrat alleges to be infringing. Instead, Aristocrat stitches together its claims of infringement based on a patchwork comparison between cherry-picked elements of various thematically-distinct and outdated versions of L&W's Jewel of the Dragon games and its own Dragon Link games, without identifying which elements of which versions are allegedly protected or infringing. Accordingly, Aristocrat's Complaint should be dismissed in its entirety.

1

## II.    **BACKGROUND**

L&W is the leading cross-platform global games company, creating unique and immersive content that forges lasting connections with players. L&W recently launched its wildly successful Dragon Train product after lengthy, independent development. In a transparent effort to interfere with L&W's launch of this game in the United States, Aristocrat filed the Complaint and simultaneously sought discovery to conduct a "preliminary assessment" of its alleged trade secret claim. ECF Nos. 1 ("Compl."), 3. In a March 26, 2024 Order (ECF No. 33), the Court denied in part Aristocrat's request for expedited discovery as lacking good cause and being overly broad and unduly burdensome (although the Court ordered L&W to produce a small subset of documents that had previously been produced in a corresponding Australian proceeding, which L&W did on April 3, 2024).

Aristocrat bases its claims in the Complaint on its Dragon Link games,[1] which are "a collection of ten Asian-themed games," all with audiovisual materials that are thematically different between the ten game titles, such as "Panda Magic," "Genghis Khan," and "Peacock Princess."[2] Compl. ¶ 24; Request for Judicial Notice ("RJN"), Ex. I. However, Aristocrat's claimed copyright and trade dress rights are not with respect to any specific Dragon Link game. This failure in pleading is critical given the very different audiovisual elements in each of the ten games, as demonstrated by the depictions in the Complaint and its attached exhibits, examples of which are shown below, and in the Request for Judicial Notice, filed herewith, at Ex. I:

---

[1] Although the causes of action alleged in the Complaint are all based on Aristocrat's purported rights in the Dragon Link (and to some extent, Lightning Link) games, Aristocrat's misappropriation of trade secrets claim is directed against L&W's Dragon Train game (Compl. ¶ 128), while Aristocrat's copyright and trade dress claims are asserted against L&W's Jewel of the Dragon games. Compl. ¶¶ 70, 137, 145.

[2] Aristocrat alleges that it has registered copyrights in "certain" audiovisual elements of the games, which appear to be limited to the game titles Golden Century ("Emperor – Image"), Peacock Princess ("Princess – Image"), Autumn Moon ("Goddess" and "Hold & Spin"), and Spring Festival ("Hold & Spin Feature"). Compl. Ex. A; RJN, Exs. A–D The sixth listed registration is for an "image" from a title of a different game series, "Grand Legends." RJN, Ex. D.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

| Examples of Different Titles Under Aristocrat's Dragon Link Games | |
| --- | --- |
| **Golden Century & Happy and Prosperous** | **Happy and Prosperous, Panda Magic, Golden Century & Autumn Moon** |
| |  |

*See* Compl. Exhs. B, C, I & L. Furthermore, Aristocrat suggests some of the audiovisual features at issue are from its multi-themed Lightning Link games. *See, e.g.*, Compl. ¶¶ 23, 37-39, 111.

In addition to its Dragon Train game, L&W distributes the well-known Jewel of the Dragon series of games. Compl. ¶ 71. L&W offers four different games in the Jewel of the Dragon series, which all have very different audiovisual elements from each other, as shown by the opening screens of the current versions of the games shown below:

| Different Titles Under L&W's Jewel of the Dragon Games | | | |
| --- | --- | --- | --- |
| **Prosperity Tortoise** | **Red Phoenix** | **Thousand Warriors** | **Valley of the Tiger** |

*See* RJN, Ex. H.

As Aristocrat is fully aware—but failed to advise this Court—since L&W's first design of the Jewel of the Dragon games (Compl. ¶¶ 71, 94), L&W implemented significant additional

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

changes to the games, such that the current versions of the different game themes distributed by L&W are notably different from what is alleged and depicted in the Complaint. Examples from the Complaint of still images from Aristocrat's Dragon Link games, along with images from the current versions of L&W's Jewel of the Dragon games, are shown below:

| Aristocrat's Dragon Link Games | L&W Jewel of the Dragon Games |
|---|---|
| Topper / Logo | |
|  |  |
| Jackpot Display / Meter | |
|  |  |
| Jackpot Display / Bonus Feature | |
|  |  |

. . . .

. . . .

. . . .

. . . .

4

| Winner Screen with "Coin Shower" |
| --- |



*See* Compl. ¶¶ 73, 78, 81; RJN Ex. H. Despite the extensive changes to the Jewel of the Dragon games, the Complaint is not limited to the old versions of the games, and Aristocrat does not specify *which* version of *which* Jewel of the Dragon game title allegedly infringes its copyright or trade dress rights.

## III.   LEGAL STANDARD

This Court is well versed in the standard for dismissal pursuant to Rule 12(b)(6). First, a well-pleaded complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). Second, allegations must go "above the speculative level" to survive Rule 12(b)(6) scrutiny. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally, no deference is given to legal conclusions and conclusory factual allegations, which are not entitled to any assumption of truth. *Iqbal*, 556 U.S. at 678, 681.

As a general rule, when considering a motion to dismiss, courts are limited to the allegations in the complaint. *See, e.g., Iqbal*, 556 U.S. at 679. However, courts may also consider "information . . . made publicly available by government entities" or other materials appropriate for the taking of judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

5

IV.   **ARGUMENT**

A.   **ARISTOCRAT FAILS TO MEET THE PLEADING STANDARDS TO STATE A TRADE SECRET CLAIM**

Aristocrat's trade secret claim fails each axis of the Rule 8 pleading standard. *First*, Aristocrat gives no reasonable notice of the bounds of its (at best) nebulously-described trade secrets: "underlying game math and functionality." Instead, and because Aristocrat does not allege that L&W actually took anything from Aristocrat, Aristocrat alleges trade secrets that encompass both the entirety of Aristocrat's product functionality and nearly every general mathematical system common to casino games. *Second*, Aristocrat's allegations are devoid of any factual content that support a reasonable inference of, or plausibly state a claim for, misappropriation. Indeed, Aristocrat admits as much in its Motion for Expedited Discovery, where Aristocrat repeatedly insists that it lacks factual support for its claims. *See* Dkt. 3 at 2, 9, 12, 14 (seeking expedited discovery to conduct a "preliminary assessment of its claims"). Specifically, Aristocrat does nothing more than speculate that L&W must have acquired and used Aristocrat trade secrets based on only two allegations: (1) L&W hired two former Aristocrat employees years after they left Aristocrat, and (2) L&W's Dragon Train product "feels" "similar" to Aristocrat's Dragon Link product. Taken together, Aristocrat's inferential allegations are sheer guesswork, and do not state a claim for trade secret misappropriation.

