NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
**HOLLEY DRIGGS LTD**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308
Email: nsantoro@nevadafirm.com
         jsmith@nevadafirm.com

PETER A. SWANSON
(*pro hac vice*)
GARY M. RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com
         grubman@cov.com
         sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs Aristocrat Technologies, Inc.
and Aristocrat Technologies Australia Pty Ltd.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION,<br><br>Defendants. | Civil Case No.: 2:24-cv-00382-GMN-MDC<br><br>**PLAINTIFFS' MOTION TO LIFT STAY OF DISCOVERY AND ORDER DISCOVERY ON MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

BACKGROUND ................................................................................................................................. 3

LEGAL STANDARD ......................................................................................................................... 5

ARGUMENT ....................................................................................................................................... 6

I.   The Requested Documents Are Relevant, Proportional, and Narrowly Tailored for a Preliminary Injunction. ........................................................................................................................... 7

II.  The Prejudice to Aristocrat Is Ongoing and Growing. ...................................................... 12

CONCLUSION .................................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acclaim Lighting, Inc. v. Bruck*,
 2018 WL 11409432 (D. Nev. Apr. 6, 2018) ................................................................. 5

*Apple Inc. v. Samsung Elecs. Co.*,
 2011 WL 1938154 (N.D. Cal. May 18, 2011) .............................................................. 6

*Fosbre v. Las Vegas Sands Corp.*,
 2016 WL 54202 (D. Nev. Jan. 5, 2016) ........................................................................ 5

*Grammer v. Colo. Hosp. Ass'n Shared Servs., Inc.*,
 2015 WL 3938406 (D. Nev. June 26, 2015) ................................................................. 5

*Hardie v. N.C.A.A.*,
 2013 WL 1399333 (S.D. Cal. Apr. 5, 2013) ................................................................. 6

*McCall v. State Farm Mut. Auto. Ins. Co.*,
 2017 WL 3174914 (D. Nev. July 26, 2017) .............................................................. 5, 6

*Pyro Spectaculars N., Inc. v. Souza*,
 2012 WL 13220023 (E.D. Cal. Feb. 8, 2012) ........................................................... 6, 12

*Schrader v. Wynn Las Vegas, LLC*,
 2021 WL 4810324 (D. Nev. Oct. 14, 2021) .................................................................. 5

*Zendar Inc. v. Hanks*,
 2020 WL 4458903 (N.D. Cal. May 27, 2020) .......................................................... 6, 12

**Other Authorities**

Fed. R. Civ. P. 26(b) ............................................................................................................ 5, 6

Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. (collectively, "Aristocrat") bring this motion to lift the stay of discovery in view of Aristocrat's recently filed motion for a preliminary injunction on its claims for trade secret misappropriation (ECF No. 52) (the "PI Motion").

**INTRODUCTION**

The limited discovery provided by Defendants ("L&W") before the Court stayed discovery is troubling. The documents L&W produced in response to the Court's expedited discovery order reveal that L&W acquired Aristocrat's trade secrets relating to the Dragon Link math—including a document that L&W acknowledges was taken or adapted from Aristocrat—and used those trade secrets in the development of L&W's games. Given this and other clear evidence of L&W's misappropriation, Aristocrat has moved for a preliminary injunction to prevent the irreparable harm that will likely result from L&W's continuing misappropriation. ECF No. 52.

But while the evidence submitted with the PI Motion demonstrates that L&W has Aristocrat's secret math information, additional targeted discovery is critical to ascertain how far these trade secrets have spread and what else L&W has done with them. Such discovery will help to ensure that any injunctive relief the Court enters is adequate to address L&W's misappropriation and the resulting harm to Aristocrat. Without discovery at this juncture, aspects of L&W's use and disclosure of Aristocrat's trade secrets may go unexplored, causing additional irreparable harm to Aristocrat and possibly requiring requests for further relief once the misappropriation is eventually revealed. For these reasons, courts have routinely granted requests for discovery in connection with preliminary injunction motions.

