# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ARISTOCRAT TECHNOLOGIES, INC. *et. al.*,

        Plaintiffs,

   vs.

LIGHT & WONDER, INC. *et. al.*,

        Defendants.

Case No.: 2:24-cv-00382-GMN-MDC

**ORDER GRANTING IN PART MOTION TO DISMISS**

Pending before the Court is the Motion to Dismiss, (ECF No. 34), filed by Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation, (collectively, "L&W"). Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd., (collectively, "Aristocrat"), filed a Response, (ECF No. 38), to which Defendants filed a Reply, (ECF No. 39). Further pending before the Court is Defendants' Request for Judicial Notice, (ECF No. 35), Plaintiffs' Motion to Seal, (ECF No. 37), and Plaintiffs' Motion for Leave to File Notice of Supplemental Authority, (ECF No. 42).

For the reasons discussed below, the Court **GRANTS, in part,** Defendants' Motion to Dismiss. The Court further **GRANTS, in part,** Defendants' Request for Judicial Notice, (ECF No. 35), **DENIES** Plaintiffs' Motion to Seal, (ECF No. 37),[1] and **DENIES** Plaintiffs' Motion for Leave to File Notice of Supplemental Authority, (ECF No. 42).

---

[1] Aristocrat moves to seal portions of its Opposition to L&W's Motion to Dismiss. L&W did not file a response. Aristocrat moves to seal sections that describe documents produced by L&W in response to the Magistrate Judge's order granting expedited discovery. (Mot. Seal 2:19–24). L&W designated the documents as confidential pursuant to LPR 1-4 of the District of Nevada's Local Rules. (*Id.*). The public has a presumptive right to access court records. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); see also *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). Consequently, a party seeking to seal a judicial record "bears the burden of overcoming this strong presumption." *Id.* The party must provide compelling reasons "supported by specific factual findings," that outweigh "the general history of access

## I.  **BACKGROUND**

Aristocrat and L&W are competitors in the electronic gaming machine space, and this case arises out of actions allegedly taken by L&W to copy Aristocrat's games and their underlying mathematical formulas and source code. (*See generally* Compl., ECF No. 1). Aristocrat alleges it invested substantial time to develop two popular electronic games: Dragon Link and Lightning Link. (*Id.* ¶¶ 2–4).  It owns trade secrets relating to the underlying math and source code of these games, making the games "difficult (if not impossible) for others to replicate, and highly valuable." (*Id.* ¶ 4).

Beginning in 2022, Aristocrat alleges that L&W engaged in a campaign to copy Dragon Link. (*Id.* ¶ 6).  First, L&W renamed one of its games from Dragon Unleashed to Dragon Unleashed *Link*. (*Id.*).  Next, L&W attempted to copy Dragon Link with the creation of a game called Jewel of the Dragon, which had similar sounds, animation, and artwork. (*Id.* ¶ 7).  Even though Jewel of the Dragon looked similar, it "failed to capture the unique player experience created by the underlying Dragon Link math." (*Id.* ¶ 8).  So, L&W developed a second game, Dragon Train. (*Id.*).  Emma Charles, the lead developer of Dragon Train, was a former Aristocrat game designer, and Aristocrat alleges that she used her confidential Dragon Link knowledge to create Dragon Train with similar gameplay and math. (*Id.* ¶¶ 9, 65, 97).  Another former employee, Lloyd Sefton, worked on the art for both Dragon Link and Dragon Train. (*Id.*

---

and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178–79 (internal quotations and citations omitted).  The Ninth Circuit has rejected efforts to seal documents under the "compelling reasons" standard based on "conclusory statements about the contents of the documents – that they are confidential" and that their disclosure would be harmful to the movant. *Id.* at 1182.

In this case, even though the Court adopted the proposed Protective Order, a Protective Order itself is not a compelling reason to seal, and the parties provide no additional factual findings as to why these portions should be sealed or confidential. *See Ansara v. Maldonado*, No. 2:19-cv-01394-GMN-VCF, 2022 WL 17253803, at *2 (D. Nev. Nov. 1, 2022).  The Court DENIES Aristocrat's Motion to Seal.

