NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
**HOLLEY DRIGGS LTD**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308
Email: nsantoro@nevadafirm.com
        jsmith@nevadafirm.com

PETER A. SWANSON
(*pro hac vice*)
GARY M. RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com
        grubman@cov.com
        sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs Aristocrat Technologies, Inc.*
*and Aristocrat Technologies Australia Pty Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD.,<br><br>    Plaintiffs,<br><br>  v.<br><br>LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION,<br><br>    Defendants. | Civil Case No.: 2:24-cv-00382-GMN-MDC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS COUNTS III AND V OF PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ..................................................................................................... - 2 -

ARGUMENT .......................................................................................................... - 5 -

I.      The Amended Complaint States a Claim for Trade Dress Infringement. ...................... - 5 -

        A.      The Dragon Link Trade Dress is nonfunctional. ................................... 6 -

        B.      The Dragon Link Trade Dress is distinctive. ...................................... - 10 -

                1.      The Dragon Link Trade Dress is product packaging trade dress. .......... - 10 -

                2.      The Dragon Link Trade Dress also has secondary meaning. ................ - 12 -

        C.      There exists a likelihood of confusion in the marketplace. ............................ - 13 -

II.     L&W's Copyright Preclusion Argument Is Meritless. ...................................... - 14 -

III.    If the Court Grants the Motion, Aristocrat Should Be Given Leave to Amend. .......... - 19 -

CONCLUSION ...................................................................................................... - 19 -

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ...................................................................................14

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
  2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ....................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................5

*Brands Corp. v Fred Meyer, Inc.*,
  809 F.2d 1378 (9th Cir 1987) ....................................................................................11

*Brantley v. Epic Games, Inc.*,
  463 F. Supp. 3d 616 (D. Md. 2020) ...........................................................................17

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
  251 F.3d 1252 (9th Cir. 2001) .......................................................................6, 7, 8, 10

*Comedy III Prods., Inc. v. New Line Cinema*,
  200 F.3d 593 (9th Cir. 2000) .....................................................................................17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003).....................................................................................................16

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  2015 WL 12731929  (C.D. Cal. May 8, 2015) ......................................................8, 13

*EVIG, LLC v. Natures Nutra Co.*,
  2023 WL 4934339 (D. Nev. Aug. 2, 2023) ................................................................19

*Felix Cat Prods. Inc. v. New Line Cinema*,
  2000 WL 770481 (C.D. Cal. Apr. 28, 2000) ..............................................................17

*Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*,
  2019 WL 1260634 (C.D. Cal. Mar. 18, 2019)..............................................................6

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987) .......................................................................................9

*Globefill Inc. v. Elements Spirits, Inc.*,
  473 F. App'x 685 (9th Cir. 2012) .............................................................................6, 7

*Graduation Sols. LLC v. Luya Enter. Inc.*,
  2021 WL 2349346 (C.D. Cal. Mar. 31, 2021).............................................................18

*Green Crush LLC v. Paradise Splash I, Inc.*,
  2018 WL 4940825 (C.D. Cal. May 3, 2018) .........................................................12, 13

*Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*,
  481 F. Supp. 3d 941 (D. Ariz. 2020) ........................................................................9

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
  456 U.S. 844 (1982) ..................................................................................................12

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
  68 F.4th 1203 (9th Cir. 2023) ..................................................................6, 15, 16, 18

*Marcus v. ABC Signature Studios, Inc.*,
  279 F. Supp. 3d 1056 (C.D. Cal. 2017) ....................................................................17

*Mercado Latino, Inc. v. Indio Prod., Inc.*,
  649 F. App'x 633 (9th Cir. 2016) .......................................................................15, 16

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
  40 F.3d 1007 (9th Cir. 1994) ....................................................................................15

*Nirvana, LLC v. Mark Jacobs Int'l, LLC*,
  2019 WL 7817082 (C.D. Cal. Nov. 8, 2019)............................................16, 17, 18

*P & P Imports LLC v. Johnson Enters.*,
  46 F.4th 953 (9th Cir. 2022) ....................................................................................12

*Pellegrino v. Epic Games, Inc.*,
  451 F. Supp. 3d 373 (E.D. Pa. 2020) .......................................................................17

*Radical Prod., Inc. v. Sundays Distrib.*,
  821 F. Supp. 648 (W.D. Wash. 1992) ........................................................................7

*RDF Media Ltd. v. Fox Broad. Co.*,
  372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................................................15, 17

*Salt Optics, Inc. v. Jand, Inc.*,
  2010 WL 4961702 (C.D. Cal. Nov. 19, 2010)....................................................18, 19

*Shaw v. Lindheim*,
  919 F.2d 1353 (9th Cir. 1990) ..................................................................................17

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
  845 F.3d 1246 (9th Cir. 2017) ..................................................................................17

*Switch Ltd. v. Fairfax*,
  2018 WL 4181626 (D. Nev. Aug. 30, 2018) .........................................................5, 16

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
  863 F. Supp. 2d 394 (D.N.J. 2012) ........................................................................7, 15

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)..................................................................................................10, 11

*Wal-Mart Stores, Inc. v. Samara Bros.*,
    529 U.S. 205 (2000)........................................................................................................10

*Ward v. Andrews McMeel Pub., LLC*,
    963 F. Supp. 2d 222 (S.D.N.Y. 2013)........................................................................15, 16

**Statutes**

Copyright Act..........................................................................................................15, 16, 18

Lanham Act.................................................................................................................. *passim*

Nevada Deceptive Trade Practices Act.............................................................................3

**Other Authorities**

*McCarthy on Trademarks and Unfair Competition* § 6.15 (5th ed.)............................15

**INTRODUCTION**

Defendants ("L&W") have repeatedly—and improperly—sought to profit from the extraordinary success of Plaintiffs' ("Aristocrat's") Dragon Link game. L&W's misconduct includes its Jewel of the Dragon game, which copies Dragon Link's audiovisual elements and distinctive, recognizable design. Aristocrat's First Amended Complaint (the "Amended Complaint") asserts claims for, *inter alia*, copyright and trade dress infringement in connection with Jewel of the Dragon. The Court has already rejected L&W's request to dismiss the copyright claim, and the Court should likewise deny the present motion to dismiss the trade dress claim.

L&W does not dispute that the Amended Complaint addresses the reason for the Court's dismissal of the original trade dress claim by providing a more precise, close-ended definition of the asserted trade dress. Yet L&W repeatedly ignores this definition in arguing that the Amended Complaint does not sufficiently allege *any* element of a trade dress claim. L&W's arguments fail, as the defined trade dress easily meets the standard of providing a discrete set of elements—such as the Dragon Link logo and the golden "orb" design—that are distinctive, non-functional source identifiers, which L&W copied in an attempt to confuse players.

L&W also recycles its legally flawed argument that the logo and other elements of the trade dress cannot be protected by trade dress law "because these types of audiovisual elements fall under the purview of copyright law." ECF No. 85 at 7. Numerous cases (none of which L&W cites) have rejected this very argument, which runs counter to the common sense principle that copyrighted material—whether an advertising jingle, a logo, or a product design—can also serve a source-identifying function and thus be protected by trademark law (as L&W asserts with respect to its own games).[1] The trade dress here consists of a logo and certain distinctive elements of Aristocrat's copyrighted game. Because that trade dress meets the requirements for protection under the Lanham Act, Aristocrat is entitled to seek relief for L&W's infringement.

---

[1] According to L&W: "A trademark can be a word, phrase, symbol, or design that distinguishes the source of goods and/or services. Also, as trade dress, it can be the appearance of a product or its packaging, including size, shape, color, texture, graphics, and appearance, *including the look and feel of Light & Wonder's games and certain individual components and displays thereof*." https://explore.lnw.com/legal-notices/trademarks/ (last visited Aug. 29, 2024) (emphasis added).

**BACKGROUND**

Dragon Link is one of Aristocrat's most successful games. *See* ECF No. 72, ¶ 2. Released in the United States in 2017, Dragon Link has enjoyed exceptionally strong uptake in the United States and internationally, spanning a collection of ten titles all built on the same gameplay mechanics and unifying imagery and audiovisual effects. *Id.* ¶ 25. It remains Aristocrat's highest performing game to this day. *Id.*

Over the last several years, with many former Aristocrat executives and game designers at the helm, *id.* ¶¶ 65–70, L&W has engaged in multiple efforts to copy aspects of Aristocrat's Dragon Link game. *See id.* ¶ 71 (L&W's Dragon Unleashed Link game), ¶¶ 99–125 (L&W's Dragon Train game). One such effort, L&W's Jewel of the Dragon game, copies Dragon Link's audiovisual elements and distinctive design. *See id.* ¶¶ 72–96. For example, like Dragon Link, Jewel of the Dragon uses a logo with the word "DRAGON" written in all capital letters, in a red-to-black fade, superimposed in the center of a glowing gold orb, including a bright, white-yellow outline around the orb's circumference, and ringed with realistic-looking flames, *id.* ¶¶ 76–79, as shown below:



| **Aristocrat's Dragon Link** | **L&W's Jewel of the Dragon** |
| :---: | :---: |
|  |  |

As another example, Jewel of the Dragon offers a "Hold & Spin" bonus feature that closely mimics the design of the Dragon Link "Hold & Spin" feature, *see id.* ¶ 84, as seen in the exemplary side-by-side images below (with additional images contained in the Amended Complaint):

**Aristocrat's Dragon Link**

**L&W's Jewel of the Dragon**




On April 9, 2024, L&W filed a motion to dismiss Aristocrat's complaint in its entirety. ECF No. 34. The Court denied L&W's motion to dismiss the trade secret and copyright claims, but dismissed without prejudice the claim for trade dress infringement under the Lanham Act and the claim for deceptive trade practices under Nevada law. ECF No. 65. With regard to the trade dress claim, the Court found that the complaint's trade dress description failed due to the inclusion of a "non-limiting qualifier." *Id.* at 15. As for the deceptive trade practices claim, the Court found that the complaint did not comply with Rule 9(b) because it did not identify which allegations support the claim. *Id.* at 16. The Court granted leave to amend both claims. *Id.* at 17.

On July 15, 2024, Aristocrat filed the Amended Complaint, which clarifies and adds further support for the trade dress and deceptive trade practices claims. ECF No. 72. For example, the Amended Complaint includes a more precise definition of the "Dragon Link Trade Dress" that consists of a closed combination of four elements: "the Dragon Link Standard Logo, Dragon Link Jackpot Display, Dragon Link Orb Design, and Dragon Link Hold & Spin Design." *Id.* ¶ 45; *see also id.* ¶¶ 27–29, 34. The Amended Complaint defines these four elements as follows:

- The <u>Dragon Link Standard Logo</u>, which is depicted above, "consists of the words DRAGON LINK in a red-to-black fade, superimposed on a gold orb with a bright, fiery outline, ringed with flames." *Id.* ¶ 27.

- The <u>Dragon Link Jackpot Display</u>, which is shown in the image below, consists of an animated Dragon Link logo above a tiered list of jackpots and bonuses, with each tier surrounded by gold orbs with bright, fiery outlines; the amounts for each jackpot or bonus appear against a black background and in the same color as the corresponding titles; the names and amounts of the jackpots/bonuses are outlined in gold, with the words GRAND, MAJOR, MINOR, and MINI (for jackpot sizes); and all of the foregoing elements are set against a background that fades to black at the top of the display. *Id.* ¶ 28.



- The <u>Dragon Link Orb Design</u> consists of "gold" orbs that "are surrounded by a bright, fiery outline around the orb's circumference," and these orbs appear in the Dragon Link Standard Logo, the Dragon Link Jackpot Display, as bonus symbols in the game, and directly above the reels in the Dragon Link Hold & Spin bonus feature. *Id.* ¶ 29.

- The <u>Dragon Link Hold & Spin Design</u> consists of the following fanciful and arbitrary design elements that appear in the Dragon Link Hold & Spin bonus feature: "the use of the Dragon Link Orb Design as a bonus symbol, the appearance of a single large Dragon Link Orb Design directly above the reels, the flame flares that burst out of the bonus symbols when the bonus amounts are tallied, the gong sound that plays when the bonus amounts are tallied, and the Coin Shower at the conclusion of the bonus feature." *Id.* ¶ 34.

The Amended Complaint also adds more allegations about the source-identifying nature and nonfunctionality of the Dragon Link Trade Dress, *see id.* ¶¶ 6, 45, 47, 48, and the acquired distinctiveness of the Dragon Link Trade Dress, *see id.* ¶ 49. And the Amended Complaint identifies specific allegations that support the deceptive trade practices claim. *See id.* ¶¶ 163–69.

After Aristocrat filed the Amended Complaint, L&W requested an extension of time to file a partial motion to dismiss, which L&W represented would be limited to the trade dress claim. The parties then filed a stipulation—which the Court granted—providing L&W with "an additional 10 days to file [L&W's] Partial Motion to Dismiss the third cause of action for trade dress infringement in Plaintiffs' Amended Complaint," as well as a separate extension to answer the remaining four causes of action in the Amended Complaint. ECF No. 75.

On August 8, 2024, L&W filed a motion to dismiss (the "Motion") not only the trade dress claim (Count III) but also the deceptive trade practices claim (Count V). Aristocrat promptly notified L&W that its motion to dismiss Count V was untimely, as L&W had only sought and received an extension to file a motion to dismiss Count III. L&W subsequently withdrew its request to dismiss Count V. ECF No. 92.[2]

## ARGUMENT

To survive a motion to dismiss, a complaint need only allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Switch Ltd. v. Fairfax*, 2018 WL 4181626, at *2 (D. Nev. Aug. 30, 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal is not appropriate unless, "tak[ing] all material allegations as true and constru[ing] them in the light most favorable to the plaintiff," the complaint "does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests." *Id.*

### I.   The Amended Complaint States a Claim for Trade Dress Infringement.

"To state a claim for trade dress infringement, a plaintiff must allege '(1) that its claimed trade dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either

---

[2] Rather than simply acknowledge its mistake, L&W's notice of withdrawal incorrectly states that the agreed-upon extension was for a "motion to dismiss the alleged 'trade dress' *claims*." ECF No. 92 at 2 (emphasis added). In fact, the parties' email exchange referred to "the trade dress *claim*," and L&W's assertion that it understood this singular reference to encompass the deceptive trade practices claim is dubious. L&W's Motion consistently distinguishes between the "trade dress and deceptive trade practices claims," *e.g.*, ECF No. 85 at 2, and—despite what L&W now implies—the Motion does not argue that the trade practices claim fails for all the same reasons as the trade dress claim, *see id.* at 13–14 (arguing only copyright preemption for Count V). L&W is also wrong to suggest that its withdrawal of the motion as to Count V will burden the Court with additional work. ECF No. 92 at 4. To the contrary, L&W's withdrawal has *narrowed* the Motion.

because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." ECF No. 65 at 14 (quoting *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001)). Here, the Amended Complaint more than adequately alleges all three elements. L&W's arguments to the contrary rely on a misunderstanding of the law, disregard the factual allegations, or both.

### A.  The Dragon Link Trade Dress is nonfunctional.

Trade dress protection extends only to designs that are "nonfunctional." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1213 (9th Cir. 2023). A design is nonfunctional if it is not "essential to the use or purpose of the article." *Id.* Courts typically consider four factors in determining whether a design is functional: (1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, (4) and whether the particular design results from a comparatively simple or inexpensive method of manufacture. *See Globefill Inc. v. Elements Spirits, Inc.*, 473 F. App'x 685, 686 (9th Cir. 2012); *see also Clicks Billiards*, 251 F.3d at 1260. "The inquiry into whether a product is functional [] is fact intensive" and therefore "cannot be resolved at the motion to dismiss stage but must await summary judgment or trial." *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, 2009 WL 55178, at *3 (N.D. Cal. Jan. 7, 2009); *see also Clicks Billiards*, 251 F.3d at 1258 ("Functionality is a question of fact."); *Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*, 2019 WL 1260634, at *4 (C.D. Cal. Mar. 18, 2019) ("[C]ourts have held that [functionality] cannot be resolved at the motion to dismiss stage.") (citing cases).

Here, Aristocrat sufficiently alleges nonfunctionality of the Dragon Link Trade Dress. The Amended Complaint explains—and shows—that the Dragon Link Trade Dress is an arbitrary and fanciful design that is not "essential to the operation or design of a slot machine game." ECF No. 72, ¶ 47; *see also id.* ¶¶ 27–29, 34. As the Amended Complaint makes clear, each of the four Dragon Link Trade Dress elements serves a source-identifying role: the Dragon Link Standard Logo "is a design whose sole function is to identify the Dragon Link product;" the Dragon Link Orb Design "is a design element that provides the Dragon Link games with a consistent, recognizable look and feel across its various titles;" and the Dragon Link Jackpot Display and

Dragon Link Hold & Spin Design "are each comprised of an interwoven collection of fanciful and arbitrary elements that contribute to the Dragon Link games' distinctive look and feel." *Id.* ¶ 47. Given that each element individually serves a non-essential, source-identifying function, it follows that the combination of elements—*i.e.*, the Dragon Link Trade Dress—does so as well. *See also*, *e.g.*, *id.* ¶¶ 26, 45, 52, 55, 58–59.

Aristocrat also alleges that its competitors employ alternative designs in their competing game. *Id.* ¶ 34 (the Dragon Link Hold & Spin Design consists of "several fanciful and arbitrary design aspects that distinguish the bonus feature from those of competitors"), ¶ 47 ("[E]ach [Dragon Link Trade Dress] element represents just one of countless design options available to distinguish competing games. Indeed, Aristocrat's competitors use a wide variety of alternative design elements for their competing games"). This availability of alternate design options supports a finding of nonfunctionality. *See Globefill*, 473 F. App'x at 686 (finding nonfunctionality because "alternative bottle designs are available in abundance"); *see also Clicks Billiards*, 251 F.3d at 1261 (availability of alternative designs supports a finding of nonfunctionality because a "wide range of available packaging and design options allows a producer to appropriate a distinctive identity without unduly hindering his competitors' ability to compete"); *Radical Prod., Inc. v. Sundays Distrib.*, 821 F. Supp. 648, 651 (W.D. Wash. 1992) (denying motion to dismiss where complaint alleged that two-tone colored tanning gel was nonfunctional due to the fact that "a number of alternative packages are used for similar products"); *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 415–16 (D.N.J. 2012) (finding nonfunctionality where "numerous other choices are available to a game designer without affecting the functionality of the game").

This case is similar to *Tetris Holding*, which dealt with trade dress in the popular video game Tetris, in which players score points by manipulating differently-shaped pieces to form rows. The court found "the color and style of the pieces," as distinct from their shape, to be nonfunctional "arbitrary flourishes" that were "not mandated by the use or purpose of the game." 863 F. Supp. 2d at 415–16. The color and style of the pieces could be redesigned in an "almost unlimited number of ways . . . and the game would still function perfectly well." *Id.* at 416 (cleaned up). Here too,

the Dragon Link Trade Dress consists of nonfunctional arbitrary flourishes that could have been designed in any number of alternate fashions without altering the operation of the game.

L&W says that "Aristocrat offers nothing more than conclusory allegations that its alleged trade dress is non-functional," ECF No. 85 at 11, but this ignores all of the detailed allegations discussed above. *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, the lone case that L&W cites on this point, ECF No. 85 at 12, is not relevant here because the complaint failed to provide any support for nonfunctionality other than a lone statement that the product "contains the following non-functional elements," which were listed without any explanation of how they were nonfunctional. 2015 WL 12731929, at *4 (C.D. Cal. May 8, 2015). This is completely unlike the Amended Complaint's extensive nonfunctionality allegations, including descriptions and images that illustrate the non-essentiality and source-identifying role of the Dragon Link Trade Dress.

Recognizing the Amended Complaint has more than adequately alleged nonfunctionality, L&W resorts to raising improper—and mistaken—factual disputes over whether certain individual aspects of the claimed trade dress are functional or common aesthetic elements in slot games. ECF No. 85 at 12. Not only is this argument premature at the pleading stage, but it ignores that these individual items are part of a larger collection of ingredients that *all together* make up the claimed trade dress. For example, L&W focuses on the tiered lists and black background of the Dragon Link Jackpot Display, *id.*, but does not address the other parts of this element, including the logo above the tiered lists, the orbs at the sides of each tier, and the coloring used for the jackpot/bonus names and amounts. ECF No. 72, ¶ 28. Similarly, L&W overlooks that the coin shower is only one of several combined elements that comprise the Dragon Link Hold & Spin Design. *Id.* ¶ 34. And the Dragon Link Jackpot Display and Dragon Link Hold & Spin design are themselves only two of the four elements that make up the Dragon Link Trade Dress. L&W's dissection of individual aspects of the trade dress is improper, as the law is clear that nonfunctionality considers the trade dress as a whole, not on the basis of individual elements. *See Clicks Billiards*, 251 F.3d at 1259, 1261 ("We emphasize here that, in evaluating functionality as well as the other elements of a trade dress claim, it is crucial that we focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create . . .To be

1    sure, many of these elements, considered in isolation, may be functional. The issue, however, is

2    whether, taken as a whole, the overall look and feel of the establishment is functional.").[3]

3        Finally, L&W's argument that the claimed trade dress cannot be nonfunctional because

4    Dragon Link's Hold & Spin bonus feature is functional, ECF No. 85 at 13, is doubly flawed. First,

5    it makes the same mistake of arguing functionality based on one element of the trade dress. Second,

6    it disregards that the Dragon Link Hold & Spin Design covers only a few discrete aspects of the

7    larger bonus feature. ECF No. 72, ¶ 34. These aspects do *not* include the Hold & Spin rules and

8    gameplay functions that L&W identifies in its motion, such as the "accumulat[ion of] bonus

9    symbols in a series of free spins," "bonus symbols [that] display either a credit value or one of the

10   game's jackpots," the fact that "[t]he appearance of six or more bonus symbols on a single spin in

11   the base game triggers the [] Bonus Feature," or that the bonus feature "awards the player three

12   free spins." ECF No. 85 at 13 (citing ECF No. 72, ¶¶ 30, 114). Rather, the Amended Complaint

13   defines the Dragon Link Hold & Spin Design (a definition that L&W ignores) as consisting of the

14   following "fanciful and arbitrary features":

15

16
17
18
19   **Single large Dragon Link Orb Design directly above game reels**
20
21
22   **Dragon Link Orb Design as bonus symbols**
23
24
25

---

26   [3] *See also Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941,
     952 (D. Ariz. 2020) ("Multiple functional items may be combined into a non-functional aesthetic
27   whole."); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987) ("our
     inquiry is not addressed to whether individual elements of the trade dress fall within the definition
28   of functional, but to whether the whole collection of elements taken together are functional").



**Flame flares that burst out of the bonus symbols when the bonus amounts are tallied (and gong sound that plays as each new amount is tallied)**

**Coin shower at the conclusion of the bonus feature**

L&W does not argue that the *actual* features of the Dragon Link Hold & Spin Design provide any utilitarian advantage or are the only way to design a Hold & Spin bonus feature. And it is clear from the images above that any such factual contention (even if appropriate at the pleading stage) would fail. For all of these reasons, L&W's attempt to challenge the nonfunctionality of the trade dress should be rejected.

### B.    The Dragon Link Trade Dress is distinctive.

Trade dress can be either inherently distinctive or can acquire distinctiveness. *See* ECF No. 65 at 14 (quoting *Clicks Billiards*, 251 F.3d at 1257). The Amended Complaint provides sufficient allegations to support both inherent distinctiveness, ECF No. 71, ¶¶ 26–35, 45, 48, and acquired distinctiveness, *id.* ¶¶ 49–62. L&W's arguments to the contrary are without merit.

### 1.    The Dragon Link Trade Dress is product packaging trade dress.

Trade dress is characterized as product packaging trade dress when it is conceptually separable from the product and thus primarily serves to identify the source of the product. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212 (2000) (trade dress elements are product packaging when "their predominant function remains source identification"). For example, in *Two Pesos, Inc. v. Taco Cabana, Inc.*, a restaurant chain's décor was found to be inherently distinctive trade dress. 505 U.S. 763, 776 (1992). The Supreme Court later clarified in *Wal-Mart Stores* that this restaurant décor could qualify as product packaging trade dress. 529 U.S. 205 at 206.

The Dragon Link Trade Dress is product packaging trade dress. Like the décor in *Two Pesos*, it provides a unified look and feel that is "recognizable and inherently distinctive across all ten game titles," ECF No. 72, ¶ 26, and that is conceptually and functionally "separate from the underlying game mechanics" and rules that control how the game actually operates, *id.* ¶ 45, such as "the timing, frequency, and amount of payouts," *id.* ¶ 36, and the rules that govern the Hold & Spin bonus feature, *id.* ¶ 47. For example, the game could offer the *identical* functionality— including the same symbol sets, pays, rules, jackpots, and bonus features—without the use of golden orbs, flames, or gong sounds. Indeed, Aristocrat's Lightning Link game provides very similar functionality as Dragon Link, *see* ECF No. 72, ¶¶ 3–4, 25, without using the same trade dress, *see* ECF No. 72, Ex. G (side-by-side images of Lightning Link and Dragon Link).

L&W's argument that the trade dress cannot be product packaging because packaging trade dress "must be visible to potential purchasers," ECF No. 85 at 11, misses the fact that the Dragon Link Trade Dress *is* visible to potential consumers, even before they "pay[] for and play[] the game," *id.* The Dragon Link Standard Logo typically appears "on a rectangular landscape topper above the various displays that comprise the gaming cabinet used for the DRAGON LINK game," visible to anyone who can see the game cabinet. ECF No. 72, ¶ 27. And the other Dragon Link Trade Dress elements are visible all together to potential players on the game displays, such as when the game is being played by another customer. *Id.* ¶ 45. The Dragon Link Trade Dress is also visible to potential purchasers in Aristocrat's advertising, *id.* ¶¶ 45, 50, website and social media, *id.* ¶¶ 45, 51–52, and on free-to-play mobile gaming applications, *id.* ¶ 35.[4] *Cf. Two Pesos*, 505 U.S at 765 (trade dress included elements not necessarily viewable from the outside, such as "interior dining and patio areas decorated with artifacts, bright colors, paintings and murals").

---

[4] To the extent L&W contends that certain Dragon Link Trade Dress elements are absent from certain Dragon Link advertising, ECF No. 85 at 10, this is a factual issue inappropriate for resolution on a motion to dismiss. L&W's sole citation on this point, *Brands Corp. v Fred Meyer, Inc.*, is clear that "[w]hether a particular trade dress has acquired secondary meaning is a question of fact." 809 F.2d 1378, 1383 (9th Cir 1987).

## 2.   The Dragon Link Trade Dress also has secondary meaning.

The Amended Complaint also alleges that the Dragon Link Trade Dress has acquired secondary meaning. Trade dress acquires secondary meaning when "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982). Courts assess many factors to determine whether secondary meaning exists, including (1) direct consumer testimony; (2) exclusivity, manner, and length of use of a mark; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) established place in the market; and (6) proof of intentional copying by the defendant. *See P & P Imports LLC v. Johnson Enters.*, 46 F.4th 953, 961 (9th Cir. 2022). The secondary meaning inquiry is of an "intensely factual nature," *P & P Imports*, 46 F.4th at 961, so this issue should not be adjudicated at the motion to dismiss stage.

Aristocrat has pled each of the factors to establish secondary meaning. The Amended Complaint alleges that (1) consumers recognize the Dragon Link Trade Dress, *see* ECF No. 72, ¶¶ 59–62; (2) the Dragon Link Trade Dress is distinctive, and has been used by Aristocrat exclusively and continuously across all Dragon Link titles since their launch in 2017, *id.* ¶¶ 22, 26, 45–46; (3) Aristocrat has heavily invested in the marketing of Dragon Link, including spending millions of dollars on various advertising that prominently features the Dragon Link Trade Dress, *id.* ¶¶ 49–52; (4) the Dragon Link games have been hugely successful around the world, including placement of thousands of Dragon Link games across more than 35 states in the U.S., *id.* ¶¶ 53, 56; (5) Dragon Link is widely recognized as a top-performing and industry-leading game and has won numerous industry accolades and many positive customer reviews, *id.* ¶¶ 22, 25, 54–57; and (6) L&W has copied the Dragon Link Trade Dress in an attempt to confuse customers to make them incorrectly believe that L&W's Jewel of the Dragon game is affiliated or associated with Aristocrat, *id.* ¶¶ 72–84, 90–98. As one of L&W's own cases shows, these allegations plausibly establish secondary meaning. *See Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940825, at *5 (C.D. Cal. May 3, 2018) (noting allegations in other cases that were sufficient to allege secondary meaning, such as continuous use of the trade dress for over seven years, expending millions of dollars promoting the product, extensive media coverage and accolades, and positive customer reviews).

L&W's attempt to brush aside Aristocrat's allegations as "conclusory," ECF No. 85 at 8–9, ignores these robust factual allegations. And L&W's cited cases, *id.* at 9, are inapposite because the plaintiffs there failed to allege that customers associated the trade dress with the plaintiffs. *See Deckers*, 2015 WL 12731929, at *5 (complaint alleged only "association of the plaintiff with high-quality goods generally," not "that when consumers see an item of footwear exhibiting the Bailey Button Boot Trade Dress, they associate the item with Plaintiff"); *Green Crush*, 2018 WL 4940825, at *5 (complaint only alleged that "[f]or consumers, customers, vendors, and clients, [the trade dress] has come to mean the highest quality"). That is not the case here, where Aristocrat has pled that "consumers recognize the Dragon Link Trade Dress and favorably associate it with Aristocrat." ECF No. 72, ¶ 59.

Finally, L&W's argument that the Dragon Link Trade Dress is not exclusive because Aristocrat's competitors offer games with similar Hold & Spin features, ECF No. 85 at 10, is pure misdirection. Nowhere does L&W assert that these competitor games use the Dragon Link Hold & Spin Design, let alone the entire Dragon Link Trade Dress. Indeed, as alleged in the Amended Complaint, the trade dress "represents just one of countless design options available to distinguish competing games," and "Aristocrat's competitors use a wide variety of alternative design elements for their competing games." ECF No. 72, ¶ 47.

### C.   There exists a likelihood of confusion in the marketplace.

The Amended Complaint alleges a likelihood of confusion by pointing to the striking similarities between Dragon Link and Jewel of the Dragon, the use by L&W and Aristocrat of the same distribution and marketing channels for their respective games, and evidence of actual consumer confusion between the two games. *See* ECF No. 72, ¶¶ 76–84, 89–96.

 L&W's brief (and brand new) argument that Aristocrat has not adequately pled a likelihood of confusion in the Dragon Link Trade Dress because "consumers do not see the Jewel of the Dragon bonus feature until staking a wager and playing the game, if ever," ECF No. 85 at 13, is flawed for several reasons. As an initial matter, this argument only applies to the Dragon Link Hold & Spin Design, and does not, contrary to L&W's assertion, apply to the entirety of

"Aristocrat's alleged trade dress." *Id.* This continues L&W's pattern of improperly focusing only on individual elements of the trade dress, instead of looking at the trade dress as a whole.

L&W's argument also ignores that customers can and do see the Jewel of the Dragon bonus feature *before* they stake a wager and play the game, via L&W's promotions on its publicly accessible website, ECF No. 72, ¶ 89, L&W's mobile app versions of the game, *id.*, YouTube videos of the game, *id.* ¶ 93, advertising and marketing channels, *id.* ¶ 96, and placement of the game on casino floors, where the Jewel of the Dragon bonus feature is visible to potential players on the game displays, *id.*[5] And even if it were true that the bonus feature was only visible to players who had already placed an initial bet (and again, that is not the case), the bonus feature could still contribute to confusion about the source of the game during or after the game play, including among consumers who have previously played the game and would like to play it again.

## II.   L&W's Copyright Preclusion Argument Is Meritless.

L&W's argument that the trade dress claim is "[p]recluded" by copyright law, ECF No. 85 at 4, rests on the incorrect premise that courts may not hear otherwise-viable trade dress claims simply because the trade dress at issue is also part of a copyrighted work. No such rule exists. As explained above, Aristocrat has plausibly alleged that the Dragon Link Trade Dress is non-functional, distinctive and source-identifying, and infringed by L&W. While the Dragon Link Trade Dress is not remotely coextensive with Aristocrat's copyrights in the game,[6] the law is clear

---

[5] The potential for prospective players to watch others play the game and be misled about association with Aristocrat is significant because "[t]he law in the Ninth Circuit is clear that 'post-purchase confusion,' *i.e.*, confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the required likelihood of confusion under the Lanham Act." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1077–78 (9th Cir. 2006).

[6] As the Amended Complaint states, the copyrighted works "include many audiovisual elements that are *not* part of the Dragon Link Trade Dress—*e.g.*, reel symbols in the base game, music, messages and other text that appear on the displays, and screen layout and other user interface elements." ECF No. 72, ¶ 45 n.3 (emphasis added). L&W acknowledges this allegation, ECF No. 85 at 6, but nevertheless suggests (incorrectly) that the claimed trade dress covers the entirety of the copyrighted work. *See id.* ("Aristocrat continues to improperly claim trade dress protection over the same 'Dragon Link Audiovisual Elements' that are subject to its copyright claim.").

that any overlap between the two does not deprive the source-identifying elements of protection under the Lanham Act or otherwise afford L&W a defense to trade dress infringement.[7]

It is well established that "Plaintiffs may bring claims for copyright and trade dress infringement based on the same wrongful conduct." *Mercado Latino, Inc. v. Indio Prod., Inc.*, 649 F. App'x 633, 634 (9th Cir. 2016) ("The district court erred in dismissing Mercado's claim for trade dress infringement, as it was not 'preempted' by the Copyright Act."); *see also RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 563 (C.D. Cal. 2005) ("trademark and copyright protection may coexist"); *Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222, 236 (S.D.N.Y. 2013) (explaining that plaintiffs may "concurrently alleg[e] violations of more than one category of intellectual property law" and that "courts have continued to find that trade dress infringement claims are not duplicative of copyright claims and allow plaintiffs to assert both causes of action simultaneously"); *Tetris*, 863 F. Supp. 2d at 416 (rejecting defendant's argument that video game trade dress claim is preempted by copyright law because "Plaintiffs are not merely restating their copyright claim under the Lanham Act" but rather "their trade dress claims are meant to address the consumer confusion that developed because *Xio* packaged and advertised its game in the same manner as *Tetris*"); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1009 (9th Cir. 1994) ("Congress created two separate statutory schemes to govern copyrights and trademarks; in order to effectuate the purposes of both statutes, damages may be awarded under both."); *McCarthy on Trademarks and Unfair Competition* § 6.15 (5th ed.) ("There is no such rule that plaintiff must plead and prove only a copyright infringement claim in these cases.").

For example, in *Jason Scott Collection*—a Ninth Circuit case that L&W fails to address even though it was cited in Aristocrat's opposition to L&W's first motion to dismiss, *see* ECF No. 38 at 23—the plaintiff, a high-end furniture maker, sued a competitor for copying the plaintiff's furniture designs, alleging both copyright and trade dress violations. The defendant argued that it "should be held liable only under the Copyright Act, not under the Lanham Act," but the Ninth

---

[7] As noted above, L&W itself claims trade dress rights in "[t]he look and feel of [its] games and their individual components and displays," including for Jewel of the Dragon. ECF No. 1, Ex. S.

Circuit rejected this argument, finding that "nothing in the case law indicates that copyright and trademark claims are mutually exclusive." 68 F.4th at 1215 (citing cases). The court explained that although copying "must be proven to establish copyright infringement and may be relevant to the analysis of secondary meaning to prove trade dress infringement," this overlap "does not mean that the trademark and copyright laws remedy the same wrongs." *Id.* (citation omitted); *see also Nirvana, LLC v. Mark Jacobs Int'l, LLC*, 2019 WL 7817082, at *15 (C.D. Cal. Nov. 8, 2019) (rejecting argument that trademark claim relating to the copying of the plaintiff's "Happy Face" graphic was precluded by copyright law and explaining that "[t]he Lanham Act claim cannot be preempted by the Copyright Act" because "nothing in [the preemption provision] or elsewhere in the [Copyright] Act annuls or limits any rights or remedies under any other Federal Statute").

L&W misreads its own cases, pulling out dicta to manufacture a doctrine of preclusion that simply does not exist. In fact, L&W's cases make clear that there *is no* copyright preclusion where the elements of a Lanham Act claim have been satisfied. Instead, L&W's "preclusion" cases all involve scenarios where the elements of a trademark or trade dress claim were not satisfied, and where courts declined to *extend* the bounds of the Lanham Act to cover the plaintiffs' allegations. Those cases do not apply to the present case, where, "tak[ing] all material allegations as true and constru[ing] them in the light most favorable to [Aristocrat]," *Switch Ltd.*, 2018 WL 4181626, at *2, the elements of a trade dress claim are satisfied under well-established law.

For example, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, addressed the narrow question of whether the Lanham Act's protection against "false designation of origin" extends to uncredited copying of a communicative work, such as a video or a book—in other words, whether the Lanham Act protects against plagiarism. *See* 539 U.S. 23, 31, 35 (2003). The Court held it did not, because there was no actionable confusion over the origin of the author's ideas. *Id.* at 37. The Court declined to *extend* the Lanham Act beyond its traditional boundaries, explaining that this would "conflict with the law of copyright," *id.* at 33, but the Court did not hold that copyright law can bar an otherwise-viable Lanham Act claim. As courts have subsequently made clear: "*Dastar* does not foreclose Lanham Act claims that are based on the same underlying conduct as copyright claims." *Ward*, 963 F. Supp. 2d at 236; *see also Mercado Latino*, 649 F. App'x at 634 ("*Dastar*

declined to extend the protections of the Lanham Act to cover the plaintiff's claim . . . [but] neither *Dastar* nor *Shaw* addressed traditional trademark and trade dress claims"); *Nirvana*, 2019 WL 7817082 at *15 (*Dastar* was "based on the Lanham Act itself, and not on a preemption analysis.").

L&W's remaining cases are similarly inapt because they involve situations where the Lanham Act did not apply because of a deficiency in one of the elements of a trademark or trade dress claim, and *not* because an otherwise-viable Lanham Act claim was precluded by copyright. In some, the Lanham Act claims failed because the plaintiff failed to properly allege a likelihood of confusion. *See Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) (consumers never saw the allegedly copied content, so no likelihood of consumer confusion); *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1072 (C.D. Cal. 2017) (allegations of plagiarism in a television script did not involve any actionable consumer confusion); *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir. 1990) (same); *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 385 (E.D. Pa. 2020) (allegations of uncredited video game dance choreography did not involve any actionable consumer confusion); *Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 629 (D. Md. 2020) (same); *Felix Cat Prods. Inc. v. New Line Cinema*, 2000 WL 770481, at *3 (C.D. Cal. Apr. 28, 2000) (insertion of cartoon character clip into a feature film was not use in commerce capable of causing consumer confusion). By contrast, the Amended Complaint here more than adequately alleges likelihood of confusion. *See supra*, § I.C.

In L&W's other cases, the Lanham Act claims failed because the plaintiffs did not articulate the specific bounds of a protectable trademark or trade dress. *See Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 595 (9th Cir. 2000) (defendant failed to "articulate[] a trademark interest" or secondary meaning in a short movie clip); *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 563 (C.D. Cal. 2005) (failure to identify any particular elements of a television program that constituted trade dress). Such is not the case here, where the trade dress is a clearly defined set of design elements, and where Aristocrat has adequately pled that the trade dress is non-functional, distinctive, and serves a source-identifying function, *supra* § I.A–B.

Lacking support for the notion that trade dress and copyright cannot overlap, L&W's preclusion argument amounts to a factual dispute over whether the Dragon Link Trade Dress is a

source identifier. ECF No. 85 at 7 ("Aristocrat's alleged trade dress does not serve a source-identifying role because these types of audiovisual elements fall under the purview of copyright law."). L&W once again focuses on a single element—the Dragon Link Hold & Spin Design—while ignoring the other elements, including the Dragon Link Standard Logo, that make up the claimed trade dress. *See id.* at 6–7. But even viewing that one element in isolation, Aristocrat has adequately alleged that the discrete components of this element—*e.g.*, the use of the Dragon Link Orb Design as a bonus symbol and the gong sound that plays when the bonus amounts are tallied—are distinctive identifiers of source. *See supra*, § I.A–B. The fact that the element may "overlap with Aristocrat's claimed copyright," ECF No. 85 at 7, is irrelevant to whether it merits protection as a source identifier under the Lanham Act.

Nor is L&W correct that the trade dress must include elements that are "not also within its copyright claim." ECF No. 85 at 6. As discussed above, Lanham Act and copyright protections can both apply even where the trade dress elements are a subset of or identical to the elements protected by copyright. *See Jason Scott Collection*, 68 F.4th at 1210, 1213 (both trade dress and copyright protections applied even though the "highly specific details of the trade dress" were a subset of the broader copyright protection over the entire furniture "design"); *Nirvana*, 2019 WL 7817082, at *1 (trade dress and copyright claims covered the same "Happy Face" graphic).

L&W cites two cases that it claims support its position, but these cases do *not* establish a new principle that trade dress claims must include elements not covered by copyright. Instead, each deals with a more fundamental problem: unclear, insufficient pleading that prevented the court from being able to analyze the elements of each claim. *See Salt Optics, Inc. v. Jand, Inc.*, 2010 WL 4961702, at *6 (C.D. Cal. Nov. 19, 2010) ("Plaintiff makes no attempt to identify which portions of the website or catalog it accuses Defendants of infringing"); *Graduation Sols. LLC v. Luya Enter. Inc.*, 2021 WL 2349346, at *5 (C.D. Cal. Mar. 31, 2021) (plaintiff failed to "specify what aspects of Defendants' websites infringed Plaintiff's copyright or trade dress"). The courts dismissed the claims, not because the trade dress claim was precluded, but because the complaint lacked sufficient detail. In fact, *Salt Optics* is clear that both copyright and trade dress *can* apply to the same material: "Parallel claims under the Copyright Act and the Lanham Act [] are not *per*

*se* impermissible . . .   Indeed, relevant to the present case, a website may contain original works that infringe another's copyright and simultaneously present an overall 'look and feel' that violates another's trade dress." 2010 WL 4961702, at *7 (citation omitted).

The vague, insufficient pleadings in those cases are not at issue here because the Amended Complaint clearly identifies what is covered by Aristocrat's copyright claim and what is covered by its trade dress claim. Having sufficiently alleged both claims, there is no basis for dismissal.[8]

### III.   If the Court Grants the Motion, Aristocrat Should Be Given Leave to Amend.

L&W seeks dismissal of the Complaint "with prejudice." ECF No. 85 at 15. If the Court grants the Motion in any respect, however, Aristocrat should be granted leave to amend in order to cure any alleged deficiency. *See EVIG, LLC v. Natures Nutra Co*., 2023 WL 4934339, at *2 (D. Nev. Aug. 2, 2023) ("If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment.").

### CONCLUSION

For the foregoing reasons, the Court should deny L&W's partial motion to dismiss.

August 30, 2024                                        /s/   *Jason D. Smith*

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
**HOLLEY DRIGGS LTD**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.:  (702) 791-0308
Email:  nsantoro@nevadafirm.com
            jsmith@nevadafirm.com

---

[8] In fact, the copyright claim does *not* cover one of the elements of the Dragon Link Trade Dress: the Dragon Link Standard Logo. As the Amended Complaint explains, the Dragon Link Standard Logo appears "on a rectangular landscape topper above the various displays that comprise the gaming cabinet used for the DRAGON LINK game, as well as on signage used in connection with the game." ECF No. 72, ¶ 27. But it is not part of the audiovisual content of the Dragon Link game.

1

2   PETER SWANSON
    (*pro hac vice*)

3   GARY RUBMAN
    (*pro hac vice*)

4   SIMEON BOTWINICK
    (*pro hac vice*)

5   **COVINGTON & BURLING LLP**
    One CityCenter

6   850 Tenth Street, NW

7   Washington, DC 20001
    Tel.:  (202) 662-6000 / Fax:  (202) 662-

8   6291
    Email:  pswanson@cov.com

9           grubman@cov.com

10          sbotwinick@cov.com

11  ZIWEI SONG
    (*pro hac vice*)

12  **COVINGTON & BURLING LLP**
    Salesforce Tower

13  415 Mission Street, Suite 5400

14  San Francisco, CA 94105-2533
    Tel.: (415) 591-6000

15  Email: ksong@cov.com

16  *Attorneys for Plaintiffs Aristocrat*
    *Technologies, Inc. and Aristocrat*

17  *Technologies Australia Pty Ltd.*

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August 2024, a true and correct copy of the foregoing **OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS COUNTS III AND V OF PLAINTIFFS' FIRST AMENDED COMPLAINT** was electronically filed and served upon the parties registered for service with the Court's Case Management and Electronic Case Filing (CM/ECF) system:

Harold K. Gordon, Esq.
Randall E. Kay, Esq.
Anna E. Raimer, Esq.
**JONES DAY**
250 Vesey Street
New York, New York 10281
Email: hkgordon@jonesday.com
        rekay@jonesday.com
        aeraimer@jonesday.com

Philip R. Erwin, Esq.
**CAMPBELL & WILLIAMS**
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Email: pre@cwlawlv.com

*Attorneys for Defendants Light & Wonder, Inc.,*
*LNW Gaming, Inc., and SciPlay Corporation*

*/s/ Marissa Vallette*
An employee of HOLLEY DRIGGS