JONES DAY
HAROLD K. GORDON, ESQ.
(*pro hac vice*)
hkgordon@jonesday.com
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

JONES DAY
RANDALL E. KAY, ESQ.
(*pro hac vice*)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1139
Facsimile: (844) 345-3178

CAMPBELL & WILLIAMS
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

JONES DAY
ANNA E. RAIMER, ESQ.
(*pro hac vice*)
aeraimer@jonesday.com
717 Texas Street, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3786
Facsimile: (832) 239-3600

*Attorneys for Defendants*
*Light & Wonder, Inc., LNW Gaming, Inc.,*
*and SciPlay Corporation*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Defendants, | CASE NO.: 2:24-cv-00382-GMN-MDC <br><br> **DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS COUNT III OF PLAINTIFFS' FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

    A. Aristocrat's Trade Dress Infringement Claim Is Precluded By Copyright Law .................................................................................................................... 1

    B. Aristocrat's Claimed Trade Dress Is Also Invalid .................................................... 5

        1. Aristocrat Has Not And Cannot Plead Acquired Distinctiveness ................ 6

        2. Aristocrat Fails To Plausibly Allege Its Trade Dress Is Non-Functional ..... 9

        3. Aristocrat Fails To Plausibly Plead Likelihood of Confusion ................... 11

    C. Aristocrat Should Not Be Granted Leave to Amend ........................................... 12

III. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
  No. CV 06-6245 AHM, 2007 WL 4973852 (C.D. Cal. Aug. 17, 2007)..................................12

*Brantley v. Epic Games, Inc.*,
  463 F. Supp. 3d 616 (D. Md. 2020) .............................................................................3, 4, 5

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
  251 F.3d 1252 (9th Cir. 2001) ...............................................................................................11

*Comedy III Prods., Inc. v. New Line Cinema*,
  200 F.3d 593 (9th Cir. 2000) ..............................................................................................4, 6

*Comput. Access Tech. Corp. v. Catalyst Enters., Inc.*,
  No. C-00-4852-DLJ, 2001 WL 34118030 (N.D. Cal. June 13, 2001)............................ passim

*Cont'l Lab. Prods., Inc. v. Medax Int'l, Inc.*,
  114 F. Supp. 2d 992 (S.D. Cal. 2000)......................................................................................6

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)...............................................................................................................2, 3

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  No. CV 15-769 PSG, 2015 WL 12731929 (C.D. Cal. May 8, 2015) ....................................10

*DO Denim, LLC v. Fried Denim*,
  634 F.Supp.2d 403 (S.D.N.Y. 2009) .....................................................................................10

*Donohue v. Newkirk*,
  No. 2:07-cv-00270-BES-RJJ, 2008 WL 11451305 (D. Nev. Aug. 4, 2008) .........................12

*First Brands Corp. v. Fred Meyer, Inc.*,
  809 F.2d 1378 (9th Cir. 1987) .................................................................................................7

*Globefill Inc. v. Elements Spirits, Inc.*,
  473 F. App'x 685 (9th Cir. 2012) ..........................................................................................11

*Greenberg v. Johnston*,
  No. CV-14-04605-MWF, 2014 WL 12586252 (C.D. Cal. Oct. 22, 2014)..............................8

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
  68 F.4th 1203 (9th Cir. 2023) ..................................................................................................2

*Kittrich Corp. v. United Indus. Corp.*,
  No. CV-17-06211-DDP-PLAx, 2017 WL 10434389 (C.D. Cal. Oct. 18, 2017) .....................8

*Limo Hosting, Inc. v. Fiks*,
  No. C 08-2474 BZ, 2008 WL 11395585 (N.D. Cal. Dec. 18, 2008) .....................................10

ii

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
   170 F. Supp. 3d 1249 (C.D. Cal 2016) ..................................................................................5

*Lozano v. Phh Mortg. Servs.*,
   No. CV-20-01533-RGK-AFMx, 2020 WL 3963877 (C.D. Cal. Mar. 30, 2020) .....................7

*Marcus v. ABC Signature Studios, Inc.*,
   279 F. Supp. 3d 1056 (C.D. Cal. 2017) ................................................................................5

*Mercado Latino, Inc. v. Indio Prod., Inc.*,
   649 F. App'x 633 (9th Cir. 2016) .........................................................................................2

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
   40 F.3d 1007 (9th Cir. 1994) ................................................................................................3

*Nirvana, LLC v. Mark Jacobs Int'l, LLC*,
   No. LA CV18-10743 JAK (SKx), 2019 WL 7817082 (C.D. Cal. Nov. 8,
   2019) ....................................................................................................................................3

*P&P Imports LLC v. Johnson Enters.*,
   46 F.4th 953 (9th Cir. 2022) .................................................................................................8

*Pellegrino v. Epic Games, Inc.*,
   451 F. Supp. 3d 373 (E.D. Pa. 2020) ..............................................................................3, 4

*Radical Prod., Inc. v. Sundays Distrib.*,
   821 F. Supp. 648 (W.D. Wash. 1992) ................................................................................11

*RDF Media Ltd. v. Fox Broad. Co.*,
   372 F. Supp. 2d 556 (C.D. Cal. 2005) ..................................................................................2

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
   845 F.3d 1246 (9th Cir. 2017) ..........................................................................................2, 5

*Spin Master v. Aciper*,
   No. 19-CV-6949 (VSB), 2022 WL 992888 (S.D.N.Y. Apr. 1, 2022) ..................................11

*Sunlighten, Inc. v. Finnmark Designs, LLC*,
   595 F. Supp. 3d 957 (D. Nev. 2022) ....................................................................................9

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
   863 F. Supp. 2d 394 (D.N.J. 2012) .................................................................................3, 11

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) .............................................................................................................6

*Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
   106 U.S.P.Q.2d 1756, 2012 WL 3240442 (S.D.N.Y. 2012) .................................................8

*Wal-Mart Stores, Inc. v. Samara Bros.*,
   529 U.S. 205 (2000) ....................................................................................................6, 7, 8

*Ward v. Andrews McMeel Pub., LLC*,
   963 F. Supp. 2d 222 (S.D.N.Y. 2013) ..................................................................................3

**STATUTES**

    17 U.S.C. § 302……………………………………………………………………………..2

## I. INTRODUCTION

Aristocrat's claim for trade dress infringement fails as a matter of law because Aristocrat has not alleged a trade dress that is capable of protection under the Lanham (Trademark) Act. Absent from Aristocrat's Opposition is any support for protecting the combination of audiovisual elements Aristocrat claims as "trade dress"—because no such support exists. Aristocrat's purported "trade dress" falls squarely within the domain of the Copyright Act, which alone warrants dismissal of Aristocrat's trade dress infringement claim. Aristocrat's alleged trade dress is also invalid because it consists of non-distinctive and functional elements with no source identifying capability. Moreover, even if Aristocrat has a valid trade dress—it does not—Aristocrat fails to plausibly plead the requisite likelihood of confusion to state a trade dress infringement claim. For all of these reasons, and because Aristocrat has been given an opportunity to amend its Complaint, yet has failed to cure the defects, Count III of the First Amended Complaint ("FAC") should be dismissed with prejudice.

## II. ARGUMENT

### A. ARISTOCRAT'S TRADE DRESS INFRINGEMENT CLAIM IS PRECLUDED BY COPYRIGHT LAW

Aristocrat fails to cite *any* caselaw demonstrating that the combination of audiovisual elements that it claims as "trade dress"—a non-static "logo and certain distinctive elements of Aristocrat's copyrighted game" (Opp. at 1)—is not precluded by copyright law. Copyright and trade dress rights may overlap in limited circumstances, but no support exists for the extension of trade dress protection to the "Dragon Link Jackpot Display," the "Dragon Link Orb Design," the "Dragon Link Hold & Spin Design," and the "Dragon Link Standard Logo." Opp. at 3-4. Indeed, there is no mechanism for obtaining a federal trademark registration for the alleged elements, which demonstrates that Aristocrat cannot justify its purported "trade dress" claim.[1] Accordingly,

---

[1] Although Aristocrat could obtain a registration for the Dragon Link Standard Logo standing alone, that is not what is asserted in this case. Nor could Aristocrat base a trade dress infringement claim on the logo given that L&W has priority in the JEWEL OF THE DRAGON trademark and because of the ubiquitous use of DRAGON in the gaming market. *See* ECF Nos. 34-6, 34-7, at

1

the Court should dismiss Aristocrat's trade dress infringement claim, which "is more accurately conceived of as attacking unauthorized copying[.]" *See Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) (affirming dismissal of Lanham Act claims). Holding otherwise would violate public policy and give Aristocrat exclusive rights in perpetuity to a type of work that has an expiration date (i.e., a copyright). 17 U.S.C. § 302. For that very reason, the Supreme Court has been "careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright," particularly when dealing with "a communicative product" like the audiovisual elements at issue, which are "valued not primarily for [their] physical qualities, such as a hammer, but for the intellectual content that [they] convey[], such as a book or, as here, a video." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-34 (2003).

Aristocrat attempts to salvage its trade dress claim arguing that copyright and trade dress infringement claims may be "based on the same wrongful conduct." Opp. at 15. But the case Aristocrat cites for this proposition involved the trade dress in a "candle design", which was not "a communicative product" like the video in *Dastar*. *See Mercado Latino, Inc. v. Indio Prod., Inc.*, 649 F. App'x 633, 634 (9th Cir. 2016) (distinguishing *Dastar* because "Mercado alleges a traditional trade dress claim that Indio's candles bear a design so similar to Mercado's protected trade dress that consumers are confused into believing that Indio's candles are Mercado's").[2] Aristocrat's other lead citation to defend against preclusion is *Jason Scott Collection, Inc. v.*

---

Exhs. E-F (showing that L&W owned a registration for JEWEL OF THE DRAGON with a registration date and first use date that are prior to the registration date and alleged first use date in Plaintiff's trademark registration for DRAGON LINK); ECF No. 34-8, at Ex. G (showing twenty-six U.S. registrations owned by L&W alone that incorporate the word DRAGON or the foreign equivalent of the word dragon for the relevant goods); *see also* ECF No. 65, at 5 (taking judicial notice of the "trademark registrations"). Therefore, the comparison of the parties' logos (Opp. at 2) is misleading, at best.

[2] Aristocrat also unsuccessfully attempts to distinguish the holding in *RDF Media*, in which the court advised that if it accepted the plaintiff's attempt to "repackag[e] its copyright claims in trademark causes of action," "then every incident of visual expression would be subject to copyright and trademark protection and that protection would last in perpetuity," a theory that "has been rejected on numerous occasions." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 564 (C.D. Cal. 2005).

2

*Trendily Furniture, LLC*, 68 F.4th 1203, 1213 (9th Cir. 2023), which concerned furniture design, and again is not a "communicative product." Here, unlike candles and furniture—both of which are product designs, which Aristocrat claims its trade dress is not (Opp. at 10-11)—the audiovisual elements Aristocrat seeks to protect *are* "communicative products," and "allowing a cause of action under § 43(a) for [the alleged trade dress] would create a species of mutant copyright law that limits the public's 'federal right to copy and to use' expired copyrights" if the claim were not precluded by copyright law. *Dastar Corp.*, 539 U.S. at 34.[3]

Contrary to Aristocrat's argument that preclusion is a "factual dispute over whether the Dragon Link Trade Dress is a source identifier" (Opp. at 17-18), courts routinely dismiss Lanham Act claims based on audiovisual materials in video games on a motion to dismiss. *See, e.g.*, *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 385 (E.D. Pa. 2020) (granting motion to dismiss false designation of origin claim based on dancing avatar in Fortnite video game as barred by *Dastar* because "this type of allegation is governed by the Copyright Act and thus, cannot be brought under the Lanham Act"); *Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 623, 631 (D. Md. 2020) (granting motion to dismiss Lanham Act claims based on dancing avatar in the Fortnite video game as barred by *Dastar*).

---

[3] Aristocrat's remaining cases (Opp. at 15) are also distinguishable. The court in *Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222, 236, 238 (S.D.N.Y. 2013) merely acknowledges the possibility of a non-duplicative trade dress infringement claim but ultimately does not analyze whether the trade dress claim at issue would be precluded by *Dastar* and found the claim failed for other reasons, namely, that plaintiff failed to plead non-functionality. The plaintiff's trade dress claim in *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 415 (D.N.J. 2012) was not related to any audiovisual content in the defendant's video game but rather was addressing confusion stemming from the fact that defendant "packaged and advertised its game in the same manner as *Tetris*." The plaintiff's claims in *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010-11 (9th Cir. 1994) were found not to be "based on the same wrongful act" where the defendant sold cartridges containing video games because "[i]f [defendant] had sold the cartridges without representing that they were Nintendo products, he would have committed the wrong of copyright infringement. Or, if [defendant] had represented that the cartridges were Nintendo products, even though they contained no Nintendo games, he would have committed the wrong of trademark infringement. Put together, selling the cartridges may have been one act, but it was two wrongs." Finally, the defendant in *Nirvana, LLC v. Mark Jacobs Int'l, LLC*, No. LA CV18-10743 JAK (SKx), 2019 WL 7817082, at *15 (C.D. Cal. Nov. 8, 2019) was alleged to have infringed the plaintiff's trademark by placing the plaintiff's smiley face graphic on clothing, which is a traditional trademark claim that was found not "preempted" by copyright law.

3

Moreover, the trade dress need not be "coextensive with Aristocrat's copyrights in the game" (Opp. at 15) for copyright preclusion to apply. As the Ninth Circuit found in rejecting an attempt to claim trade dress protection in a portion of a short film of The Three Stooges:

> Essentially, Comedy III is arguing that the clip at issue falls under the protection of the Lanham Act because it contains elements that in other contexts might serve as trademarks. Had New Line used the likeness of The Three Stooges on t-shirts which it was selling, Comedy III might have an arguable claim for trademark violation. But we will not entertain this expedition of trademark protection squarely into the dominion of copyright law, to allow for Lanham Act coverage of a piece of footage taken directly from a film by The Three Stooges. Comedy III's assertion that this clip is itself a collection of trademarks of The Three Stooges is unconvincing.

*Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 596 (9th Cir. 2000). Aristocrat's argument that "elements of Aristocrat's copyrighted game" (Opp. at 1) are entitled to trade dress protection should similarly be dismissed as "unconvincing."

Furthermore, following *Dastar* "courts have dismissed Lanham Act claims where the allegations pertain to copying ideas or concepts," as opposed to confusion regarding the producer of tangible goods. *Brantley*, 463 F. Supp. 3d at 629. Here, Aristocrat's allegations pertain to the copying of an "idea or concept," not confusion regarding the producer of a tangible product, because Aristocrat alleges L&W "replicated" the alleged trade dress—which is the audiovisual content of Aristocrat's Dragon Link games—in L&W's games. *See, e.g.*, FAC ¶¶ 45, 81-86, 149. Aristocrat nevertheless attempts to distinguish the caselaw L&W cites in arguing that the claims in those cases were dismissed because "of a deficiency in one of the elements of a trademark or trade dress claim." Opp. at 16-17 (attempting to distinguish L&W's cases). Not so. The courts in the cited cases expressly found the trademark claims based on copying of content were precluded or barred by *Dastar* using an analysis that is applicable here. *See, e.g.*, *Pellegrino*, 451 F. Supp. 3d at 385 (concluding that the false designation of origin claim based on copying of dance move into *Fortnite* was barred by *Dastar* because "[u]nder *Dastar*, a claim that concerns the origin of an idea embodied in a tangible good is governed by copyright law, not the Lanham Act"); *Brantley*, 463 F. Supp. 3d at 629 ("At best the allegations [that defendant copied the dance move

4

into its video game] indicate that [the] Plaintiff might be a 'person or entity that originated the ideas or communications that 'goods [or services]' embody or contain,' but this fails to establish a Lanham Act claim" under *Dastar*); *Slep-Tone Entm't Corp.*, 845 F.3d at 1250 (affirming dismissal of Lanham Act § 43(a) claims for unfair competition and trademark infringement where "Defendants ma[de] allegedly unauthorized use of the *content* of Plaintiff's karaoke tracks, which *Dastar* precludes as a trademark claim"); *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1072 (C.D. Cal. 2017) ("[Plaintiff] does not allege that Defendants stole his physical script, repackaged it as their own, and then sold it. [Plaintiff] is alleging that Defendants stole the ideas in the *Across the Tracks* script. . . . Because Plaintiff does not allege that Defendant misappropriated his tangible goods, he cannot proceed with his unfair competition claim" under *Dastar*); *Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*, 170 F. Supp. 3d 1249, 1268 (C.D. Cal 2016) (dismissing Lanham Act claims and finding allegations defendant's used elements from the film *Dirty Dancing*, including the famous "dance lift," did not cause confusion over source). The Court should similarly follow this line of reasoning and dismiss Aristocrat's trade dress claim.[4]

### B.  ARISTOCRAT'S CLAIMED TRADE DRESS IS ALSO INVALID

In addition to Aristocrat's trade dress being the subject of copyright law, rendering it incapable of trade dress protection, Aristocrat has failed to show that the claimed elements are capable of trade dress protection because the elements at issue (i) constitute product design, not "product packaging," which is not inherently distinctive, (ii) lack secondary meaning, and (iii) are functional. Tellingly, the Opposition is entirely devoid of caselaw to support Aristocrat's theory that its alleged trade dress is protectable—because none exists. Accordingly, Aristocrat's trade

---

[4] In a footnote, Aristocrat asserts that its trade dress claim does not overlap with its copyright claim because the Dragon Link Standard Logo element appears on a "landscape topper" of the game and on "signage." Opp. at 19, n.8 (citing FAC ¶ 27). Aristocrat ignores that the "landscape topper" is also an audiovisual element (it is non-static and changes in appearance on the "topper"). *See, e.g.*, FAC ¶¶ 27, 43; ECF No. 72-1, Exh. K-2, at pp. 49-50. The appearance of the audiovisual Dragon Link Standard Logo at times on the "topper" also does not take the claimed trade dress elements out of the purview of copyright law in the same way that the use of a logo in the opening screen of a video game does not mean the underlying video game is no longer the subject of copyright law. And using a logo on "signage" is not a use of the alleged trade dress.

5

dress claim should be dismissed.

### 1. Aristocrat Has Not And Cannot Plead Acquired Distinctiveness

To the extent Aristocrat has a protectable trade dress—which L&W contests—it should be classified as "product design" trade dress rather than "product packaging" because the alleged trade dress elements are part of the gameplay and game functionality and thus "inseparable from the whole" game. *Cont'l Lab. Prods., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 999 (S.D. Cal. 2000).[5] Aristocrat cites not a single case in support of its theory that a trade dress consisting of audiovisual "elements of Aristocrat's copyrighted game" (Opp. at 1)—one of which is not seen on the game display and may not be encountered during many rounds of gameplay—can be inherently distinctive (or, for that matter, distinctive based on secondary meaning). *See, e.g.*, *Comedy III Prods., Inc.*, 200 F.3d at 595 ("[Plaintiff] has not satisfied the dual elements of the 'validity' test by explaining how the film footage could contain a distinctive mark or how footage of The Three Stooges' name, voices, images, and act could have secondary meaning. We cannot agree with [Plaintiff's] threshold assertion that this clip is a trademark."). Instead, Aristocrat improperly analogizes to restaurant décor in *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 776 (1992), arguing that the alleged trade dress is inherently distinctive because Aristocrat "could offer . . . identical [game] functionality . . . without the use of golden orbs, flames, or gong sounds." Opp. at 10-11. However, Aristocrat ignores that the alleged trade dress elements, including the jackpot display and hold and spin feature, are part of gameplay and functionality, as these elements determine and display the players' wins and losses. And, unlike the immutable restaurant décor trade dress in *Two Pesos*, the alleged trade dress here consists of moving and changing audiovisual elements, such that, like the children's clothing at issue in the later *Wal-Mart* decision, the *Two Pesos* analysis has "no bearing on the present case." *Wal-Mart Stores*, 529 U.S. at 215.

Additionally, a review of any of the images of the Dragon Link games shown in the

---

[5] "To the extent there are close cases," the Supreme Court has advised that courts must "err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 215 (2000).

6

Complaint demonstrates the elements of the alleged "packaging" trade dress are never visible at the same time, nor are all elements visible to potential consumers before they pay for and play the game, if ever, such as the bonus feature that is only "triggered on specific conditions" during gameplay after the player has already decided to play and staked a wager.[6] FAC ¶ 113. Aristocrat makes the highly implausible argument that the alleged trade dress is visible to potential players who (i) observe multiple displays of other players at the precise moment that the alleged trade dress elements appear, including when other customers happen to trigger gameplay specific features like the "bonus feature," or (ii) observe all of the elements of the trade dress online or on mobile apps (for which, if it even happens, there is no such allegation in the FAC). Opp. at 11 (citing FAC ¶¶ 35, 45, 50-52). The Court "need not accept as true [these] unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations." *Lozano v. Phh Mortg. Servs.*, No. CV-20-01533-RGK-AFMx, 2020 WL 3963877, at *1 (C.D. Cal. Mar. 30, 2020). This is especially so since images in the FAC reveal that marketing for Dragon Link games does not include all aspects of the alleged trade dress, contradicting any such inference that the alleged trade dress can be reviewed in Aristocrat's advertising. *See, e.g.*, FAC ¶¶ 50-51; *see also First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987) (noting for "advertising and promotional activities" to provide circumstantial evidence of secondary meaning, those activities "must involve 'image advertising,' that is, the ads must feature in some way the trade dress itself.").

Although there are no analogous examples to Aristocrat's purported trade dress because no court has recognized this type of audiovisual element combination as a trade dress, even a "graphical user interface" (GUI) trade dress is not inherently distinctive. For example, in *Computer Access Technology Corp. v. Catalyst Enterprises, Inc.*, in which the trade dress claim was based on an alleged confusing similarity between the parties' respective "interfaces," the court held that "[t]he trade dress claim should therefore be viewed as arising out of the *design* of [plaintiff's] interface and thus, . . . requires that [plaintiff] demonstrate that its interface has

---

[6] Even the Dragon Link Standard Logo is not always present on the games, as shown by the exhibits attached to the Complaint. *See, e.g.*, ECF No. 72-1, Ex. K, at p.50.

7

obtained secondary meaning." No. C-00-4852-DLJ, 2001 WL 34118030, at *11 (N.D. Cal. June 13, 2001) (emphasis in original) (citing *Wal-Mart Stores*, 529 U.S. at 214)). Similarly, here, the trade dress claim arises from the design of the changing, audiovisual elements of Aristocrat's game. Accordingly, because the alleged trade dress is design, not "packaging," it cannot be inherently distinctive as a matter of law. *See Wal-Mart Stores*, 529 U.S. at 212 ("[D]esign . . . is not inherently distinctive.").

Nor has Aristocrat plausibly alleged that its alleged trade dress has acquired secondary meaning. Aristocrat's allegations of secondary meaning are not "robust," as Aristocrat argues (Opp. at 13), but rather conclusory and unsupported, warranting dismissal. *See* ECF No. 85, at 8-10 (citing cases); *see also Kittrich Corp. v. United Indus. Corp.*, No. CV-17-06211-DDP-PLAx, 2017 WL 10434389, at *6 (C.D. Cal. Oct. 18, 2017) (dismissing trade dress claim where plaintiff's conclusory allegations of distinctiveness and secondary meaning did not "allege[ ] concrete facts ... to support any of these assertions"); *Greenberg v. Johnston*, No. CV-14-04605-MWF (VBKx), 2014 WL 12586252, at *4 (C.D. Cal. Oct. 22, 2014) (noting "long running use" and "investment in publicity and marketing" insufficient and "at the pleading stage" plaintiff "must still allege sufficient facts" regarding distinctiveness); *Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 106 U.S.P.Q.2d 1756, 2012 WL 3240442, at *7 (S.D.N.Y. 2012) ("Although the Amended Complaint does allege that [p]laintiff's trade dress case has become associated with the [plaintiff's product] in the eyes of the public, there are no facts alleged to support this conclusory claim"; granting motion to dismiss).[7]

Moreover, the conclusory allegations highlighted in Aristocrat's Opposition relate to the popularity of its game. *See* Opp. at 12-13. But Aristocrat's trade dress claim is not based on the acquired distinctiveness in the *name of the game—i.e.*, "Dragon Link"—but rather a combination

---

[7] Aristocrat's cited case *P&P Imports LLC v. Johnson Enters.*, 46 F.4th 953, 961 (9th Cir. 2022) analyzed plaintiff's *evidence* of secondary meaning on a motion for summary judgment to consider whether there was a triable issue. The court did not consider whether the plaintiff's *allegations* of secondary meaning were sufficient to survive a motion to dismiss. And indeed, as shown by the cited cases, courts grant motions to dismiss where the allegations of acquired distinctiveness are insufficient or conclusory with no facts regarding the distinctiveness of the specific trade dress.

8

of elements that continuously change and are not even seen until the game has been played. *See supra*; *see also* ECF No. 85, at 9. Like the "nature of a user interface," the nature of the claimed trade dress "makes it difficult to establish that [the] 'primary significance' [of the trade dress] is as a designator of source." *Computer Access Tech. Corp.*, 2001 WL 34118030, at *12.

Finally, and contrary to Aristocrat's mischaracterization of its own allegations (Opp. at 13), Aristocrat has already admitted that "[t]here have been dozens of . . . competitors that have offered 'Hold & Spin' games, ***some of which incorporate visually similar elements***" to Aristocrat's trade dress. FAC ¶ 111 (emphasis added). The admitted use by third parties of elements that are "visually similar" to elements of Aristocrat's trade dress makes it all the more implausible that the trade dress elements, such as the hold and spin bonus feature, are or can be source identifiers. *See, e.g.*, *Sunlighten, Inc. v. Finnmark Designs, LLC*, 595 F. Supp. 3d 957, 970 (D. Nev. 2022) (finding no acquired distinctiveness where no evidence that use of trade dress was exclusive). For all of these reasons, Aristocrat has failed to plausibly plead distinctiveness of its trade dress. Consequently, the trade dress claim should be dismissed.

### 2. Aristocrat Fails To Plausibly Allege Its Trade Dress Is Non-Functional

Aristocrat's Opposition merely rehashes its conclusory allegations that the individual elements of its alleged trade dress are non-functional. Opp. at 6-7. Although the FAC includes a conclusory allegation that Aristocrat's "competitors use a wide variety of alternative design elements for their competing games"[8] (FAC ¶¶ 47, 148), the FAC fails to include any factual allegations that address the other remaining functionality factors such as "utilitarian advantage, . . . and economies in manufacture or use." *See Limo Hosting, Inc. v. Fiks*, No. C 08-2474 BZ, 2008 WL 11395585, at *2 (N.D. Cal. Dec. 18, 2008) (granting motion to dismiss where "factual allegations of non-functionality addressing such factors as utilitarian advantage, availability of alternative designs, and economies in manufacture or use" were "missing"). Where, as here, the

---

[8] Aristocrat points to other games that use alternative design elements, which obfuscates the fundamental issue that there are a myriad of games that use the same elements claimed as Aristocrat's trade dress (*see, e.g.*, FAC ¶ 111), rendering Aristocrat's use non-exclusive and not a source identifier.

9

non-functionality allegations are conclusory and incomplete, courts routinely grant dismissal. *See id.*; *see also e.g.*, *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSx), 2015 WL 12731929, at *5 (C.D. Cal. May 8, 2015) (granting motion to dismiss because "Plaintiff does not support its conclusory allegation that the Bailey Button Boot Trade Dress is non-functional in the complaint"); *DO Denim, LLC v. Fried Denim*, 634 F.Supp.2d 403, 408 (S.D.N.Y. 2009) (dismissing trade dress claim because "[t]he Amended Complaint includes a conclusory assertion that the Dragon Design is 'unique and nonfunctional,' but proffers no factual allegations demonstrating that the design is not aesthetically or otherwise functional ... [or] allegations as to whether protecting the Dragon Design ... would put competitors at a significant non-reputation-related disadvantage").

But even if Aristocrat had alleged something more, elements of the trade dress are plainly functional. *See* ECF No. 85, at 12-13 (discussing functional elements of Aristocrat's trade dress). For example, elements such as the "tiered list of gaming jackpots and bonuses" and a prize amount that "appears against a black background" (FAC ¶ 28) are similar to the user interface trade dress in *Computer Access* that had "colorized, segmented horizontal bars which display data," which the court held was functional because the "screen display is used to show test data in a format that is easy to read by engineers testing and developing computer peripherals" and the horizontal bars were "a highly useful format for displaying data." *See Computer Access Tech. Corp.*, 2001 WL 34118030, at *10-11. Aristocrat nevertheless argues that L&W's "dissection of individual aspects of the trade dress is improper" because "nonfunctionality considers the trade dress as a whole, not on the basis of individual elements." Opp. at 8 (citing cases). Even so, Aristocrat has still failed to allege non-conclusory facts supporting a finding that its "particular combination and arrangement" of the individual elements of its alleged trade dress "are not themselves functional." *See Computer Access Tech. Corp.*, 2001 WL 34118030, at *11 (finding plaintiff failed to meet its burden of showing non-functionality of its graphical user interface).

Aristocrat's non-functionality cases are inapposite because the trade dresses at issue in those cases were totally dissimilar. *See Globefill Inc. v. Elements Spirits, Inc.*, 473 F. App'x 685,

10

686 (9th Cir. 2012) ("skull [bottle] design"); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1256 (9th Cir. 2001) ("billiard halls"); *Radical Prod., Inc. v. Sundays Distrib.*, 821 F. Supp. 648, 650 (W.D. Wash. 1992) ("a clear bottle with two distinctively colored tanning gels"); *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 415 (D.N.J. 2012) (defining the trade dress as "the brightly-colored Tetriminos, which are formed by four equally-sized, delineated blocks, and the long vertical rectangle playfield, which is higher than wide"). Although *Tetris* involved a video game, the trade dress claim was "not based on the ***game play*** as is its copyright allegations, but instead based on the manner in which [defendant's game] advertised and packaged its game to potential users, which could potentially cause confusion as to whether [defendant's game] was an authorized iteration of *Tetris*." *Tetris Holding, LLC*, 863 F. Supp. 2d at 415 (emphasis added). In contrast to *Tetris*, Aristocrat's trade dress claim is based on the alleged similarity of the ***content*** (i.e., game play) of L&W's Jewel of the Dragon game. *See* FAC ¶¶ 75, 81-88, 149. Accordingly, because Aristocrat has failed to plausibly plead non-functionality, the motion to dismiss should be granted.

### 3. Aristocrat Fails To Plausibly Plead Likelihood of Confusion

Aristocrat fails to plausibly plead a likelihood of confusion because, like the Dragon Link games, the bonus feature in Jewel of the Dragon games is not visible until a player stakes a wager and plays the game, if then. *See* ECF No. 85, at 13; FAC ¶ 82 (describing the features of Jewel of the Dragon bonus feature when "first activated" and "in progress"); *Spin Master v. Aciper*, No. 19-CV-6949 (VSB), 2022 WL 992888, at *5 (S.D.N.Y. Apr. 1, 2022) (finding "no possibility" of confusion existed because consumer would not see the mark until after making a purchase). None of the allegations cited in Aristocrat's Opposition show that "customers can and do see the Jewel of the Dragon bonus feature *before* they stake a wager and play the game," as Aristocrat argues. *See* Opp. at 14 (citing FAC ¶¶ 89, 93, 96). Nor can Aristocrat amend to plead this fact because it would be implausible for a so-called "bonus" to be awarded to players *before* the game is played.

Aristocrat complains that L&W focuses only on individual elements of the games, instead of "looking at the trade dress as a whole." Opp. at 14. But that complaint illustrates the problem

with the asserted trade dress: A consumer cannot look at it as a whole because it never appears "as a whole," and it may never even appear in pieces while playing Aristocrat's game if the bonus is not triggered.[9] FAC ¶ 113.

### C. ARISTOCRAT SHOULD NOT BE GRANTED LEAVE TO AMEND

At the end of its Opposition, Aristocrat requests leave to amend if the Court grants the Motion. Opp. at 19. Because Aristocrat has already had one opportunity to amend its Complaint and still fails to state a claim for trade dress infringement, and because Aristocrat cannot amend the Complaint to state a claim as a matter of law, dismissal with prejudice is appropriate. *See, e.g.*, *Donohue v. Newkirk*, No. 2:07-cv-00270-BES-RJJ, 2008 WL 11451305, at *5 (D. Nev. Aug. 4, 2008) ("[W]here the plaintiff has previously filed an amended complaint, as in this case, the Court's discretion to dismiss without leave to amend is 'particularly broad.'").

## III. CONCLUSION

For the foregoing reasons, Count III of Aristocrat's FAC should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

---

[9] Equally implausible is Aristocrat's argument that a customer would see the Jewel of the Dragon bonus feature before they stake a wager and play the game via L&W's website and mobile apps (Opp. at 14), and any customer that did so would not be confused as to the source of the games because they would be on Aristocrat's platforms. And the chance that a customer happens to see all of the trade dress elements on a game played by another player (*id.*) is similarly implausible and could not result in any post-sale confusion. *See, e,g.*, *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, No. CV 06-6245 AHM (SSx), 2007 WL 4973852, at *14 (C.D. Cal. Aug. 17, 2007) (finding post-purchase confusion "unlikely" where it was "unlikely that many people would see a significant number of" people wearing the parties' respective clothing).

Respectfully submitted,

Dated: September 13, 2024

CAMPBELL & WILLIAMS

By: */s/ Philip R. Erwin*
PHILIP R. ERWIN, ESQ. (11563)
710 South Seventh Street
Las Vegas, Nevada 89101

JONES DAY

HAROLD K. GORDON, ESQ.
(*pro hac vice*)
RANDALL E. KAY, ESQ.
(*pro hac vice*)
ANNA E. RAIMER, ESQ.
(*pro hac vice*)

*Attorneys for Defendants*
*Light & Wonder, Inc., LNW Gaming, Inc.,*
*and SciPlay Corporation*

13

# CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of September, 2024, I caused a true and correct copy of the foregoing **Defendants' Reply in Support of Partial Motion to Dismiss Count III of Plaintiffs' First Amended Complaint** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

/s/ *Philip R. Erwin*
An employee of Campbell & Williams