JONES DAY
HAROLD K. GORDON, ESQ. (*pro hac vice*)
hkgordon@jonesday.com
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

CAMPBELL & WILLIAMS
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

SUSMAN GODFREY
NEAL S. MANNE, ESQ. (*pro hac vice*)
nmanne@susmangodfrey.com
JOSEPH S. GRINSTEIN, ESQ. (*pro hac vice*)
jgrinstein@susmangodfrey.com
ROCCO MAGNI, ESQ. (*pro hac vice*)
rmagni@susmangodfrey.com
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Attorneys for Defendants*
*Light & Wonder, Inc., LNW Gaming, Inc.,*
*and SciPlay Corporation*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Defendants. | CASE NO.: 2:24-cv-00382-GMN-MDC <br><br> **DEFENDANTS' EMERGENCY MOTION FOR PARTIAL MODIFICATION OF PRELIMINARY INJUNCTION ORDER** |

Pursuant to Local Rule 7-4, Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (collectively, "L&W") respectfully request the Court to modify, by two weeks, the October 23, 2024, deadline to complete two narrow aspects of the Information Technology requirements of the Order Granting Preliminary Injunction (ECF No. 125, "Order"[1]).

## I. **INTRODUCTION**

L&W has dismissed its appeal and is focusing all of its attention and resources on fully complying with the Court's Order. Through exhaustive efforts across the entire company, L&W does not seek *any* relief as to the Order's deadline for certifying compliance as to the requirement to withdraw Dragon Train (in-person and online). Similarly, L&W does not seek *any* relief from the deadline for certifying compliance with the prohibition against using or disclosing Plaintiffs' Alleged Trade Secrets, or the continued or planned sale, leasing, or other commercialization of Dragon Train.

On the Information Technology side, as explained in the supporting declaration of L&W's Chief Information Security Officer, L&W has secured all central repositories where documents, source code, software, or other aspects of Dragon Train game math documentation reside, as well as individual work stations from relevant members of the game studio that developed Dragon Train. (Decl. of Kevin Kealy in Supp. Mtn. for Partial Modification ("Kealy Decl.") ¶ 7.) L&W has also instructed all relevant employees company-wide that they cannot access Dragon Train game math documentation in any way. (*Id.*) Other than for purposes of assisting L&W's counsel and outside experts in work necessary to comply with the Order, L&W personnel no longer have any access to such documentation. (*Id.*)

Unforeseen technical and logistical issues on certain Information Technology aspects, however, warrant a short two-week extension limited to the Order's requirements to search for, secure, and account for responsive materials within the company. With the assistance of an outside expert that L&W retained to assist with the company's compliance with the Order, L&W developed a comprehensive, forensically sound process—including custom computer programming scripts

---

[1] All references to the PI Order include the Court's clarification order entered on September 27, 2024. (ECF No. 136.)

1

that needed to be written for this purpose—to securely and permanently remove responsive materials from all locations where they are found, while capturing information required by L&W's accounting obligations under the Order. (*Id.* ¶¶ 8-10; PI Order at 20-21.) In the course of executing this protocol in a forensically sound manner across all applicable file locations worldwide, including individual workstations, L&W has encountered unforeseen technical challenges and logistical issues outside of its control. L&W currently anticipates that fully executing this process will require a two-week extension of the deadline for this aspect of compliance with the Order. Accordingly, L&W provides this update and respectfully requests a narrow modification of the Information Technology portions of the Order, as explained below.

## II.     RELEVANT BACKGROUND

On September 23, 2024, this Court entered the Preliminary Injunction Order. (ECF No. 125.) The Order enjoins L&W from using or disclosing any of Plaintiffs' alleged trade secrets identified in the Order, or other alleged confidential and proprietary information relating to the mathematical design of Dragon Link and Lightning Link ("Plaintiffs' Alleged Trade Secrets"). (*Id.* at 20.) The Order also enjoins L&W from any continued or planned sale, leasing, or other commercialization of Dragon Train, as well as any current or planned game development efforts that would involve the use or disclosure of Plaintiffs' Alleged Trade Secrets. (*Id.*) Finally, the Order requires L&W to search for, secure, and provide accountings for any documents in its possession, custody, or control reflecting Plaintiffs' Alleged Trade Secrets, and for any disclosures of Plaintiffs' Alleged Trade Secrets. (*Id.* at 20-21.)

Since the Order issued, L&W has been diligently working to comply with the Order's requirements. L&W does not seek ***any*** extension of the deadline to withdraw Dragon Train (in-person and online games), and L&W will be able to certify compliance with the aspects of the injunction directed at the use or disclosure of Plaintiffs' Alleged Trade Secrets.

L&W also has already secured all central repositories where documents, source code, software, or other aspects of Dragon Train game math documentation. (Kealy Decl. ¶ 7.) Individual work stations from relevant members of the game studio that developed Dragon Train are already secured, and all relevant employees company-wide have been instructed that they

1    cannot access Dragon Train math files in any way. (*Id.*)  Other than for purposes of assisting
2    L&W's counsel and outside expert in work necessary to comply with the Order, L&W personnel
3    no longer have any access to such documentation. (*Id.*)

4           To satisfy the Order's requirements to search for, secure, and account for potentially
5    responsive documents, L&W promptly commenced an exhaustive search of all relevant company
6    servers worldwide. (Kealy Decl. ¶ 8.)  To ensure a forensically sound process, L&W retained
7    James Vaughn, an expert certified by the International Association of Computer Investigative
8    Specialists as a Certified Forensic Computer Examiner. (Kealy Decl. ¶ 6; Decl. of James Vaughn
9    in Supp. Mtn. for Partial Modification ("Vaughn Decl.") ¶¶ 2-4.)  Mr. Vaughn has trained hundreds
10   of law enforcement officers, attorneys, and other examiners on computer forensics and high-
11   technology related issues involving best practices and methodologies. (Vaughn Decl. ¶ 2, Ex. A.)
12   Working in conjunction with L&W's Information Technology and Information Security teams, Mr.
13   Vaughn assisted L&W in the development of a methodology to exhaustively search more than 25
14   L&W servers and 47 file repositories in more than 10 countries across the world. (Kealy Decl. ¶¶
15   8-10; Vaughn Decl. ¶ 5.)  This comprehensive effort has involved approximately 45 L&W
16   employees working virtually full-time on injunction compliance, as well as Mr. Vaughn and his
17   team as outside consultants. (Kealy Decl. ¶ 8; Vaughn Decl. ¶ 7.)  Mr. Vaughn and L&W's
18   technical personnel developed a custom script to not only identify any potentially responsive
19   documents—including software and source code—but also to securely and permanently remove
20   and account for all such documents in a forensically sound manner. (Kealy Decl. ¶ 9; Vaughn Decl.
21   ¶ 5.)

22          Executing this comprehensive process requires time.  Some of the searches across entire
23   servers take multiple days to run. (Kealy Decl. ¶ 10; Vaughn Decl. ¶ 6.)  This is a factor of raw
24   server size and speed; it is not something that additional human resources or costs can alter. (Kealy
25   Decl. ¶ 10; Vaughn Decl. ¶ 6.) Currently, L&W and Mr. Vaughn anticipate that the forensic process
26   will be completed within a few days after the October 23 deadline, but additional unforeseen
27   challenges as well as the time needed to verify full completion of the process and finalize the
28   accountings required under the Order may take a small number of additional days. (Kealy Decl. ¶¶

3

10-11; Vaughn Decl. ¶ 8.)

Logistical challenges also complicate the process and require additional time. To supplement the custom script developed to search all known file locations for responsive materials, L&W canvassed all potentially relevant employees worldwide—far beyond the confines of the game studio that developed Dragon Train, and including over 1,000 individuals—to evaluate whether they may have, or know the locations of, material responsive to the PI Order. (Kealy Decl. ¶ 11.) Based on information provided by employees, L&W has been investigating individual workstations and other file locations. (Kealy Decl. ¶ 11.) Completing this individual-by-individual process is currently expected to take a small number of days beyond the October 23 deadline. (*Id.*; Vaughn Decl. ¶ 8.) It is a time consuming, individualized process, and logistical issues and employee absences and leaves need to be accounted for, thus requiring a short period of additional time for comprehensive completion. (Kealy Decl. ¶ 11; Vaughn Decl. ¶ 8.)

Finally, technological challenges arising from the inherently linked data structure of source code storage repositories are anticipated to require work that will continue beyond the current October 23 deadline. In L&W's SciPlay social game business, for example, all Dragon Train games have already been taken down and are unavailable for anyone to play online. (Decl. of Forrest Stowe in Supp. Mtn. for Partial Modification ("Stowe Decl.") ¶ 5.) And all math files and source code potentially responsive to the Court's Order have been secured and are unable to be accessed by anyone (except for purposes of assisting with compliance with the Order). (*Id.* ¶ 6.) Source code *version history*, however, may contain potentially responsive information that needs to be forensically secured, removed, and accounted for, even though nobody is using or will use that information in any way.[2] (*Id.*) Based on how source code version history is maintained in Git repositories[3], a time-consuming, technically challenging process is required to avoid causing

---

[2] While version history of source code could not be used to reverse engineer Plaintiff's alleged trade secrets without significant effort, cost, and experience, L&W includes this potentially responsive source of data out of an abundance of caution to comply with the Court's Order. (Stowe Decl. ¶ 6.)

[3] For source code repositories such as Bitbucket, "Git-based" code and tools are used to facilitate safe data management within the storage system. Redundancies are an important safeguard against data loss, and history of previous versions of any particular source code are integrated across the

4

collateral damage to source code for other online games completely unrelated to Dragon Train. (*Id.* ¶ 7.) Further complicating this technically challenging project, access to individual workstations is required, and the team within L&W's SciPlay division includes individuals in Israel who are currently on leave for religious holidays or on military deployment. (*Id.*) As a result of all these factors, while L&W anticipates being substantially compliant with the Order's requirements as it relates to file identification and removal by the October 23 deadline, a short extension is requested to enable L&W to achieve full compliance by completing its thorough efforts to identify, isolate, and account for potentially responsive material. (*Id.* ¶ 8.)

L&W attempted to resolve this dispute through a meet and confer process with Peter Swanson, Aristocrat's lead counsel, on October 17 and 18, 2024. (Decl. of Harold Gordon in Supp. Mtn. for Partial Modification ("Gordon Decl.") ¶ 3.) Mr. Swanson advised that Aristocrat will take a position on L&W's Motion only after reviewing L&W's arguments and any accompanying evidence. (*Id.*) As such, L&W's counsel has been unable to resolve this matter through meet and confer efforts. (*Id.*)

## III. <u>LEGAL STANDARD</u>

"The district court has the power to supervise compliance with an injunction and to 'modify a preliminary injunction in consideration of new facts.'" *State v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) (quoting *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1096 (9th Cir. 2002)); *see Lapin v. Shulton, Inc.*, 333 F.2d 169, 170 (9th Cir. 1964) ("It is clear that the issuing court has continuing jurisdiction to modify or revoke an injunction as changed circumstances may dictate.").

Like the decision to initially grant or deny a preliminary injunction, whether to modify a preliminary injunction is committed to the Court's discretion. *Language Line Servs., Inc. v. Language Servs. Assoc's., Inc.*, 500 Fed. Appx. 678, 680 (9th Cir. 2012); *see Sys. Fed'n. No. 91 v. Wright*, 364 U.S. 642, 647-48 (1961) (holding that a district court has "wide discretion" to modify an injunction based on changed circumstances or new facts").

---

platform, such that source code relating to a previous, obsolete version of one game could appear in and be intermingled with key source code relating to another game—even if that code has no relevance or function with the other game. (*See* Stowe Decl. ¶ 7, n.1.)

5

## IV. ARGUMENT

L&W is working around the clock to comply with the Court's Order, and anticipates timely reporting of compliance as to the commercial aspects of the injunction. L&W has also implemented robust measures to prevent any further use or disclosure of Plaintiffs' Alleged Trade Secrets. (*See* Kealy Decl. ¶ 7.) L&W has involved an outside expert to develop and deploy a robust, thorough process to comply with the Order's requirements related to L&W's documents and files. (Kealy Decl. ¶¶ 6, 8-10; Vaughn Decl. ¶¶ 2-5.) L&W simply requests sufficient time to fully execute that process in a reliable and permanent way, in light of technological difficulties and logistical complications that could not have been foreseen before the Order was issued, and that are outside of L&W's control.

L&W respectfully requests that the Court grant a narrow modification of its Order to extend for two weeks—through November 6, 2024—the deadline to comply with two aspects of the Order:

- "Search for and identify all documents and materials in its possession, custody, or control reflecting Plaintiffs' Trade Secrets" (Order at 20:19-20); and
- "Isolate all documents and materials identified in its search . . . ." (*Id.* at 20:24-21:3).

As explained herein, and in the supporting declarations, L&W will be in substantial compliance with these requirements by the current deadline of October 23. (*See* Stowe Decl. ¶ 8; Kealy Decl. ¶¶ 10-11; Vaughn Decl. ¶ 8.) And any remaining tasks have nothing to do with any effort to commercialize or profit from Plaintiffs' Alleged Trade Secrets. L&W simply requests a very short extension, through November 6, 2024, to be able to fully complete the process it has retained an outside expert to supervise, in light of technological complexities and logistical difficulties that L&W did not create and could not have been foreseen before the Order was issued or in the early days of L&W's diligent efforts to fully comply with the Order.

Aristocrat will not suffer any prejudice by extending L&W's time to comply with its internal Information Technology tasks. To the contrary, Aristocrat and the Court will be well served by L&W's completion of a thorough, forensically sound process to comply with all of the Order's requirements to search, secure, and account for all documents that may reflect Plaintiffs' Alleged Trade Secrets.

6

## V. **CONCLUSION**

For the foregoing reasons, L&W respectfully requests that the Court grant a two-week extension, up to and including November 6, 2024, limited to the Preliminary Injunction's requirements to "[s]earch for and identify all documents and materials in its possession, custody, or control reflecting Plaintiffs' Trade Secrets" (Order at 20:19-20); and to "[i]solate all documents and materials identified in its search . . . ." (*Id.* at 20:24-21:3).

Dated: October 18, 2024                                     CAMPBELL & WILLIAMS

By: */s/ Philip R. Erwin*
PHILIP R. ERWIN, ESQ. (11563)
710 South Seventh Street
Las Vegas, Nevada 89101

JONES DAY

HAROLD K. GORDON, ESQ.
(*pro hac vice*)

SUSMAN GODFREY

NEAL S. MANNE, ESQ.
(*pro hac vice*)
JOSEPH S. GRINSTEIN, ESQ.
(*pro hac vice*)
ROCCO MAGNI, ESQ.
(*pro hac vice*)

*Attorneys for Defendants*
*Light & Wonder, Inc., LNW Gaming, Inc.,*
*and SciPlay Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October, 2024, I caused a true and correct copy of the foregoing **Defendants' Emergency Motion for Partial Modification of Preliminary Injunction Order** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

　　　　　　　　　　　　　　　　　　　　　/s/ *Philip R. Erwin*
　　　　　　　　　　　　　　　　　　　　　An employee of Campbell & Williams

**INDEX OF EXHIBITS**

| Exhibit No. | Document | Page Nos. |
|---|---|---|
| - | Declaration of Harold Gordon ISO Motion for Partial Modification of Preliminary Injunction Order | 1 – 3 |
| - | Declaration of Kevin Kealy ISO Motion for Partial Modification of Preliminary Injunction Order | 4 – 7 |
| - | Declaration of Jim Vaughn ISO Motion for Partial Modification of Preliminary Injunction Order | 8 – 10 |
| Ex. A to Decl. of J. Vaughn | James D. Vaughn Curriculum Vitae | 11 – 19 |
| - | Declaration of Forrest Stowe ISO Motion for Partial Modification of Preliminary Injunction Order | 20 – 22 |