UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. *et. al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> LIGHT & WONDER, INC. *et. al.*, <br><br> Defendants. | Case No.: 2:24-cv-00382-GMN-MDC <br><br> **ORDER DENYING MOTION TO DISMISS** |

Pending before the Court is a Partial Motion to Dismiss, (ECF No. 85), filed by Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation, (collectively, "L&W"). Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd., (collectively, "Aristocrat"), filed a Response, (ECF No. 101), to which Defendants filed a Reply, (ECF No. 118). Because Plaintiffs properly plead the elements of their trade dress claim, and it is not precluded by copyright law, the Court **DENIES** Defendants' Motion to Dismiss.

I.  **BACKGROUND**

Aristocrat and L&W are competitors in the electronic gaming space, and this case arises out of actions allegedly taken by L&W to copy Aristocrat's game design and underlying math algorithms. (*See generally* First Am. Compl. ("FAC"), ECF No. 72). Aristocrat developed two popular games, Dragon Link and Lightning Link. (*Id.* ¶¶ 2–4). Aristocrat alleges that beginning in 2022, L&W engaged in a campaign to copy Dragon Link. (*Id.* ¶ 7).

First, L&W renamed one of its games from Dragon Unleashed to Dragon Unleashed Link. (*Id.*). Next, L&W attempted to copy Dragon Link with the creation of a game called Jewel of the Dragon, which had similar sounds, animation, and artwork. (*Id.* ¶ 8). Even though

Jewel of the Dragon looked similar, it "failed to capture the unique player experience created by the underlying Dragon Link math." (*Id.* ¶ 9). So, L&W developed a second game, Dragon Train. (*Id.*). Emma Charles, the lead developer of Dragon Train, was a former Aristocrat game designer, and Aristocrat alleges that she used her confidential Dragon Link knowledge to create Dragon Train with similar gameplay and math. (*Id.* ¶ 10). L&W's Dragon Train launched successfully in Australia, and after the present action commenced, L&W launched Dragon Train in the United States. (*Id.*).

L&W brought its first Motion to Dismiss all of Aristocrat's claims, and the Court dismissed Aristocrat's trade dress claim and deceptive practices claim with leave to amend. (Order Granting in Part First Mot. Dismiss, ECF No. 65). Aristocrat amended its Complaint and again brings multiple claims against L&W for (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Nevada Uniform Trade Secrets Act, NRS § 600A.030, (2) infringement of Aristocrat's copyright in Dragon Link audiovisual elements in violation of the Copyright Act, (3) federal false designation of origin, unfair competition, and trade dress infringement under 15 U.S.C. § 1125(a), (4) trade secret misappropriation in violation of NRS § 600A.030, and (5) deceptive trade practices in violation of NRS §§ 41.600, 598.0915. (FAC ¶¶ 126–70). L&W filed the instant Partial Motion to Dismiss Counts Three and Five of the FAC, but later filed a Notice of Withdrawal Without Prejudice the Partial Motion to Dismiss as to Count Five, (ECF No. 92).

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*,

550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.   DISCUSSION

Aristocrat alleges that the Dragon Link Trade Dress distinguishes their games from others in the market, and that L&W's use of a similar variation has caused consumer confusion that L&W's games are affiliated with Aristocrat. (FAC ¶¶ 146–49).  The Dragon Link Trade Dress is comprised of the "Dragon Link Standard Logo, Dragon Link Jackpot Display, Dragon Link Orb Design, and Dragon Link Hold & Spin Design." (*Id.* ¶ 45).  These features are encountered by consumers when they interact with the Dragon Link games, and they are visible on casino floors, online, and in advertising. (*Id.*).  L&W moves to dismiss Aristocrat's trade dress infringement claim on the premise that Aristocrat failed to plausibly plead distinctiveness, non-functionality, and likelihood of consumer confusion, and because the claim is precluded by copyright law. (*See generally* Partial Mot. Dismiss).

### A.  Elements of Trade Dress

To state a claim for trade dress infringement, a plaintiff must allege "(1) that its claimed trade dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001),

### 1. Non-Functional

"A product feature is functional and cannot serve as a trademark if the product feature is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995). "In evaluating functionality as well as the other elements of a trade dress claim, it is crucial that [courts] focus not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards, Inc,*, 251 F.3d at 1259. Courts evaluate several factors to determine whether trade dress is functional: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *See Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998). "[T]he ultimate issue on functionality is whether [plaintiffs'] 'particular integration of elements leaves a multitude of alternatives to the . . . industry that would not prove confusingly similar to' its trade dress." *Clicks Billiards*, 251 F.3d at 1261 (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir.1991), *aff'd*, 505 U.S. 763 (1992)).

Aristocrat alleges that the various elements of the Dragon Link Trade Dress are not essential to the operation or design of its slot machine game, but rather represent one of countless design options to distinguish Dragon Link games from the competitors. (FAC ¶ 47). The Dragon Link Standard Logo identifies the Dragon Link product, the Orb Design provides the games "with a consistent, recognizable look and feel," and the Jackpot Display and Hold & Spin Designs are "a collection of fanciful and arbitrary elements that contribute to the Dragon Link games' distinctive look and feel." (*Id.*). L&W moves to dismiss on the grounds that Aristocrat's conclusory allegations are insufficient, and that many of the elements of its alleged

trade dress are functional, such as the tiered list of jackpots and bonuses, Hold & Spin feature, and game rules. (Partial Mot. Dismiss 12:15–13:6).

L&W's first argument that allegations in paragraph 47 of the FAC are conclusory would be well taken if the FAC lacked supplementary details. But paragraphs 29 through 34 include additional factual allegations and descriptions of the Trade Dress at issue, and these allegations are sufficient so as not to be conclusory. The FAC asserts that the trade dress elements are arbitrary visual choices, leaving a "multitude of alternatives" for competitors to choose in their own game design. It lists what those design choices are and explains why these choices do not impact actual gameplay or serve a utilitarian advantage. For example, the Dragon Link Orb Design consists of gold orbs surrounding by a fiery outline that appear in various locations throughout the game. (FAC ¶ 29). Competitors could choose any other symbol to replace the gold orb. And the Hold & Spin Design Trade Dress in the FAC does not refer to the functionality of the bonus game itself, but rather to aesthetic choices such as the gold orb used as a bonus symbol, the single large gold orb directly above the reels, the bursting flame flares and accompanying gong sound initiated when the bonus amounts are tallied, and the coin shower graphic. (*Id.* ¶ 34).

L&W notes that the prize amounts and tiered list of jackpots and bonuses are functional, which the Court does not dispute.[1] (*See* Partial Mot. Dismiss 12:19–22). The tiered list has a clear purpose of informing the player about the available jackpot and bonus amounts. But Aristocrat focuses most of its Jackpot Display Trade Dress claim on the colors and design of this list, not the list itself. (*See* FAC ¶ 28) (including the outline of each list level by a gold orb, the prize amounts appearing in the same color as their corresponding jackpot title, black background, gold outline on the jackpot names and prize amounts, and background image that

---

[1] The list of "functional elements" noted in L&W's motion, "including the symbol sets, pay tables, game rules, and bonus features" are not listed by Aristocrat as part of its trade dress, but rather as examples of the ways in which Dragon Train seems to replicate the Dragon Link. (*See* FAC ¶ 114).

fades to black). Additionally, the Ninth Circuit has explained that even if certain elements, considered in isolation, are functional, the issue "is whether, taken as a whole, the overall look and feel" is functional. *Clicks Billiards*, 251 F.3d at 1259. Aristocrat has thus sufficiently pled that the overall look and feel of Aristocrat's trade dress is not functional, but aesthetic.

### 2. Source-Identifying Role and Distinctiveness

Moving to the second element, Aristocrat alleges that the trade dress "has acquired distinctiveness through its widespread use and success and its association with Aristocrat." (FAC ¶ 49). Aristocrat's advertising heavily features the trade dress, and it is recognized by players at casinos and on mobile applications. (*Id.*). L&W argues that Aristocrat has not plausibly alleged that its trade dress has acquired distinctiveness because its claimed elements are part of the game functionality, the trade dress elements change and are not seen until the game is played, Aristocrat's advertisements do not include every trade dress element, and that other competitors use a similar Hold & Spin feature. (Partial Mot. Dismiss 8:18–23, 9:11–14, 10:1–4, 10:17–24).

A mark acquires distinctiveness, "even if it is not inherently distinctive, if it has developed secondary meaning." *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211 (2000). Secondary meaning exists when "in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself." *Inwood Labs v. Ives Labs*, 456 U.S. 844, 851 n.11 (1982). Secondary meaning is "a mental recognition in buyers' and potential buyers' minds that products connected with the [trade dress] are associated with the same source." *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980). Secondary meaning can be established in a variety of ways, including "direct consumer testimony; survey evidence; exclusivity, manner, and length of use of mark; amount and manner of advertising; amount of sales and number of customers;

established place in the market; and proof of intentional copying by the defendant." *P & P Imports LLC v. Johnson Enterprises, LLC*, 46 F.4th 953, 961 (9th Cir. 2022).

Following the factors provided by the Ninth Circuit, the Court finds that Aristocrat has plausibly alleged that its trade dress serves a source-identifying role. First, Aristocrat alleges that consumers recognize the trade dress, such as the gold orbs, and cites favorable reviews from gaming reviewers, including one stating that the "Dragon Link jackpot brand has long been a favorite among slot machine fanatics." (FAC ¶¶ 54–55, 59–62). Second, Aristocrat includes allegations as to the exclusivity, manner, and length of use of mark. The Dragon Link Trade Dress has been used exclusively and continuously since 2017. (*Id.* ¶¶ 22, 26, 45–46). In casinos, the game cabinets prominently show design features that make the Dragon Link games recognizable and distinctive. (*Id.* ¶ 26). The Court must take these allegations as true, and they go against L&W's argument that the trade dress is constantly changing and not visible unless the games are being played.

Third, Aristocrat alleges that it has spent millions of dollars on advertising featuring the trade dress, including social media and online search advertising, and casino and apparel promotions. (*Id.* ¶¶ 49–52). Although L&W cites *First Brands* for the proposition that that promotional activities must "involve all aspects of the trade dress," the *First Brands* court explained only that the "ads must feature in some way the trade dress itself." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987). Aristocrat provides examples of its ads, which do indeed feature the Dragon Link Trade dress elements such as the gold orb and Dragon Link logo. (*See* FAC ¶¶ 50–52). Unlike the plaintiff in *First Brands*, who did not attempt to create consumer connections with its yellow jug design by telling consumers to look for the yellow jug in stores, Aristocrat's advertising draws prominent attention to its gold orb designs and logo. In fact, an ad on its website mentions the "beautiful Orb trigger symbol," which "mak[es] it easy to recognize regardless of the game you're enjoying." (*Id.* ¶ 52).

Aristocrat's advertising is therefore relevant to the secondary meaning analysis. *See Dep't of Parks & Recreation v. Bazaar del Mundo Inc.*, 448 F.3d 1118, 1128 (9th Cir. 2006) (a party asserting secondary meaning must demonstrate that its advertising "was 'of a nature and extent such as to create an association of the term with the user's goods.'")

Next, although Aristocrat does not provide details on its sale or customer numbers, it contends that it has an established place in the market, including the placement of thousands of games in more than 35 states. (*Id.* ¶¶ 53, 56). And lastly, the core of this lawsuit is Aristocrat's position that L&W has copied the Dragon Link Trade Dress and underlying game math. (*Id.* ¶¶ 72–84, 90–98). This may also raise an inference of secondary meaning. "In essence, copying operates as a concession that the defendant believes the plaintiff's mark or design has secondary meaning, which in turn proves that it does." *Cont'l Lab'y Prod., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1008 (S.D. Cal. 2000). Aristocrat's factual allegations are sufficient for this stage of proceedings and the Court does not find them to be merely conclusory or part of the game functionality.

### 3. Likelihood of Confusion

"Regardless of how much secondary meaning it possesses, a product's trade dress will not be protected from an imitator that is sufficiently different in its features to avoid such confusion." *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 151 (3d Cir. 1984). Aristocrat alleges that L&W's use of confusingly similar features in Jewel of the Dragon leads players to believe that Jewel of the Dragon was developed by Aristocrat. (FAC ¶¶ 90–91). L&W's only argument for dismissal on this element is that the trade dress elements of the bonus feature would only be visible after a player has staked a wager, and thus would not contribute to a player's confusion. (Partial Mot. Dismiss 13:7–19). Aristocrat responds that L&W is improperly focusing only on individual elements of the trade dress, and that customers

can see the bonus feature without placing a wager via online promotions, videos, advertising, and placement on casino floors. (Resp. 14:1–2).

The Court agrees with Aristocrat. The Ninth Circuit has cautioned courts that "[i]n evaluating functionality *as well as the other elements of a trade dress claim*, it is crucial that [courts] focus not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards, Inc,*, 251 F.3d at 1259 (emphasis added). Although the bonus game trade dress elements may not be displayed to a user until they place a wager, if at all, most of Aristocrat's trade dress elements are visible to a user before the wager is placed. Images in the FAC depict trade dress elements on the game cabinet and signage, as well as on the screen before a wager is placed. Aristocrat's trade dress infringement claim is thus sufficiently pled, so the Court will now determine whether it is precluded by copyright law.

### B. Preclusion by Copyright Law

L&W argues that Aristocrat's trade dress infringement claim is precluded by copyright law because Aristocrat is repackaging its copyright claim and attempting to "shoehorn" it into a Lanham Act claim. (Partial Mot. Dismiss 4:10–13). L&W relies primarily on *Dastar Corp. v. Twentieth Century Fox Film Corp.*, in which the United States Supreme Court explained that the Lanham Act is construed to avoid "over-extension of trademark and related protections into areas traditionally occupied by copyright." 539 U.S. 23, 34 (2003). Aristocrat responds that it may bring both copyright and trademark claims, and that *Dastar* addressed only the narrow question of whether the Lanham Act extended to copying of a communicative work, such as a video or a book. (Resp. 14:13–17, 16:19–22).

Aristocrat's trade dress claim includes the Dragon Link Logo, the gold orbs used throughout the game and in the landscape game topper, the color and style of the tiered bonuses in the Jackpot Display, and the design of the Hold and Spin Bonus feature with flames, gold

orbs, a gong sound, and a coin shower. (FAC ¶¶ 28–34).[2] Aristocrat alleges that L&W's use of a confusingly similar trade dress is likely to cause confusion over whether L&W's products are "sponsored by, approved by, or otherwise affiliated with Aristocrat." (*Id.* ¶ 149).

As an initial matter, Aristocrat is correct that "Plaintiffs may bring claims for copyright and trade dress infringement based on the same wrongful conduct." *Mercado Latino, Inc. v. Indio Prod., Inc.*, 649 F. App'x 633, 634 (9th Cir. 2016); *see also Wal–Mart Stores, Inc.*, 529 U.S. at 208. The Lanham Act protects against another's use of "any word, term, name, symbol, or device, or any combination thereof . . . likely to cause confusion . . . as to the origin . . . of his or her goods . . . ." 15 U.S.C. § 1125(a)(1)(A). This includes a product's "trade dress," which "refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards*, 251 F.3d at 1257 (internal quotation marks and citation omitted). The Lanham Act "created a federal remedy against a person who used in commerce either 'a false designation of origin, or any false description or representation' in connection with 'any goods or services.'" *Dastar*, 539 U.S. at 29.

The crux of the dispute between the parties is whether *Dastar* precludes Aristocrat's trade dress claim because L&W has falsely designated the origin of a "communicative product," or whether Aristocrat's trade dress claim is premised on the allegation that L&W's game has such a similar design that consumers are confused into believing that L&W's game is Aristocrat's. A communicative product is one "that is valued not primarily for its physical qualities, such as a hammer, but for the intellectual content that it conveys, such as a book or . . . a video." *Id.* at 33.

---

[2] Aristocrat's copyright allegations relate to certain "Audiovisual Elements," including artwork, sounds, and animations. (*Id.* ¶ 140). But the FAC notes that the Audiovisual Elements include "many audiovisual elements that are not part of the Dragon Link Trade Dress," such as the base game reel symbols, music, messages, text appearing on the display, and screen layout. (*Id.* ¶ 45 n.3).

In *Dastar*, Fox brought a clam against Dastar, alleging that it copied their television series and repackaged it into its own product, without giving credit to Fox. *See* 539 U.S. at 25–27.  The Court examined the meaning of the phrase "origin of goods," as applied to the claim, and held that the phrase "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.  Thus, because Dastar was the producer of the video being sold, the Court held that it could not be held liable under the Lanham Act for failing to designate the origin of Fox's intellectual property contained within its video series. *Id.* at 37–38.  Other cases cited by L&W similarly dismiss Lanham Act claims based on a defendant producing a creative work without crediting the plaintiff for their intellectual property. *See, e.g., Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*, 170 F. Supp. 3d 1249, 1267 (C.D. Cal. 2016) (dismissing Lanham Act claims because the defendant's advertising use of elements from the film Dirty Dancing did not cause confusion over source of tangible goods offered for sale, but was based on plaintiff's rights to be the exclusive licensor of creative elements such as the phrase, "Nobody puts Baby in a corner"); *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) (affirming dismissal of Lanham Act claims where defendant allegedly used the content of Plaintiff's karaoke tracks without authorization, causing consumer confusion over the source of the content, not a particular "good").

Aristocrat relies on a separate set of Ninth Circuit cases in which the court rejected a defendant's argument that it should be held liable only under the Copyright Act, and not under the Lanham Act. (Resp. 15:3–17:3).  For example, in *Mercado*, the Ninth Circuit explained that the plaintiff was not alleging the defendant had falsely designated the origin of a "communicative product," but rather alleged "a traditional trade dress claim that [defendant's] candles bear a design so similar to [plaintiff's] protected trade dress," that consumers were confused into believing that the defendant's candles were actually the plaintiff's. 649 F. App'x

at 634.  Thus, the court found that the plaintiff could bring its trade dress claim, even though its copyright infringement claim was based on the same set of facts. *Id.*; *see also Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1215 (9th Cir. 2023) (explaining that copyright and trademark claims are not mutually exclusive as applied to Lanham Act claim based on furniture design).

Aristocrat's claim is more like the trade dress claims in *Mercado* and *Jason Scott Collection* because they are focused on consumer confusion over the source of the tangible games, not over the source of the particular audiovisual elements.  *Dastar* permits this cause of action under the Lanham Act, because L&W's alleged similarities to Aristocrat's trade dress is likely to cause confusion as to "the producer of the tangible product sold in the marketplace," not "the person. . .that originated the ideas or communications that 'goods' embody or contain." 539 U.S. at 31–32.  And unlike *Dastar*, the trade dress claim in this case is not based on L&W's alleged plagiarism of Aristocrat's copyrighted creative work.  In its Reply brief, L&W argues that *Mercado* and *Jason Scott Collection* are distinguishable because candles and furniture are not "communicative products," while Aristocrat's audiovisual elements are. (Reply 2:1–7).  But not only does L&W fail to provide case law for the proposition that it is communicative, it overlooks the main point that the confusion arises out of the creator of the slot machine game itself, not the origin of the audiovisual elements.

L&W further relies on two video game cases in which the courts dismissed the plaintiff's Lanham Act claims.  In both cases, the plaintiff created a signature dance move and sued defendant Epic Games for incorporating the dance moves into the game Fortnite without permission. *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 378 (E.D. Pa. 2020); *Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 619 (D. Md. 2020).  The courts agreed with Epic Games that the claims should be dismissed because the plaintiffs alleged that there was confusion over who originated the dance moves, not as to who produced the video game itself.

*Id.* at 385; *Id.* at 630. *Pellegrino* and *Brantley* are thus distinguishable from the trade dress infringement claim here, which is based on alleged consumer confusion as to the producer of L&W's games. (*See* FAC ¶ 149).

### IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Partial Motion to Dismiss, (ECF No. 85), is **DENIED.**

**DATED** this 18 day of November, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT