NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email: nsantoro@spencerfane.com
         jdsmith@spencerfane.com
         tbthomas@spencerfane.com

PETER A. SWANSON
(*pro hac vice*)
GARY M. RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email:   pswanson@cov.com
         grubman@cov.com
         sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-Defendants
Aristocrat Technologies, Inc. and
Aristocrat Technologies Australia Pty Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Plaintiffs/Counterclaim-Defendants, <br> v. <br><br> LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Defendants/Counterclaim-Plaintiffs. | Case No. 2:24-cv-00382-GMN-MDC <br><br> **PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION** <br><br> **(FILED UNDER SEAL)** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    I.    Aristocrat Identified Extensive Evidence of Misappropriation, Including in Connection with Games Other Than Dragon Train. ............................................... 2

    II.    The Requirements of the Preliminary Injunction Order ......................................... 3

    III.    L&W's October 23 Certification and Accountings ................................................ 4

    IV.    L&W's November 6 Certification ........................................................................ 7

ARGUMENT ........................................................................................................................ 8

    I.    L&W Improperly Focused Its Compliance Efforts on Dragon Train Documents. ............................................................................................................. 8

    II.    L&W Failed to Identify Disclosures of Plaintiffs' Trade Secrets with Specificity. ............................................................................................................. 13

    III.    L&W Should Be Required to Pay Aristocrat's Reasonable Fees and Costs. ........ 14

CONCLUSION ................................................................................................................... 14

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Bennett*,
   298 F.3d 1059 (9th Cir. 2002) ...........................................................................................8

*Desirous Parties Unlimited Inc. v. Right Connection Inc.*,
   2022 WL 17417857 (D. Nev. Dec. 5, 2022) ................................................................8, 14

*Shell Offshore Inc. v. Greenpeace, Inc.*,
   815 F.3d 623 (9th Cir. 2016) .............................................................................................14

*United States v. Modina*,
   2016 WL 635028 (D. Nev. Feb. 3, 2016) ......................................................................8, 12

Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. (collectively, "Aristocrat") respectfully submit this motion to enforce the Court's September 20, 2024 preliminary injunction order, ECF No. 125, as clarified by the Court's September 27, 2024 order, ECF No. 136 (together, the "Order"), in light of Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation's (collectively, "L&W") material noncompliance with multiple requirements of that Order.

## INTRODUCTION

For the first year of this trade secret dispute, L&W vehemently denied any wrongdoing. L&W claimed that it "extensively searched both its electronic files and those of the two employees at Aristocrat's request in advance of a parallel proceeding in Australia . . . and did not locate any Aristocrat confidential documents or information." ECF No. 19 at 6. L&W accused Aristocrat of "baselessly leveling trade secret misappropriation claims against the Dragon Train games," ECF No. 85 at 1—which L&W insisted were "the result of years of independent development," ECF No. 19 at 7. But Aristocrat showed that these assertions were untrue, and the Court granted Aristocrat's motion for a preliminary injunction, finding that Aristocrat is "extremely likely" to succeed in demonstrating L&W misappropriated Aristocrat's trade secrets. ECF No. 125 at 16.

Following the Order, L&W's position has shifted again. Unable to credibly dispute that L&W acquired Aristocrat math information from Emma Charles and used that information— indeed, shortly after issuance of the Order, L&W terminated Ms. Charles—L&W now maintains that the misappropriation was essentially limited to Dragon Train. This assumption appears to have undergirded L&W's response to the Order, as L&W has made little effort to comply with the Order's requirements to search for documents reflecting Aristocrat's trade secrets, and to identify every instance in which L&W has disclosed those trade secrets, *outside the context of Dragon Train*. To make matters worse, L&W did not make a reasonable effort to identify which documents and disclosures actually reflect Aristocrat's trade secrets. Instead, L&W provided an accounting of documents—containing ███████████ of entries—that L&W admits includes non-responsive materials (*e.g.*, ████████████████████████████), and L&W provided a deficient accounting of disclosures that incorporates by reference the ███████████████ of

- 1 -

entries in L&W's list of documents, in an impermissible attempt to shift the burden to Aristocrat to identify instances in which L&W disclosed Aristocrat's trade secrets.

L&W's approach does not comply with the Order. The search, isolation, and accounting requirements of the Order are critical to ensure that L&W does not continue to use and disclose Aristocrat's trade secrets while the case is pending. They also are important to allow Aristocrat to understand the full extent of L&W's misappropriation—including the use of Aristocrat's trade secrets in games other than Dragon Train—and, if necessary, to take additional steps to address the resulting irreparable harm. These requirements are not limited to documents and disclosures related to Dragon Train, nor is there any other basis for L&W to have limited its search almost exclusively to such documents and disclosures. Discovery has already revealed evidence—some of which the Court discussed in its Order—showing that L&W's misappropriation extended beyond Dragon Train. And given the history of this dispute, Aristocrat cannot—and should not have to—credit L&W's unsupported assumption that its misappropriation was almost entirely confined to Dragon Train. Nor should Aristocrat have to parse through ██████ of documents that, according to L&W, *may or may not* be responsive to the Court's order, just to understand where and to what extent L&W has used or disclosed Aristocrat's trade secrets.

L&W's claim that it spent substantial time and resources in identifying and isolating Dragon Train math documents is not an excuse for its failure to conduct a reasonable search for *non-Dragon Train* documents. This is especially so since the proliferation of Dragon Train documents is the direct consequence of L&W's aggressive commercialization of Dragon Train *after* Aristocrat put L&W on notice of its concerns. The Court should enforce the preliminary injunction and issue a further order requiring L&W to search for and provide all of the information required by that injunction.

## BACKGROUND

**I.    Aristocrat Identified Extensive Evidence of Misappropriation, Including in Connection with Games Other Than Dragon Train.**

In granting Aristocrat's motion for preliminary injunction, the Court found that Aristocrat was likely to succeed in showing that L&W misappropriated Aristocrat trade secrets. ECF No. 125

at 11–16. The Court cited "persuasive evidence that Aristocrat's Dragon Link trade secrets were used by L&W in the development of Dragon Train," *id.* at 12–13, as well as instances of misappropriation *outside the context of Dragon Train*. These instances include Ms. Charles sending "a worksheet containing confidential information for the Dragon Link base game, to a colleague, for a reverse engineering training exercise." *Id.* at 11. Ms. Charles also shared additional confidential information about Dragon Link in the body of the email attaching that worksheet. *Id.* at 12. And, in Teams messages with another L&W employee—who did not work for Ms. Charles's game studio (Star Studio)—Ms. Charles shared confidential information regarding Dragon Link's Grand Jackpot. *See id.* Those messages ███████████████████████████████████████. ECF No. 52-2 at Appx. 213–20.

## II. The Requirements of the Preliminary Injunction Order

The Order provides that:

> L&W is hereby enjoined, pending a final determination on the merits, from using or disclosing any of Plaintiffs' trade secrets (as described in this Order) or other confidential and proprietary information relating to the mathematical design of Dragon Link and Lightning Link ("**Plaintiffs' Trade Secrets**").

ECF No. 125 at 20 (bold added). The Order also required L&W to:

> A. Search for and identify all documents and materials in its possession, custody, or control reflecting Plaintiffs' Trade Secrets;
>
> B. Provide an accounting that describes with specificity every document identified in its search, including the (i) title, (ii) date, (iii) subject or description, (iv) any sender or recipient, (v) location where found, and (vi) any attachments;
>
> C. Isolate all documents and materials identified in its search so that they cannot be used, accessed, transferred, copied, disseminated, modified, or destroyed (including, if necessary, via suspension of any automated deletion processes and retrieval of any company devices issued to employees); [and]
>
> D. Provide an accounting to Aristocrat's counsel in this case that describes with specificity every instance in which L&W has disclosed Plaintiffs' Trade Secrets, including the (i) name of the person or entity to which the information was disclosed, (ii) date of disclosure, (iii) specific information disclosed, (iv) reason for

disclosure, and (v) all documents or materials reflecting the disclosure.

*Id.* at 20–21.

L&W was required to "file a certificate of compliance with the Order's requirements . . . by Wednesday, October 23, 2024," ECF No. 136 at 2, except that L&W requested and received an extension of time until November 6, 2024, to "[s]earch for and identify all documents and materials in its possession, custody, or control reflecting Plaintiffs' Trade Secrets," and to "[i]solate all documents and materials identified in its search," ECF No. 152.

### III. L&W's October 23 Certification and Accountings

On October 23, 2024, L&W filed its first certification of compliance, relying on two employee declarations (from Kevin Kealy and Siobhan Lane), and L&W served partial accountings of documents and disclosures identified as of that date. ECF No. 154. Both the certification and the accountings suggested that L&W had focused primarily on identifying Dragon Train documents and disclosures of such documents.

Mr. Kealy's declaration stated that L&W had "substantially completed an extensive search for all documents potentially reflecting Plaintiffs' Alleged Trade Secrets," ECF No. 154-2, ¶ 8, and taken steps to ensure that its "personnel do not have any access to *Dragon Train game math documentation.*" *Id.,* ¶ 7 (italics added). But the criteria for that search were limited to terms associated solely with Dragon Train, plus the terms "Dragon Link," "Lightning Link," and "Golden Century" (one of many titles within the Dragon Link family of games). *See id.,* ¶ 10. L&W did not use any other terms—not even the names of Dragon Link or Lightning Link titles other than Golden Century or the abbreviations (*e.g.*, "DL") that L&W employees sometimes use to describe these games—to search for information constituting Plaintiffs' Trade Secrets outside of the Dragon Train game math. *See* Declaration of Peter Swanson ("Swanson Decl."), Ex. A at 1.

Mr. Kealy also stated that "L&W canvassed all potentially relevant employees worldwide to evaluate whether they may have, or know the locations of, materials potentially responsive to the injunction." ECF No. 154-2, ¶ 14. In the course of the parties' meet-and-confers, however, L&W revealed that this canvassing was implemented via ████████

- 4 -

1  ███████████████████████████████████████████████████████████
2  ██████████████████████████████████████████████████████████.
3  Swanson Decl. Ex. B at 2. ████████████████████████████████
4  ████████████████████████. *Id.* at 3. Nothing ██████████████ asked employees about
any of Plaintiffs' Trade Secrets being accessible, disclosed, or used outside the context of Dragon Train. Moreover, it is not clear that this canvassing effort included any follow-up investigation with Ms. Charles, whom L&W terminated within days of the Court issuing the Order,[1] even though such follow-up would have been an obvious next step to determine the extent of the misappropriation and to ensure L&W's compliance with the Order.[2]

Ms. Lane's declaration followed a similar pattern. That declaration stated that "L&W has stopped all development work on current or future Dragon Train games using *the existing Dragon Train mathematical designs*" and that L&W's "new game concepts will not use any *Dragon Train math documentation*." ECF No. 154-1, ¶¶ 5–6 (italics added). Ms. Lane did not, however, attest that L&W had ceased use of Plaintiffs' Trade Secrets in any other form.[3] Importantly, neither Ms. Lane nor Mr. Kealy averred that L&W's use and disclosure of Plaintiffs' Trade Secrets had been limited to Dragon Train, and, as discussed above, the limited evidence L&W has provided to date shows that the misappropriation is not so confined.

L&W's October 23, 2024 accounting of instances in which it disclosed Plaintiffs' Trade Secrets was likewise limited. Every disclosure listed in the accounting ████████████████,

---

[1] *See* Statement of Matt Wilson, L&W President and CEO, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0000750004/8e60ac80-6bb9-4dfa-9300-bae0981bda1f.pdf.

[2] L&W's counsel has indicated that ████████████████████████████████████ ████████████. *See* Swanson Decl. Ex. C at 1–2.

[3] Similarly, Ms. Lane's declaration stated that "[g]ame developers working on the mathematical design for [a Dragon Train successor] did not work on the mathematical design or development of any *Dragon Train games*, and were not exposed to, and did not access, any *Dragon Train game math documentation*," ECF No. 154-1, ¶ 6 (italics added), but did not attest that these game developers had not been exposed to Plaintiffs' Trade Secrets in any other form.

1  except for the disclosures of confidential Dragon Link game math by Ms. Charles that were
2  addressed in the preliminary injunction motion. *See* Swanson Decl. Ex. D (LNW_029459).

3        L&W also stated that "potentially responsive disclosures may be identified" by referencing
4  information provided in its accounting of *documents* reflecting Plaintiffs' Trade Secrets. *See id.*
5  Exs. J (L&W's Oct. 23, 2024 accounting, cover pleading, p. 3), F at 2–3. That accounting,
6  however, encompassed ▮▮▮▮▮▮▮ of documents, including many that appear facially non-
7  responsive to the Order (e.g., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), making it infeasible to
8  identify which documents truly reflect Plaintiffs' Trade Secrets. *See, e.g., id.* Exs. G
9  (LNW_009773), H (LNW_000410), I (LNW_009774). Moreover, this accounting did not comply
10 with other aspects of the Order, as it did not include descriptions of the specific information
11 disclosed and the reason for disclosure of Plaintiffs' Trade Secrets, as the Order requires for the
12 accounting of disclosures. *See* ECF No. 125 at 21.

13       Notably, L&W did not disclose any instances in which L&W personnel accessed Plaintiffs'
14 Trade Secrets, including Dragon Train math documentation, outside of disclosures by emails or
15 other messages. The accounting also did not list any instances in which L&W may have verbally
16 disclosed Plaintiffs' Trade Secrets, nor did L&W identify any steps it had taken to search for such
17 disclosures. In a subsequent communication, L&W claimed not to be aware of a single instance in
18 which Ms. Charles or anyone else verbally disclosed any of the trade secrets. *See* Swanson Decl.
19 Ex. K at 3. Moreover, even though the accounting identified ▮▮▮▮▮▮▮▮▮▮ that
20 contained documents reflecting Aristocrat's trade secrets, L&W did not identify individuals who
21 accessed the information stored ▮▮▮▮▮.

22       On October 25, 2024, counsel for Aristocrat contacted counsel for L&W and explained
23 Aristocrat's significant concerns over the apparent deficiencies in L&W's compliance with the
24 Order. Swanson Decl. Ex. L at 1. In its response to that letter and the parties' subsequent meet-
25 and-confer discussions, L&W generally asserted in conclusory terms that it had complied with the
26 Order but provided no information indicating that L&W's compliance efforts had extended
27 significantly beyond Dragon Train. *Id.* Ex. K at 1–3. Indeed, L&W referred back to the declarations
28 it had submitted and argued that there was "[n]o basis" to search for Plaintiffs' Trade Secrets with

any non-Dragon Train terms besides "Dragon Link," "Lightning Link," and "Golden Century." *Id.* at 2.

### IV.   L&W's November 6 Certification

On November 6, 2024, L&W filed its supplemental certification of compliance, relying on further declarations from Ms. Lane and Mr. Kealy, as well as a new declaration from James Vaughn, a consultant retained by L&W. ECF No. 155. L&W's supplemental certification and declarations still failed to explain what, if anything, it had done to search and account for instances where L&W possessed, used, or disclosed Plaintiffs' Trade Secrets outside of Dragon Train documents and explicit references to Dragon Link, Lightning Link, and Golden Century.

L&W also provided a supplemental accounting of documents on November 6. While that supplement somewhat narrowed the list of documents identified in L&W's initial accounting, it also added ▮▮▮▮▮▮▮ of new entries, again including many that appeared facially non-responsive to the Order. Swanson Decl. Ex. F at 2 (confirming that L&W included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in its supplemental accounting). L&W did not update its accounting of disclosures except to reiterate that potentially responsive disclosures may be identified by refencing information provided in L&W's (now exponentially expanded) accounting of documents.[4]

After receiving the November 6 supplemental accounting, counsel for Aristocrat again reached out to counsel for L&W and reiterated Aristocrat's concerns about L&W's deficient compliance. *Id.* Ex. M at 1–2. In response, L&W generally repeated its previous arguments that its compliance efforts were sufficient without providing material new information about what more, if anything, L&W had done to identify non-Dragon Train documents reflecting Plaintiffs' Trade Secrets.[5] *Id.* Ex. F at 1–4. L&W also refused to correct its accounting of disclosures. *Id.* at 3.

---

[4] L&W has not produced the vast majority of the documents identified in its November 6 supplemental accounting, and has in fact not produced any new documents since September 15, 2024.

[5] Although L&W's counsel asserted that "L&W's search consisted of more than just the ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ discussed here," L&W failed to explain what else it did to identify non-Dragon Train documents. Swanson Decl. Ex. F at 1.

**ARGUMENT**

"A district court has the inherent power to enforce its orders through civil contempt." *Desirous Parties Unlimited Inc. v. Right Connection Inc.*, 2022 WL 17417857, at *2 (D. Nev. Dec. 5, 2022), *aff'd*, 2023 WL 4285504 (9th Cir. June 30, 2023) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). "A finding of civil contempt is proper when a party disobeys a specific and definite court order by failing to take all reasonable steps within his or her power to comply." *United States v. Modina*, 2016 WL 635028, at *3 (D. Nev. Feb. 3, 2016) (citing *Go-Video, Inc. v. Motion Picture Ass'n of America*, 10 F.3d 693, 695 (9th Cir. 1993)). "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (citing *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

L&W failed to take all reasonable steps within its power to comply with the Order in at least two ways. *First*, L&W improperly focused its compliance efforts on Dragon Train documents and disclosures, even though discovery has already revealed that the trade secret misappropriation at issue was more widespread, and did not take reasonable steps to investigate the extent to which L&W personnel may have accessed, disclosed, or used Plaintiffs' Trade Secrets in other contexts. *Second*, L&W improperly relied on its overbroad document accounting to serve as an accounting of disclosures, making it infeasible for Aristocrat to determine the true extent to which Plaintiffs' Trade Secrets have been disclosed by L&W.

**I.    L&W Improperly Focused Its Compliance Efforts on Dragon Train Documents.**

The Court's Order required L&W to "[s]earch for and identify all documents and materials in its possession, custody, or control reflecting Plaintiffs' Trade Secrets," to "describe[] with specificity every document identified in its search," to "[i]solate all documents and materials identified in its search," and to "describe[] with specificity every instance in which L&W has disclosed Plaintiffs' Trade Secrets." ECF No. 125 at 20–21. These requirements are critical to ensure that L&W ceases all use and disclosure of Plaintiffs' Trade Secrets during the pendency of this case, to understand the extent of L&W's misappropriation, and to mitigate the risk of further

- 8 -

irreparable harm to Aristocrat. As the Order makes clear, "Plaintiffs' Trade Secrets" are not limited to documents that concern Dragon Train or that explicitly refer to Dragon Link, Lightning Link, or Golden Century, but rather encompass the trade secrets "described in this Order" and "other confidential and proprietary information relating to the mathematical design of Dragon Link and Lightning Link" regardless of the form in which that information appears. ECF No. 125 at 20. L&W's search efforts, however, have singularly focused on Dragon Train documents and on explicit mentions of Dragon Link, Lightning Link, and Golden Century. That does not comply with either the letter or the spirit of the Order.

As an initial matter, L&W does not appear to dispute that the Order required L&W to search for documents and disclosures outside the context of Dragon Train. Nor could it, given that L&W's use and disclosure of Plaintiffs' Trade Secrets has extended beyond Dragon Train. In the Order, the Court cited evidence that Ms. Charles shared information constituting Plaintiffs' Trade Secrets with other L&W employees outside of the context of Dragon Train development. *See* ECF No. 125 at 11–12; ECF No. 52-2 at Appx. 199, 217. L&W has also produced other documents that may evidence dissemination of Plaintiffs' Trade Secrets outside the context of Dragon Train, including, for example, ▮▮▮▮▮▮▮▮▮▮▮▮ *See* Swanson Decl. Ex. N (LNW_025606) at 1, 3.[6]

In addition, the sheer volume of L&W's accounting shows that information relating to Dragon Train—and thus potentially reflecting Plaintiffs' Trade Secrets—was widely disseminated throughout L&W before the preliminary injunction took effect. This is consistent with the common industry practice of re-using the math underlying a successful game like Dragon Train and underscores the significant risk that L&W further disseminated and used Plaintiffs' Trade Secrets

---

[6] L&W's October 23 accounting of documents included ▮▮▮▮▮▮▮. Although L&W's counsel has suggested these files may have been included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. F at 2, this underscores L&W's haphazard approach to the accountings, and it confirms the need for further investigation into the scope of the misappropriation.

in the wake of Dragon Train's success. *See also* ECF No. 52-1 at Appx. 7 (¶ 17), Appx. 10–11 (¶¶ 30–33).

L&W's use of only three search terms—Dragon Link, Lightning Link, and Golden Century—to identify non-Dragon Train documents is patently insufficient. As the evidence submitted in connection with Aristocrat's preliminary injunction motion demonstrates, information constituting Plaintiffs' Trade Secrets can be used or disclosed without any explicit reference to the names of specific games. *See, e.g.*, ECF No. 80 at Appx. 58, 60–63 (ARIST_00006909 and ARIST_00004279, both calculation files for Dragon Link Golden Century, contain no explicit references to Dragon Link, Lightning Link, or Golden Century). The trade secrets at issue include mathematical information, such as weightings and probabilities, that can be copied without the use of labels like "Dragon Link"—which is exactly what Ms. Charles did in her work for L&W. *See* ECF No. 125 at 14 (describing similarities between the Dragon Link spreadsheet and the "Inception Conception" spreadsheet). Although the briefing on the preliminary injunction motion provided numerous examples of specific Aristocrat math information that L&W had copied or otherwise used, L&W apparently made no effort to search for such information in preparing its accountings.

Even as to game names, L&W's decision to limit its search to Dragon Link, Lightning Link, and Golden Century was not reasonable because Dragon Link and Lightning Link are game families that each encompass multiple titles with a similar underlying mathematical design. *See* ECF No. 52-1 at Appx. 133–34 (¶¶ 31–33). Indeed, L&W's own accounting of documents contains references to other titles besides Golden Century. *See, e.g.*, Swanson Decl. Ex. E (excerpts of LNW_033224 at rows 23896 (█████████), 23898 (█████████████), and 23899 (█████████)). Moreover, the limited discovery L&W provided prior to the grant of the preliminary injunction indicated that L&W uses abbreviations (e.g., "DL" and "LL") to refer to these games. *See, e.g.*, Swanson Decl. Ex. O (LNW_014038) at 1 (referring to ████████████ Nonetheless, L&W did not include these abbreviations in its searches, even though ███████████████████████████████████████████████████

|   |   |
|---|---|
| 1 | L&W's canvassing of employees does not cure its inadequate searches. As explained, that |
| 2 | canvassing was implemented via ▮▮▮▮▮ that was facially deficient. ▮▮▮▮▮ |

L&W's canvassing of employees does not cure its inadequate searches. As explained, that canvassing was implemented via ▮▮▮ that was facially deficient. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, this ▮▮▮ would not have identified which of these employees possessed or had used or disclosed information constituting Plaintiffs' Trade Secrets in other forms. Swanson Decl. Ex. B at 2–3.

L&W's failure to conduct a reasonable search for instances of use or disclosure beyond Dragon Train is particularly troubling given that none of the witnesses who submitted declarations pursuant to the Order purported to represent that L&W's misappropriation was limited to Dragon Train. Nor could any such representation be credited given that L&W has known of Aristocrat's concerns of misappropriation since at least *September 2023*, ECF No. 52-2 at Appx. 223–74, yet repeatedly failed to identify or acknowledge the significant evidence of misappropriation in L&W's own files until the preliminary injunction took effect. For example, L&W previously represented that:

- "L&W extensively searched both its electronic files and those of [Ms. Charles and Lloyd Sefton] in advance of a parallel proceeding in Australia . . . and did not locate any Aristocrat confidential documents or information," ECF No. 19;

- "L&W has confirmed that [documents produced in the Australian proceeding, including worksheets evidencing misappropriation] were generated independently by L&W's employees and that they do not contain any Aristocrat confidential information," ECF No. 52-2 at Appx. 298–99; and

- "It is abundantly clear that L&W has not received, accessed or misused any [confidential] Aristocrat documents," ECF No. 90 at Appx. 94–100.

L&W has also repeatedly—and incorrectly—represented to this Court that Aristocrat's claims were "baseless," and that L&W had "independently developed" Dragon Train without using any Aristocrat information. *E.g.*, ECF No. 19 at 5, 7; ECF No. 34 at 2; ECF No. 41 at 11; ECF No. 77 at 1, 4, 5, 7; ECF No. 85 at 1. In addition, just days before the hearing on Aristocrat's

- 11 -

preliminary injunction motion—and notwithstanding the extensive evidence of misappropriation included in Aristocrat's briefing—L&W served responses to requests for admission repeatedly denying that L&W or Ms. Charles had Aristocrat documents, or documents adapted or derived from Aristocrat documents, within their possession, custody, or control; that information from Aristocrat documents was used to develop Dragon Train; and that Ms. Charles disclosed such information to other employees at L&W. *See* Swanson Decl. Ex. P at 4–10. These denials—which L&W still has not corrected—raise significant doubt about the sufficiency of L&W's diligence efforts prior to making representations to the Court and to Aristocrat. All the while, L&W continued to aggressively commercialize Dragon Train—including propagating the game to other jurisdictions and online—thereby perpetuating and compounding the significant risk that Aristocrat's trade secrets would be widely disseminated throughout the company. *See* ECF No. 77 at 5–6.

Against this backdrop, L&W cannot simply assume—and has given Aristocrat and the Court no reason to believe—that its misappropriation was confined to (a) Dragon Train and (b) the three disclosures by Ms. Charles that were discussed in the preliminary injunction briefing. Given the significant risk that Aristocrat's trade secrets have been disseminated more broadly within the company and could potentially be used to develop other games, L&W's unilateral decision to limit its searches to Dragon Train-related terms and explicit references to Dragon Link, Lightning Link, and Golden Century falls well short of "tak[ing] all reasonable steps within [its] power to comply" with the Order. *See Modina*, 2016 WL 635028, at *3. Nor does the time and expense that L&W expended on the searches excuse L&W's materially flawed approach—particularly where that time and expense is the direct result of its decision to move full steam ahead with Dragon Train in the face of this trade secret dispute.

The Court should (again) order L&W to "search for and identify all documents and materials in its possession, custody, or control reflecting Plaintiffs' Trade Secrets," to describe and isolate those documents, and to "describe[] with specificity every instance in which L&W has disclosed Plaintiffs' Trade Secrets," whether or not those documents, materials, and disclosures

1  relate to Dragon Train or explicitly mention Dragon Link, Lightning Link, or Golden Century. *See*
2  ECF No. 125 at 20.

## II. L&W Failed to Identify Disclosures of Plaintiffs' Trade Secrets with Specificity.

L&W's accounting of disclosures of Aristocrat's trade secrets is inadequate for an additional reason. Although L&W's accounting of documents now contains ▮▮▮ of entries, suggesting widespread dissemination of those trade secrets throughout the company, its accounting of disclosures identified only ▮▮▮ ▮▮▮ and two entries for known instances, previously revealed through discovery in this case, where Ms. Charles shared Dragon Link game math in writing with other L&W employees. *See* Swanson Decl. Ex. D (LNW_029459). Given the widespread dissemination of Dragon Train information, not to mention other documents that may reflect Aristocrat's trade secrets but were not detected in L&W's searches, it is not plausible that ▮▮▮ accounts for "every instance in which L&W has disclosed Plaintiffs' Trade Secrets," as required by the Order. *See* ECF No. 125 at 21. For example, it is simply not credible to suggest that, despite the math files being available on ▮▮▮ ▮▮▮, not a single L&W employee actually accessed those files ▮▮▮. Yet L&W's accounting of disclosures does not identify each instance in which the files were accessed ▮▮▮, as required by the Order.

L&W cannot excuse its anemic accounting of disclosures with a generic statement incorporating by reference the ▮▮▮ of entries that make up its accounting of documents. The Order required L&W to provide these two accountings as separate and distinct obligations. *Id.* at 20–21. The Order also required L&W to describe instances of disclosure "with specificity," including by describing the "specific information disclosed" and "reason for disclosure"—two fields not included in L&W's accounting of documents. *See id.* There is good reason for these requirements: It is imperative for Aristocrat to understand the extent of L&W's misappropriation and with whom Plaintiffs' Trade Secrets may have been shared, so that Aristocrat can take additional steps to prevent irreparable harm while this case is pending. For example, if

the trade secrets were shared with someone in another L&W game studio (*i.e.*, outside of Ms. Charles's game studio), it would be necessary to investigate any use of the trade secrets by that game studio to develop games, including games that may currently be on the market.

Aristocrat should not have to parse through ▮▮▮▮▮▮▮▮▮▮ of entries in L&W's document accounting, which may or may not actually reflect Plaintiffs' Trade Secrets, to deduce that information. L&W should be required to comply with the Order and provide an accounting that "describes with specificity every instance in which L&W has disclosed Plaintiffs' Trade Secrets, including the (i) name of the person or entity to which the information was disclosed, (ii) date of disclosure, (iii) specific information disclosed, (iv) reason for disclosure, and (v) all documents or materials reflecting the disclosure." ECF No. 125 at 21.

### III.  L&W Should Be Required to Pay Aristocrat's Reasonable Fees and Costs.

In addition to the other relief requested herein, Aristocrat respectfully requests that L&W be ordered to pay Aristocrat's reasonable fees and costs incurred in attempting to enforce compliance with the Order, including by bringing the instant motion. *See, e.g.*, *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) ("A court may wield its civil contempt powers for two separate and independent purposes: (1) to coerce the defendant into compliance with the court's order; and (2) to compensate the complainant for losses sustained.") (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)); *Desirous*, 2022 WL 17417857, at *5 (finding that awards of attorney's fees are appropriate in situations of civil contempt) (quoting *Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc. v. Multistate Legal Stud., Inc.*, 26 F.3d 948, 953 (9th Cir. 1994)). Aristocrat is prepared to submit an accounting of such fees and costs within ten days of the Court's order.

### CONCLUSION

For the foregoing reasons, Aristocrat respectfully requests that the Court enforce the preliminary injunction and issue a further order requiring L&W to (1) fully comply with the terms of the Order, including by conducting a reasonable search for Plaintiffs' Trade Secrets in any form; (2) provide amended or supplemental accountings that describe with specificity the results of that search, including the specific information required by the Order; and (3) file an updated

certification of compliance within 14 days of the Court's further order.  The Court also should award Aristocrat its reasonable fees and costs incurred in connection with enforcing compliance with the Order.

Dated:  November 21, 2024                         /s/  *Jason D. Smith*

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email:  nsantoro@spencerfane.com
            jdsmith@spencerfane.com
            tbthomas@spencerfane.com

PETER SWANSON
(*pro hac vice*)
GARY RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW, Washington, DC 20001
Tel.:  (202) 662-6000
Email:  pswanson@cov.com
            grubman@cov.com
            sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-Defendants Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of November 2024, a true and correct copy of the foregoing **PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION (FILED UNDER SEAL)** was served electronically via electronic mail to the addresses of the listed counsel below. In addition, pursuant to LR IA 10-5(d) and LR IC 4-1(c), a courtesy copy was sent via U.S. Mail to the following:

Harold K. Gordon, Esq.
Randall E. Kay, Esq.
Anna E. Raimer, Esq.
**JONES DAY**
250 Vesey Street
New York, New York 10281
Email:
hkgordon@jonesday.com
rekay@jonesday.com
aeraimer@jonesday.com

Philip R. Erwin, Esq.
**CAMPBELL & WILLIAMS**
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Email:
pre@cwlawlv.com

Neal S. Manne, Esq.
Joseph S. Grinstein, Esq.
Rocco Magni, Esq.
SUSMAN GODFREY
1000 Louisiana, Suite 5100
Houston, Texas 77002
Email: nmanne@susmangodfrey.com
       jgrinstein@susmangodfrey.com
       rmagni@susmangodfrey.com

*Attorneys for Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation*

/s/ *Marissa Vallette*
An employee of Spencer Fane LLP