1  NICHOLAS J. SANTORO
   (Nevada Bar No. 532)
2  JASON D. SMITH
   (Nevada Bar No. 9691)
3  TYLER B. THOMAS
   (Nevada Bar No. 16637)
4  **SPENCER FANE LLP**
   300 South 4th Street, Suite 1600
5  Las Vegas, Nevada 89101
   Tel.: (702) 408-3400
6  Email: nsantoro@spencerfane.com
          jdsmith@spencerfane.com
7         tbthomas@spencerfane.com

8  PETER A. SWANSON                    ZIWEI SONG
   (*pro hac vice*)                    (*pro hac vice*)
9  GARY M. RUBMAN                      **COVINGTON & BURLING LLP**
   (*pro hac vice*)                    Salesforce Tower
10 SIMEON BOTWINICK                    415 Mission Street, Suite 5400
   (*pro hac vice*)                    San Francisco, CA 94105-2533
11 **COVINGTON & BURLING LLP**         Tel.: (415) 591-6000
   One CityCenter                      Email: ksong@cov.com
12 850 Tenth Street, NW
   Washington, DC 20001
13 Tel.: (202) 662-6000
   Email: pswanson@cov.com
14        grubman@cov.com
          sbotwinick@cov.com
15
   *Attorneys for Plaintiffs/Counterclaim-Defendants*
16 *Aristocrat Technologies, Inc. and*
   *Aristocrat Technologies Australia Pty Ltd.*
17

18                    **UNITED STATES DISTRICT COURT**

19                          **DISTRICT OF NEVADA**

20 | ARISTOCRAT TECHNOLOGIES, INC. and
21 | ARISTOCRAT TECHNOLOGIES           Case No. 2:24-cv-00382-GMN-MDC
   | AUSTRALIA PTY LTD.,
22 |                                   **REPLY IN SUPPORT OF PLAINTIFFS'**
   |         Plaintiffs/Counterclaim-Defendants,  **MOTION TO ENFORCE**
23 |                                   **PRELIMINARY INJUNCTION**
   |    v.
24 | LIGHT & WONDER, INC., LNW GAMING,
   | INC., and SCIPLAY CORPORATION,    **ORAL ARGUMENT REQUESTED**
25 |
   |         Defendants/Counterclaim-Plaintiffs.     **(REDACTED)**
26
27
28

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 3

I.  L&W Did Not Take Reasonable Steps to Search for Aristocrat's Trade Secrets Beyond Dragon Train. ................................................................................................................... 3

II. L&W's Accounting of Disclosures Is Deficient. ............................................................ 8

III. Discovery Is No Substitute for Compliance with the Preliminary Injunction. .............. 11

CONCLUSION ...................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bank of Am., N.A. v. Immel*,
　2010 WL 2380877 (N.D. Cal. June 11, 2010) ............................................................................9

*E. W. Bank v. Shanker*,
　2021 WL 3112452 (N.D. Cal. July 22, 2021) ...........................................................................9

*GoTo.com, Inc. v. Walt Disney Co.*,
　202 F.3d 1199 (9th Cir. 2000) ........................................................................................... 6, 12

1  Aristocrat filed its motion to enforce the Court's preliminary injunction order (the "Order") because it was clear that L&W had not made a reasonable effort to search for documents and disclosures reflecting Aristocrat's trade secrets outside the context of Dragon Train. As Aristocrat noted, there is a "significant risk that Aristocrat's trade secrets have been disseminated more broadly within [L&W] and could potentially be used to develop other games." ECF No. 158 at 12. Since Aristocrat filed the motion, discovery has revealed additional evidence of misappropriation that bears out Aristocrat's concern.

On November 30, L&W stated in a cryptic email that ▓▓▓▓▓▓▓▓▓▓▓▓ ECF No. 174-2, Ex. A. "▓▓▓▓▓▓" was a significant understatement. ▓▓▓▓▓▓▓▓▓▓▓▓ See Ex. U.[1] So far, L&W has produced at least ▓▓▓▓▓▓▓▓▓▓▓▓ See Swanson Decl. ¶ 11; Ex. Q at 1; ECF No. 174 at 11. In other words, contrary to L&W's prior assurances, ▓▓▓▓▓▓▓▓▓▓▓▓.

Notably, L&W came across the ▓▓▓▓▓▓ file in connection with searches that *Aristocrat* asked L&W to run as part of discovery—not as a result of any ongoing effort to comply with the Order. This file, which does not explicitly reference Dragon Train, Aristocrat, or any Aristocrat game, would not have hit on L&W's search terms and apparently was not identified through its facially deficient employee questionnaire. L&W's "far-reaching investigations across the company" and "manual review of the most relevant repositories," ECF No. 174 at 18— activities touted in the opposition but conspicuously unsubstantiated through any sworn testimony or other evidence—likewise apparently failed to detect ▓▓▓▓▓▓

---

[1] Exhibits Q–Z are attached to the Declaration of Peter Swanson accompanying this reply.

███████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████.

L&W's response to this troubling evidence is that mistakes happen. *See id.* at 1 ("confirming perfection at a global enterprise level is impossible"). But the belated discovery of the ██████████ files demonstrates that, as Aristocrat explained *before* learning of this evidence, L&W's search protocols were structurally flawed from the outset. Simply put, L&W created a protocol that was unlikely to identify instances where Aristocrat's confidential math information has been shared or used to develop L&W games beyond Dragon Train without indicating the origin of the information. In some ways, this is the worst-case scenario from Aristocrat's perspective, as such documents carry an especially high degree of risk that, notwithstanding the preliminary injunction, they will continue to be used or shared by L&W employees who may have no way to know that the underlying math came from Aristocrat.

L&W's other response amounts to an offer to address on a rolling basis any further evidence of misappropriation that arises during discovery, thereby shifting the burden to Aristocrat to ensure that L&W complies with the Order. That is backwards. Nothing in the Order suggests that L&W's identification of non-Dragon Train documents and disclosures should be limited to those that *Aristocrat* identifies through discovery. L&W's suggestion also overlooks that it has been dragging its feet for months in providing discovery on these very issues and has yet to correct false discovery responses served *months* ago (despite multiple requests to do so). The purpose of the accountings was to quickly—and accurately—identify the extent to which Aristocrat's trade secrets have spread throughout L&W so that appropriate steps can be taken to lock down the Aristocrat information in L&W's possession and prevent further harm to Aristocrat. L&W's "wait and see" approach is particularly inappropriate given that, shortly after the Court enjoined commercialization of Dragon Train, L&W announced that it already was working on a new version of the game; that this "Dragon Train 2.0" game will be developed by ████████████ ██████████████████ (a representation that cannot be squared with L&W's failure to properly search and account for the dissemination of those trade secrets throughout the company); and that it expects to launch this new game in a matter of months. ECF No. 154-1 ¶ 6; Ex. Y.

There is another problem with L&W's approach of assuming compliance unless proven otherwise: it requires a significant level of trust that L&W has not earned. L&W does not deny that it repeatedly—and incorrectly—asserted that it had no confidential Aristocrat documents or information and that it had "independently developed" Dragon Train. *See* ECF No. 158 at 11–12 (citing examples). L&W has now admitted that three sworn declarations, which L&W submitted to this Court and relied on to perpetuate a fictitious narrative, were not ▮▮▮▮▮ (albeit without ▮▮▮▮▮). ECF No. 170 at 2. And shortly before the ▮▮▮▮▮ issue emerged—but after L&W submitted its "certification of compliance" to the Court (which it has not yet corrected)—L&W represented that it was "not aware of any use of Aristocrat's alleged trade secrets in any 'L&W games other than Dragon Train.'" ECF No. 158, Ex. F at 2. L&W now wants to be taken at its word that its misappropriation of Aristocrat trade secrets did not extend beyond Dragon Train and ▮▮▮▮▮. *See* Ex. S at 2. But given the history of this case—and the conspicuous lack of evidentiary support in L&W's opposition—Aristocrat cannot and should not have to uncritically accept L&W's representations.

L&W also has no credible excuse for relying on its *document* accounting to satisfy the separate requirement that L&W account for all *disclosures* of Aristocrat trade secrets. This requirement was intended to generate a reliable list of individuals and entities who received or accessed those trade secrets, which will be critical for numerous reasons, not the least of which is to evaluate L&W's assertions with respect to the development of "Dragon Train 2.0." That objective is not plausibly served by a document accounting that spans ▮▮▮▮▮ of files, including admittedly non-responsive files, and that does not include the specificity required by the Order. This is yet another way in which L&W has failed to comply with the Order.

**ARGUMENT**

I.  **L&W Did Not Take Reasonable Steps to Search for Aristocrat's Trade Secrets Beyond Dragon Train.**

L&W does not dispute that the preliminary injunction extends beyond Dragon Train documents and encompasses "Plaintiffs' Trade Secrets"—defined as the specific trade secret information "described in [the] Order" and "other confidential and proprietary information relating

- 3 -

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  to the mathematical design of Dragon Link and Lightning Link," ECF No. 125 at 20—regardless
2  of the form in which that information appears. ECF No. 158 at 8–9. L&W also does not deny that
3  the Aristocrat information at issue can be shared—and in fact has been shared within L&W—
4  without reference to Dragon Link, Lightning Link, or Golden Century. *See* ECF No. 158 at 10.
5  Yet L&W admits that the search terms it used "to identify files and folders responsive to the Order"
6  exclusively focused on Dragon Train and explicit mentions of Dragon Link, Lightning Link, and
7  Golden Century. ECF No. 174 at 7–8 & n.3. L&W further admits that it canvassed employees
8  using a questionnaire that identified respondents as "likely to have relevant information," *id.* at 16
9  n.5, ▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮, ECF No. 158-1 at Appn. 015. ▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at Appn. 016, ▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* at Appn. 017.
14        As explained in the motion to enforce, these search protocols were facially insufficient to
15 identify responsive documents and disclosures. ECF No. 158 at 8–11. This is clear from the
16 troubling documents L&W produced after Aristocrat filed the motion. As discussed above, ▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
23 ▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████

Significantly, L&W did not discover these documents as part of its preliminary injunction compliance efforts, ECF No. 174 at 3, for the simple reason that it was not looking for them. The only reason L&W discovered them was because it ran search terms that *Aristocrat* proposed months ago in connection with discovery. *See* Ex. Z at 1. This demonstrates that L&W could have (and should have) done more to search for documents and disclosures unrelated to Dragon Train. By improperly designing its search process to focus on Dragon Train and on explicit mentions of Dragon Link, Lightning Link, and Golden Century—L&W created a significant risk that it would miss (and, indeed, did miss) some of the most problematic documents: those containing Aristocrat's game math without any indication that it came from Aristocrat. L&W's attempts to distract from this critical noncompliance should be rejected.

*First*, L&W contends it chose to limit its "Aristocrat search terms" to Dragon Link, Lightning Link, and Golden Century because the Order referenced those titles, ECF No. 174 at 14, but the Order is clear that the trade secrets at issue relate to the *underlying mathematical design of the games*, not their titles. *See* ECF No. 125 at 1. L&W knows this, just as it knows that Aristocrat's game math has already been disseminated through L&W via files that do not reference Dragon Train, Dragon Link, Lightning Link, or Golden Century. L&W has no excuse for unilaterally cabining its compliance processes to Dragon Train and to explicit mentions of three Aristocrat titles when the Order expressly recognized—and the evidence continues to bear out—that L&W's misappropriation was not so limited.

*Second*, L&W argues that its searches "were not limited to 'explicit' mentions of the games" because its remediation process captured "related" files, such as subfolders and other documents in the same location as a responsive folder name. ECF No. 174 at 14. But L&W admits that its search terms were still the gating criteria—*i.e.*, "a file, folder, or drive would have to contain one of these terms at some point in the file pathway for the search to identify it." *Id.* at 14. In other words, L&W's search protocol was not designed to identify instances where L&W personnel used and disclosed Aristocrat trade secrets without mentioning one of the search terms "at some point

1  in the file pathway"—███████████████████████████████████████

2  ████████████████████████████████.[2]

3     *Third*, L&W's attempt to fault Aristocrat for not proposing additional search terms is

4  legally improper and factually unsupported. *See* ECF No. 174 at 15. It is not Aristocrat's burden

5  to tell L&W how to comply with the preliminary injunction. *See, e.g.*, *GoTo.com, Inc. v. Walt*

6  *Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000) ("[T]he rule in this circuit [is] that the plaintiff

7  should not be held to answer the infringer's subjective assertion that it cannot understand how best

8  to comply with an injunction."). And L&W's insinuation that Aristocrat "at no point . . .

9  suggest[ed] specifically how L&W could have searched better" because "Aristocrat did not want

10 L&W to focus down on specific math," ECF No. 174 at 15, is simply incorrect. Aristocrat proposed

11 search terms months ago, in the discovery context, that were designed to identify certain of the

12 Aristocrat game math at issue. Ex. Z at 1; Ex. T at 1–2. L&W offers no explanation for why it did

13 not (or could not)[3] use these search terms as part of its injunction compliance process. Its decision

14 not to do so—even though Aristocrat's search terms have been successful in identifying

15 misappropriation documents in the discovery context—is telling.[4]

16    *Fourth*, L&W's assertion that it "supplemented its search with targeted investigations,"

17 ECF No. 174 at 16, does not withstand scrutiny. In defense of its employee questionnaire, L&W

18 argues that asking about Dragon Train "is a logical first step" and suggests that it did not know

19 how to ask more broadly about Aristocrat's trade secrets outside of Dragon Train. *Id.* at 16–17.

20 The questionnaire itself belies these arguments, as it ████████████████████████

---

21 [2] There is also no logical or factual support for L&W's argument that "the terms [it] used were sufficient" simply because its accounting happens to include some documents referencing other
22 Aristocrat titles, such as Genghis Khan and Peacock Princess. *See* ECF No. 174 at 15. L&W offers no evidence that its search protocols were designed to capture *all* references to other Aristocrat
23 titles, much less what the Order actually required—*i.e.*, to identify all documents and disclosures reflecting Plaintiffs' Trade Secrets *regardless* of any reference to specific titles.

24 [3] Although the search terms are highly confidential (as they reflect Aristocrat trade secrets) and
25 cannot be shared with L&W employees, L&W's outside counsel and vendor could have run the terms without disclosing them to L&W, just as they are doing in connection with discovery.

26 [4] To be clear, the use of search terms alone is insufficient to identify all documents reflecting the trade secrets at issue. For example, the Aristocrat-provided search terms that led to the discovery
27 of ████████████████████ consist of specific numerical values. *See* Ex. Z at 1. If L&W made immaterial changes to these values in a document, the search terms would not hit on the document,
28 even though it would still reflect the use of Aristocrat's trade secrets.

████████████████████████████████

1  ████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████. ECF No. 158-1 at Appn. 015–17.

4         L&W also asserts that it took unspecified steps to "target[] individuals and groups at L&W where information on [Aristocrat's] trade secrets were most likely to be found" and "to find other sources . . . that its keyword searches may not have identified." ECF No. 174 at 16. The lack of detail is notable, as is the fact that L&W cites no evidence to support these assertions. In similar fashion, L&W asserts that it "conducted town hall meetings with its employees . . . to enlist their help in identifying potentially responsive files," *id.* at 16, but L&W cites only an email between counsel that provides no information about how these town halls were conducted or who attended, and that says nothing about L&W using the town halls to identify files potentially responsive to the Order. *See* ECF No. 158-1 at Appn. 005–06. L&W's other descriptions of supplemental compliance efforts—its "range of tailored investigations," "manual review" by counsel, and running down of unspecified "leads" from unidentified employees, ECF No. 174 at 17–18—likewise lack evidentiary basis, as the sole source L&W cites for these assertions is the declaration of a third-party consultant who describes only compliance processes focused on (1) L&W's search terms, (2) Star Studio, and (3) ██████. ECF No. 174-1 at 3. If anything, that declaration—and the failure of L&W's compliance process to reveal the use of Aristocrat's trade secret information in ██████—only confirm that L&W failed to reasonably and proactively search for all instances of Plaintiffs' Trade Secrets that may have proliferated beyond Dragon Train.

        It is clear that L&W could have more effectively complied with the Order. After Aristocrat filed the motion to enforce, L&W represented that it would "████████████████████████████████████████████" (but without specifying how). Ex. Q at 2. And just a few days ago, L&W stated ████████████████████████████████████████████████████████████ Ex. S at 2. Yet L&W refuses to provide math documentation for games developed by individuals exposed to Aristocrat trade secrets, and L&W has not even committed to providing the math documentation for ██████. *See id.* at 2–3.

While Aristocrat welcomes the steps L&W has proposed, they do not go nearly far enough to rectify L&W's noncompliance. Accordingly, in addition to L&W taking the steps promised in its informal correspondence, the Court should issue an order granting the other relief set forth in the proposed order attached hereto. This relief includes (a) running Aristocrat's math-related search terms across all custodians identified in a revised accounting of disclosures (discussed in Section II below) and all servers that contain game math or design and development documents; (b) conducting an investigation into all L&W games on which anyone exposed to Plaintiffs' Trade Secrets worked; (c) recanvassing L&W employees using a questionnaire that prompts respondents to identify any use of Plaintiffs' Trade Secrets outside of Dragon Train; and (d) producing the math documentation for any games on which employees exposed to Plaintiffs' Trade Secrets worked, so that Aristocrat can assess if L&W's misappropriation extended to those games.[5]

## II.   L&W's Accounting of Disclosures Is Deficient.

L&W does not dispute that the Order required two separate accountings—one to describe with specificity every *document* reflecting Plaintiffs' Trade Secrets, and one to describe with specificity every instance in which L&W *disclosed* Plaintiffs' Trade Secrets. *See* ECF No. 125 at 20–21. L&W also does not deny that it relied on its overbroad accounting of documents to double as its accounting of disclosures, outright omitting two fields ("specific information disclosed" and "reason for disclosure") that were required for disclosures and leaving it to Aristocrat to parse through ▓▓▓▓▓▓ of documents (the vast majority of which L&W has not yet produced) to deduce information that the Order required L&W to provide, including whether or not each entry in the document accounting actually reflects information constituting Plaintiffs' Trade Secrets. *See* ECF No. 158 at 13–14. Thus, although nearly two months have passed since L&W's compliance deadline, Aristocrat still has no way to reliably identify

---

[5] This relief is important because (i) Aristocrat trade secrets have clearly spread throughout L&W; (ii) L&W has proven that it is unable or unwilling to ascertain the extent of its misappropriation; and (iii) search terms and canvassing are unlikely to identify all uses of the trade secrets (*e.g.*, if L&W made minor modifications). There should be little burden associated with this request as L&W has already provided the final math documentation to regulators or testing labs for released games and can readily produce the latest math documentation for unreleased games.

1  individuals or entities that actually received or accessed its trade secrets, undermining a primary
2  objective of the accounting requirement.
3        Further, despite the apparently widespread dissemination of Aristocrat trade secrets within
4  the company, it is undisputed that L&W provided no accounting whatsoever of any verbal
5  disclosures, nor did it identify employees who had access to responsive documents on L&W
6  servers, including employees who may have looked at a document without downloading or
7  otherwise receiving a copy. *See* ECF No. 158 at 13; ECF No. 174 at 18–19. There is no question
8  that L&W is capable of doing so. In its December 17, 2024 letter, counsel for L&W agreed to
9  "████████████████████████████████████████████████████████████████
10 ████████████████████████████████████" Ex. S at 2. There is no reason why L&W could not do
11 the same for all documents that reflect Plaintiffs' Trade Secrets, as required by the Order. L&W's
12 failure to do so is a violation of the Order, and none of L&W's arguments show otherwise.
13       L&W misses the mark with its contention that "communications between [its] employees
14 would not constitute disclosures under trade secret law because the information is not being
15 disclosed to third parties." ECF No. 174 at 19. The Order required L&W to account for all
16 disclosures of Plaintiffs' Trade Secrets regardless of whether the disclosure was to a third party or
17 to other L&W employees. ECF No. 125 at 21. There is good reason for this: a key component of
18 both L&W's misappropriation (whether styled as "use" or "disclosure") and the resulting
19 irreparable harm to Aristocrat is the unauthorized dissemination of Aristocrat's information among
20 L&W employees. *See, e.g.*, *Bank of Am., N.A. v. Immel*, 2010 WL 2380877, at *2 (N.D. Cal. June
21 11, 2010) (issuing temporary restraining order on trade secret claims based in part on the "serious
22 threat that the information will be . . . disclosed to other [defendant's] employees"); *E. W. Bank v.*
23 *Shanker*, 2021 WL 3112452, at *12 (N.D. Cal. July 22, 2021) (granting preliminary injunction in
24 part because "Defendants' continued use and possession of [plaintiff's] Confidential Information
25 substantially increases the risk of further disclosure"). Indeed, L&W itself included on its
26 accounting of disclosures internal communications between employees that had previously been
27 revealed through discovery, belying any suggestion that L&W understood the Order to refer solely
28 to disclosures outside the company. ECF No. 158-1 at Appn. 025.

 L&W also attempts to defend its failure to account for verbal disclosures by asserting that, "[t]o the best of [its] knowledge, there have been *no* verbal disclosures of Aristocrat's trade secrets." ECF No. 174 at 19. Notably, L&W offers no evidence—or even a bare assertion—of the basis for its supposed "knowledge," and does not state what, if anything, it did to search for such disclosures in the first place. Rather, L&W's arguments suggest it simply assumed that such disclosures must not exist because "L&W avoids discussing game math with others as a general matter, plus the alleged trade secrets at issue here are, by nature, difficult to communicate verbally." *Id.* at 18–19. This assertion is both unsupported by any sworn attestation and contrary to other evidence, including the fact that ████████████████████████████████████████ ████████████████████████████████████████████████████████████████. *See* ECF No. 158 at 9; ECF No. 158-1 at Appn. 088, 090. L&W simply ignores this evidence.

 L&W admits that it previously failed to identify Aristocrat information in its possession, ECF No. 174 at 19, and does not deny that it repeatedly made erroneous representations to this Court, *see* ECF No. 158 at 11–12. L&W nevertheless suggests the Court should credit its representations and dismiss Aristocrat's concerns, simply because L&W has withdrawn the ████████ declarations of Emma Charles and William Soo, ECF No. 169. L&W neglects to mention that it only recently filed that notice of withdrawal on December 5, 2024—*months* after L&W itself produced documents contradicting those declarations and *months* after L&W terminated Ms. Charles. L&W also again ignores that the Order required it to affirmatively search and account for documents and disclosures reflecting Plaintiffs' Trade Secrets, and to certify its compliance. ECF No. 125 at 21. L&W's insistence that it should now be allowed to *assume* misappropriation did not occur, and that Aristocrat and the Court should simply credit that assumption, cannot be squared with record evidence or with the plain language of the Order.

 Accordingly, as set forth in the Proposed Order attached hereto, L&W should be ordered to provide a standalone accounting (*i.e.*, one that does not incorporate by reference the accounting of documents) that describes with specificity every instance in which L&W has disclosed Plaintiffs' Trade Secrets, including all of the information set forth in paragraph D on page 21 of the Order. In creating this accounting, L&W should be required to take all reasonable steps in its

power to (a) limit the accounting to disclosures that involve Plaintiffs' Trade Secrets and (b) identify all individuals or entities who received or had access to Plaintiffs' Trade Secrets.

### III.   Discovery Is No Substitute for Compliance with the Preliminary Injunction.

L&W's deficient searches and accountings warrant relief from the Court, not only because L&W failed to comply with the Order but because its ongoing noncompliance creates a significant risk of further irreparable harm to Aristocrat. L&W should not be allowed to escape accountability for violating the Order by offering to address its failings during discovery. ECF No. 174 at 10. Such an *ad hoc* approach does not excuse L&W's decision to institute plainly deficient search protocols in the first place—even after requesting and obtaining clarification of the Order and additional time to comply, ECF Nos. 150, 152—and it would stymie the preliminary injunction's purpose of providing timely and effective relief for L&W's misappropriation. It would also have the perverse result of giving L&W the benefit of the doubt after it repeatedly misled the Court and Aristocrat in this litigation, including through the submission of ▮ evidence and the service of erroneous discovery responses *months* ago that it has yet to correct.

None of L&W's arguments support such an outcome. L&W touts the fact that it identified ▮ on its own, but admits that it did not do so through its injunction compliance process. ECF No. 174 at 20. L&W also claims to have "updated its injunction compliance protocols following this development," *id.*, but that "update" appears to have only extended the document quarantine to ▮. *See* ECF No. 174-3 at 7; ECF No. 174-1 at 3. In other words, even faced with unmistakable proof that its deficient compliance process failed to identify critical evidence of misappropriation—including alarming evidence that ▮ with no explicit reference to Dragon Link, Lightning Link, or Dragon Train—L&W has not identified any steps it is taking to systemically update its process to effectively detect such instances of misappropriation.

Worse, L&W continues to take the position that, after designing a compliance process that is plainly ill-equipped to identify previously undetected instances of misappropriation, L&W should be allowed to simply assume that no other misappropriation occurred until shown otherwise. *See, e.g.,* Ex. S at 2 (refusing to provide information about ▮

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████). Indeed, L&W argues that the Court should not enforce compliance with the preliminary injunction because Aristocrat can just use its "discovery tools" to "ensure compliance itself." ECF No. 174 at 21. That is not the law. *See, e.g.*, *GoTo.com*, 202 F.3d at 1211 (recognizing the "rule in this circuit" that the plaintiff is not responsible for ensuring the infringer's compliance with an injunction).[6]

In sum, the appropriate remedy is Court intervention, not another undeserved chance to self-police. Although this will require L&W to incur additional expense to comply with the Order, that is a problem of L&W's own making, as the extensive proliferation of Aristocrat's trade secrets throughout L&W is the direct consequence of L&W's insistence on aggressively commercializing Dragon Train even *after* Aristocrat put L&W on notice of its concerns.

## CONCLUSION

For the foregoing reasons, Aristocrat requests that the Court grant the motion and order the relief set forth in the Proposed Order attached hereto, including payment of Aristocrat's reasonable attorney's fees and costs incurred in connection with the instant motion.

December 20, 2024           /s/  *Jason D. Smith*

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email: nsantoro@spencerfane.com
           jdsmith@spencerfane.com
           tbthomas@spencerfane.com

PETER SWANSON
(*pro hac vice*)
GARY RUBMAN

---

[6] L&W's suggestion is particularly inappropriate given that L&W has spent this entire litigation slow-rolling and resisting discovery at every turn. *See* ECF No. 80 at 2–3.

███████████████████████████

(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com
  grubman@cov.com
  sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-Defendants Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.*