UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC., *et. al.*,<br><br>　　　　　Plaintiffs,<br>　vs.<br><br>LIGHT & WONDER, INC., *et. al.*,<br><br>　　　　　Defendants. | Case No.: 2:24-cv-00382-GMN-MDC<br><br>**ORDER** |

Pending before the Court is a Motion to Enforce Preliminary Injunction, (ECF No. 158), filed by Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd., (collectively, "Aristocrat"). Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation, (collectively, "L&W"), filed a Response, (ECF No. 174), to which Plaintiffs filed a Reply, (ECF No. 180). Also pending before the Court are four Motions to Seal, (ECF Nos. 160, 171, 175, 183).

Because the Court declines to hold L&W in civil contempt due to its substantial compliance with the Court's preliminary injunction, the Court **DENIES** Aristocrat's Motion to Enforce. The Court also **GRANTS** three of the four Motions to Seal.[1]

---

[1] The Motions to Seal ask the Court to seal a motion or exhibit relating to Plaintiffs' Motion for Preliminary Injunction. The Motion for Preliminary Injunction is more than tangentially related to the case, so the Court applies the compelling reasons standard. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016). Compelling reasons "justify sealing court records" when publication of those records might "release trade secrets," *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006), or other "business information that might harm a litigant's competitive standing," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). **ECF Nos. 160, 175, and 183** contain compelling reasons for redacting certain information regarding business strategy, unreleased game information, and mathematical trade secrets and thus the Motions are **GRANTED**. However, **ECF No. 171**, filed by L&W, is **DENIED**. It asks the Court to seal information relating to employee termination and its reasoning for withdrawing two declarations. But L&W's cited cases relate to employment files and contracts, which are not at issue here, and thus L&W has failed to provide a compelling reason to seal this information.

## I. BACKGROUND

In September 2024, the Court granted Aristocrat's Motion for a Preliminary Injunction after hearing oral argument from the parties and reviewing the evidence presented. (*See generally* Order Granting Prelim. Inj., ECF No. 125). Relevant to the instant motion, the Court ordered L&W to "Search for and identify all documents and materials in its possession, custody, or control reflecting Plaintiff's Trade Secrets," and "Provide an accounting . . . that describes with specificity every instance in which L&W has disclosed Plaintiffs' Trade Secrets, including the . . . (iii) specific information disclosed, (iv) reason for disclosure, and (v) all documents or materials reflecting the disclosure." (*Id.* 20:19–21:8). Aristocrat asks the Court to exercise its power to enforce the preliminary injunction through civil contempt. (*See generally* Mot. Enforce, ECF No. 158).

## II. LEGAL STANDARD

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A district court has the inherent power to enforce its orders through civil contempt. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966). "The contempt must be proved by clear and convincing evidence." *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982). "There is no good faith exception to the requirement of obedience to a court order. But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *In re Dual–Deck*, 10 F.3d at 695 (internal citation and quotation marks omitted).

To establish civil contempt, a plaintiff bears the burden of showing "(1) that [Defendant] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Labor/Cmty.*

*Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting *In re Dual-Deck*, 10 F.3d at 695). The Supreme Court has held that "civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (cleaned up).

### III.  DISCUSSION

Aristocrat alleges that L&W has improperly focused its compliance efforts on Dragon Train documents and failed to identify trade secret disclosures with specificity, and thus the Court should exercise its power to enforce the preliminary injunction through civil contempt and order L&W to pay Aristocrat's attorneys' fees. (*See generally* Mot. Enforce). L&W maintains that they have complied with the Injunction Order. (*See generally* Resp., ECF No. 174). Having considered the evidence provided by the parties, the Court finds that Aristocrat has failed to establish, by clear and convincing evidence, that L&W failed to take all reasonable steps to comply with the Court's Order.

First, Aristocrat contends that because L&W's search efforts focused on mentions of Dragon Train, Lightning Link, and Golden Century, their search did not comply with the letter or spirit of the Court's Order. (Mot. Enforce 9:6–8). It provided examples of documents containing trade secrets that did not have an explicit reference to the names of particular games, and noted that the game families have multiple titles with a similar mathematical design. (*Id.* 10:3–27). For example, when L&W ran different search terms proposed by Aristocrat during discovery, it found a file containing trade secrets that was used in the development of a new game but not found in L&W's search because it did not reference Dragon Train, Lightning Link, or Golden Century. (Reply 4:14–5:12).

L&W responds that it has undertaken comprehensive efforts to comply with the Order, including retaining external consultants, meeting with IT specialists skilled in forensic document collection, filing a Motion for Clarification when it was unclear about what the Order

required, and timely requesting an extension when required. (Resp. 3:25–4:5). It canvassed over 1,000 employees, ran keyword searches over 25 servers and 47 external file repositories, and developed custom scripts to identify and secure documents. (*Id.* 4:15–17). To address the contention that its search methods were noncompliant, L&W explained that the majority of its systems do not support content-based searches within files, so it had to develop a custom script for searching files and folders that contained the relevant search terms. (*Id.* 7:8–15). L&W used eleven search terms, including the three identified by Aristocrat, in addition to other titles such as Chi Lin, Emperor Game, Inception, and Sun Shots. (*Id.* 7:22–23 n.3). The documents identified in the search were segregated, along with any other related folders or files related to it. (*Id.* 8:1–9; 14:9–18). Further, L&W explained that it found the additional file through discovery because it can apply individual complex search strings as part of the broader discovery search process. (*Id.* 20:12–21:3).

      L&W's document search methods appear to be based in good faith and are a reasonable interpretation of the Court's order. The language of the Order requires L&W to search for documents reflecting Plaintiffs' trade secrets but does not provide specific instructions as to what search terms should be used. (*See* Order Granting Prelim. Inj. 20:19–20). And L&W is correct that the Order specifically references Dragon Link, Lightning Link, and Golden Century. Thus, the search terms used by L&W are a reasonable interpretation of the Court's Order, and the Order did not provide instructions on how L&W should search through its databases. *See Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996) ("If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt."). Additionally, L&W explained in its Response that its system does not currently support content-based searches, so it is reasonable that it resorted to a search-term based process instead.

1  Aristocrat also argues that L&W's employee questionnaire was deficient because it
2  asked if the employees were involved with Dragon Train or knew the locations of related
3  materials, and a "no" answer meant that the employee did not have to continue the
4  questionnaire. (Mot. Enforce 11:1–8). In its Response, L&W explained that the Court found
5  Aristocrat was likely to succeed in showing that L&W misappropriated trade secrets "in its
6  development of Dragon Train," which is why it asked about Dragon Train specifically. (*Id.*
7  17:1–3). Further, it noted that asking more generally about Aristocrat's trade secrets would
8  have been futile because such a request would not communicate to employees what to look for.
9  (*Id.* 17:6–11). L&W additionally conducted town halls and tailored investigations. (*Id.* 16:5–
10  21, 17:12–19).

11  The Court finds L&W's questionnaire format to be reasonable and created in good faith.
12  The Court's Order did not require a questionnaire, let alone instruct L&W on the questions it
13  must ask. *See Taggart*, 587 U.S. at 561 (Because civil contempt is a "severe remedy," the
14  "principles of 'basic fairness require that those enjoined receive explicit notice' of 'what
15  conduct is outlawed' before being held in civil contempt." (quoting *Schmidt v. Lessard*, 414
16  U.S. 473, 476 (1974)). As to both L&W's choice of search terms and questionnaire, "there is a
17  fair ground of doubt as to the wrongfulness of the defendant's conduct," and thus civil
18  contempt is improper. *See id.* at 554.

19  Aristocrat also asks the Court to hold L&W in civil contempt for not listing every
20  instance of disclosure, because it is "not plausible that a handful of written communications"
21  accounts for the instance in which L&W disclosed Plaintiffs' Trade Secrets. (Mot. Enforce
22  13:4–19). Additionally, Aristocrat argues that L&W did not disclose the instances with
23  particularity because it did not describe the "specific information disclosed" and the "reason for
24  disclosure." (*Id.* 13:20–25). L&W responded that its accounting represented the extent of the
25  disclosures that it had identified, and that all instances of internal communications regarding

trade secrets were identified in its detailed accounting of search efforts. (Resp. 18:6–27). The Court again declines to hold L&W in civil contempt and finds that L&W has substantially complied with the Court's Order in this regard. However, the parties may use discovery tools to further address the issues raised here and to obtain additional relevant disclosures. Aristocrat's Motion is therefore DENIED.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Enforce, (ECF No. 148), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motions to Seal, (ECF Nos. 160, 175, and 183), are **GRANTED**.

**IT IS FURTHER ORDERED** that L&W's Motion to Seal, (ECF No. 171), is **DENIED**.

**DATED** this __3__ day of January, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT