PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

NEAL MANNE *(Pro Hac Vice)*
nmanne@susmangodfrey.com
ROCCO MAGNI *(Pro Hac Vice)*
rmagni@susmangodfrey.com
JOSEPH GRINSTEIN *(Pro Hac Vice)*
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

ERIK WILSON *(Pro Hac Vice)*
ewilson@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

DINIS CHEIAN *(Pro Hac Vice)*
dcheian@susmangodfrey.com
ANDREW NASSAR *(Pro Hac Vice)*
anassar@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

*Attorneys for Defendants Light & Wonder, Inc.,
LNW Gaming, Inc., and SciPlay Corporation*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Plaintiff, <br><br> v. <br><br> LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Defendant. | Case No. 2:24-cv-00382-GMN-MDC <br><br> **[PROPOSED] STIPULATED ORDER ON DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd ("Aristocrat") and Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation ("L&W"), by and through their respective undersigned counsel, hereby stipulate and agree to the entry of the following Stipulated Order on the Discovery of Electronically Stored Information ("ESI"). Aristocrat and L&W may be referred to herein individually as a "Party" and collectively

as the "Parties." The Party requesting discovery may be referred to herein as the "Requesting Party," and the Party producing discovery may be referred to herein as the "Producing Party."

**1. General Provisions**

    a. **Purpose.** This Order will govern discovery of ESI in this case. The term "ESI" carries its broadest meaning consistent with Fed. R. Civ. P. 26 and 34. This Order may be modified for good cause.

    b. **Cooperation.** The Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26–36. The Parties further acknowledge and agree that this Order is the product of negotiation, and no Party waives or forfeits any position, argument, or objection on issues where the Parties were unable to reach an agreement or where the Parties withdrew proposed language in order to reach agreement.

    c. **Proportionality.** The Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues.

    d. **Preservation of Discoverable Information.** A Party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

      i.    Absent a showing of good cause by the Requesting Party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

      ii.    Absent a showing of good cause by the Requesting Party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

**2. Specific ESI Issues.**

    a.  **Custodians.** Within fourteen (14) days of this order, each Party shall disclose the ten (10) custodians who are most likely to have discoverable information in their possession, custody, or control. Each custodian shall be identified by name, title, and the subject matter of their discoverable information. A Requesting Party may identify, or request that the Producing Party reveal the identity of, up to ten (10) additional custodians of a Producing Party. The Requesting Party may identify additional custodians upon a showing of good cause (e.g., if discovery reveals the involvement of additional custodians in the alleged trade secret misappropriation, copyright infringement, or trade dress infringement). The Producing Party will search for responsive ESI from both its disclosed custodians and any custodians identified by the Requesting Party pursuant to this provision. Custodial searches will encompass all ESI in the Producing Party's possession, custody, or control, including from company-issued devices, other devices used for work, and any apps or other platforms used for ephemeral messaging.

    b. **Non-Custodial Data Sources.**[2] Within fourteen (14) days of this order, each Party shall disclose the non-custodial data sources[3] in its possession, custody, or control that are likely to contain discoverable information. The Producing Party will search for responsive ESI from its disclosed non-custodial data sources pursuant to this provision and will also conduct searches of non-custodial data sources in accordance with paragraph 2(e). If the Producing Party subsequently learns of additional non-custodial data sources that are likely to contain discoverable, non-duplicative information, the Producing Party will promptly disclose those sources and search them for responsive ESI. The Producing Party shall respond to reasonable inquiries from the Requesting Party regarding the identity of additional non-custodial data sources that the Requesting Party has reasonable grounds to believe may contain discoverable, non-duplicative information.

    c. **Notice**. The Parties shall promptly identify to each other, and work cooperatively to resolve in good faith, any issues relating to:

        i. Any ESI (by type, date, custodian, electronic system or other criteria) that a Party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i). For clarity, the Parties need not identify ESI already addressed by paragraph 1.d(ii) and Schedule A of this Order.

---

[2] That is, a system or container (e.g., enterprise system or database) that stores ESI, but within which an individual custodian does not exercise exclusive control over the organization, management, or maintenance of the ESI.

[3] A non-custodial data source need not be an entire data repository, server, or system. A party may identify, as a non-custodial data source, a smaller unit of data storage, provided that it provides reasonable grounds to believe the remainder of that data repository, server, or system is unlikely to contain responsive, non-duplicative information.

      ii.      Third-party discovery, including the timing and sequencing of such discovery.

      iii.     Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

    d.  **Search Methodology.** A Producing Party may use keyword searches to search for responsive material in the custodial and non-custodial ESI identified pursuant to paragraphs 2(a) and 2(b). However, keyword searches will not replace or discharge the Producing Party's discovery obligation to conduct a reasonable search if the Producing Party knows or has reason to know that the search terms used for the keyword searches are reasonably likely to miss responsive material.

    e.  **Search Terms.** A Producing Party that uses keyword searches shall disclose its search terms to the Requesting Party before performing the searches to the extent practicable (and if not practicable, as soon as practicable after the searches are performed). Search terms may differ between custodians and need not all be disclosed at the same time. Whether or not the Producing Party uses keyword searches, the Requesting Party may propose searches to be run by the Proposing Party. The total number of searches that the Requesting Party may request shall not exceed one hundred eighty (180) searches collectively across all custodians and one hundred (100) searches collectively across ten (10) non-custodial data sources selected by the Requesting Party from among those disclosed pursuant to paragraph 2(b). The Requesting Party may propose additional searches in excess of these limits upon a showing of good cause (e.g., if discovery reveals that additional games may have been affected by the alleged trade secret misappropriation).

      i.    A conjunctive combination of multiple words or phrases (e.g., "DragonTrain AND Aristocrat" or "DragonTrain AND ATI") shall count as a single search term. A disjunctive combination of words or phrases shall count as separate search terms, unless the disjunctive combination is used within a conjunctive combination (e.g., (DragonTrain OR SkyTrain) AND (Aristocrat OR ATI)) or used to encompass variants of additional or alternative terms that are addressed to the same topic (e.g., different names or titles for the game like "Sky Train" and "Dragon Train," abbreviations like "Dragon Train" and DT, concepts like "confidential" and "secret," or specific values from the same weight table).

      ii.    The Producing Party may object to any of the Requesting Party's proposed searches on the ground that it would return a disproportionate amount of non-responsive documents. If such an objection is made, the Parties will work together in good faith to attempt to resolve the objection, including by each Party recommending and/or considering revised or alternative searches whenever practicable.

f. **Prior Searches.** In consideration of searches that L&W has run to date, the Parties agree that Aristocrat will be deemed, as of the date of this order, to have used forty-three (43) of its allotted 180 custodial searches under paragraph 2(e).

g. **Production Format.** All documents, ESI and non-ESI, except for files produced natively, shall be produced to the Requesting Party as text searchable single-page TIFF image files. When a text-searchable image file is produced, the Producing Party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting and the metadata (as noted below) and, where applicable, the revision history. For messages

(e.g., text, Teams, Slack, WhatsApp, etc.), context relevant to any responsive message, including at minimum the conversation history for eighteen (18) hours before and after the responsive message, will be produced. The Parties shall produce their information in the following format: single-page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information, including the metadata noted in paragraph 3.i below.[4] Each TIFF image will be assigned a unique name matching the production number of the corresponding page. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will (i) be consistent across the production; (ii) contain no special characters; and (iii) be numerically sequential within a given file. Production numbers should be a combination of an alpha prefix along with an 8-digit number (e.g., ABC_0000001). Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

h. **Native Files.** The only files that should be produced in native format are files not easily converted to image format and files that become unwieldy or unusable in image format, such as Excel, PowerPoint, PDF, video, audio, database, and Access files. A Party that receives a document produced in non-native format may make a reasonable request to receive the document in its native format, such as Excel and Access files, which request shall not be refused absent a showing of good cause.

---

[4] Unless otherwise agreed, each production will include a data load file in Concordance (.dat) format and an image load file in Opticon (.opt) format. All documents originally created in color shall be produced in color. Unless otherwise agreed, documents and ESI will be produced by secure FTP site.

    **i. Metadata Fields.** The Parties are only obligated to provide the following metadata for all ESI produced, unless privileged, to the extent such metadata exists: All Custodians, File Name, File Extension, All Original Filepath, Email Subject, From, To, CC, BCC, Date Sent, Date Created, Date Last Modified, Bates Number Begin, Bates Number End, Attachment Begin, Attachment End, and MD5Hash.

    **j. Parent-Child Relationships.** All documents in a family will be produced. Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. If any attachment is withheld from an otherwise produced family, the Parties shall use slip-sheets to indicate the withheld document and log any withheld and/or redacted documents in a privilege log, to the extent required by the Scheduling Order (ECF No. 153). Parent-child relationships will be identified in the data load file pursuant to paragraph 3(h) above.

    **k. Compressed Files.** Compressed file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

**3. Costs.** The cost of preserving, collecting, and producing documents shall be borne by the Producing Party; however, nothing in this order prevents the Producing Party from seeking reimbursement for costs associated with collection, review, or production of documents or ESI.

. . . . .

. . . . .

4. **Modification.** Any provision of this order may be modified by the Court for good cause shown or by agreement of the Parties. Nothing in this Order in any way modifies L&W's obligations under the Court's preliminary injunction order (ECF No. 125).

Dated: March 13, 2025

/s/ *Jason D. Smith*

NICHOLAS J. SANTORO (NBN 532)
JASON D. SMITH (NBN 9691)
TYLER B. THOMAS (NBN 16637)
SPENCER FANE
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400 / Fax: (702) 938-8648

PETER SWANSON (pro hac vice)
GARY RUBMAN (pro hac vice)
SIMEON BOTWINICK (pro hac vice)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000

ZIWEI SONG (pro hac vice)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000

*Attorneys for Plaintiffs*

Dated: March 13, 2025

/s/ *Philip R. Erwin*

PHILIP R. ERWIN, ESQ. (11563)
CAMPBELL & WILLIAMS
710 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222

NEAL MANNE (pro hac vice)
JOESEPH GRINSTEIN (pro hac vice)
ROCCO MAGNI (pro hac vice)
SUSMAN GODFREY L.L.P
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366

ERIK WILSON (pro hac vice)
SUSMAN GODFREY L.L.P
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

DINIS CHEIAN (pro hac vice)
ANDREW NASSAR (pro hac vice)
SUSMAN GODFREY L.L.P
One Manhattan West, 50th Fl.
New York, NY 10001
Telephone: (212) 336-8330

*Attorneys for Defendants*

**IT IS SO ORDERED**

_____
UNITED STATES MAGISTRATE JUDGE

DATED: 3-14-25

9

# SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data or other files that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Electronic mail or pin-to-pin messages sent to or from mobile devices (*e.g.*, iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

8. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

9. Logs of calls made from mobile devices.

10. Data remaining from systems no longer in use that is unintelligible on the systems in use.