1   NICHOLAS J. SANTORO
    (Nevada Bar No. 532)
2   JASON D. SMITH
    (Nevada Bar No. 9691)
3   TYLER B. THOMAS
    (Nevada Bar No. 16637)
4   **SPENCER FANE LLP**
    300 South 4th Street, Suite 1600
5   Las Vegas, Nevada 89101
    Tel.: (702) 408-3400
6   Email: nsantoro@spencerfane.com
            jdsmith@spencerfane.com
7           tbthomas@spencerfane.com

8   PETER A. SWANSON                    ZIWEI SONG
    (*pro hac vice*)                    (*pro hac vice*)
9   GARY M. RUBMAN                      **COVINGTON & BURLING LLP**
    (*pro hac vice*)                    Salesforce Tower
10  SIMEON BOTWINICK                    415 Mission Street, Suite 5400
    (*pro hac vice*)                    San Francisco, CA 94105-2533
11  **COVINGTON & BURLING LLP**         Tel.: (415) 591-6000
    One CityCenter                      Email: ksong@cov.com
12  850 Tenth Street, NW
    Washington, DC 20001
13  Tel.: (202) 662-6000
    Email:  pswanson@cov.com
14          grubman@cov.com
            sbotwinick@cov.com
15
    *Attorneys for Plaintiffs/Counterclaim-Defendants*
16  *Aristocrat Technologies, Inc. and*
    *Aristocrat Technologies Australia Pty Ltd.*
17

18                  **UNITED STATES DISTRICT COURT**

19                      **DISTRICT OF NEVADA**

20  ARISTOCRAT TECHNOLOGIES, INC. and
    ARISTOCRAT TECHNOLOGIES              Case No. 2:24-cv-00382-GMN-MDC
21  AUSTRALIA PTY LTD.,

22          Plaintiffs/Counterclaim-Defendants,   **STIPULATION REGARDING**
        v.                                         **DISCOVERY DISPUTE**
23
    LIGHT & WONDER, INC., LNW GAMING,
24  INC., and SCIPLAY CORPORATION,       **ORAL ARGUMENT REQUESTED**

25          Defendants/Counterclaim-Plaintiffs.

26

27

28

1       Pursuant to Paragraph II.B.2 of Judge Couvillier's Standing Order, Plaintiffs Aristocrat

2  Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. (together, "Aristocrat") and

3  Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (together,

4  "L&W"), respectfully submit this stipulation regarding certain of Aristocrat's discovery requests

5  that remain in dispute following the parties' good-faith effort to resolve the dispute informally.

6  **I.      JOINT SUMMARY OF DISCOVERY DISPUTE**

7       The Aristocrat discovery requests in dispute relate to Emma Charles's participation in

8  game development efforts at L&W and L&W's commercialization of the games at issue.

9  Specifically, the parties disagree as to: (1) the extent to which L&W must search for

10  communications between Ms. Charles and L&W employees outside of her game studio relating to

11  game math or design information (RFP 56); (2) the extent to which L&W must produce documents

12  sufficient to identify each game for which Ms. Charles participated in the development process in

13  any way (RFP 9); and (3) whether L&W must provide discovery about its commercialization of

14  the accused games in Australia, where the parties are engaged in litigation over similar issues in

15  Australia (*e.g.*, RFP 41 and Interrogatories 7 and 15).

16  **II.     RESTATEMENT OF DISCOVERY REQUESTS AND RESPONSES AT ISSUE**

17       The following request and response concerns communications between Ms. Charles and

18  L&W employees outside of her game studio relating to game math or design information:

19      **REQUEST FOR PRODUCTION NO. 56:**

20      All Communications between Emma Charles and any individual at L&W other than individuals in
        Star Studios concerning any mathematical or other game design information.

21

22      **RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

23      Defendants object to this Request as vague and ambiguous with respect to the phrase "any
        mathematical or other game design information," which is also not proportional to the needs of the

24      case, and overly broad because it encompasses information not relevant to Aristocrat's alleged trade
        secrets or any claims or defenses in this action. Defendants also object to this Request as vague and
        ambiguous with respect to "in Star Studios," which is not defined and therefore ambiguous about

25      which individuals are therefore excluded. Defendants also object to this Request as overly broad,
        unduly burdensome, not proportional to the needs of the case, and seeking information not relevant

26      to any claims or defenses, as it seeks production of "all" communications between Emma Charles
        and any individual at L&W other than individuals in Star Studios without any limitation as to time,

27      or reasonable limitation as to scope or subject matter. Defendants also object to this Request to the
        extent it seeks communications that concern the mathematical or other game design information of

28      any L&W game for development project regardless of whether such information is related to
        Aristocrat's alleged trade secrets, copyright, or trade dress. Defendants further object to this Request

to the extent it seeks documents protected by the attorney-client privilege, the work product doctrine, and/or any other privilege or immunity.

Subject to and without waiving the foregoing objections, Defendants have produced, and will produce, to the extent that additional communications exist, responsive, non-privileged communications between Emma Charles and individuals at L&W other than individuals in "Star Studios" concerning "mathematical or other game design information" (as Defendants understand those phrases) relating to Plaintiffs' trade secret claims concerning L&W's Dragon Train game and Aristocrat's Dragon Link or Lightning Link games.

The following request and response concerns games for which Ms. Charles participated in the development process in any way:

**REQUEST FOR PRODUCTION NO. 9:**

Documents and Things sufficient to identify all games in which Emma Charles or Lloyd Sefton participated in the development in any way.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Defendants object to this Request as vague and ambiguous with respect to the phrases "all games" and "in any way." Defendants further object to this Request as overly broad, and seeking information not relevant to any claim or defense as it seeks production of documents and things sufficient to identify "all" games in which Emma Charles or Lloyd Sefton participated in the development in any way, including games not subject to Aristocrat's claims and games not developed by Defendants. Defendants object to this Request to the extent that the Request is duplicative of Plaintiffs' Request for Production No. 19. Defendants also object to this Request on the grounds that it is not reasonably related to any claim or defense in this action, which is limited to Defendants' Dragon Train and Jewel of the Dragon games.

Subject to and without waiving the foregoing objections, upon entry of the appropriate protective order, Defendants will produce relevant, responsive, non-privileged documents and things sufficient to identify any of Defendants' games in which Emma Charles or Lloyd Sefton meaningfully participated in the development of such game.

The following requests and responses are representative of the parties' dispute concerning L&W's commercialization of the accused games in Australia:

**REQUEST FOR PRODUCTION NO. 41:**

Documents and Things sufficient to show the number of units of each of the Accused Games in operation by month and year and the names and locations of the casinos in any country where the units are or were operating.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Defendants object to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case as it seeks production of documents and things not limited by relevant jurisdiction or relevant time period. Defendants also object to the phrase "Accused Games" as vague, ambiguous, and overly broad because it encompasses games not at issue in this case. Defendants also object to this Request to the extent it seeks documents containing Defendants' confidential, business and/or trade secret information. Defendants further object to this request to the extent it seeks documents in a format not maintained by Defendants in the ordinary course of business as the

requested information is not tracked following the sale of Accused Games not distributed under a leasing model.

Subject to and without waiving the foregoing objections, upon entry of the appropriate protective order, Defendants will produce relevant, responsive, non-privileged documents and things sufficient to show the number of units of the 2022 version of Jewel of the Dragon referenced in the Complaint and Dragon Train games sold in the United States since 2022.

**INTERROGATORY NO. 7:**

Identify each sale or placement of the Accused Games anywhere in the world, including, for each sale or placement, the customer, the location where the game was placed, the dates the game was available at that location, and, for Jewel of the Dragon, whether or not the game included the "additional changes" identified in L&W's Motion to Dismiss (ECF No. 34 at 3-4), and if so, the date that the "additional changes" were implemented.

**RESPONSE TO INTERROGATORY NO. 7**

Defendants object to this Interrogatory as vague and ambiguous with respect to the term "placement" and phrase "Accused Games," which is also overly broad. Defendants further object to this Interrogatory as overly broad, unduly burdensome, not proportional to the needs of the case, and seeking information not relevant to any claims or defenses as it seeks information not limited by relevant jurisdiction or relevant time period. For example, the information sought in this Interrogatory relating to sales or "placements" of the Accused Games "anywhere in the world" is not relevant to the instant proceeding, as Defendants are United States entities and this action does not concern foreign entities, sales, placements, or alleged intellectual property. Defendants also object to this interrogatory to the extent it seeks Defendants' confidential, business and/or trade secret information.

Subject to and without waiving any of the foregoing objections, Defendants respond as follows: For those Jewel of the Dragon games that are sold, following the consummation of a sale, L&W has no information relating to "placement," customers, the location where the game was placed, or the dates the game was available at that location. Pursuant to Federal Rule of Civil Procedure 33(d), Defendants also refer Plaintiffs to. documents that will be produced from which certain information responsive to this request may be derived.

**INTERROGATORY NO. 15:**

For each of the Accused Games, identify on a quarterly basis the number of units sold, leased, licensed, or downloaded; the revenue received by You from such sales, leases, licenses, and downloads, and from any use or distribution of online versions of the Accused Game; all direct, indirect, variable, fixed, and overhead costs associated with the Accused Game; and all gross, operating, pre-tax and net profits realized by You, directly or indirectly, for the Accused Game.

**RESPONSE TO INTERROGATORY NO. 15:**

Aristocrat failed to sufficiently identify the "Accused Games" as the definition is vague, ambiguous, and fails to particularize the versions of Defendants' games that are at issue. Aristocrat also objects to the terms "licenses/ed" and "downloads/ed" and the phrase "use or distribution of online versions" as vague and ambiguous. Defendants further object to this Interrogatory as compound, because it contains at least four separate interrogatories. Defendants also object to this request to the extent it would require the creation of information in a manner not maintained by Defendants in the ordinary course of business. Defendants shall consider each Interrogatory individually for purposes of the twenty-five interrogatory limit under the Federal Rules of Civil Procedure, and Defendants further object to this Interrogatory because it exceeds the twenty-five interrogatory limit under the Federal Rules of Civil Procedure.

1
2
3

Subject to and without waiving any of the foregoing objections, Defendants respond as follows: In accordance with Fed. R. Civ. P. 33(d), Defendants will produce documents reflecting certain financial information associated with Dragon Train and Jewel of the Dragon after the parties reach a mutual agreement about the financial information that will be exchanged, as discussed among counsel.

### III. JOINT SUMMARY OF MEET-AND-CONFER EFFORTS

The parties met and conferred via teleconference regarding the disputed requests most recently on March 24, 2025, at 1:00 p.m. ET.  Peter Swanson, Ziwei Song, Jesse Chang, and Jason Smith attended for Aristocrat, and Neal Manne, Joseph Grinstein, Rocco Magni, Erik Wilson, Dinis Cheian, Andrew Nassar, and Philip Erwin attended for L&W. The parties also discussed one or more of the disputed requests via teleconference or videoconference on the following occasions: September 17, 2024, at 12:00 p.m. ET; September 23, 2024, at 5:00 p.m. ET; October 28, 2024, at 3:00 p.m. ET; October 31, 2024, at 10:00 a.m. ET; November 12, 2024, at 10:30 a.m. and 2:00 p.m. ET; and January 6, 2024, at 11:00 a.m. ET. The parties also exchanged numerous letters and emails between August 29, 2024, and March 3, 2025, regarding this dispute.

As to RFP 56, L&W initially proposed narrowing the request to communications relating to: (1) explicit disclosures of Aristocrat's trade secrets, and (2) Dragon Link, Lightning Link, or Dragon Train. Aristocrat rejected this proposal as unduly narrow. L&W subsequently agreed to produce documents responsive to this RFP and asked Aristocrat to propose search terms pursuant to the parties' Stipulated Order on Discovery of Electronically Stored Information ("ESI Order"). *See* ECF No. 209. Aristocrat responded that, while it has proposed search terms, L&W cannot rely exclusively on Aristocrat's terms to satisfy its obligation to perform a reasonable search in response to this request, including because keyword searches would be likely to miss responsive communications. *See id.*¶ 2.d ("[K]eyword searches will not replace or discharge the Producing Party's discovery obligation to conduct a reasonable search if the Producing Party knows or has reason to know that the search terms used for the keyword searches are reasonably likely to miss responsive material."). L&W reiterated that it was willing to produce materials responsive to this request, but that it was unduly burdensome to conduct a manual review that would necessarily involve irrelevant documents.

As to RFP 9, L&W initially proposed limiting the request to game development efforts in

which Ms. Charles had "meaningful" participation. Aristocrat did not accept this "meaningful" limitation but, to mitigate any alleged burden, agreed that L&W could provide a list of responsive games in lieu of producing documents. Upon receiving L&W's list, Aristocrat pointed out that the list appeared to omit several games to which other evidence showed Ms. Charles had contributed. L&W responded that its list included a game if Ms. Charles "participated in the development process" and was "assigned to work on [it]." L&W also noted that Aristocrat's definition of whether Ms. Charles "contributed" to game is unclear and vague. Aristocrat objected to the "assigned to work" limitation and, as a compromise, proposed that (1) the parties could deem RFP 9 satisfied if L&W responded in full to RFP 56, or (2) L&W could turn over all of Ms. Charles's ESI for Aristocrat to conduct its own review, which would shift any alleged burden associated with review from L&W to Aristocrat. L&W stated that, as with RFP 56 (as discussed above), Aristocrat is able to obtain information responsive to this request by proposing search terms. Aristocrat maintained that the ESI Order does not permit L&W to rely exclusively on Aristocrat's proposed ESI search terms to comply with its discovery obligations.

As to RFP 41, Interrogatories 7 and 15, and other similar requests concerning L&W's commercialization of the accused games in Australia, L&W initially contended that Aristocrat could not take discovery into L&W's worldwide commercialization of the accused games. Through the meet-and-confer process, L&W agreed to provide this discovery as to all jurisdictions except Australia, on the ground that Aristocrat has sued L&W in Australia for similar claims and is entitled to discovery in that jurisdiction. Aristocrat disagreed, pointing out that it remains entitled to discovery relevant to injury and monetary relief in this action regardless of the parallel Australian proceeding. L&W reiterated that it is not obligated to produce the same documents in two jurisdictions to the same party. Furthermore, the parties have recently been engaging in discussions to allow U.S. counsel for the parties to rely on documents produced in the Australian proceeding, and vice versa. Aristocrat maintained that it is willing to work with L&W on sharing of documents across the two case and to avoid or minimize duplicative collections, but that L&W cannot (a) limit its discovery obligations in the U.S. case based on the scope of available discovery in Australia and (b) delay producing discoverable information in the U.S. case until it produces

1    such information in the Australian proceeding.

2         Counsel for the parties certify that, despite a sincere effort, the parties are unable to resolve

3    or further narrow this dispute without the Court's assistance.

4    **IV.    THE PARTIES' POSITIONS**

5         **A.    ARISTOCRAT'S POSITION**

6         A year into this intellectual property action, the record is clear that L&W used Aristocrat's

7    confidential information to develop its now-enjoined Dragon Train games. *See* ECF No. 125 at 16.

8    But L&W's misappropriation did not end with Dragon Train. After the Court granted the

9    preliminary injunction—and after L&W certified that it had ceased use of Aristocrat's trade secrets

10   and isolated documents reflecting those trade secrets—evidence has emerged that L&W also used

11   Aristocrat trade secrets to develop at least two other games, one of which L&W has continued to

12   commercialize notwithstanding the preliminary injunction. Both games were developed by game

13   studios other than the studio that developed Dragon Train and whose principal, Emma Charles,

14   brought Aristocrat trade secrets to L&W and freely shared them with others at the company. *See*

15   *id.* at 12. In light of this evidence—and L&W's failure to disclose key evidence when it was

16   required to do so—a critical aspect of discovery is to determine the extent to which Aristocrat's

17   confidential information has been disseminated within and used by L&W. The discovery requests

18   in dispute are targeted to that purpose, and L&W should be required to respond in full.

19        **RFP 56.** Charles's communications with L&W employees outside of her game studio

20   relating to math or game design are one of the most relevant and important sources of evidence in

21   this case. It is imperative that L&W reasonably search for these communications, irrespective of

22   the keyword searches that Aristocrat has proposed. ECF No. 209, ¶ 2.f. L&W itself has

23   acknowledged that "Rule 34, however, requires parties to independently search for, collect, and

24   produce all potentially relevant documents a party can reasonably locate irrespective of whether

25   an ESI order is entered, or whether search terms are ever offered or agreed upon." Indeed, the ESI

26   Order here *permits* a party to propose a limited number of keyword searches to another party. *Id.*

27   ¶ 2.e. Nothing in the Order provides that if a party exercises this option, the other party need not

28   take further steps to identify responsive ESI. To the contrary, the Order makes clear that "keyword

1    searches will not replace or discharge the Producing Party's discovery obligation to conduct a

2    reasonable search if the Producing Party knows or has reason to know that the search terms used

3    for the keyword searches are reasonably likely to miss responsive material." *Id.* ¶ 2.d.

4          L&W cannot satisfy its obligation to search for Charles's communications solely by

5    running Aristocrat's targeted searches. L&W knows or can readily identify the employees from

6    other game studios with whom Charles communicated, and can thereby collect such

7    communications with relative ease—indeed, L&W should have already done this in seeking to

8    comply with the Court's preliminary injunction order. *See* ECF No. 125 at 20–21. This information

9    is not available to Aristocrat, and it is unreasonable to force Aristocrat to use its limited custodians

10   and searches with guesses as to the identities of these employees. Moreover, the limited set of

11   game design search terms proposed by Aristocrat cannot reliably identify responsive materials

12   when the Aristocrat math files purloined and used by Charles span dozens of worksheets of

13   complex and detailed game math that may be discussed or used in different ways. For example,

14   searches for specific numerical values would not identify instances where L&W employees

15   discussed Aristocrat's confidential information in vague terms, referred to verbal disclosures of

16   that information, used that information as a starting point and then modified specific values, or

17   referred to Charles generally as a source of math information.

18        **RFP 9.** Given Charles's central role in L&W's misappropriation, discovery in this case

19   must include a thorough investigation of all L&W games to which she contributed in any way,

20   regardless of whether L&W considers that contribution to be "meaningful" or within the scope of

21   her official "assignments." Similar to RFP 56, Aristocrat's keyword searches cannot reliably

22   identify all games on which Charles worked, and it is unreasonable for Aristocrat to burn additional

23   searches with guesses as to these games. L&W, by contrast, can readily determine this information,

24   which it should already know from its allegedly "broad investigation" following the preliminary

25   injunction. *See* ECF No. 174 at 16 & n.5 (claiming to have "canvass[ed] as many relevant people

26   as possible" and circulated a questionnaire regarding "information specific to Emma Charles").

27        **RFP 41.** There is no dispute that Aristocrat is entitled to discovery into L&W's worldwide

28   commercialization of the accused games, but L&W only agrees to provide such discovery as to

1    Australia "if and when" L&W produces discovery on this topic in the related Australian

2    proceeding. L&W may not use that proceeding to limit the scope of—and delay compliance with—

3    its discovery obligations in this case, especially since discovery is much further along in the present

4    case than the Australian proceeding (which was filed more than six months after this case).

5        **B.    L&W'S POSITION**

6        Rather than rely on the many discovery tools at its disposal—and the parties' agreed on

7    ESI Order—Aristocrat asks this Court to order L&W to provide information that it has (a) already

8    provided, (b) is willing to provide, or (c) that Aristocrat may obtain through the parallel litigation

9    it commenced in Australia. Despite the breadth of Aristocrat's requests, L&W is willing to produce

10   responsive documents. Aristocrat primarily seeks ESI, but it refuses to use the 180 searches under

11   the parties' ESI Order to obtain that information. In Aristocrat's view, the ESI Order is an add-on

12   and not the vehicle for obtaining ESI. According to Plaintiffs, it is their way or the highway.

13       **RFP 56.** L&W has agreed to provide information responsive to this request:

14   communications between Emma Charles and any individual concerning any mathematical or other

15   game design information. The only issue is how L&W collects this information.

16       To start, RFP 56 is too broad. It seeks information about *any* game development or math

17   discussion, even if it is unrelated to Aristocrat or its alleged trade secrets. L&W has already agreed

18   to provide Aristocrat with information on those specific categories, so this request seeks all non-

19   Aristocrat discussions of game math or design by Ms. Charles throughout the company. Under

20   Aristocrat's logic, if Ms. Charles asked a colleague about work on a game, recommended a change

21   to font size, or praised the music selection, L&W must provide that communication.

22       Despite the breadth of this request, L&W is willing to produce responsive documents.

23   Contrary to Aristocrat's claims, L&W is not "solely" producing responsive information based on

24   search terms. Indeed, it has already produced numerous documents that fall within the scope of

25   this RFP and will produce other documents it discovers in the course of its reasonable investigation

26   for responsive documents, which includes (among other things) interviewing custodians.

27       An ESI search of this nature "necessarily and reasonably involve[s] the use of search

28   terms" search terms, *F.D.I.C. v. Appleton*, 2012 WL 10245383, at *5, n.3 (C.D. Cal. Nov. 29,

2012), yet Aristocrat refuses to propose any. All that L&W asks is for Aristocrat to use any of its 180 search terms to which it is entitled under the parties' stipulated ESI order. The ESI order provides a vehicle for identifying ESI that is responsive to requests for production—not, as Aristocrat seems to believe, a "bonus." Aristocrat's position is essentially that L&W must undertake the burdensome task of reviewing every email or communication Ms. Charles ever issued during her years at L&W. That is both inconsistent with how Aristocrat itself has searched for and produced documents in this case, but it is also a task appropriately suited for the ESI order.

**RFP 9.** L&W is similarly not resisting discovery into information responsive to this request, which seeks information on the games on which Ms. Charles participated in development.

L&W has provided Aristocrat a list of games on which Ms. Charles worked (determined based on internal records). L&W has also agreed to produce those games' math to Aristocrat and expects to do so soon. Yet Aristocrat remains unsatisfied because this list does not include every single game on which Ms. Charles may have commented or casually discussed with a colleague.

Again, however, it is impossible to discern whether Ms. Charles ever had a casual conversation with an employee about a game without manually reviewing every communication she ever sent, which is unreasonable under the circumstances. To the extent Aristocrat seeks more information about Ms. Charles's activities, L&W reiterates that it is willing to conduct ESI searches in accordance with the protocol outlined in the parties' stipulated Order for Aristocrat to propose search terms. In other words, L&W will provide more information to Aristocrat, so long as Aristocrat properly spends the many search terms it has remaining.

**RFP 41.** This issue is not ripe for the Court. L&W has proposed an information sharing protocol whereby information produced in the U.S. proceeding could be produced in the Australian proceeding, and vice versa. Aristocrat has sued L&W in both jurisdictions for similar claims. Thus, discovery is available to it in Australia. Yet it demands L&W produce those same materials to Aristocrat in the United States. That is unnecessary and duplicative, especially considering the information has a greater bearing on Aristocrat's claims in the Australian proceeding than to this. L&W should not be required to produce to Aristocrat the same materials twice.

The proper way to seek discovery into Australia is through the Australian proceeding. So,

1    if and when Aristocrat's Australian counsel obtains information from L&W in the Australian

2    proceeding responsive to these requests, the parties' U.S. counsel will also have access to it. Courts

3    recognize the advantages of coordinating access to documents across jurisdictions like L&W

4    proposes. *See, e.g.*, *Jack v. Allied Sys., Ltd.*, 2009 WL 10679558, at \*5 (S.D. Ohio Dec. 1, 2009).

5    **V.      THE PARTIES' PROPOSED COMPROMISE OR RESOLUTION**

6           **A.      ARISTOCRAT'S PROPOSED COMPROMISE OR RESOLUTION**

7           **Ms. Charles's Communications with Non-Star Studio Employees (RFP 56).** Aristocrat

8    proposes that L&W perform a reasonable search for all math and game design-related

9    communications between Charles and other L&W employees who did not work in the studio that

10   she led (Star Studio).[1] This search must include, at a minimum, (a) searching Charles's ESI for the

11   names of other game studios at L&W and the names of L&W game designers or mathematicians

12   in those studios, (b) performing a reasonable investigation into the identity of L&W employees

13   with whom Charles interacted, and (c) searching the ESI of those employees for communications

14   with Charles. All responsive communications must be produced, whether or not they contain actual

15   disclosures of the Aristocrat trade secrets at issue in this litigation, as L&W agreed during the

16   meet-and-confer.

17          In lieu of (a), Aristocrat would accept an inspection of Charles's ESI so that Aristocrat can

18   conduct its own manual review.

19          **Ms. Charles's Participation in the Development of Games (RFP 9).** Aristocrat proposes

20   that L&W produce either (1) documents sufficient to identify all games in which Ms. Charles

21   participated in the development in any way; or (2) a complete list of all such games. Aristocrat

22   also maintains its prior offers to accept, in lieu of RFP 9, either: (A) a complete production of

23   documents responsive to RFP 56; or (B) an inspection of Ms. Charles's electronically stored

24   information so that Aristocrat can conduct its own review.

25

26   ───────────────

[1] Notwithstanding L&W's vague suggestion in this stipulation, it has never committed to perform
27   such a search, acknowledged any obligation to search for documents responsive to RFP 56 via any
     means other than running Aristocrat's keyword searches (which L&W insists would count against
28   Aristocrat's 180 additional searches under the ESI Order), or identified any responsive documents
     that were not gathered through such keyword searches.

**Australian Commercialization (RFP 41).** Aristocrat proposes that L&W produce discovery on its commercialization of the accused games in Australia, as L&W has already agreed to do with regard to other foreign countries. Aristocrat is willing to coordinate with L&W regarding the information needed for both the present case and the Australian proceeding, in order to minimize the burden of collecting and producing this information.

## B.    L&W'S PROPOSED COMPROMISE OR RESOLUTION

**RFP 56.** L&W is not withholding information responsive to this request and agrees to provide Aristocrat responsive information provided that that Aristocrat use any of the 180 search terms (of which it has already used 43) afforded to it under the parties' stipulated ESI Order to identify material responsive to RFP 56 that L&W has not already provided through a reasonable search.

**RFP 9.** As stated above, L&W has accepted Aristocrat's proposal to provide material responsive to RFP 56, which is one of Aristocrat's proposed compromises. Aristocrat simply should submit search terms.

**RFP 41.** L&W's proposal to permit information and document sharing across the United States and Australian proceeding resolves this issue: once Aristocrat properly obtains this information in the Australian proceeding, it will be available to Australian and U.S. counsel for both parties.

Dated:  April 9, 2025

*/s/ Phil R. Erwin*

PHILIP R. ERWIN, ESQ.
(Nevada Bar No. 11563)
**CAMPELL & WILLIAMS**
710 South Seventh Street
Las Vegas, NV 89101
Tel.: (702) 382-5222
Email: pre@cwlawlv.com

NEAL MANNE
(*pro hac vice*)
JOESEPH GRINSTEIN
(*pro hac vice*)
ROCCO MAGNI
(*pro hac vice*)
**SUSMAN GODFREY L.L.P**
1000 Louisiana, Suite 5100
Houston, Texas 77002
Tel.: (713) 651-9366
Email: nmanne@susmangodfrey.com
         jgrinstein@susmangodfrey.com
         rmagni@susmangodfrey.com

ERIK WILSON
(*pro hac vice*)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel.: (310) 789-3100
Email: ewilson@susmangodfrey.com

DINIS CHEIAN
(*pro hac vice*)
ANDREW NASSAR
(*pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West
New York, New York 10001-8602
Tel.: (212) 729-2077
Email: dcheian@susmangodfrey.com
         anassar@susmangodfrey.com

*Attorneys for Defendants/Counterclaim-
Plaintiffs Light & Wonder, Inc., LNW Gaming,
Inc., and SciPlay Corporation.*

Dated:  April 9, 2025

*/s/ Jason D. Smith*

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email: nsantoro@spencerfane.com
         jdsmith@spencerfane.com
         tbthomas@spencerfane.com

PETER SWANSON
(*pro hac vice*)
GARY RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.:  (202) 662-6000
Email: pswanson@cov.com
         grubman@cov.com
         sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-
Defendants Aristocrat Technologies, Inc. and
Aristocrat Technologies Australia Pty Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2025, a true and correct copy of the foregoing **STIPULATION REGARDING DISCOVERY DISPUTE** was electronically served via the United States District Court CM/ECF system on all parties or persons registered for notice.

/s/ *Marissa Vallette*
An employee of SPENCER FANE LLP