FILED UNDER SEAL

PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

NEAL MANNE *(Pro Hac Vice)*
nmanne@susmangodfrey.com
JOSEPH GRINSTEIN *(Pro Hac Vice)*
jgrinstein@susmangodfrey.com
ROCCO MAGNI *(Pro Hac Vice)*
rmagni@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Attorneys for Defendants Light & Wonder, Inc.*
*LNW Gaming, Inc., and SciPlay Corporation*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD.,<br><br>                Plaintiff,<br><br>        v.<br><br>LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION,<br><br>                Defendant. | Case No. 2:24-cv-00382-GMN-MDC<br><br><br>**STIPULATION REGARDING DISCOVERY DISPUTE**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**(FILED UNDER SEAL)** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

FILED UNDER SEAL

Pursuant to Paragraph II.B.2 of Judge Couvillier's Standing Order Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (collectively "L&W") and Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies, Australia Pty Ltd. (collectively "Aristocrat") respectfully submit this stipulation regarding the sufficiency of Aristocrat's identification of its alleged trade secrets.

## I.    Joint Summary of the Discovery Dispute

In this action between electronic gaming machine (EGM) manufacturers, Aristocrat claims that L&W misappropriated its alleged trade secrets, which relate to the "mathematical methods, techniques, concepts, models, processes, patterns, algorithms, formulas, calculations, values, and know-how underlying" Aristocrat's Dragon Link and Lightning Link games.

The specific discovery dispute here is whether Aristocrat has sufficiently identified the trade secrets it alleges are at issue in this case in response to L&W's interrogatory No. 1 and/or other interrogatory responses.

## II.    Interrogatories at Issue

FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL



**FILED UNDER SEAL**



FILED UNDER SEAL



**FILED UNDER SEAL**



FILED UNDER SEAL



FILED UNDER SEAL



FILED UNDER SEAL

1    **III.    Joint Summary of the Meet and Confer Efforts**

2        On June 28, 2024, L&W served its first set of interrogatories, which include the

3    "Interrogatories at Issue" reflected in Section II, above. On July 26, Aristocrat served responses

4    to those interrogatories.

5        On October 4, L&W asserted that Aristocrat's response to Interrogatory No. 1 contained

6    a number of deficiencies. Ex. 1 at 8 (2024 Email Chain). On October 10, Aristocrat disagreed that

7    its response contained any deficiencies or that it insufficiently identified the asserted trade secrets,

8    but informed L&W that it intended to provide a supplemental response. *Id.* at 7-8. On November

9    26, Aristocrat served supplemental responses to L&W's first set of interrogatories.

10       On February 10, 2025, L&W asserted that Aristocrat's trade secret identification remained

11   deficient and asked for a meet and confer. Ex. 2 at 9-10 (2025 Email Chain). On February 17,

12   Aristocrat responded that it disagreed with L&W's assertions but was willing to meet and confer

13   to address any purported concerns with Aristocrat's trade secret identification. *Id.* at 8-9. On

14   February 18, L&W reiterated its arguments and provided further details, including caselaw it

15   contended supports its positions. *Id.* at 6-7. On February 20, the parties conducted a first Teams

16   meet-and-confer regarding Aristocrat's trade secret identification. *Id.* at 5-6. During that meet-

17   and-confer and in subsequent correspondence, L&W explained that Aristocrat's citations to

18   thousands of pages and documents improperly shifted the burden of identifying trade secrets on

19   L&W and deprived L&W of the opportunity to prepare a trade secret rebuttal. *Id.* at 2-4. In turn,

20   Aristocrat disagreed that L&W's citations supported its arguments, reiterated that Aristocrat had

21   more than sufficiently identified the trade secrets in suit, and noted that L&W had not identified

22   any examples of trade secrets that it believes Aristocrat has asserted in this litigation without

23   sufficient identification. *Id.* at 4-5. Aristocrat also informed L&W that it would soon further

24   supplement its responses to set forth new evidence of misappropriation and asked L&W to provide

25   a list of purported deficiencies, which Aristocrat agreed to consider in its supplementation. *Id.* at

26   5. On February 24, L&W provided the list, which reiterated many of the alleged deficiencies it

27   previously flagged and identified additional ones. *Id.* at 2-4 (listing deficiencies).

28       On March 12, Aristocrat provided further amended and supplemental interrogatory

23

FILED UNDER SEAL

responses, including to detail new evidence of misappropriation that had come to light during discovery and to address some of L&W's purported concerns regarding Aristocrat's trade secret identification. On March 24, the parties conducted a second Teams meet-and-confer regarding Aristocrat's trade secret identification. *See* Manne Decl. at ¶3. L&W contended that Aristocrat's new response failed to address the issues L&W identified in its February 24 email and that Aristocrat's trade secret identification was still deficient. *Id.* at ¶5. Aristocrat disagreed. The parties were not able to resolve the remaining disputes, reaching an impasse. *See id.* at ¶6. The following counsel was present:

- For L&W: Neal Manne (lead counsel), Philip Erwin, Joseph Grinstein, Rocco Magni, Erik Wilson, Dinis Cheian, and Andrew Nassar;

- For Aristocrat: Peter Swanson (lead counsel), Jason Smith, Ziwei Song, and Jesse Chang. *See id.* at ¶4.

The parties were unable to resolve or narrow the dispute without this Court's intervention. *See id.* at ¶6.

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

FILED UNDER SEAL

**IV.    The Parties' Positions**

    **A.    L&W's Position.[3]**

At the motion to dismiss stage, this Court warned Aristocrat that "a failure to specifically identify the trade secrets may be a problem later in the case." MTD Order at 9 (ECF 65) (June 24, 2024). Similarly, at the preliminary injunction stage, this Court invalidated one of the "category[ies] of trade secrets" because "Aristocrat d[id] not demonstrate that [it is] different than what is generally known in the trade." PI Order at 9 (ECF 125) (Sept. 20, 2024). And while the Court determined that Aristocrat sufficiently identified ***some*** trade secrets at the preliminary stages,[4] it is imperative that the Court address this issue fully now that the parties are in discovery.

"Defendants cannot fairly be expected to rebut Plaintiff's trade secrets claim without a reasonably concrete definition of the purported secrets." *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1114–15 (N.D. Cal. 2016). L&W needs to know what Aristocrat contends are the trade secrets to pursue any defense that the information does not qualify as a trade secret. As Aristocrat acknowledges, this defense would require L&W to show that all elements of each trade secret— including their specific combination—are public knowledge. ROG 1 Resp. (citing *Unix Sys.*). Conversely, L&W must avoid a scenario where it expends resources on proving information is not a trade secret only to be told by Aristocrat at trial that some other aspect of the information is the trade secret.  But Aristocrat only provides "categorical descriptions" that "render it impossible for [L&W] to conduct public domain or other research." *Loop*, 195 F. Supp. 3d at 1115.[5]

Aristocrat has already made clear that its trade secret identifications are a moving target,

---

[3] Given the limited briefing space, L&W is able to focus only on a few exemplar deficiencies with Aristocrat's responses. But as L&W detailed in its communications to Aristocrat, the list is expansive. *See* Ex. 1 at 1-3. L&W would welcome an opportunity to fully brief this dispute.

[4] *See* MTD Order at 9-10 (noting that a lower standard for trade secret identification applies); Mot. ISO PI at 2-3 (ECF 93) (Aug. 19, 2024) (admitting same at the preliminary injunction stage). This makes Aristocrat's reliance on *WeRide* and *Unix Sys.* inappropriate as both cases involved preliminary motions. *See* 379 F. Supp. 3d at 841 (PI); 1993 WL 414724, at *18 (MTD and PI). Similarly, the 2021 *Microvention* case was later characterized by the same court as decided "during the early stages of discovery." 2023 WL 4316880, at *6.

[5] Aristocrat does not respond to L&W's argument. Instead, it speaks out of both sides of its mouth. According to it, its trade secrets "will [not] morph as the case continues" but also it should be allowed to adjust its "general" trade secrets as "evidence continues to emerge." Both cannot be true.

**FILED UNDER SEAL**

which completely defeats the main purpose of trade secret identifications. Aristocrat claims that "even if one or more specific components of the information at issue was generally known, readily ascertainable . . . those components would still be protected as part of Aristocrat's ***combination trade secrets***." ROG 1 Resp. (emphasis added). In other words, Aristocrat intends to repackage its trade secrets as the case develops. Aristocrat has already once moved the trade secret target and will do so again. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ ████████████████████████████████

███████████████████████████████████

　　　　To ensure that it can continue playing this whack-a-trade-secret game, Aristocrat cites to more than 8,700 pages and states that its trade secrets can be discerned by "examining, auditing, compiling, abstracting, or summarizing" those pages. *Id.* But "identifying lists of hundreds (sometimes thousands) of files … does not provide the particularity required in trade secret identification." *Moog v. Skyryse*, 2023 WL 4681601, at *6 (C.D. Cal. June 14, 2023).[7] It is Aristocrat's burden to identify the trade secrets. *See, e.g.*, *SVI v. Supreme*, 2018 WL 10456275, at *1 (D. Nev. Mar. 7, 2018). The Court should disallow Aristocrat to wait until trial to reveal how it will package its "innumerable specific, values, and inputs" into a trade secret. Ex. 2 at 8.[8]

　　　　Finally, Aristocrat does not even answer the simple and fundamental question of how many trade secrets it alleges are at issue in this case. *See, e.g.*, *I-Flow v. Apex Med. Techs.*, 2008 WL 11342247, at *3 (S.D. Cal. Oct. 10, 2008) (finding identification "inadequate" because "Plaintiff

---

[6] In rebuttal, Aristocrat invites the Court to ignore the slides it presented during the hearing and instead to credit a footnote and a paragraph in an appendix to its motion for supplemental briefing.

[7] In the 2023 *MicroVention* case defendants stole "55,000 proprietary documents." 2023 WL 4316880, at *1, 6. That made that case "difficult to compare with a run-of-the-mill trade secret misappropriation case," such as our case where—at most—a few spreadsheets are at issue. *Id.* at *3. *Walker* found sufficient a trade secret identification pointing to "30 Bates numbered exhibits"— not thousands like Aristocrat's does here—because "the trade secret [wa]s the spreadsheet ***itself***," 2025 WL 868777, at *5-6, and not some compilation of "innumerable specific calculations, values, and inputs," Ex. 2 at 8, that "can be found … in the … spreadsheets."

[8] Aristocrat's misappropriation contentions do not limit its trade secrets, making them irrelevant.

failed to identify the number of trade secrets").

## B.    Aristocrat's Position.

Aristocrat has more than sufficiently identified the trade secrets at issue in this case. *See, e.g.*, *MicroVention, Inc. v. Balt USA, LLC*, 2023 WL 4316880, at *6 (C.D. Cal. May 3, 2023) ("The level of particularity that is reasonable . . . is highly fact-dependent and likely to differ from case to case."). The Court has already twice rejected L&W's arguments to the contrary, both in denying L&W's motion to dismiss and in granting Aristocrat's preliminary injunction motion based on extensive evidence of L&W's misappropriation. *See, e.g.*, ECF No. 125 at 5–6 (finding "that Aristocrat has provided sufficient detail for L&W to understand the alleged trade secrets"). With no answer to that evidence, L&W again resorts to arguing that it cannot understand what it misappropriated. That argument fares no better with repetition and should be rejected a third time.

For starters, there is no credible concern that Aristocrat's trade secrets, which relate to the mathematical designs of games first released in 2014, are litigation constructs that will morph as the case continues. Both sides are well acquainted with the sort of math and design information at issue, treat it as confidential and proprietary, and describe it in detail in regulatory submissions and design and development documents like those produced in this case. Because those historical documents memorialize the mathematical designs of the Aristocrat games, there is no risk of Aristocrat manufacturing new trade secrets for litigation.

Contrary to L&W's suggestion, Aristocrat "has done more than merely provide thousands of pages of documents and tell Defendants and the Court to go hunt." *Walker Prods., Inc. v. Cong*, 2025 WL 868777, at *7 (C.D. Cal. Feb. 10, 2025). Aristocrat has provided detailed narrative descriptions of its trade secrets in numbered paragraphs, described in detail where specific trade secrets can be found in its math files (with pin-cites to specific parts of exemplary spreadsheets), and clearly asserted combination trade secrets over the contents of files that L&W purloined in their entirety. *See supra* § II at, *e.g.*, 3–7. That is more than enough to identify the trade secrets in

27

FILED UNDER SEAL

1   suit.[9] And that is not all Aristocrat has done. Other responses provide further clarity by explaining

2   why the information qualifies as a trade secret (*e.g.*, Nos. 2 and 3) and by detailing the specific

3   Aristocrat information that L&W misappropriated (*e.g.*, Nos. 6 and 8). *See also* ECF No. 125 at

4   12–16 (noting "striking similarities" in "side-by-side comparisons" of the parties' math files).

5     L&W's other arguments also lack merit. *First*, the preliminary injunction order belies

6   L&W's insinuation that the Court took issue with Aristocrat's identification. The Court held that

7   Aristocrat had not yet proven the trade secret status of one category of information, but that only

8   confirms that Aristocrat had *identified* its trade secrets with "sufficient detail for L&W to

9   understand," and the Court to evaluate, the substance of Aristocrat's claims, ECF No. 125 at 5–6.

10    *Second*, L&W's accusation of gamesmanship is baseless. ███████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  *See, e.g.*, *id.*; ECF No. 125 at 16 (discussing "arbitrary and idiosyncratic" similarities between

16  both sides' spreadsheets that are not trade secrets but further evidence L&W's misappropriation).

17    *Third*, the cases cited by L&W are distinguishable. This is not a case like *Moog*, where the

18  plaintiff provided only "sparse and boilerplate" descriptions, 2023 WL 4681601, at *6. Nor is this

19  anything like *X6D* or *I-Flow*, which criticized the failure to enumerate trade secrets only to

20  punctuate a multitude of other deficiencies. *See X6D*, 2012 WL 12952726, at *8 (C.D. Cal. Aug.

21  27, 2012) (plaintiff "merely list[ed] hundreds of documents" without "provid[ing] any assistance

22  on where in those documents the trade secrets can be found"); *I-Flow*, 2008 WL 11342247, at *3–

23

24  [9] *See, e.g.*, *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 847 (N.D. Cal. 2019) (plaintiff
    sufficiently identified trade secrets with "file names" and descriptions); *Walker*, 2025 WL 868777,

25  at *6 ("[T]he trade secret is the spreadsheet itself and the particular way in which [Plaintiff]
    synthesizes all of the information—public and otherwise . . . [which] represents a sufficiently

26  identified trade secret."); *Microvention, Inc. v. Balt USA, LLC*, 2021 WL 4840786, at *4 (C.D. Cal.
    Sept. 8, 2021) (plaintiff "amply identified" thousands of trade secrets with "the Bates Number range

27  for every distinct alleged trade secret or the file type or title"); *Unix Sys. Lab'ys, Inc. v. Berkeley
    Software Design, Inc.*, 1993 WL 414724, at *17 (D.N.J. Mar. 3, 1993) ("[E]ven if all of the pieces

28  . . . had been thoroughly revealed . . . the overall [information] might remain a trade secret.").

4 (plaintiff cited but did not produce documents embodying its trade secrets, failed to state whether its trade secrets included compilations, and purported to rely on unadopted witness testimony); *see also Walker*, 2025 WL 868777, at *7 (distinguishing *X6D* on facts closer to those in this case).

## V.    The Parties' Proposed Compromise or Resolution

### A.    L&W's Proposed Compromise or Resolution

L&W proposes that within 14 days from the resolution of this dispute by the Court, Aristocrat shall amend its response to L&W's Interrogatory No. 1 to:

1. State the number of the trade secrets it claims are at issue in this case and provide an explanation of how it intends to try this case if the number of trade secrets (including separate subparts) exceeds twenty; *see, e.g.*, *X6D v. Li-Tek*, 2012 WL 12952726, at *8 (C.D. Cal. Aug. 27, 2012) (finding "Plaintiffs' disclosure" deficient "[f]irst" because they "failed to clarify even the number of trade secrets at issue");

2. For each trade secret, identify an exhaustive list of elements comprising that trade secret; *see, e.g.*, *Perlan Therapeutics v. Superior Ct.*, 101 Cal. Rptr. 3d 211, 221 (2009) (forbidding plaintiff "to reserve the right to unilaterally amend … its identification so it can broaden its lawsuit to include claims it hopes to develop in discovery");

3. For each element, describe that element with specificity and provide an exhaustive list of reasonable number of documents disclosing the element; and

4. Within 30 days of Aristocrat serving an amended response to L&W's Interrogatory No. 1, Aristocrat should provide a corporate representative to testify about the scope of the amended trade secret identification.

Afterwards, Aristocrat should be "prohibited . . . from materially altering the details of its trade secret" in its subsequent responses, if any. *ImageKeeper v. Wright Nat'l Flood Ins. Servs.*, 2022 WL 22908259, at *3 (D. Nev. Feb. 17, 2022) (Navarro, J.). However, the Court should permit Aristocrat to amend its trade secret identification—no later than 21 days before the close

FILED UNDER SEAL

of fact discovery—if the amendment only addresses newly discovered information and could not have been served earlier.

Aristocrat's *DeRubeis* case supports L&W's position here. There, the Court granted "Plaintiffs DeRubeis and Burns (as the trade secret defendants)" motion to compel a more specific trade secrets identification because "[u]ntil [DeRubeis] knows what information is at issue, it cannot attempt to rebut [Witten's] charges of misappropriation." 244 F.R.D. at 679, 681-82. It also granted "a protective order that would delay their obligation to respond to Witten's discovery requests until Witten has first described its alleged trade secrets with particularity." *Id.* at 679, 682.

### B.    Aristocrat's Proposed Compromise or Resolution

Aristocrat has fully complied and will continue to comply with its discovery obligations, including by supplementing its interrogatory responses to address new evidence of L&W's misappropriation. As that evidence continues to emerge, L&W should not be permitted to insulate itself from mounting proof of its previously undiscovered wrongdoing by preventing Aristocrat from building its case as discovery continues. As explained in *DeRubeis v. Witten Technologies*, "[a] trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating." 244 F.R.D. 676, 680 (N.D. Ga. 2007). Thus, imposing unduly restrictive identification requirements before discovery is complete creates an unfair "Catch-22" that forces the plaintiff to risk either describing its trade secrets in "too general" terms that "will encompass material that the defendant will be able to show cannot be trade secret," or "too specific" terms that "may miss what the defendant is doing." *Id.*[10]

Moreover, the exhaustive supplementation proposed by L&W is inconsistent with both Rule 26's proportionality requirement and trade secret law. As explained, Aristocrat has more than

---

[10] L&W asserts that *DeRubeis* "supports L&W's position here." Not so. That the court required the trade secret plaintiff to expand upon its disclosure—which comprised 135 words total among 5 bullet points and did "not specify any trade secrets at all, but rather reveal[ed] the end results of, or the functions performed by, the claimed trade secrets"—does not in any way suggest Aristocrat's extensive disclosure is insufficient. *Id.* at 679.

30

FILED UNDER SEAL

sufficiently identified its trade secrets by producing complete math files for the games in suit and providing detailed descriptions of (1) what specific information it contends L&W misappropriated and how, and (2) where that information can be found in the parties' respective math files and in the specific spreadsheets misappropriated by L&W, each of which contains dozens of tabs with thousands of cells of detailed game math and design information that can be read, understood, and used in innumerable ways both individually and in combination with each other. It would make no sense to require Aristocrat to further attempt an "exhaustive" narrative accounting, not only of each of those cells, but of all the ways in which the information reflected therein can be described. Not only would such an endeavor serve no purpose given that L&W already has Aristocrat's complete math files for the games in suit, but it would also have the perverse effect of penalizing *Aristocrat* for the extraordinary breadth of *L&W*'s misappropriation. *See, e.g.*, *MicroVention*, 2023 WL 4316880, at *3 ("Plaintiff alleges that Balt stole thousands of proprietary documents and has described those documents with reasonable particularity. . . [E]ven if only some of the information in the document is a trade secret, it would be extremely burdensome to require Plaintiff to list them all—a burden created by the scale of the allegations of theft against Balt.").[11]

Tellingly, despite its rhetoric about "moving target[s]" and "whack-a-trade-secret" games, L&W has not identified a single instance in which Aristocrat's misappropriation contentions have been inconsistent with its trade secret identification. To the contrary, as the preliminary injunction order recognized, Aristocrat's allegations are fully consistent with and supported by ample record evidence, including math files produced by both sides for the games in suit. *See* ECF No. 125 at 5–6, 12–16. And because the historical math files produced by Aristocrat necessarily demarcate a bounded set of trade secrets, there is no factual support for L&W's purported concerns about an evolving "number" of trade secrets at issue as the case progresses. Nor is there any legal basis for L&W's request for a brightline rule to (1) impose some arbitrary numbering on the trade secrets

---

[11] Nor should any amendment be required to address L&W's misleading complaint that Aristocrat has cited 8,700 pages of documents. Those pages comprise the regulatory submissions for dozens of iterations of the games at issue, and each submission contains a similar set of math files reflecting the same or similar underlying mathematical designs. Aristocrat's responses appropriately discuss exemplary files while identifying other versions in a separate appendix.

**FILED UNDER SEAL**

1    at issue and (2) require that Aristocrat preview its trial strategy if it will assert more than twenty.

2    Rather, L&W's true goal appears to be to artificially cap the scope of Aristocrat's case and thereby

3    limit L&W's exposure for its extensive misappropriation. L&W remains free to dispute the merits

4    of Aristocrat's claims at summary judgment or trial, but it is entitled to no relief on this dispute,

5    let alone a cap on Aristocrat's ability to seek redress for the full extent of L&W's misappropriation

6    even as discovery continues to bring new evidence of that misappropriation to light.[12]

7

8    . . . . .

9    . . . . .

10   . . . . .

11   . . . . .

12   . . . . .

13   . . . . .

14   . . . . .

15   . . . . .

16   . . . . .

17   . . . . .

18   . . . . .

19   . . . . .

20   . . . . .

21   . . . . .

22   . . . . .

23   . . . . .

24

25   [12] A simple example illustrates the problem with L&W's request:

26

27   It is not feasible to parse this out into separate, individually numbered trade secrets, nor is there any purpose to doing so when Aristocrat has clearly identified the weight tables and weight values as trade secrets and L&W already has the complete math files

28   containing these tables and values.

32

FILED UNDER SEAL

Dated: April 10, 2025

1

2

/s/  Peter Swanson                          By: /s/ Philip R. Erwin

3    NICHOLAS J. SANTORO                      CAMPBELL & WILLIAMS
     (Nevada Bar No. 532)                     PHILIP R. ERWIN, ESQ.
4    JASON D. SMITH                           710 South Seventh Street
     (Nevada Bar No. 9691)                    Las Vegas, Nevada 89101
5    TYLER B. THOMAS
     (Nevada Bar No. 16637)                   SUSMAN GODFREY L.L.P.
6    **SPENCER FANE LLP**                     NEAL MANNE (*pro hac vice*)
7    300 South 4th Street, Suite 1600         JOSEPH GRINSTEIN (*pro hac vice*)
     Las Vegas, Nevada 89101                  ROCCO MAGNI (*pro hac vice*)
8    Tel.: (702) 408-3400                     1000 Louisiana, Suite 5100
     Email: nsantoro@spencerfane.com          Houston, Texas 77002
9           jdsmith@spencerfane.com
10          tbthomas@spencerfane.com          SUSMAN GODFREY L.L.P.
                                              ERIK WILSON (*pro hac vice*)
11   PETER SWANSON                            1900 Avenue of the Stars, Suite 1400 Los
     (*pro hac vice*)                         Angeles, California 90067
12   GARY RUBMAN
     (*pro hac vice*)                         SUSMAN GODFREY L.L.P.
13   SIMEON BOTWINICK                         DINIS CHEIAN (*pro hac vice*)
14   (*pro hac vice*)                         ANDREW NASSAR (*pro hac vice*) One
     **COVINGTON & BURLING LLP**              Manhattan West, 50th Fl.
15   One CityCenter                           New York, NY 10001
     850 Tenth Street, NW
16   Washington, DC 20001                     *Attorneys for Defendants Light & Wonder,*
17   Tel.:  (202) 662-6000                    *Inc., LNW Gaming, Inc., and SciPlay*
     Email: pswanson@cov.com                  *Corporation.*
18          grubman@cov.com
            sbotwinick@cov.com
19

20   ZIWEI SONG
     (*pro hac vice*)
21   **COVINGTON & BURLING LLP**
     Salesforce Tower
22   415 Mission Street, Suite 5400
     San Francisco, CA 94105-2533
23   Tel.: (415) 591-6000
     Email: ksong@cov.com
24

25   *Attorneys for Plaintiffs/Counterclaim-*
     *Defendants Aristocrat Technologies, Inc. and*
26   *Aristocrat Technologies Australia Pty Ltd.*

27

28

33

**FILED UNDER SEAL**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of April, 2025, I caused a true and correct copy of the foregoing **Stipulation Regarding Discovery Dispute** was served electronically via electronic mail to the addresses of the following counsel of record:

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
SPENCER FANE LLP
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308
Email: nsantoro@spencerfane.com
jsmith@spencerfane.com
tbthomas@spencerfane.com

PETER SWANSON
(*pro hac vice*)
GARY RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com
grubman@cov.com
sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*/s/ Philip R. Erwin*
An Employee of Campbell & Williams