1.   **Claims of Trade Secret Misappropriation Require Pleading of Protectable Trade Secrets With Sufficient Particularity**

While the DTSA and Nevada UTSA define the term "trade secret," caselaw provides the pleading standards that a plaintiff must meet to allege a protectable trade secret. First, trade secret law does not allow a party to claim rights over an entire category of math or technology; rather, it is incumbent on the plaintiff to plead how its alleged trade secrets differ (1) from what is generally known in the industry; and (2) from what the plaintiff has placed in the public domain, such as in patent filings. These pleadings standards are critical in a case such as this where the parties directly compete in the same market for slot machines. Aristocrat must plead what it asserts as its allegedly proprietary techniques within the broad category of "game math." As Aristocrat does not own exclusive rights to use "game math" in slot machines, its complaint must indicate the particular

6

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

facets of what Aristocrat claims constitutes its proprietary approach to "game math."

Ninth Circuit and Nevada law require that the plaintiff's complaint "identify its trade secrets with 'sufficient particularity . . . to permit the defendant to ascertain at least the boundaries within which the secret lies,' and 'to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Elko, Inc. v. WTH Com. Servs., LLC*, No. 3:22-cv-00015-MMD-CLB, 2023 WL 6141623, at *3 (D. Nev. Sept. 20, 2023) (quotation omitted). This conforms with the definition of trade secret under the DTSA and Nevada UTSA, which require that a "trade secret" not be "generally known" industry information. 18 U.S.C. § 1839(3)(B); Nev. Rev. Stat. § 600A.030(5)(a)(1).

It is not sufficient for a plaintiff to list *categories* of alleged trade secrets; rather, a complaint should set forth the specific proprietary information *within a category* that constitutes the asserted trade secrets. "[A]llegations of broad categories relating to business or technology are not adequate to support a trade secrets claim under the DTSA." *Human Longevity, Inc. v. J. Craig Venter Inst., Inc.*, No. 18-cv-1656-WQH-LL, 2018 WL 6617633, at *4 (S.D. Cal. Dec. 18, 2018) (finding lack of specificity constituted a failure "to allege facts giving rise to a plausible inference of the existence of a trade secret within the meaning of the DTSA."); *see also Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (allegations such as "data on the propagation of radio signals from stratospheric balloon-based transceivers" did not provide sufficient "notice of the boundaries of this case").

Even under the Rule 8 general pleading standard, a plaintiff must allege a specific trade secret, and not simply a conclusory list of the "forms and types" of alleged trade secrets. *Power Integrations, Inc. v. De Lara*, No. 20-CV-410-MMA (MSB), 2020 WL 1467406, at *18 (S.D. Cal. Mar. 26, 2020). Conclusory and generalized allegations of trade secrets are insufficient at the pleading stage. *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). "[M]erely listing general systems which 'may' qualify for protection is insufficient," particularly where a plaintiff has not "adequately clarified and narrowed 'catchall'

terms and pointed to tangible potential secrets[.]" *Elko*, 2023 WL 6141623, at *3; *see also Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) (concluding plaintiff's identification of "proprietary input and output formats, scripts, and technical product documentation," was impermissibly conclusory).

Finally, a complaint that qualifies the alleged trade secrets with broad catchall terms like "including," "such as," "among other things," and "without limitation" can prevent the defendant from ascertaining the bounds of the claimed trade secrets. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018).

### 2. Aristocrat's Complaint Fails to Plead a Protectable Trade Secret

Aristocrat's Complaint fails to meet the governing pleading standards for articulating any protectable trade secret. Aristocrat broadly pleads misappropriation of a category of technology and general systems it calls "game math" and which Aristocrat repeatedly refers to vaguely as "underlying game math and functionality." *See* Compl. ¶¶ 123-125, 150-152. Without explanation, Aristocrat alleges that the "underlying game math and functionality" are responsible for the "control" of "gameplay" and "payouts." *See* Compl. ¶¶ 123, 150. Such allegations fail to inform what plausibly constitutes a trade secret and how that information differs from general knowledge in the industry or specialized knowledge in the trade.

Aristocrat cannot credibly claim to own all "game math" for electronic gaming machines as its trade secrets.[3] Nor does Aristocrat's broad, non-exhaustive list of "examples" of its "game math and functionality" plausibly allege protectable trade secrets. Aristocrat's "examples" simply recite a wide array of general systems plainly common to many casino games, such as probability, volatility, and player returns. Compl. ¶ 36. Aristocrat fails to plausibly allege that any such functionality is not generally known in the industry or within the special knowledge of persons skilled in the trade.

---

[3] Aristocrat's Complaint makes various references to trade secrets in different places. This Motion addresses the alleged trade secrets that Aristocrat accuses L&W of misappropriating in its trade secret causes of action (Count I and Count IV), rather than any trade secrets Aristocrat mentions elsewhere but does not assert were misappropriated in those causes of action.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

Indeed, many of these systems, such as the reel strips, symbols and game features that Aristocrat references, are seen by anyone who plays Aristocrat's games—those matters cannot be trade secrets.[4] These "general systems" do not point to any "tangible potential secrets" and are insufficient to plead protectable trade secrets. *Elko*, 2023 WL 6141623, at *3.

The only distinct application of these general systems Aristocrat alleges (albeit in an unacceptably conclusory manner) is its "proprietary implementation of the 'Hold & Spin' bonus game." Compl. ¶ 36. Yet despite acknowledging that "dozens" of competitors (including L&W) "have offered 'Hold & Spin' games," Aristocrat says nothing about whether or how its implementation of this common industry feature is "proprietary" or distinct from industry knowledge. Compl.¶ 108; *Synopsys*, 2013 WL 5770542, at *6 ("Materials are not trade secrets just because [plaintiff] says they are: there must be some minimally plausible factual explanation for why trade secret protection applies."). Nor has Aristocrat limited its alleged trade secrets to its proprietary implementation of the "Hold & Spin" feature.

Moreover, Aristocrat does not identify which components of its "underlying game math and functionality" L&W allegedly *misappropriated*. Listing the entire universe of its potential trade secrets does not put L&W or this Court on fair notice of the bounds of Aristocrat's trade secret claims; Aristocrat must fairly notice the specific trade secrets it "has a basis to believe actually were misappropriated here." *Vendavo, Inc.*, 2018 WL 1456697, at *4. Aristocrat alleges its trade secrets are the *entirety* of its game's "functionality" to capture anything L&W *might have* taken to develop its competing game, despite no allegation or facts suggesting that L&W actually took anything. But Aristocrat cannot "unlock the doors of discovery" to every proprietary aspect of L&W's competing

---

[4] Other aspects of Aristocrat's technology are disclosed in Aristocrat's patent filings. Exhibit R to Aristocrat's Complaint references that Aristocrat's head of game design is the lead inventor on a range of US patents assigned to Aristocrat. Yet nowhere does Aristocrat's Complaint distinguish its asserted trade secrets from the game math and functionality generally known in the industry or disclosed in Aristocrat's public patent filings.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

game "armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.[5] The breadth of Aristocrat's trade secrets—absent any facts plausibly suggesting L&W misappropriated the entirety of Aristocrat's "underlying game math and functionality"—is wholly insufficient to constitute fair notice pleading or to subject L&W to impermissibly burdensome discovery encompassing the whole functionality of L&W's competing games.

In summary, Aristocrat's trade secret allegations fail to meet the governing pleading standards as Aristocrat (1) fails to articulate how its broad "game math" trade secrets differ from generally known information in the industry; (2) improperly pleads the entire *category* of technical "game math" information; (3) pleads a conclusory list of general casino game systems; (4) improperly uses catchall phrases such as "including without limitation" in paragraphs 123 and 150 of the Complaint; and (5) fails to identify which components of its "game math and functionality" L&W allegedly misappropriated. Accordingly, Aristocrat has failed to adequately plead its trade secrets in a manner that separates them from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade.

### 3. Aristocrat Fails to Plausibly Plead Misappropriation

Aristocrat fails to plausibly allege that any L&W Defendant acquired or used its trade secrets. To establish misappropriation, Aristocrat must plausibly allege that *each*[6] of the L&W Defendants either: (1) acquired Aristocrat's trade secrets by improper means, or (2) disclosed or used

---

[5] Nor could discovery even be reasonably tailored under Aristocrat's current allegations, as this Court recognized in denying the majority of Aristocrat's Motion for Expedited Discovery.

[6] Aristocrat does not distinguish any conduct or knowledge between the three L&W entities it names as Defendants. Accordingly, to the extent Aristocrat alleges any cognizable conduct or knowledge, it has not pled how *each* of the L&W entities separately engaged in misappropriation with the requisite knowledge. *Vendavo*, 2018 WL 1456697, at *4 (explaining "the lack of specificity is exacerbated by the fact that the complaint does not distinguish between" different defendant entities); *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020) (dismissing trade secret claims where plaintiff failed to "differentiat[e] what each specific Defendant is alleged to have done"); *West v. Bank of Am., N.A.,* No. 2:10-CV-1966 JCM GWF, 2011 WL 2491295 (D. Nev. June 22, 2011) ("[R]ule 8 prohibits lumping all defendants together in a complaint without distinguishing between them or specifying which defendant is targeted by which allegation.").

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

Aristocrat's trade secrets without consent when it knew or had reason to know that knowledge of the trade secret was derived through improper means, acquired under circumstances demanding secrecy, or derived through a person who owed a duty to plaintiff to maintain secrecy.[7] *Elko*, 2023 WL 6141623, at *5.

"Acquisition" under the DTSA and NUTSA requires a plausible allegation that L&W acquired Aristocrat's trade secrets by "improper means," which include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A). Similarly, misappropriation by "use" is not a strict liability claim—Aristocrat must plausibly allege that, at the time of use, each L&W Defendant knew or had reason to know that knowledge of the trade secret was derived through improper means, acquired under circumstances demanding secrecy, or derived through a person who owed a duty to plaintiff to maintain secrecy. *Elko*, 2023 WL 6141623, at *5. This knowledge element is sufficiently alleged "where the plaintiff pleads facts to substantiate the defendant's knowledge." *Navigation Holdings*, 445 F. Supp. at 79.

Here, Aristocrat alleges misappropriation by acquisition and use.[8] Specifically, Aristocrat claims—based solely on guesswork, framed as "information and belief"—that L&W: (1) "acquired through improper means one or more of Aristocrat's trade secrets" (Compl. ¶¶ 127, 154), and (2) has "used without authorization one or more of Aristocrat's trade secrets to develop L&W's Dragon Train games[.]" Compl. ¶¶ 128, 155. However, Aristocrat offers only two factual allegations in support of the "plausibility" of its conclusory trade secret claims: (1) L&W hired Ms. Charles and Mr. Sefton years after they left Aristocrat,[9] and (2) L&W's Dragon Train games allegedly "appear[

---

[7] As the elements of the DTSA and NUTSA are similar, courts regularly analyze those claims together. *See Elko*, 2023 WL 6141623, at *2 (citation omitted).

[8] Aristocrat does not allege misappropriation by disclosure.

[9] Aristocrat's Complaint suggests than another former employee, Dinh Toan Tran, allegedly downloaded Aristocrat trade secrets before leaving at the end of 2023. However, Aristocrat does *not* allege that Mr. Tran ever provided services to L&W, and none of Aristocrat's trade secret counts refer to Mr. Tran's conduct. The Complaint acknowledges Mr. Tran left Aristocrat at the end of

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

] to" "feel" similar to Aristocrat's Dragon Link games. Even if its scant allegations were taken as true (which they are not), Aristocrat's guesswork does not state a plausible claim for misappropriation.

        (a)    <u>Aristocrat fails to plausibly allege that any L&W Defendant acquired Aristocrat trade secrets by improper means</u>

Aristocrat does not allege any facts plausibly suggesting that any L&W Defendant actually acquired Aristocrat trade secrets by *any* means, let alone "improper means." Aristocrat raises no allegations—even circumstantial—that Ms. Charles or Mr. Sefton took Aristocrat's trade secrets when they left or disclosed any Aristocrat confidential information to L&W after being hired. Likewise, Aristocrat does not allege that any L&W Defendant independently acquired Aristocrat trade secrets by some other means.

Rather, Aristocrat's unsupported speculation that either Ms. Charles or Mr. Sefton must have disclosed Aristocrat's alleged trade secrets to L&W is nothing more than an assertion of the "inevitable disclosure doctrine," which has been rejected by courts in the Ninth Circuit because of "its anticompetitive effects." *RBC Bearings Inc. v. Caliber Aero, LLC*, No. SACV-12-1442-FMO-PLA, 2016 WL 6562068, at *11 (C.D. Cal. Aug. 1, 2016); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989-90 (S.D. Cal. 2012).

Moreover, Aristocrat does not allege any conduct by Ms. Charles, Mr. Sefton, or any of the L&W Defendants amounting to improper means. Other than hiring Ms. Charles and Mr. Sefton (many years after they left Aristocrat),[10] Aristocrat does not allege any relevant conduct by L&W at all. But hiring former Aristocrat employees—particularly long after they left—does not constitute "improper means." *Apple Inc. v. Rivos, Inc.*, No. 5:22-CV-02637-EJD, 2023 WL 5183034, at *8

---

2023, after L&W released Dragon Train, so the allegations relating to Mr. Tran are irrelevant to Aristocrat's trade secret misappropriation claim.

[10] While Aristocrat alleges that Ms. Charles and Mr. Sefton left Aristocrat in 2017 and 2016, respectively (Compl. ¶¶ 65, 67), Aristocrat does not explain when either started working for L&W. But Aristocrat's allegations that Ms. Charles's "inaugural product" at L&W was released in 2023 suggests that neither started working for L&W until many years after leaving Aristocrat. Compl. ¶ 115.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

(N.D. Cal. Aug. 11, 2023) (holding that hiring plaintiff's employees "does not amount to improper acquisition" of plaintiff's trade secrets). Insisting otherwise would chill "employee mobility" by giving competitors a basis for trade secret claims whenever their employees left to join a competitor. *Perrin Bernard Supowitz, LLC v. Morales*, No. 23-55189, 2024 WL 411714, at *2 (9th Cir. Feb. 5, 2024).

         (b)    <u>Aristocrat fails to plausibly allege that any L&W Defendant used Aristocrat's trade secrets</u>

        Aristocrat's speculative allegations are also wholly insufficient to plausibly allege that any L&W Defendant knowingly used Aristocrat's trade secrets.[11] Like acquisition, Aristocrat offers no allegations regarding how or when L&W supposedly "used" its trade secrets. *Space Data*, 2017 WL 5013363, at *2 (dismissing trade secret claims based on "speculative" allegations of use). Aristocrat's only circumstantial allegations of "use" are that L&W's Dragon Train games "feel" "similar" to Aristocrat's Dragon Link games, and that "L&W could only have achieved this degree of similarity with Dragon Link's gameplay by use of Aristocrat's trade secrets." Compl. ¶ 111. But circumstantial allegations regarding product similarity, even if true, do not support a reasonable inference that L&W used Aristocrat's trade secrets to develop its Dragon Train product, particularly where Aristocrat acknowledges that L&W has been developing competing casino games for decades. *Brown v. Adidas Int.*, 938 F. Supp. 628, 634 (S.D. Cal. 1996) ("Allegations of [product] similarity, without more, do not support a claim of misappropriation of trade secrets.").

        In any event, Aristocrat fails to plausibly allege that, at the time of use, each L&W Defendant knew or had reason to know that knowledge of the trade secret was derived through improper means, and instead, merely recites the elements of a trade secret claim. Compl. ¶ 128. The only allegation Aristocrat articulates regarding L&W's knowledge is that "when L&W hired Ms. Charles, it knew that she had been working with the highly confidential math for Lightning Link and Dragon Link." Compl. ¶ 115. However, this is typical of any employer who hires experienced skilled employees,

---

[11] As a threshold matter, because Aristocrat's failed to plausibly allege that L&W acquired any Aristocrat trade secrets, the Court need not consider whether L&W "used" any trade secrets.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1  and does not support a reasonable inference of misappropriation. Nothing Aristocrat alleges suggests

2  L&W had knowledge that anything used in Dragon Train's development was a trade secret or

3  improperly acquired. *Navigation Holdings*, 445 F. Supp. 3d at 79 (dismissing trade secret claims

4  where plaintiff's conclusory assertions were "devoid of any factual substantiation of Defendants'

5  knowledge"). Accordingly, Aristocrat fails to plead any non-conclusory facts sufficient to raise a

6  reasonable inference that L&W had the knowledge required for a plausible claim of

7  misappropriation by use.

8             (c)    Aristocrat's reliance on "information and belief" is insufficient to
9                    plausibly allege misappropriation

10         Notably, nearly all of Aristocrat's allegations regarding misappropriation—including its

11  allegations of acquisition and use—are based exclusively on "information and belief." *See, e.g.*,

12  Compl. ¶¶ 127-130 (DTSA), 154-157 (NUTSA). Aristocrat's qualification of its allegations suggests

13  Aristocrat "likely lacks knowledge of underlying facts to support [its] assertion[s], and is instead

14  engaging in speculation to an undue degree." *Delphix Corp. v. Actifo, Inc.*, No. C 13-4613 RS, 2014

15  WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014); *see also Blantz v. Cal. Dep't of Corr. & Rehab., Div.*

16  *of Corr. Health Care Servs.*, 727 F.3d 917, 926–27 (9th Cir. 2013) (holding conclusory allegations

17  raised "on information and belief" are insufficient to state a claim). Accordingly, Aristocrat's

18  "information and belief" is insufficient to plausibly support its conclusory allegations that L&W

19  "acquired through improper means" or "used" "one or more of Aristocrat's trade secrets[.]" Compl.

20  ¶¶ 127-128.

21  **B.    ARISTOCRAT'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS**

22         Aristocrat's Complaint lacks sufficient specificity to provide fair notice of the boundaries of

23  Aristocrat's "copyrighted work" or its theory of infringement. To state a claim for copyright

24  infringement, Aristocrat must sufficiently allege two elements: "(1) ownership of a valid copyright,

25  and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural*

26  *Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). As to the second element, Aristocrat must plausibly allege

27  both copying and unlawful appropriation, *i.e.*, that L&W copied enough of Aristocrat's protected

28

14

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

expression to render their works "substantially similar." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). However, the Complaint broadly asserts a copyright in an unspecified collection of "audiovisual elements" from the multi-themed Dragon Link (and Lightning Link) games without identifying *which* game is subject to the copyright claim or explaining *which* portions of that game constitute original, protectable elements.[12] Aristocrat also fails to articulate a cognizable theory of infringement among the different versions of the various thematically-distinct Jewel of the Dragon games. Although no version or theme of Jewel of the Dragon is substantially similar to any version or theme of Dragon Link, L&W cannot defend against Aristocrat's copyright claim, including moving to dismiss based on the lack of substantial similarity between the parties' respective works, without fair notice of what Aristocrat specifically claims as its copyright and what L&W materials Aristocrat claims to be infringing.[13] At best, certain of the parties' game titles within their respective Dragon Link and Jewel of the Dragon game series may have general, Asian-inspired themes in common, such as dragons or emperors, but the protectible expression of those themes is completely different.

### 1.    Aristocrat Fails to Allege the Specific Copyright Subject to its Claim

Aristocrat's Complaint, asserting ownership "of the copyright in the Dragon Link Audiovisual Elements" (Compl. ¶ 133), fails to satisfy the requirements of Rule 8(a) because it does not allege the specific copyrighted work that has allegedly been infringed. Aristocrat must "allege sufficient facts to give [L&W] fair notice" of the "works [that] are at issue." *MultiCraft Imports, Inc.*

---

[12] Aristocrat defines "Dragon Link Audiovisual Elements" as "includ[ing] but not limited to, original artwork, animations, and computer-generated graphics that appear on the game displays, along with original sounds that are played on the game speakers." Compl. ¶ 42.

[13] Non-infringement can be determined on a motion to dismiss, but without sufficient information as to what copyrighted work and which allegedly protectable elements of that work are subject to the claim, or *which* version of *which* L&W game is allegedly infringing, the Court cannot compare the works to make a non-infringement determination. *Christianson v. W. Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("[W]hen the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *MultiCraft Imports*, 2017 WL 5664996, at *4 (finding that the court "cannot undertake" the substantial similarity inquiry "absent more specific facts about each side's works").

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

*v. Mariposa USA, Inc.*, No. CV-16-3975-DMG-AJWX, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) ("[Plaintiff's] vague allegations that it owns copyrights in the content of its website and product catalog are too indefinite to establish ownership of any copyrights."); *Jackson v. Netflix, Inc.*, 506 F.Supp.3d 1007, 1017 (C.D. Cal. 2020) (dismissing copyright claim where "[p]laintiffs inexplicably fail to provide cogent details concerning what works their registrations cover"). However, Aristocrat makes no effort to specify which version of Dragon Link's "audiovisual elements" among its ten visually-distinct versions of Dragon Link actually comprise its asserted copyright, nor does it describe which of those "audiovisual elements" are original elements subject to copyright protection.[14]

*First*, Aristocrat fails to provide notice as to which Dragon Link game is the subject of its copyright claim. Aristocrat admits Dragon Link "is a game series" with "multiple game themes," having different "original artwork" and "animations." Compl. ¶¶ 42, 72, 134; RJN, Ex. I. There are stark audiovisual differences between the ***ten different themes*** of Dragon Link, none of which are the subject of a copyright registration. *See* Compl. ¶ 134; RJN, Ex. I. Aristocrat concedes it has only registered "certain Dragon Link Audiovisual Elements" (*id.*), which appear to relate to ***four different themes*** of Dragon Link, as well as an image from an entirely different game series than Dragon Link. *See* Compl. ¶ 134; RJN, Ex. D. Yet, Aristocrat claims only a single "copyright" in an unspecified version of Dragon Link in the Complaint. *See* Compl. ¶ 133.

*Second*, Aristocrat has not specifically described *which* "artwork, animations, and computer-generated graphics" or "sounds" (Compl. ¶ 42) within *which* Dragon Link game that L&W allegedly infringed. *See, e.g., Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828 DOC, 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010) (dismissing copyright claim where "[p]laintiff makes no attempt to identify which portions of the website … it accuses Defendants of infringing"). Aristocrat also fails

---

[14] Aristocrat admits that it has obtained copyright registrations covering only "certain of those elements" (Compl. ¶ 43), suggesting only certain elements of the games are subject to protection. This is especially curious given the dates of registration suggest Aristocrat obtained the registrations for purposes of this litigation.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

to distinguish between "Dragon Link Trade Dress" and "Dragon Link Audiovisual Elements," leaving L&W to guess which of the audiovisual elements described in the Complaint comprise Aristocrat's asserted copyright as opposed to its alleged "Dragon Link Trade Dress." *Id*. at *6 (dismissing copyright claim where "it is unclear whether [plaintiff's allegations] are meant to support Plaintiff's trade dress claims or Plaintiff's copyright claims").

*Third*, Aristocrat fails to allege which of its "Dragon Link Audiovisual Elements" are original and plausibly protected by copyright. *See, e.g.*, *Feist Publ'ns*, 499 U.S. at 348 ("[C]opyright protection may extend only to those components of a work that are original."). The *ideas* within "ten Asian-themed [slot] games" (Compl. ¶ 24)—such as dragons, a "dark-haired woman," and "[c]oin [s]howers" (Compl. ¶¶ 82, 84)—are not subject to copyright protection, only the *particular expression* of those non-functional elements.[15] *See, e.g., Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010), *as amended* (Oct. 21, 2010) (noting copyrights "would cover only [the] particular expression … not the idea itself … ideas, scenes a faire (standard features) and unoriginal components aren't protectable."); *Data E. USA, Inc. v. Epyx, Inc*., 862 F.2d 204, 209 (9th Cir. 1988) (finding features that "necessarily follow from the idea of a martial arts karate combat game, or are inseparable from, indispensable to, or even standard treatment of the idea of the karate sport … are not protectable"). Tellingly, the only copyright registrations alleged in the Complaint are for "certain" aspects of the Dragon Link games (Compl. ¶ 134), such as visual "images" and two different themes of a "Hold & Spin Feature." *See* Compl, Ex. A; RJN, Exs. A - C. But as this material—such as the expression of the idea of an emperor or goddess—is completely different from any visual materials in any Jewel of the Dragon games, Aristocrat does not limit its "copyrighted work" to the collection of those audiovisual elements (nor could it given the registrations are from four different games). Because L&W does not have fair notice of *which* elements within *which* game Aristocrat is claiming to be protectable, L&W cannot defend against such claims, which warrants

---

[15] Functional elements of the games, such as the use of red and gold, which symbolize luck and prosperity in Chinese culture (*see* RJN, Ex. J) are similarly unprotectable.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

dismissal.

As Aristocrat fails to satisfy the minimum level of specificity necessary to give L&W and this Court fair notice of its alleged copyright, its claim should be dismissed.

### 2.    Aristocrat Fails To Plausibly Allege Infringement

Aristocrat also fails to plead *which* L&W works, and *which* elements of those works, allegedly infringe Aristocrat's protected expression in its purported copyright. To plausibly allege infringement, Aristocrat "must allege that a specific accused work infringes upon a specific, fixed, protected work." *Tangle Inc. v. Aritzia, Inc.*, --- F. Supp. 3d ---, 2023 WL 6883369, at *3 (N.D. Cal. Oct. 18, 2023).

Despite acknowledging that Jewel of the Dragon "is a game series" that comes in "multiple game themes" and in "a digital version" (Compl. ¶ 72), Aristocrat fails to offer sufficient facts pertaining to *which* version of *which* Jewel of the Dragon game allegedly infringes any copyright. Critically, as Aristocrat is well aware, there are **four different Jewel of the Dragon games**, all released at different times, and **in different versions** with **distinct audiovisual elements**. But Aristocrat's Complaint fails to identify any specific theme or version of the games, and merely includes an assortment of images that appear to be from **old versions** of an unidentified Jewel of the Dragon game that is no longer distributed by L&W. *See supra*, Section II; RJN, Ex. H. The only reference to a specific Jewel of the Dragon theme is to L&W's Red Phoenix game, which demonstrates that the parties' protectable expressions of common motifs in Asian-themed games are completely different. Indeed, Aristocrat does not even allege the artwork in L&W's game is "substantially similar" to "the Autumn Moon version of Dragon Link" as to plead a copyright infringement claim—nor could it given the images share no similarities other than the idea of "a dark-haired woman" in costume (Compl. ¶ 82):

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

| Aristocrat Dragon Link – Autumn Moon | L&W Jewel of the Dragon – Red Phoenix |
|---|---|
|  |  |

L&W cannot evaluate Aristocrat's claim and its defenses without basic facts regarding the specific version and theme of Jewel of the Dragon that Aristocrat alleges to be infringing, the absence of which dooms Aristocrat's copyright claim.

### 3. In the Alternative, Aristocrat's Failure to Timely Register Any Copyright Precludes Statutory Damages and Attorneys' Fees

Aristocrat's admission that it has not registered "the copyrighted work" for which it claims copyright protection precludes recovery of statutory damages and attorneys' fees. *See* 17 U.S.C. § 412(2). Therefore, to the extent the entire copyright claim is not dismissed, these remedies should be stricken for Aristocrat's failure to comply with registration requirements.

### C. ARISTOCRAT FAILS TO STATE A PLAUSIBLE CLAIM FOR TRADE DRESS INFRINGEMENT

Aristocrat's vague allegations related to its trade dress claim neither provide fair notice of its claimed trade dress nor plausibly allege ownership of a protectable trade dress. "To withstand a motion to dismiss an infringement claim under § 43(a) of the Lanham Act … a plaintiff must identify the mark and allege three basic elements: (1) distinctiveness [or secondary meaning]; (2) nonfunctionality; and (3) likelihood of consumer confusion." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 562 (C.D. Cal. 2005). Aristocrat must clearly articulate its trade dress to allow for an understanding of the basis for the claimed trade dress and how it is infringed.

### 1. Aristocrat Fails to Provide Fair Notice of Its Claimed Trade Dress

Aristocrat's abstract statement of vaguely-defined trade dress elements fails to put L&W on fair notice of the concrete bounds of Aristocrat's alleged trade dress. "[C]ourts in [the Ninth Circuit] have required trade dress plaintiffs, at the very least, to provide adequate notice by including in their complaint a ***complete recitation of*** the ***concrete elements*** of their alleged trade dress." *YZ Prods. v.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

*Redbubble, Inc.*, 545 F. Supp. 3d 756, 767 (N.D. Cal. 2021) (emphasis added). However, Aristocrat broadly describes its trade dress as "[t]he look and feel of the Dragon Link Standard Logo, Dragon Link Jackpot Display, Dragon Link Orb-and-Flame Graphics, and Dragon Link Bonus Feature, along with other distinctive audiovisual elements in the Dragon Link games[.]" Compl. ¶ 44. This open-ended listing of the elements of its trade dress and vague allegations regarding the combination of such components does not provide the requisite specificity to put L&W on fair notice of Aristocrat's alleged trade dress.[16]

Importantly, the all-encompassing, undefined "other distinctive audiovisual elements" fails to provide L&W "with notice because it does not clearly delineate the boundaries of the protection [Aristocrat] claims," which alone warrants dismissal of the claim. *EVIG, LLC v. Natures Nutra Co.*, --- F.Supp.3d ---,  2023 WL 4934339, at *4–5 (D. Nev. Aug. 2, 2023) ("Because plaintiff has not provided a bounded list of protectible elements … in its purported trade dress, the court will dismiss this claim"); *see also Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-CV-04556-AB-JCx, 2020 WL 6821013, at *6 (C.D. Cal. Oct. 29, 2020) ("Courts have often dismissed trade dress claims for failing to provide a complete list of elements where the list of alleged trade dress elements is preceded by a non-limiting qualifier.").

Moreover, of the alleged trade dress elements listed, many are either impermissibly vague or not defined at all. *Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010) (granting motion to dismiss for failure to provide "an adequate definition of the elements comprising" the trade dress as lack of "adequate notice"). For example, L&W has no notice of what constitutes the "Dragon Link Bonus Feature" that is part of the trade dress as

---

[16] Aristocrat does not allege trade dress rights in any of the elements, standing alone, nor could it. For example, with respect to the "Dragon Link Standard Logo" element, L&W obtained a registration for the mark JEWEL OF THE DRAGON in 2012, well *before* Aristocrat's claimed first use of DRAGON LINK in 2017. *See* RJN, Exs. E, F. L&W's many other trademark registrations incorporating the word DRAGON also demonstrate that Aristocrat does not have exclusive rights in a logo incorporating the word "Dragon." *See* RJN, Ex. G.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

Aristocrat provides no definition for this claimed trade dress element.[17] Other elements are defined in such a vague way as to provide no adequate notice of the trade dress, such as the "Dragon Link Orb-and-Flame Graphics," which Aristocrat describes as "[t]he red flame flare and glowing orb graphics [that] appear consistently ***throughout various aspects*** of the Dragon Link games." Compl. ¶ 28 (emphasis added). It is unclear where these graphics appear, if they appear in the same manner or at all in different themed games,[18] or how these generic graphics constitute protectable trade dress. *See SCG Characters, LLC v. Telebrands Corp.*, No. CV-15-00374-DDP-AGRX, 2015 WL 4624200, at *7 (C.D. Cal. Aug. 3, 2015) (dismissing trade dress claim where identification of trade dress elements such as "brightly colored fur" was insufficient to plead a cognizable trade dress claim with requisite particularity); *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV-14-03954 DDP (MAN), 2014 WL 6892141, at *3 (C.D. Cal. Nov. 5, 2014) (dismissing trade dress claim because description of claimed trade dress as "the color scheme, fonts, phraseology, and overall look and feel of the Plaintiff's product packaging" did not sufficiently identify the particular elements sought to be protected).

L&W cannot defend against a claim of trade dress infringement without information on the specific trade dress at issue, which warrants dismissal of the trade dress claim.

### 2.    Aristocrat's Trade Dress Claim Is Precluded By Copyright Law

Aristocrat's alleged trade dress, which appears to primarily include audiovisual elements of gameplay, is a functional repackage of its copyright claim that Aristocrat improperly attempts to shoehorn into a Lanham Act claim. Courts have historically limited the application of the Lanham Act so as not to encroach on copyright interests. *See Dastar Corp. v. Twentieth Century Fox Film*

---

[17] To the extent Aristocrat's "Dragon Link Bonus Feature" is meant to refer to the "Dragon Link Hold & Spin Feature," it is unclear which "Hold & Spin Feature" from which Dragon Link game and which portions of those features are encompassed by that definition.

[18] Like its copyright claim, Aristocrat does not allege whether or how its various trade dress elements appear across the ten thematically-distinct versions of its Dragon Link series, or whether its claimed trade dress is even part of each game. Nor does Aristocrat provide any notice regarding which version of which L&W game it contends infringes on its alleged trade dress.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

*Corp.*, 539 U.S. 23, 33 (2003) (declining to apply Lanham Act in manner that would cause a "conflict with the law of copyright"); *Shaw v. Lindheim,* 919 F.2d 1353, 1364–65 (9th Cir. 1990) *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (declining to "expand the scope of the Lanham Act to cover cases in which the Federal Copyright Act provides an adequate remedy"). Yet, Aristocrat articulates a cause of action for trade dress, claiming trade dress rights over various "audiovisual elements" of its Dragon Link product that change throughout gameplay (*see, e.g.*, Compl. ¶¶ 44, 77-81), which falls under the purview of the Copyright Act. Where the alleged trade dress elements are "squarely within the dominion of copyright law," as they are here, permitting the claim to proceed "would render copyright law superfluous if courts were to construe claims such as these as warranting trademark protection." *RDF Media*, 372 F. Supp. 2d at 564.

### 3.  Aristocrat Fails to Plausibly Plead Acquired Distinctiveness

Product configuration trade dress, as Aristocrat appears to claim here (but which it expands beyond protectible trade dress), cannot be inherently distinctive; rather, "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 216 (2000). Aristocrat's conclusory allegations do not amount to a plausible claim that its alleged trade dress has acquired distinctiveness, which requires "a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (quotation omitted). Aristocrat's allegations of secondary meaning are not only conclusory, they are unsupported and contradicted elsewhere in the Complaint. For example, Aristocrat concedes that its "widespread use" of elements of its trade dress is not exclusive, acknowledging that "dozens" of competitors use "Hold & Spin" features similar to its own (Compl. ¶ 108), which demonstrates this element (if part of the trade dress) is not a source identifier. *Sunlighten, Inc. v. Finnmark Designs, LLC*, 595 F. Supp. 3d 957, 970 (D. Nev. 2022) (finding no acquired distinctiveness where no evidence that use of trade dress was exclusive). Furthermore, none

22

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

of the facts alleged in the Complaint to support acquired distinctiveness relate to the claimed trade dress, only certain elements of the trade dress individually. Nowhere in the Complaint—not on the game "cabinet," not in the depicted advertising, not in the game images, not in the third-party publications—do the alleged trade dress elements appear together to demonstrate consumers associate these elements with Aristocrat. *See* Compl. ¶¶ 48-50. Aristocrat has not alleged sufficient facts to state a plausible claim that trade dress made up of the collection of elements asserted in the Complaint has acquired distinctiveness.

### 4. Aristocrat Fails to Plausibly Allege Its Trade Dress Is Non-Functional

"The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 164 (1995). Aristocrat simply alleges that "the Dragon Link Trade Dress is non-functional" (Compl. ¶¶ 46, 144) without any further factual allegations to support this conclusory allegation, which is insufficient to plausibly allege protectable trade dress. *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSX), 2015 WL 12731929, at *4 (C.D. Cal. May 8, 2015). Many of the elements of its alleged trade dress are plainly functional, *e.g.*, "[a] tiered list of gaming jackpots and bonuses," and a prize amount that "appears against a black background" (Compl. ¶ 27), the monopoly on which would significantly inhibit competition. By the same token, common aesthetic elements in slot games, such as coin showers that celebrate wins and the use of red and gold colors to symbolize good luck and prosperity, are not subject to trademark protection. *See, e.g., LTTB LLC v. Redbubble, Inc.*, 840 F. App'x 148, 152 (9th Cir. 2021) (finding "marks do not function as trademarks because they are aesthetic only and do not identify the source of the goods.").

### 5. Aristocrat Fails to Provide Notice of Alleged Likelihood of Confusion

As with its copyright claim, Aristocrat fails to plead *which* version of *which* L&W game Aristocrat contends infringes on its alleged trade dress. For example, the current versions of the Jewel of the Dragon logo and jackpot display are not as depicted in the Complaint and, as shown below, not similar to the "Dragon Link Standard Logo" or "Dragon Link Jackpot Display":

23

| Aristocrat's Dragon Link | L&W's Jewel of the Dragon |
|---|---|
|  |  |

Although the above demonstrates that L&W will show there is no likelihood of confusion as a matter of law, L&W cannot defend against claims without fair notice of the specific versions and elements of its games that Aristocrat contends are likely to cause confusion.[19]

### D. ARISTOCRAT FAILS TO STATE A PLAUSIBLE CLAIM FOR DECEPTIVE TRADE PRACTICES

To plead a claim under the Nevada Deceptive Trade Practices Act (NDTPA), Aristocrat must allege that L&W, in the course of its business, "[k]nowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease." Nev. Rev. Stat. § 598.0915(2). To survive a motion to dismiss, the elements of an NDTPA claims must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). *Switch, Ltd. v. Uptime Inst., LLC*, 426 F. Supp. 3d 636, 643 (D. Nev. 2019). Aristocrat's allegations merely recite the elements of the NDTPA (Compl. ¶ 160), which is insufficient to plead a knowingly false representation with the requisite particularity under Rule 9(b). This claim also fails for the same reasons as the copyright and trade dress claims, and because the alleged "Dragon Link Trade Dress" is equivalent to rights protected by federal copyright law, this claim is preempted under the Copyright Act. *Kodadek v. MTV Networks, Inc*., 152 F.3d 1209, 1213 (9th Cir. 1998).

### V.   CONCLUSION

For the foregoing reasons, Aristocrat's Complaint should be dismissed in its entirety and with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[19] The Court may dismiss the Complaint if it determines as a matter of law from the pleadings that confusion is unlikely. *Murray v. Cable Nat'l Broad. Co*., 86 F.3d 858, 860 (9th Cir. 1996), *as amended* (Aug. 6, 1996).

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

Respectfully submitted,

DATED this 9th day of April, 2024.

CAMPBELL & WILLIAMS

By:  _/s/ Philip R. Erwin_
PHILIP R. ERWIN, ESQ. (11563)
710 South Seventh Street
Las Vegas, Nevada 89101

JONES DAY

HAROLD K. GORDON, ESQ.
(*pro hac vice*)
RANDALL E. KAY, ESQ.
(*pro hac vice*)
ANNA E. RAIMER, ESQ.
(*pro hac vice*)

*Attorneys for Defendants Light &*
*Wonder, Inc., LNW Gaming, Inc., and*
*SciPlay Corporation*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of April, 2024, I caused a true and correct copy of the foregoing **Defendants' Motion to Dismiss Plaintiffs' Complaint** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

                         */s/ Philip R. Erwin*
                         An employee of Campbell & Williams

**INDEX OF EXHIBITS**

| Exhibit No. | Document | Page Nos. |
|:---:|:---|:---:|
| - | Declaration of Anna E. Raimer | - |
| A | Copyright Registration No. VA 2-369-827 for visual material, entitled "Autumn Moon – Goddess" | 1 – 3 |
| B | Copyright Registration No. VA 2-372-588 for visual material, entitled "Golden Century – Emperor – Image" | 4 – 6 |
| C | Copyright Registration No. VA 2-372-489 for visual material, entitled "Peacock Princess – Princess – Image" | 7 – 9 |
| D | Copyright Registration No. VA 2-372-589 for visual material, entitled "Grand Legends – Magic Warrior – Image" | 10 – 12 |
| E | Copy of the registration certificate and Trademark Status and Document Retrieval ("TSDR") page, obtained from the U.S. Patent and Trademark Office ("USPTO") database, for U.S. Trademark Registration No. 5,360,457 for DRAGON LINK, which issued December 19, 2017, and lists a first use date of July 10, 2017 | 13 – 16 |
| F | Copy of the registration certificate and TSDR page, obtained from the USPTO database, for U.S. Trademark Registration No. 4,132,968 for JEWEL OF THE DRAGON, which issued April 24, 2012, and lists a first use date of September 15, 2011. | 17 – 20 |
| G | Copies of registration certificates and TSDR pages, obtained from the USPTO database, for twenty-six U.S. trademark registrations owned by Light & Wonder, Inc. or its affiliates, which incorporate the word DRAGON or the foreign equivalent of the word DRAGON | 21 – 138 |
| H | Copies of screen shots of visual materials from the current versions of the four different Jewel of the Dragon games: Prosperity Tortoise, Red Phoenix, A Thousand Warriors, and Valley of the Tiger | 139 – 147 |
| I | Copies of screen shots of the "Dragon Link" webpages on Plaintiffs' website | 149 – 211 |
| J | Copies of screen shots from (a) the Smithsonian's National Museum of Asian Art's website, (b) Virginia Commonwealth University's website, and (c) Top China Travel's website | 212 – 225 |

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, SUITE A, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com