While Aristocrat does not believe there should be any stay of discovery for the reasons previously explained, the filing of the PI Motion establishes good cause to lift the stay for at least the targeted discovery sought herein. Aristocrat seeks production of a few categories of documents that are narrowly tailored to Aristocrat's PI Motion, and on which the parties have already met and conferred. The requested discovery is limited to Aristocrat's trade secret claims, and more specifically to identifying the extent of L&W's use of Dragon Link and Lightning Link math information in L&W's game development (and does not include, for example, source code,

marketing, sales, or other business information). And many of the requested documents have already been collected or are easily identified and collected from central repositories, and thus would not impose any undue burden on L&W.

Good cause exists to lift the stay notwithstanding L&W's pending motion to dismiss. The evidence supporting Aristocrat's PI Motion shows that this is not a "fishing expedition" designed to reverse-engineer a trade secret claim, ECF No. 48 at 1, but rather a case involving well-defined trade secrets (the mathematical design of Dragon Link and Lightning Link, *see* ECF No. 52 at 12–14), particularized allegations of misappropriation (L&W's acquisition of such trade secrets from a former Aristocrat game designer and L&W's use of those trade secrets, including to develop its Dragon Train game, *see id.* at 14–18), and evidence from L&W showing that misappropriation has ***actually happened***, *see id.* at 7–9, 15. Under these circumstances, L&W's strident objection to turning over discovery—juxtaposed with its failure to deny much of the evidence supporting Aristocrat's claims, or offer any legitimate explanation for the remarkable similarities between L&W's Dragon Train game and Aristocrat's Dragon Link game—suggests there is more evidence of misappropriation to come.

Indeed, L&W has engaged in a strategy of misdirection since before this suit was filed. In refusing a request from Aristocrat's U.S. counsel for documents that L&W had voluntarily produced to Aristocrat's Australian counsel, L&W claimed it "ha[d] confirmed that these documents were generated independently by L&W's employees." ECF No. 52, Swanson Decl., Ex. X; *see also* ECF No. 19 (representing that L&W "did not locate any Aristocrat confidential documents or information"); ECF No. 19-4 (letter from L&W's Australian counsel claiming that "neither Ms Charles nor Mr Sefton kept any documents of this nature [e.g., math documents] from the time when they were employed by your client" and that "[i]t is abundantly clear that L&W has not received, accessed or misused any such Aristocrat documents"). But that was false. In a verified interrogatory response served this week, L&W admitted that at least one of the documents referred to in its letter was taken or derived from Aristocrat. *See* ECF No. 52, Swanson Decl., Ex. W at 2–3. Having already misled Aristocrat concerning L&W's possession of Aristocrat confidential information, L&W's rhetoric about the basis for Aristocrat's claims should not be credited.

Accordingly, Aristocrat respectfully requests that the Court lift the stay of discovery (ECF No. 51) and order L&W to produce the tailored set of documents in time for their use in connection with the PI Motion.

**BACKGROUND**

Aristocrat filed this action on February 26, 2024. ECF No. 1. The same day, "in view of L&W's apparent plans for an imminent launch of Dragon Train in the U.S.," Aristocrat requested limited expedited discovery "in order to assess and support a motion for preliminary injunctive relief." ECF No. 3 at 5. *After* Aristocrat filed its Complaint, L&W launched Dragon Train in the U.S. *See* ECF No. 19 at 13 ("L&W has since released Dragon Train in the United States"); *see also* ECF No. 45, Ex. G (March 8, 2024 L&W press release announcing that Dragon Train made its North American debut "today"). The Court ordered production of one of the categories requested by Aristocrat, ECF No. 33, and that production—made on April 3, 2024—confirmed Aristocrat's allegations that L&W had indeed misappropriated confidential information relating to Aristocrat's Dragon Link game, as explained in Aristocrat's PI Motion. *See* ECF No. 52 at 6–9, 12–18.[1]

L&W is now rushing Dragon Train into casinos across the United States, despite its clear notice of the very serious nature of Aristocrat's allegations and Aristocrat's expressed intent to seek preliminary injunctive relief. Dragon Train initially launched in four states, including Nevada, *see* ECF No. 45, Ex. G, but has since moved into at least fifteen additional states, *see* ECF No. 45 at 11 n.9. As explained in the PI Motion, this ongoing and growing misappropriation is providing L&W with an unfair advantage in the competitive gaming market and undermining Aristocrat's market position, reputation, and goodwill. *See* ECF No. 52 at 20–23. Furthermore, the longer L&W continues to use and spread Aristocrat's trade secrets, including by distributing those secrets within

---

[1] L&W has incorrectly suggested that Aristocrat could have relied on these documents in the Complaint. ECF No. 48 at 1 ("Aristocrat had [the documents] long before filing its Complaint"). While L&W had produced these documents to Aristocrat's *Australian* counsel before the present action was filed, that production was under a confidentiality agreement that prevented disclosure to Aristocrat's U.S. counsel. L&W refused to produce the documents to Aristocrat's *U.S.* counsel, both before and after the Complaint in this case, until the Court ordered L&W to do so, despite producing them to Aristocrat's Australian counsel on a *voluntary* basis.

- 3 -

L&W to aid further game development, the greater the likelihood of disclosure, which would diminish, if not destroy, the value of the trade secrets. *See id.* at 18–20. These harms are irreparable.

The day that discovery opened (April 19), Aristocrat served requests for production and interrogatories. *See* ECF Nos. 41-3, 41-4. On May 10—ten days before L&W's responses were due—Aristocrat requested that L&W prioritize the production of seven discrete categories of documents related to Aristocrat's trade secret claims, for use in connection with Aristocrat's PI Motion. *See* Declaration of Peter Swanson ("Swanson Decl."), Ex. A. In response, L&W agreed to produce some documents, but refused to produce others, including critical documents on the design and development of Dragon Train. *See* Swanson Decl., Ex. B (May 15, 2024 email from counsel for L&W) at 1–2. The parties met and conferred regarding these requests on May 20. L&W maintained its refusal to produce the key Dragon Train design and development documents, but indicated it may produce certain other documents, though L&W did not specify exactly what it would be willing to produce. *See* Swanson Decl. ¶¶ 6–8.

On May 21, the Court ordered a stay of discovery. ECF No. 51. Aristocrat filed its PI Motion the next day. ECF No. 52. Aristocrat now respectfully requests that the Court lift the discovery stay to allow for the prompt production of the following six categories of documents, which are narrowly tailored to the resolution of the PI Motion (the "Requested Documents"):[2]

**Category 1**: The design and development documents for Dragon Train contained in the Perforce repository referred to in Paragraph 40 of the Affidavit of Richard Hoad dated March 1, 2024 (ECF No. 45, Ex. D at 13) in *Aristocrat Techs. Australia Pty Ltd. v. Light & Wonder, Inc. et al.*, No. NSD 1576 of 2023 (the "Australian Proceeding"), or any other central or shared repository used by L&W to store such documents.

**Category 2**: All submissions made to any regulatory authority or testing lab in the United States for any version of L&W's Dragon Train game.

---

[2] L&W represented that it is not currently aware of any documents responsive to one of Aristocrat's seven requests. *See* Swanson Decl., Ex. B at 3.

**Category 3**: All custodial documents (including communications) of Emma Charles or Lloyd Sefton that (a) relate to the development of Dragon Train and (b) refer or relate to any mathematical design, rules, algorithms, formulae, or models.

**Category 4**: All custodial documents (including communications) of the custodians identified in Paragraph 12 of the Affidavit of Richard Hoad (ECF No. 45, Ex. D at 5–6), in the Australian Proceeding, that refer to Aristocrat, Dragon Link, Lightning Link, High Roller Gaming, or Dollar Storm.

**Category 5**: All communications between L&W and Emma Charles or Lloyd Sefton prior to their employment by L&W.

**Category 6**: All documents required to be produced pursuant to the order of the Federal Court of Australia issued on April 30, 2024 ([2024] FCA 439), in the Australian Proceeding.

## LEGAL STANDARD

The standard to lift a stay of discovery is the same as the standard for issuing a stay of discovery. *See Grammer v. Colo. Hosp. Ass'n Shared Servs., Inc.*, 2015 WL 3938406, at *1–2 (D. Nev. June 26, 2015) (lifting stay after consideration of stay factors). Under the pragmatic approach, courts look at whether "good cause" exists for a stay. *Schrader v. Wynn Las Vegas, LLC*, 2021 WL 4810324, at *4 (D. Nev. Oct. 14, 2021).

A party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Fosbre v. Las Vegas Sands Corp.*, 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016) (quoting Rule 26(b)(1)). Relevant information "need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1), so long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *See Fosbre*, 2016 WL 54202 at *4. The party opposing discovery has the burden of showing that it is irrelevant, overly broad, or unduly burdensome. *See McCall v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 3174914 at *6 (D. Nev. July 26, 2017); *see also Acclaim Lighting, Inc. v. Bruck*, 2018 WL 11409432, at *5 (D. Nev. Apr. 6, 2018) (party resisting discovery "bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b)").

The goal of Rule 26(b) is to "accomplish the goal of Rule 1 'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *McCall*, 2017 WL 3174914, at *5. Therefore, courts routinely authorize discovery on an expedited schedule for the purpose of supporting a preliminary injunction motion. *See*, *e.g.*, *Zendar Inc. v. Hanks*, 2020 WL 4458903, at *7 (N.D. Cal. May 27, 2020) (requiring document production and deposition on an expedited basis to aid preliminary injunction analysis); *Pyro Spectaculars N., Inc. v. Souza*, 2012 WL 13220023, at *3 (E.D. Cal. Feb. 8, 2012) (same); *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 1938154, at *4 (N.D. Cal. May 18, 2011) (requiring document production on an expedited basis to aid preliminary injunction analysis).

## ARGUMENT

Good cause exists to lift the stay of discovery, and to order L&W to promptly produce the Requested Documents, in light of Aristocrat's recently filed PI Motion. The Requested Documents are central to Aristocrat's argument in the motion that L&W has acquired, without authorization, trade secrets related to Aristocrat's Dragon Link game series, and has used those secrets to develop competing games. *See* ECF No. 52 at 12–18. While the PI Motion provides clear evidence that L&W is in possession of, and has used, Aristocrat trade secrets, some limited discovery is critical to determine the full extent of L&W's misappropriation and ensure the adequacy of any relief entered by the Court. *See Hardie v. N.C.A.A.*, 2013 WL 1399333, at *2 (S.D. Cal. Apr. 5, 2013) (granting motion for discovery on an expedited basis because "the information sought is relevant to the pending motion for preliminary injunction and is likely to assist the Court in resolving the motion"); *see also Apple*, 2011 WL 1938154 at *2 ("expedited discovery would allow the Court to address any request for preliminary injunctive relief at the outset of the case, thereby providing a measure of clarity to the parties early in the proceeding and facilitating effective case management").

As discussed below, the Requested Documents are undeniably relevant to Aristocrat's trade secret claims, and they are narrowly tailored to relief sought in the PI Motion. The burden to L&W of collecting and producing these documents would be minimal—and certainly not undue—while the prejudice to Aristocrat if it does not obtain the documents would be significant. As

detailed in the PI Motion, Aristocrat is likely to suffer irreparable harm as a result of L&W's misappropriation, *see* ECF No. 52 at 18–23, and the likelihood of such harm would only increase if Aristocrat cannot uncover all of the ways in which its trade secrets have been disclosed and used within L&W.

### I. The Requested Documents Are Relevant, Proportional, and Narrowly Tailored for a Preliminary Injunction.

The discovery that Aristocrat requests in the present motion is important to Aristocrat's now-filed PI Motion and represents only a small fraction of the discovery Aristocrat requested in this action before the stay issued. *See* ECF Nos. 41-3 & 41-4. Unlike Aristocrat's prior requests, which as the Court noted were in part "aimed at [Aristocrat's] ultimate claims," ECF No. 51 at 6, the Requested Documents are narrowly tailored for a preliminary injunction determination. For example, the Requested Documents do not include source code or marketing plans and strategies, which are categories the Court found unduly burdensome at this stage. *See id.* As explained below, each of the requested categories is targeted to determining the extent of L&W's misappropriation and would not constitute an undue burden for L&W to collect and produce.

**Category 1: The Dragon Train design and development documents**. These documents will provide a record of how L&W created Dragon Train, including the extent to which Aristocrat's confidential information was reviewed, discussed, copied, adapted, or otherwise used. L&W has not disputed that it designed Dragon Train to mimic the Dragon Link gameplay and math, resulting in obvious public-facing similarities, including similar denomination options, symbol sets, pay tables, game rules, bonus features, and jackpot tiers. ECF No. 52 at 6–7. And it has not disputed that Ms. Charles shared confidential Dragon Link information—including a spreadsheet that L&W admits came from Aristocrat—with L&W employees. *See id.* at 7–9, 11. But until L&W produces the design and development documents for Dragon Train, the extent of L&W's use of Aristocrat's confidential information in developing that game will remain known only to L&W. This is why the Federal Court of Australia—after finding that the documents produced so far suggest use of Aristocrat confidential information—ordered L&W to produce certain Dragon Train design files: "[T]he correctness of [L&W's] assertion that Dragon Train was not the product of copying, but of

1  independent creation, cannot be sensibly assessed by Aristocrat without knowing more about the
2  underlying design of Dragon Train and, in particular, the mathematical rules, formulae and models
3  used to create or implement the game." ECF No. 42-1 at 24 (¶ 26).

4        L&W does not dispute the relevance of these documents to Aristocrat's trade secret claims. To the contrary, the centrality of the design and development documents is why L&W has so vigorously opposed their production, as L&W is apparently concerned they will provide *more* evidence of misappropriation. *See* Swanson Decl., Ex. B at 2. But L&W cannot resist this critical discovery based on its now-discredited assertions that it has no Aristocrat confidential information and documents in its possession and that Aristocrat's misappropriation allegations are entirely speculative. Given the evidence that L&W is in possession of Aristocrat trade secrets relating to the Dragon Link math design, *see* ECF No. 52 at 6–9, 14–16—evidence for which L&W has provided *no* explanation despite multiple opportunities—Aristocrat is entitled to fully explore the extent of L&W's use of this information.

      L&W has not objected to this category based on burden grounds. Indeed, because the category is limited to documents located in central or shared repositories, and because Dragon Train was only launched in 2023 (in Australia), ECF No. 19 at 12, there should be little burden on L&W to collect and produce these documents. Nor can L&W credibly object on the ground that the documents are confidential, *see* Swanson Decl., Ex. B at 2, as the Court has entered a protective order, the terms of which L&W negotiated and accepted, that governs the production of confidential documents, *see* ECF No. 50.[3]

**Category 2: All submissions made to any regulatory authority or testing lab in the United States for any version of L&W's Dragon Train game**. To gain approval to sell or lease a casino game in the United States, gaming manufacturers must submit an application to regulatory agencies, such as to the Nevada Gaming Commission. These applications typically include information about the game's design, including the underlying math models on which the game is based, and may also include testing results performed by third-party labs, such as Gaming Labs

---

[3] Aristocrat has informed L&W that although Dragon Train source code is relevant to this action, Aristocrat is not seeking Dragon Train source code as part of this set of prioritized discovery.

International ("GLI"). These documents are relevant to Aristocrat's PI Motion because they will reveal, through L&W's own official submissions, the underlying mathematical design of the Dragon Train game, which will allow Aristocrat to assess the extent to which the Dragon Train math has been adapted from Aristocrat's confidential materials. Because these documents have already been collected and submitted by L&W, producing them to Aristocrat will entail minimal additional burden.[4]

**Category 3: All custodial documents (including communications) of Emma Charles or Lloyd Sefton that (a) relate to the development of Dragon Train and (b) refer or relate to any mathematical design, rules, algorithms, formulae, or models.** Unauthorized removal and use of Aristocrat's confidential information by Ms. Charles and Mr. Sefton is at the heart of Aristocrat's PI Motion. Indeed, the documents already produced by L&W (after this case was filed) demonstrate that both Ms. Charles and Mr. Sefton took Aristocrat files without authorization when they left Aristocrat, and at least Ms. Charles used and disclosed Aristocrat confidential information in her work for L&W. *See* ECF No. 52 at 6–9. These documents seek to uncover Ms. Charles and Mr. Sefton's contributions to the development of the mathematical aspects of Dragon Train, which is the game Aristocrat contends incorporates its math-related trade secrets. *See id.* at 14–18. By its terms, this category is limited to the time period in which Dragon Train was developed, and the documents sought are limited to files reasonably related to the misappropriation asserted in the PI Motion. Furthermore, L&W claims that it has already undertaken "extensive searches" of Charles and Sefton's electronic records, ECF No. 45, Ex. D at 4 (¶ 7), including extracting the contents of Charles and Sefton's work and personal email accounts, *id.* at 4 (¶¶ 10–11). Therefore, any burden on L&W is proportional to the needs of the case.

Prior to the stay, L&W did not dispute that these documents are relevant, but maintained that it would only perform narrow searches of Ms. Charles and Mr. Sefton's documents, based on "a suitable list of search terms," which it did not provide or suggest. *See* Swanson Decl., Ex. B at

---

[4] Prior to the stay, L&W had agreed to produce "certain" documents responsive to this request, but had not specified *which* documents would be produced, including whether the crucial mathematical design documents would be included. *See* Swanson Decl., Ex. B at 1; Swanson Decl. ¶ 7.

2. Given the centrality of these individuals to Aristocrat's claims and the likelihood that search terms will not identify all relevant documents, search term limits are not appropriate for this request.[5]

**Category 4: All custodial documents (including communications) of the custodians identified in Paragraph 12 of the Affidavit of Richard Hoad dated March 1, 2024, in the Australian Proceeding, ECF No. 45, Ex. D at 5, that refer to Aristocrat, Dragon Link, Lightning Link, High Roller Gaming, or Dollar Storm**. The custodians in Paragraph 12 of the Hoad Affidavit have all been identified by L&W as members of Star Studio, the team that designed Dragon Train, ECF No. 45, Ex. D at 4 (¶ 9), and therefore their files are relevant to understanding the extent to which Dragon Train's design and development involved the use of Aristocrat trade secrets. L&W cannot credibly dispute this given that it performed limited searches of their files in connection with the documents it voluntarily produced in Australia. *See* ECF No. 45 at 7. Because L&W has already extracted and searched the email accounts of the custodians identified in the Hoad Affidavit, ECF No. 45, Ex. D at 4 (¶ 10), the additional search of these custodians' files should not present any meaningful burden.

Aristocrat has proposed a reasonable set of tailored search terms to identify documents that refer to Aristocrat, the Aristocrat games at issue (Dragon Link, Lightning Link, the specific titles within these game families, and a related game, Dollar Storm, *see* ECF No. 52 at 7), and the studio that developed those games (High Roller Gaming) and its founder, Scott Olive. *See* Swanson Decl., Ex. C at 1.[6] L&W previously searched these custodians' files using four of these search terms ("Aristocrat," "ATI," "Dragon Link," and "Lightning Link"), but did not produce all documents returned on those searches. *See* ECF No. 45, Ex. D at 6–7 (¶¶ 15–16). It appears L&W also omitted additional relevant search terms, including abbreviations and the names of specific game titles. *See* ECF No. 45 at 7.

---

[5] While search term limits are not sufficient or appropriate for Category 3, Aristocrat is willing to discuss the use of search terms for this category for the purpose of enabling an initial, prompt production of responsive documents.

[6] Aristocrat proposed running these and other search terms against three additional custodians. In an effort to narrow the discovery at issue, Aristocrat does not request searches of these custodians' files at the present time.

While L&W said it would consider running Aristocrat's proposed search terms, L&W had not responded at the time of the stay. Because these proposed search terms are narrowly tailored to the issues in Aristocrat's PI Motion—indeed, the same or similar terms have already uncovered evidence of misappropriation—and because running the terms would entail minimal additional burden, L&W should be ordered to produce the documents in Category 4. L&W's searches of these custodians should also include any other abbreviations, nicknames, or terms that L&W uses to refer to the topics encompassed by this category.

**Category 5: All communications between L&W and Emma Charles or Lloyd Sefton prior to their employment by L&W.** L&W's communications with Ms. Charles and Mr. Sefton prior to their employment by L&W, including communications about the extent to which L&W was interested in Aristocrat materials, are highly relevant to the timing of the misappropriation as well as to L&W's intent in this action—particularly if those communications took place while Charles or Sefton were still employed at Aristocrat. L&W agreed to produce the documents in this category before the stay of discovery issued, *see* Swanson Decl., Ex. B at 2; Swanson Decl. ¶ 8, so L&W has implicitly recognized the appropriateness of producing these documents.

**Category 6: All documents required to be produced pursuant to the order of the Federal Court of Australia.** The Federal Court of Australia has ordered L&W to produce the following categories of materials by May 28: 1) math files for two Dragon Train titles; 2) Aristocrat materials taken by Ms. Charles or Mr. Sefton from Aristocrat; 3) documents created by Ms. Charles or Mr. Sefton at L&W referring to Dragon Link or Lightning Link; and 4) photographs or video files saved in a specific file path which evidence or record Dragon Link or Lighting Link. *See* ECF 42-1 at 9–10. But L&W has not committed to producing these documents to Aristocrat in this action. *See* Swanson Decl. ¶ 7. While L&W has sought leave to appeal this order in Australia and is seeking a stay pending appeal—which Aristocrat opposes—these documents are relevant to Aristocrat's claims here for the reasons discussed with respect to Categories 1–5. These requests are limited, and overlap with Aristocrat's other requests, so the additional burden of collecting these documents, if any, is proportional to the needs of the case. Because these requests are relevant

to this action, they should be promptly produced here, regardless of whether and when they are produced in Australia.

## II.   The Prejudice to Aristocrat Is Ongoing and Growing.

Good cause also exists to lift the stay of discovery because of the prejudice that Aristocrat will suffer if the stay remains in place. The Requested Documents are aimed at addressing the harm Aristocrat is suffering by L&W's ongoing possession and use of Aristocrat's trade secrets, which harm has continued to grow since Aristocrat filed its Complaint. L&W launched Dragon Train in the United States on March 8, 2024, *see* ECF No. 45, Ex. G (L&W press release), *after* Aristocrat filed its Complaint alleging misappropriation of its trade secrets, *see* ECF No. 1, and almost two months after Aristocrat first notified L&W of its United States-based concerns, *see* ECF No. 4-1. Thus, although Dragon Train launched *in Australia* in August 2023, *see* ECF No. 41 at 5, Aristocrat had no reason to seek relief in the United States until it became apparent that Dragon Train's launch here was imminent and that L&W would not pause the launch pending resolution of the parties' dispute in Australia. *See* ECF No. 52, Swanson Decl., Ex. Y at 2 (requesting that L&W produce documents "absent written assurance that L&W will not launch Dragon Train in the U.S."). Aristocrat requested expedited discovery to allow it to assess "the need for and scope of a preliminary injunction," ECF No. 3 at 11–12, and the documents that the Court ordered L&W to produce, ECF No. 33, make clear that L&W has misappropriated confidential information of Aristocrat. Following the production of these documents in April 2024, Aristocrat expeditiously moved for a preliminary injunction supported by four fact and expert witness declarations, ECF No. 52, in order to stop the harm to Aristocrat arising from L&W's trade secret misappropriation—harm that only grows as Dragon Train's placement expands across the United States.

L&W should be required to produce all of the Requested Documents promptly. Because the Requested Documents are all aimed at uncovering the extent of L&W's misappropriation, they are important for the determination of Aristocrat's PI Motion and for the Court to issue an order that appropriately corresponds to the scope of the misappropriation. Courts allow prompt discovery when necessary for the resolution of a preliminary injunction motion. *See*, *e.g.*, *Zendar*, 2020 WL

4458903, at *7 (ordering discovery "on an immediate expedited basis"); *Pyro*, 2012 WL 13220023, at *3 (ordering discovery within two weeks). This Court should do the same, requiring production of the Requested Documents within 10 days, so that Aristocrat may review the production and present any additional evidence to the Court in connection with its PI Motion.

## CONCLUSION

For the foregoing reasons, the Court should lift the stay and order L&W to provide the documents requested herein within 10 days.

May 24, 2024                                   /s/ *Jason D. Smith*

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
**HOLLEY DRIGGS LTD**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308
Email: nsantoro@nevadafirm.com
         jsmith@nevadafirm.com

PETER SWANSON
(*pro hac vice*)
GARY RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW, Washington, DC 20001
Tel.: (202) 662-6000 / Fax: (202) 662-6291
Email: pswanson@cov.com
         grubman@cov.com
         sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000

Email: ksong@cov.com

*Attorneys for Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.*

**INDEX OF EXHIBITS**

| Description | Exhibit |
|---|---|
| Declaration of Peter A. Swanson in Support of Motion to Lift Stay of Discovery and Order Discovery on Motion for Preliminary Injunction | |
| May 10, 2024 email from Peter Swanson, counsel for Plaintiffs | A |
| May 15, 2024 email from Harold Gordon, counsel for Light & Wonder | B |
| May 20, 2024 email from Peter Swanson, counsel for Plaintiffs | C |