¶¶ 67, 113).  L&W's Dragon Train launched successfully in Australia, and L&W plans to release it in the United States in the coming months. (*Id.* ¶ 9).

In September 2023, Aristocrat requested documents from L&W's Australian counsel containing information on Dragon Train's design and development. (*Id.* ¶ 117).  L&W produced a limited number of documents but omitted certain mathematical formula files on the grounds that they constituted confidential information. (*Id.*).  Aristocrat filed a preliminary discovery proceeding in Australia to obtain the documents. (*Id.* ¶ 118).  A few months later, in January of 2024, Aristocrat's U.S. counsel requested the same documents after learning of L&W's plans to release Dragon Train in the U.S. (*Id.* ¶ 120).  L&W declined, so Aristocrat filed the Complaint in this case, as well as a concurrent motion for expedited discovery seeking documents related to its trade secrets claims. (*See* Mot. Expedite Discovery, ECF No. 3).  The Magistrate Judge granted the motion in part and ordered L&W to produce the same documents it had produced to Aristocrat's Australian counsel. (Order, ECF No. 33).

Aristocrat brings multiple claims against L&W for (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Nevada Uniform Trade Secrets Act, NRS § 600A.030, (2) infringement of Aristocrat's copyright in Dragon Link audiovisual elements, (3) false designation or origin, unfair competition, trademark, and trade dress infringement in violation of 15 U.S.C. § 1125(a), and (4) deceptive trade practices in violation of NRS §§ 41.600, 598.0915. (Compl. ¶¶ 122–56).

## II.  **LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual

allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III.     DISCUSSION

L&W moves to dismiss the entirety of Aristocrat's Complaint.  Before the Court addresses L&W's dismissal arguments, however, it will first address the pending Request for Judicial Notice and Motion for Leave to File Supplemental Authority. (ECF Nos. 35, 43).

#### A.  Request for Judicial Notice

In support of L&W's Motion to Dismiss, it requests that the Court take judicial notice of multiple exhibits: (1) copyright and trademark registrations, (2) images from the four different Jewel of the Dragon games, (3) screenshots of the Dragon Link webpages on Aristocrat's website, and (4) screenshots indicating that the colors red and gold are understood to stand for good luck and prosperity in Chinese culture. (Request for Jud. Notice 2:8–3:13, ECF No. 35).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to

dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).  Rule 201 allows a court to take judicial notice of facts that are "not subject to reasonable dispute because [they] (1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Aristocrat does not oppose L&W's request for judicial notice of the copyright and trademark registrations and takes no position insofar as the screenshots demonstrate the existence of the webpages in question. (Resp. to Request for Jud. Notice 2:1–8, ECF No. 36).  However, Aristocrat does oppose judicial notice of Exhibit H, images from L&W's Jewel of the Dragon games, as well as Exhibit J, the websites claiming the meaning of the colors red and gold in Chinese culture. (*Id.* 2:9–3:6).

The Court takes judicial notice only of L&W's copyright and trademark registrations. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *Idema v. Dreamworks, Inc.*, 90 F. App'x 496, 498 (9th Cir. 2003) (granting request for judicial notice because a copyright registration "was the sort of document as to which judicial notice is appropriate").  A court can take judicial notice of a government's website. *Daniels–Hall v. National Education Association*, 629 F.3d 992, 999 (9th Cir. 2010).  The Court also takes judicial notice of the existence of the website screenshots but declines to take notice of the truth of their content.  "In general, websites and their contents may be judicially noticed." *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020).  However,

to the extent the parties dispute the facts contained in the website screenshots, it is not proper for a court to take judicial notice of them. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 988 (9th Cir. 2018).

Lastly, the Court declines to take judicial notice of Exhibit H, screenshots from versions of four different Jewel of the Dragon games. Aristocrat questions the accuracy of whether Exhibit H accurately reflects the current versions of the games and argues that whether the past versions of the game remain in use will be the subject of discovery. (Resp. to Request for Jud. Notice 2:9–20). Although L&W is correct that courts have taken judicial notice of related works not part of the infringement claim, Aristocrat's Complaint contains screenshots of the images that it alleges are infringing, and the Court does not need to rely on Exhibit H to decide the pending Motion to Dismiss. Defendant's Request for Judicial Notice is GRANTED, in part.

### B. Motion for Leave

Next, Aristocrat moves to file a Notice of Supplemental Authority containing a decision from the Federal Court of Australia. (Mot. Leave 2:1–10, ECF No. 42). The decision remarks on evidence suggesting use of Aristocrat's confidential information by Ms. Charles in her work for L&W, which is the same evidence that L&W was ordered to produce in this case. (*Id.* 2:6–14). The local rules of this district require parties to obtain leave of court before filing supplemental authority. LR 7-2(g). The Court may grant such a request for "good cause." *Id.* "Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." *Alps Prop. & Cas. Ins. Co. v. Kalicki Collier LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021) (citing *Hunt v. Washoe Cnty. Sch. Dist.*, 2019 WL 4262510, at *3 (D. Nev. Sept. 9, 2019)). Because Aristocrat states a claim for trade secret misappropriation without

1  relying on this additional evidence, the Court does not find this decision from the Federal Court

2  of Australia particularly persuasive or helpful.  Aristocrat's Motion for Leave is DENIED.

3  **C.  Motion to Dismiss**

4  With the smaller related motions decided, the Court now turns to the substance of the

5  instant Motion to Dismiss.  L&W moves to dismiss all claims against it because Aristocrat fails

6  to state a claim for trade secret misappropriation, copyright infringement, trade dress

7  infringement, or deceptive trade practices.  The Court will review each claim in turn, beginning

8  with trade secret misappropriation.

9  **1.  Trade Secret Misappropriation**

10  To state a claim for misappropriation under NRS § 600A, a plaintiff must allege: (1) a

11  valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or

12  nondisclosure of use of the trade secret; and (3) that the misappropriation was made in breach

13  of an express or implied contract or by a party with a duty not to disclose. *Frantz v. Johnson*,

14  999 P.2d 351, 358 (Nev. 2000).  A claim for misappropriation under the Defend Trade Secrets

15  Act ("DTSA") has similar elements, so Courts analyze federal DTSA and state UTSA claims

16  together. *See* 18 U.S.C. § 1836; *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653,

17  657 (9th Cir. 2020) (finding that the elements of federal and state law trade secret claims are

18  "substantially similar").  Pursuant to the DTSA, a plaintiff must allege "(1) that [they]

19  possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the

20  misappropriation caused or threatened damage to the plaintiff." *InteliClear*, 978 F.3d at 657–58

21  (citing 18 U.S.C. § 1839(5)).  L&W moves to dismiss because Aristocrat fails to plead a

22  protectable trade secret with sufficient particularity and fails to plausibly plead

23  misappropriation. (Mot. Dismiss 6:3–14:20).

24  ***a.  Pleading Protectable Trade Secrets with Sufficient Particularity***

25

A trade secret is one that is not "generally known" or ascertainable and derives value from being kept secret. *See* 18 U.S.C. § 1839(3); NRS §§ 600A.030, 600A.010(5)(a).  A plaintiff's complaint does not need to "spell out the details of the trade secret." *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015).  Nor does a plaintiff need to plead trade secrets with extensive detail beyond what is required to put the defendant on notice of the boundaries of the trade secret. *See T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015) ("[A] plaintiff should not be compelled to divulge with specificity all of its possible trade secrets . . . in order to proceed to discovery.").  However, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin v. Honeywell Int'l, Inc*., 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012).

Aristocrat's allegations satisfy the pleading requirements of Rule 8(a).  The Complaint explains that the success of Aristocrat's games is due to their complex and confidential math, functionality, and source code. (Compl. ¶¶ 20, 36, 125).  Aristocrat further details that this confidential information is made up of "the composition and operation of reel strips, symbols, and other game features; the combinations, pathways, and probabilities for winning or triggering particular outcomes (e.g., activation of the Hold & Spin; bonus feature);" "the assignment of payouts per win;" "the magnitude of risk or potential reward associated with the game (i.e., volatility);" "the percentage of wagered money returned to players;" and the "proprietary implementation of the 'Hold & Spin' bonus game." (Opp. to Mot. Dismiss 7:14–21) (citing Compl. ¶¶ 22, 36, 123, 150).  These examples go beyond the mere identification of a system that may qualify for protection. *See InteliClear*, 978 F.3d at 658 (explaining that a plaintiff must "clearly refer to tangible trade secret material instead of referring to a system

which potentially qualifies for trade secret protection"). Aristocrat explained that its games have "defied imitation" because their underlying math and game design is not generally known, and that it keeps this information confidential, even within the company. (Compl. ¶¶ 3–4, 37–38, 126, 153).

Aristocrat's Complaint and subsequent Opposition Brief describe trade secrets in a level of detail that district courts in the Ninth Circuit, including this one, have found to be adequately pled. *See, e.g.*, *Switch Ltd. v. Fairfax*, No. 2:17-cv-02651-GMN-VCF, 2018 WL 4181626, at *4 (D. Nev. Aug. 30, 2018) (finding trade secrets going to "specific aspects of Plaintiff's data centers, including electrical and mechanical lines, operational routines, electrical designs, cooling and power redundancy designs, and infrastructure layouts" to be sufficiently pled); *TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) (finding well-pled "software, source codes, data, formulas, and other technical information developed as proprietary and confidential products and services;" "business methods and marketing plans, such as prospective customer and sales methods for attracting and retaining customers;" and "[i]ts product information, including, but not limited to, cost, pricing, margin data and other financial information"). In fact, this Court in *Marina District Development Company, LLC v. AC Ocean Walk, LLC*, explained that "given the broad definition of trade secret, the Court does not find Plaintiff's failure to identify its trade secrets with particularity is fatal to Plaintiff's claim." No. 2:20-cv-01592-GMN-BNW, 2020 WL 5502160, at *3 (D. Nev. Sept. 10, 2020). In that case, this Court found secrets encompassing marketing strategy, including customer lists and their gaming, credit, and hospitality preference, to be sufficiently pled. *Id.*

While a failure to specifically identify the trade secrets may be a problem later in the case, "they are an insufficient reason to warrant dismissal at the pleading stage." *FSP, Inc. v. MJM Fantasy Sports LLC*, No. 2:11-cv-00747-RLH, 2011 WL 6256969, at *2 (D. Nev. Dec.

14, 2011).  The specification of a trade secret may proceed as an "iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *InteliClear*, 978 F.3d at 662.  To the extent L&W requests additional detail regarding the trade secrets at issue, the discovery process will lend clarity.  Because the Court finds that the trade secrets are sufficiently pled, the Court will next determine whether Aristocrat sufficiently pled misappropriation of those secrets.

### b.  Misappropriation

A misappropriation claim under the DTSA or Nevada's misappropriation statute requires a showing of acquisition or disclosure by "improper means." *See* NRS § 600A.030(2)(a); 18 U.S.C. § 1839(5)(A) (defining misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"). "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A).  L&W argues Aristocrat fails to allege misappropriation because it offers only two factual allegations: that L&W hired Aristocrat's former employees, and that the Dragon Train games feel similar to the Dragon Link games. (Mot. Dismiss 11:15–12:3).

Aristocrat sufficiently alleges that L&W misappropriated its trade secrets.  Taking the factual allegations in the Complaint as true, L&W hired former Aristocrat employee Ms. Charles, who knew the confidential trade secret information and mathematical formulas underlying Aristocrat's games. (Compl. ¶¶ 65–66, 115).  Specifically, Ms. Charles created the underlying functionality of Dragon Train and was obligated not to disclose that information to L&W. (*Id.*).  L&W knew Ms. Charles worked on Dragon Link and Lightning Link, and developed its Dragon Train games using Ms. Charles' confidential knowledge of Aristocrat's games. (*Id.* ¶ 9, 96–116).  The Complaint further details similarities between Dragon Train and

Dragon Link and explains that a game like Dragon Link "cannot plausibly be reproduced by luck or accident," as other competitors have tried and failed for years before L&W used Ms. Charles' confidential knowledge to build Dragon Train. (*Id.* ¶¶ 107–111).  These allegations, taken as true, are sufficient to demonstrate that L&W either knew, or had reason to know, that the trade secrets brought to L&W by Ms. Charles were acquired improperly.  The Court therefore DENIES L&W's Motion to Dismiss the trade secret misappropriation claim.

## 2. Copyright Infringement

The Copyright Act gives copyright owners the exclusive rights to copy, prepare derivative works based on, and distribute copyrighted works. *See* 17 U.S.C. §§ 106(1) – (3). To establish copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The second *Feist* prong requires plaintiffs to allege "that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  A plaintiff need not specify each and every instance of infringement; alleging representative acts of infringement is sufficient. *See Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2016).  Aristocrat must allege specific facts to give L&W "fair notice of the claims against it." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1121–21 (C.D. Cal. 2001).

L&W moves to dismiss based on the second prong of the *Feist* test.  L&W does not appear to dispute Aristocrat's ownership of a valid copyright.  Rather, it argues that Aristocrat's claim fails to provide notice as to which Dragon Link game is the subject of the copyright claim, and which artwork, animations, and sounds, are allegedly being infringed. (Mot. Dismiss 15:16–16:9).  Aristocrat alleges that it owns a copyright in the "Dragon Link Audiovisual Elements," and has obtained copyright registrations "covering at least certain of those

1  elements." (*See* Copyright Registrations, Ex. A to Compl., ECF No. 1-3) (containing copyright

2  registrations for the Spring Festival and Autumn Moon Hold and Spin features); (Compl. ¶¶ 43,

3  134).  The copyrighted "Dragon Link Audiovisual Elements include, but are not limited to,

4  original artwork, animations, and computer-generated graphics that appear on the game

5  displays, along with original sounds that are played on the game speakers." (*Id.* ¶ 42).

6  Beginning on page 22 of the Complaint and continuing through page 30, Aristocrat provides

7  screenshots and written descriptions of the ways in which the Dragon Train games are

8  strikingly or substantially similar to Dragon Link.

9          These eight pages of infringement examples contain descriptions of the audiovisual

10  elements that L&W allegedly copied.  For example, Aristocrat alleges that the two games

11  contain similar sounds during the games' bonus features, including the background music, the

12  "push" sound of the reels bring spun, the gong, firework, and jackpot sounds. (Compl. ¶ 84).

13  Visual game elements allegedly copied include similar graphics during the bonus feature, such

14  as a large glowing yellow orb graphic, synchronized flames that spin around the orbs, the flame

15  graphics surrounding the jackpot amount, and the coin shower animation following the "Hold

16  & Spin" bonus feature. (*Id.*).  Aristocrat further includes a similarity between its Red Phoenix

17  version of the Jewel of the Dragon game and its own Autumn Moon game, both of which

18  include a dark-haired woman in an ornate headdress facing the viewer. (*Id.* ¶ 82).  The

19  Complaint contains screenshots and written descriptions of similarities between the Hold and

20  Spin features of both games, the jackpot displays, and the logos. (*Id.* ¶¶ 72–81).

21          These comparisons provide L&W with fair notice of the claims against it. *See Perfect*

22  *10*, 167 F. Supp. 2d at 1121 (noting that allegations of "sample" infringements may "establish

23  the scope of the [alleged] infringement"); 3 M. & D. Nimmer, Nimmer on Copyright §

24  12.09(A)(2) ("To avoid unwieldiness, courts have approved a complaint that simply alleges

25  representative acts of infringement, rather than a comprehensive listing.").  L&W cites *Salt*

*Optics, Inc. v. Jand, Inc.*, in which a California District Court dismissed a copyright claim because the plaintiff did not attempt to identify which portions of the website were being infringed. No. SACV 10-0828 DOC, 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010).  This case is distinguishable, as Aristocrat provided screenshots of the allegedly infringing audiovisual elements in L&W's games and thus L&W has notice of which specific work is being accused of infringement.  District courts have dismissed complaints that did not contain a representative infringement, but the Complaint here does not suffer from the same deficiency. *See MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, No. CV 16-3975-DMG (AJWx), 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) (granting motion to dismiss where plaintiff did not provide even a representative infringement).

Further, to address L&W's claim that Aristocrat's failure to clarify which Dragon Link game or which Jewel of the Dragon game is at issue, Aristocrat responds that its representative infringement examples feature audiovisual elements common to all games, such as the Hold and Spin features. (Opp. to Mot. Dismiss 16:1–6).  It also contains a title-specific element, such as the dark-haired woman character in the Red Phoenix and Autumn Moon games. (*Id.* 16:3–5).  Because the Complaint need not contain every single instance of infringement, it is sufficient for Aristocrat to include screenshots demonstrating common elements found in multiple versions of L&W's games.  The Court DENIES L&W's Motion to Dismiss this claim.

### 3. Trade Dress Infringement

Next, L&W moves to dismiss Aristocrat's trade dress infringement claim because it fails to provide fair notice of its claimed trade dress, is precluded by copyright law,[2] and otherwise

---

[2] L&W argues that Aristocrat's trade dress claim over various audiovisual elements is a "functional repackage of its copyright claim" and thus permitting the claim to proceed would render copyright law superfluous. (Mot. Dismiss 21:18–22:11).  The parties cite *RDF Media Ltd. v. Fox Broadcasting Co.*, in which a Central District of California Court explained that trademark and copyright protections may co-exist, but a plaintiff cannot merely repackage its copyright claims into trademark causes of action. 372 F. Supp. 2d 556, 564 (C.D. Cal. 2005).  Aristocrat's "Dragon Link audiovisual elements" form the basis of its copyright claim, and it defines the Dragon Link Trade Dress as the "Dragon Link Standard Logo, Dragon Link Jackpot Display, Dragon Link Orb-and-

1  fails to plausibly allege the requirement elements of distinctiveness, non-functionality, and

2  likelihood of confusion. (Mot. Dismiss 19:15–24:7).

3      The Lanham Act protects against another's use of "any word, term, name, symbol, or

4  device, or any combination thereof . . . likely to cause confusion . . . as to the origin . . . of his

5  or her goods . . . ." 15 U.S.C. § 1125(a)(1)(A).  This includes a product's "trade dress," which

6  "refers generally to the total image, design, and appearance of a product and may include

7  features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards,*

8  *Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (internal quotation marks and

9  citation omitted).

10     To state a claim for trade dress infringement, a plaintiff must allege "(1) that its claimed

11 trade dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either

12 because it is inherently distinctive or has acquired secondary meaning; and (3) that the

13 defendant's product or service creates a likelihood of consumer confusion." *Id.* (footnote

14 omitted).  In general, "courts agree that the elements of the alleged trade dress must be clearly

15 listed and described." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203,

16 1213 (9th Cir. 2023) (quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair

17 Competition § 8:3 (5th ed. 2022).  "This list of elements is designed to give a defendant notice

18 of the specific trade dress elements it has allegedly infringed." *EVIG, LLC v. Natures Nutra*

19 *Co.*, 685 F. Supp. 3d 991, 998 (D. Nev. 2023).  When a plaintiff uses language such as

20 "including" or "for example" in its list of trade dress elements, it fails to give defendants notice

21 of the specific elements if has allegedly infringed. *Id.*  "In other words, when a party pleads a

22 ───────────────

23 Flame Graphics, and Dragon Link Bonus Feature, along with other distinctive audiovisual elements in the
   Dragon Link games." (Compl. ¶ 44).  The logo, jackpot display, orb and flame graphics, and bonus feature, are
24 also part of Aristocrat's copyright claim. (*Id.* ¶¶ 73–81).  Aristocrat argues in its Opposition that it "has
   specifically identified trade dress elements that overlap with, but are not coterminous with, the copyrighted
25 elements," but stops short of listing what those additional trade dress elements are. (*See* Opp. to Mot. Dismiss
   23:22–23).  As explained below, the Court grants Aristocrat leave to amend this claim to clarify its trade dress
   elements.

1   list of elements with a non-limiting qualifier, it does not give adequate notice of its intended

2   claims and leaves the door open to an attempt to redefine the purportedly protected elements at

3   a later stage of litigation." *Id.*; *see also Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW,

4   2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010).

5        Aristocrat's list of claimed elements suffer from this problem because it includes a non-

6   limiting qualifier of "other distinctive audiovisual elements." (*See* Compl. ¶ 44) (defining the

7   Dragon Link Trade Dress as the "Dragon Link Standard Logo, Dragon Link Jackpot Display,

8   Dragon Link Orb-and-Flame Graphics, and Dragon Link Bonus Feature, *along with other*

9   *distinctive audiovisual elements in the Dragon Link games*") (emphasis added).  L&W cannot

10   have fair notice of Aristocrat's claim when the complaint itself presents "a moving target." *See*

11   *EVIG*, 685 F. Supp. at 998.  Aristocrat replies that the elements are explained in paragraphs 26

12   through 32, but these paragraphs cover only the logo, jackpot display, orb-and-flame graphics,

13   and bonus feature; thus, Aristocrat sheds no additional light on what may constitute the "other

14   distinctive audiovisual elements" alluded to in paragraph 44 of its Complaint.  Aristocrat must

15   identify, in sufficient detail, each element it seeks to be protected. *See Homeland Housewares,*

16   *LLC v. Euro-Pro Operating LLC,* No. CV-14-03954 DDP (MAN), 2014 WL 6892141, at *3

17   (C.D. Cal. Nov. 5, 2014) (dismissing trade dress claim because description of claimed trade

18   dress as "the color scheme, fonts, phraseology, and overall look and feel of the Plaintiff's

19   product packaging" did not sufficiently identify the particular elements sought to be protected).

20        The Court therefore DISMISSES Aristocrat's trade dress claim with leave to amend.

21   **4.  Deceptive Trade Practices**

22        Lastly, L&W moves to dismiss Aristocrat's deceptive trade practices claim brought

23   pursuant to NRS §§ 41.600 & 598.0915.  Aristocrat's claim is premised on the allegation that

24   by copying the Dragon Link Trade Dress, L&W knowingly made false representations as to the

25   source, sponsorship, approval and/or certification of its Jewel of the Dragon game. (Compl. ¶

160).  Deceptive trade practices claims must be pled with Rule 9(b) particularity. *Partie v. Ethicon, Inc.*, 609 F. Supp. 3d 1127, 1135 (D. Nev. 2022).  In its Complaint, Aristocrat merely recites the elements of a deceptive trade practices claim. (Compl. ¶ 160).  Although Aristocrat re-alleges and incorporates the preceding paragraphs, it must explain how the preceding 159 allegations map onto the elements of its deceptive trade practices claim.  Aristocrat's allegations do not meet the Rule 9(b) standard and thus the Court DISMISSES this claim with leave to amend.

## IV.          <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 34), is **GRANTED, in part**.  Plaintiff shall have 21 days from the date of this Order to file an amended complaint consistent with this Order.  Failure to file an amended complaint by this date will result in the Court dismissing Plaintiff's claims with prejudice.

**IT IS FURTHER ORDERED** that Defendants' Request for Judicial Notice, (ECF No. 35) is **GRANTED, in part**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Seal, (ECF No. 37), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Notice of Supplemental Authority, (ECF No. 42), is **DENIED**.

**IT IS FURTHER ORDERED** that the stay of discovery is lifted because the Court has provided a disposition to Defendants' Motion to Dismiss, per the Court's Order, (ECF No. 51).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Lift Stay of Discovery, (ECF No. 55), and Plaintiffs' Objection to the Magistrate Order Granting the Motion to Stay, (ECF No. 60), are **DENIED** as moot.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**IT IS FURTHER ORDERED** that within five days of this Order, the parties shall meet and submit a mutually agreeable briefing schedule for Plaintiffs' pending Motion for Preliminary Injunction.

**DATED** this __24__ day of June, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT