NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email: nsantoro@spencerfane.com
        jdsmith@spencerfane.com
        tbthomas@spencerfane.com

PETER A. SWANSON
(*pro hac vice*)
GARY M. RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email:   pswanson@cov.com
         grubman@cov.com
         sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-Defendants*
*Aristocrat Technologies, Inc. and*
*Aristocrat Technologies Australia Pty Ltd.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Plaintiffs/Counterclaim-Defendants, <br><br> v. <br><br> LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Defendants/Counterclaim-Plaintiffs. | Case No. 2:24-cv-00382-GMN-MDC <br><br> **STIPULATION REGARDING DISCOVERY DISPUTE** <br><br> **ORAL ARGUMENT REQUESTED** |

Pursuant to Paragraph II.B.2 of Judge Couvillier's Standing Order, Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. (together, "Aristocrat") and Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (together, "L&W"), respectfully submit this stipulation regarding an Aristocrat discovery request that remains in dispute following the parties' good-faith efforts to resolve the dispute informally.

## I.    JOINT SUMMARY OF DISCOVERY DISPUTE

The present discovery dispute relates to Aristocrat's request for the production of final game math for L&W hold-and-spin games developed since June 2021, which is when Emma Charles, the former Aristocrat employee who led the game studio that developed L&W's Dragon Train game, joined L&W.[1] L&W has agreed to produce the math for two more games developed by Ms. Charles's game studio as well as three games developed by other game studios (one of which was never released). The parties have been unable to reach agreement concerning Aristocrat's request for the production of math for other L&W games.

## II.    RESTATEMENT OF DISCOVERY REQUEST AND RESPONSE AT ISSUE

The present dispute concerns the following discovery request and response:

**REQUEST FOR PRODUCTION NO. 84:**

Documents sufficient to describe the complete mathematical and game design of any L&W game (whether or not released to the public) that (a) has a "hold and spin" feature (including variations on that feature) and (b) was developed in whole or in part after June 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Defendants object to this Request as overbroad, not proportional to the needs of the case, and seeking irrelevant information. Defendants further object to this request on the grounds that it does not define "hold and spin" or put any limits on what a "variation" of hold and spin might constitute. Without waiving the foregoing objections, Defendants have already agreed to provide information on the mathematical and game design of Dragon Train, Huff N More Puff (U.S. Version) and Monopoly Take a Chance (ANZ Version). By so doing, Defendants do not concede that any of the foregoing games employ the undefined "hold and spin" concept.

## III.    JOINT SUMMARY OF MEET-AND-CONFER EFFORTS

The parties met and conferred via teleconference regarding the disputed request most recently on April 9, 2025, at 10:30 a.m. ET. Peter Swanson, Alexander Trzeciak, and Jason Smith

---

[1] "Hold-and-spin" refers to a type of bonus feature in slot games. ECF No. 206, ¶ 25. The asserted trade secrets encompass information about Aristocrat's implementation of the hold-and-spin feature in its Lightning Link and Dragon Link games. *Id.* ¶ 39.

attended for Aristocrat, and Neal Manne, Joseph Grinstein, Erik Wilson, Dinis Cheian, and Andrew Nassar attended for L&W. The parties also discussed the disputed request via teleconference or videoconference on January 27, 2025, at 4:00 p.m. ET. The parties also exchanged numerous letters and emails discussing this issue between January 16, 2025, and April 24, 2025.

In a letter dated January 16, 2025, Aristocrat objected to L&W's narrowing of RFP 84 to the game math for three games, all of which were developed by Ms. Charles's studio (Star Studio). Ex. A at 3.[2] Aristocrat asserted that the request "is important to determining the spread and usage of Aristocrat's trade secrets within L&W, and it is reasonably tailored both to specific types of games and a specific time period." *Id.* at 3.

On January 27, the parties met and conferred, at which time Aristocrat clarified that RFP 84 seeks only final or most-recent game math and asked if L&W would consider producing the final math for hold-and-spin games developed by two additional L&W game design studios: "Big Rex" and "Elements." Ex. B at 13–16. In subsequent emails, Aristocrat identified evidence that it contends shows or suggests that these and other L&W studios, including "Studio X" and "Studio Heads UP," were exposed to or used Aristocrat's trade secrets in their game development efforts, and Aristocrat reiterated its request for game math from at least those studios. *Id.* at 6–8, 11–12. On March 28, L&W declined to provide math for games other than the three games identified in the response and three other games (Double Dragon, Jewel of the Dragon, and an unreleased game). *Id.* at 8–9. L&W suggested that other discovery avenues, such as using targeted search terms, would be more appropriate. *Id.* L&W stated that it was "willing to consider requests for specific games from Aristocrat if evidence reflects a substantial likelihood that Aristocrat confidential information was used in its development," and that Aristocrat is able to discover such information through more targeted requests and avenues, such as depositions. On April 2, Aristocrat asserted that while search terms may be helpful, they are not sufficient and pointed out that L&W had recently announced to the public that it had tasked Mark Nicely (L&W's expert in

---

[2] Except where otherwise indicated, "Ex." numbers refer to exhibits attached to the Declaration of Peter Swanson, submitted herewith.

this litigation) to perform a "broad third-party audit" of hold-and-spin games released from mid-2021 through the present, and that Mr. Nicely had found no issues with those games. *Id.* at 6–8. Aristocrat reiterated its requests for math from specific studios and also requested the game math L&W had provided to Mr. Nicely. *Id.* L&W asserted that such documents were privileged.

On April 9, the parties met and conferred a second time. L&W reiterated its objection to providing the requested game math from the specified game studios or the math files provided to Mr. Nicely. L&W instead offered to perform targeted numerical searches on the final game math files for all of its hold-and-spin games since 2015, and stated that it would produce the game math files that have relevant hits.

On April 14, Aristocrat sent an email reiterating its position that search terms alone are insufficient to identify the usage of Aristocrat's trade secrets in other L&W games and requesting that L&W produce the final game math for all of the games that L&W had offered to search on the meet-and-confer. *Id.* at 3–5.

On April 22, L&W responded by maintaining its objection to Aristocrat's request for final game math for L&W's hold and spin games. *Id.* at 2–3. L&W agreed in principle to performing searches on its "Perforce" repository, which stores design and development documents for some of L&W's games, but L&W noted that this repository has a limited native search functionality that can be used to search the content of text-based files in the database, like .txt and .csv files, but not encoded files in the database, like Excel, Word, or PDF files. *Id.*

Counsel for the parties certify that, despite a sincere effort, the parties are unable to resolve or further narrow this dispute without the Court's assistance.

## IV.     THE PARTIES' POSITIONS

### A.     ARISTOCRAT'S POSITION

L&W's use of Aristocrat trade secrets was not—as L&W's CEO publicly stated following the preliminary injunction—an "isolated incident" involving its Dragon Train game, Ex. C at 5, nor was it limited to a few allegedly "rogue employees" among the Star Studio team that developed the game, ECF No. 220 at 24. To the contrary, discovery has shown that Aristocrat's trade secrets have proliferated and been used across many other L&W game studios. For example, L&W

admitted that a document replicating large swaths of Aristocrat math was used in the development of an unreleased game developed by L&W's Big Rex studio. *See* ECF No. 174 at 11; ECF No. 180 at 1. L&W also admitted that Aristocrat math "has been shared with and/or used by certain L&W employees involved in the development of Jewel of the Dragon," a game developed by Studio Heads UP. ECF No. 220, ¶ 12. In addition, L&W's Dragon Train game math—which embodies Aristocrat trade secrets—was accessible to "everyone" at L&W, Ex. D at 42:14–44:12, and other studios were actively seeking it out given the game's success. A mathematician in the UK, for example, discussed "making a similar game to . . . Dragon Train," obtained the Dragon Train math, and discussed it with Ms. Charles. Ex. E. He also referenced other game projects based on Dragon Train. Ex. F. Members of another studio, "Studio X," discussed using Dragon Train math to develop one or more games. *E.g.*, Ex. G ("you can start with the Dragon Train reel strips and prize distribution just as a starting place"); Ex. H; Ex. I. And "Elements" studio members communicated about Dragon Train and Dragon Link math. *E.g.*, Ex. J; Ex. K; Ex. L.

Given L&W's widespread internal dissemination of Aristocrat's trade secrets,[3] RFP 84 is appropriate to identify any additional uses of those secrets in L&W games. L&W appears to agree that a broad and manual (*i.e.*, not using search terms) inspection of its game math is warranted: L&W publicly announced that the expert it retained for this litigation, Mark Nicely, performed a "broad third-party audit" of L&W's hold-and-spin games "released from mid-2021." Ex. N at 4. That L&W chose to conduct this "audit" contradicts its argument that Aristocrat's request is not tailored to "Aristocrat's claims or alleged trade secrets." Similar to the audit, RFP 84 seeks only the ***final*** math, only of L&W's ***hold-and-spin*** games (which, contrary to L&W's assertion, tailors the request to the trade secrets at issue), and only those in development ***on or after June 2021***.

L&W's refusal to turn over game math unless L&W agrees "Aristocrat's trade secrets may have played a role in the development of a game," *infra* § IV.B, improperly makes L&W the arbiter of its own misappropriation. If that were the standard, Aristocrat never would have obtained the math for Dragon Train, which L&W repeatedly and incorrectly insisted did not use Aristocrat's math until the Court found otherwise in its PI ruling. *See* ECF No. 221 at 9–14. Similarly, Mr.

---

[3] Ms. Charles also provided feedback to other game studios on their games. *E.g.*, Ex. M.

Nicely's audit—which L&W said did not reveal any "issues," Ex. N at 4—evidently missed the use of Aristocrat math in L&W's now-withdrawn Jewel of the Dragon game, which was brought to L&W's attention by Aristocrat **after** Aristocrat examined the game math. Ex. O.

L&W does not explain how Aristocrat can feasibly prove, to L&W's satisfaction, that a particular game's math is based on Aristocrat trade secrets without having the game's math or any development documents. L&W appears to recognize that such a showing is neither necessary nor feasible, as it agreed to provide the math for two games from Star Studio despite claiming there is no evidence that Aristocrat math was used in those games. Yet L&W indefensibly refuses to provide math for games developed by other studios that, like Star Studio, possessed and used Aristocrat's math in game development. Instead, L&W asks Aristocrat to trust "L&W's investigation." But not only is this contrary to the very purpose of discovery—which is to allow Aristocrat to conduct its own investigation into the misappropriation—but it is particularly inappropriate given that L&W has repeatedly been wrong about its use of Aristocrat's math.

L&W's concern about Aristocrat "molding" its trade secret claims is baseless and addressed by Aristocrat in a separate discovery stipulation. ECF No. 217. None of the cases cited by L&W concerns the issue here: where Aristocrat has produced math files embodying the asserted trade secrets (which cannot be "molded"), where discovery to date has uncovered widespread dissemination and use of that math within L&W across multiple game studios, and where even L&W agrees that discovery into misappropriation is appropriate, Aristocrat is entitled to discovery to determine **how many more** L&W games are affected. *See, e.g.*, *Bytemark, Inc. v. Xerox Corp.*, 2022 WL 120980, at *5 (S.D.N.Y. Jan. 11, 2022) (finding "it is not clear how Plaintiff could 'tailor [its] theory'" where Plaintiff produced documents embodying its trade secrets).

### B.    L&W'S POSITION

L&W has been, and remains, willing to provide discovery into specific games based on Aristocrat's allegations. But for two reasons, Aristocrat's request for the wholesale production of math from games that are not connected to Aristocrat's alleged trade secrets goes too far.

*First*, Aristocrat's sweeping request poses a substantial risk that it will "mold its cause of action around the discovery it receives." *Switch Commc'ns Grp. v. Ballard*, No. 2:11-CV-00285-

KJD, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) (citation omitted). Aristocrat admits it does not accuse all L&W hold-and-spin games since 2021. Yet its current request seeks math for all of them, regardless of whether they are relevant to Aristocrat's claims or alleged trade secrets.[4] Aristocrat ignores a key principle of discovery in trade secrets cases: the alleged trade secrets inform "the outer permissible bounds of discovery." *Newmark Grp., Inc. v. Avison Young (Canada) Inc.*, 2018 WL 5886531, at *5 (D. Nev. Nov. 9, 2018) (citation omitted); *see also Givaudan Fragrances Corp. v. Krivda*, 2013 WL 6230498, at *3 (D.N.J. Dec. 2, 2013) (noting discovery "must be limited to the specific trade secrets which were allegedly misappropriated."). One reason why courts *require* plaintiffs to articulate their trade secrets with specificity is to prevent fishing expeditions like this one. To date, Aristocrat has refused to do so, meaning it can "cleverly specify" its trade secrets to be whatever L&W happens to produce. *Jobscience, Inc. v. CVPartners, Inc.*, 2014 WL 1724763, at *2 (N.D. Cal. May 1, 2014).

Courts are well aware of this "old trick." *Id.* "[I]t is all too easy" for plaintiffs to "use discovery to redefine the[ir] trade secrets to be whatever is found in defendant's files." *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, No. C 20-04808, 2021 WL 2166880, at *1 (N.D. Cal. May 27, 2021). Here, the risk that Aristocrat will map new "trade secrets" onto whatever L&W produces is high because discovery has begun to reveal that some of Aristocrat's so-called trade secrets are no such thing: they have been publicly disclosed on the internet. *See, e.g.*, Ex. Q, R (Dragon Link Golden Century PAR sheet from Scribd.com containing alleged trade secrets); Ex. S (search results for "trade secret of Aristocrat" on Scribd.com showing PAR sheets).[5]

*Second*, Aristocrat's request is so broad that it seeks irrelevant information and is unnecessary given all the other discovery tools. As a general matter, "discovery requests related to trade secret claims must be narrowly tailored to actual alleged trade secret misappropriations." *Dairy, LLC v. Milk Moovement, Inc.*, 2023 WL 5620733, at *3 (E.D. Cal. Jan. 31, 2023). In this case, Aristocrat has already requested "the complete math for any L&W hold & spin game . . . that was designed or developed using . . . any of the Aristocrat Trade secrets, or any other confidential

---

[4] On May 19, Aristocrat served RFP No. 126, which expands RFP 84 by seeking math for all hold-and-spin games developed since 2015. *See* Ex. P (Aristocrat's Seventh Set of RFPs).

[5] PAR sheets contain details regarding how games operates mathematically.

information of Aristocrat." Ex. T (Aristocrat's Third Set of RFPs) (RFP 73). Yet it now seeks math for *all* hold-and-spin games. To the extent any of Aristocrat's math was potentially used to develop a game, the current request is duplicative. To the extent *none* was used, the current request seeks irrelevant information. There is nothing unusual or improper about defendants reviewing their own documents to determine if they are responsive to a plaintiff's requests. Aristocrat is not entitled to inspect games that were not designed or developed with its alleged trade secrets, and its existing discovery requests are sufficient to provide it any games that were.

Contrary to Aristocrat's arguments, L&W is not merely relying on keywords to identify the alleged trade secrets. It has reviewed the final math of its hold-and-spin games, including those this request now seeks. L&W also already agreed to provide math for the games Aristocrat identifies in the complaint *plus* others connected to the specific allegations. For example, L&W has provided math for two games on which Ms. Charles worked, even without any indication that Aristocrat game math was potentially used. But L&W has not produced math when Aristocrat has presented zero argument that its trade secrets were implicated in a game. For example, Aristocrat accused another game based on email correspondence involving Ms. Charles and that game's designer. *See* Ex. M. L&W investigated; determined that Ms. Charles did not provide math information to that team, but instead commented on aspects spurred by playing the game, like art; and informed Aristocrat. *See* Ex. B (Counsel Correspondence). When discovery or L&W's investigation has suggested that Aristocrat's trade secrets may have played a role in the development of a game, L&W has agreed to produce that math. L&W will continue to do so.

## V.    THE PARTIES' PROPOSED COMPROMISE OR RESOLUTION

### A.    ARISTOCRAT'S PROPOSED COMPROMISE OR RESOLUTION

Aristocrat proposes that L&W produce the final or latest game math for each L&W game (whether or not released to the public) that (a) has a "hold and spin" feature (including variations on that feature) and (b) was developed in whole or in part after June 2021. This appears to be the same or similar set of math that L&W already collected and provided to its expert. Upon review of this math, should Aristocrat reasonably suspect that any game was designed using material or information disclosing or embodying Aristocrat's confidential math relating to its Dragon Link or

Lightning Link games, the parties shall work together to facilitate further productions of design and development documents from that L&W game.

Aristocrat proposes that this relief should cover all L&W games meeting the above criteria given (a) the wide spread of Aristocrat confidential information across the company, the full extent to which is presently unknown, and (b) the scope of L&W's own alleged investigation (*i.e.*, Mr. Nicely's audit). At a minimum, however, L&W should produce these materials for any L&W game studio where the evidence suggests any member of the studio accessed, received, or was exposed to Aristocrat confidential math information relating to Aristocrat's Dragon Link or Lightning Link games in any form, including such information embodied in the math of L&W's Dragon Train game, Jewel of the Dragon game, and the aforementioned unreleased game. Those studios would include at least (1) the studios that developed those three L&W games (Star Studio, Studio Heads UP, and Big Rex, respectively); (2) studios whose members are custodians of, or identified in, Exhibits E–M referenced in Part IV.A, above; and (3) any other studio for which Aristocrat or L&W identify evidence reasonably suggesting that its member(s) accessed or received material or information disclosing or embodying Aristocrat's confidential math relating to Aristocrat's Dragon Link or Lightning Link games. As a non-limiting example, L&W has committed to producing access logs identifying the L&W employees who accessed certain files that contain or reflect Aristocrat's confidential game math. Ex. B at 15. Consistent with part (3), above, those employees' studios should be encompassed in the proposed relief.

Aristocrat agrees that L&W should also run keyword searches on its game math databases, in part because RFP 84 is narrowly limited to the final or most recent game math and thus would exclude all other development files. L&W's proposed searches, however, are not an adequate substitute for Aristocrat's request for discovery into the final game math for L&W's hold-and-spin games. L&W has acknowledged that its systems are largely incapable of searching the contents of files stored on those systems. ECF No. 173 at 6–8. The searches that L&W is running on Perforce, for example, cannot read or return Excel files, the typical format of math files. Ex. B at 2, 4. Moreover, the Aristocrat math files at issue (and L&W's math files for Dragon Train and Jewel of the Dragon, which Aristocrat contends embody Aristocrat math) span up to dozens of worksheets

containing complex math that cannot feasibly be reduced to a limited set of keywords. Keywords derived from idiosyncratic content appearing in one worksheet, for example, may not identify instances where L&W used a different worksheet associated with the same game but having slightly different numbers to account for a different version of the game or the amount of a player's bet, for example. Nor would they identify instances where L&W used the worksheet as a template but made insubstantial modifications. *See, e.g.*, ECF No. 125 at 13–14 (L&W game designers "tweaked a few numbers"). Thus, any "success" that keyword searches have yielded to date has been the result of fortuitous happenstance and is unlikely to be comprehensive. The review of final game math provides a straightforward and reliable means of identifying similarities to Aristocrat's math indicating that L&W used Aristocrat's trade secrets in designing the game.

## B.    L&W'S PROPOSED COMPROMISE OR RESOLUTION

L&W proposes to produce math for any game "that was designed or developed using, or that otherwise incorporates, any math information provided by Emma Charles, any math information related to Dragon Train, any of the Aristocrat Trade Secrets, or any other confidential information of Aristocrat," which Aristocrat requested in RFP No. 73.

Aristocrat has previously rejected the compromises L&W has offered relating to game math, but L&W has undertaken those efforts anyway. For example, L&W has reviewed the hold-and-spin games Aristocrat seeks through this request and determined that they do not reflect the use of Aristocrat's game math.

L&W has also agreed to perform targeted keyword searches across its primary math development platform, Perforce; review the results of those keyword searches; and produce to Aristocrat any resulting documents that arguably suggest the use of Aristocrat's game math. L&W has agreed to search another, earlier math development platform, SVN, despite technical limitations that prevent L&W from performing searches natively on the platform. L&W has collected all .csv, .txt, and .xl* files from SVN in order to perform searches in the first place. L&W has also agreed to produce any resulting documents that arguably suggest the use of Aristocrat's game math.

L&W has engaged, and will continue to engage, in good faith negotiation with Aristocrat

over which search terms to deploy. Aristocrat's criticism of the use of the keywords to identify its alleged trade secrets is inconsistent with their successful use throughout discovery. The fact that a targeted discovery mechanism has worked in the past is not just "fortuitous happenstance," as Aristocrat claims. It is evidence that Aristocrat does not require the wholesale production of L&W's game math to pursue its claims. Aristocrat's position also reveals that its alleged trade secrets are so vague and ill-defined that not even Aristocrat can articulate keywords to help identify them.

Dated: May 30, 2025

/s/ *Philip R. Erwin*

PHILIP R. ERWIN, ESQ.
(Nevada Bar No. 11563)
**CAMPBELL & WILLIAMS**
710 South Seventh Street
Las Vegas, NV 89101
Tel.: (702) 382-5222
Email:  pre@cwlawlv.com

NEAL MANNE
(*pro hac vice*)
JOESEPH GRINSTEIN
(*pro hac vice*)
ROCCO MAGNI
(*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, Texas 77002
Tel.: (713) 651-9366
Email:  nmanne@susmangodfrey.com
          jgrinstein@susmangodfrey.com
          rmagni@susmangodfrey.com

ERIK WILSON
(*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel.: (310) 789-3100
Email: ewilson@susmangodfrey.com

DINIS CHEIAN
(*pro hac vice*)
ANDREW NASSAR
(*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West
New York, New York 10001-8602
Tel.: (212) 729-2077
Email: dcheian@susmangodfrey.com
          anassar@susmangodfrey.com

*Attorneys for Defendants/Counterclaim-*
*Plaintiffs Light & Wonder, Inc., LNW Gaming,*
*Inc., and SciPlay Corporation.*

Dated: May 30, 2025

/s/ *Jason D. Smith*

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email: nsantoro@spencerfane.com
          jdsmith@spencerfane.com
          tbthomas@spencerfane.com

PETER SWANSON
(*pro hac vice*)
GARY RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.:  (202) 662-6000
Email: pswanson@cov.com
          grubman@cov.com
          sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-*
*Defendants Aristocrat Technologies, Inc. and*
*Aristocrat Technologies Australia Pty Ltd.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 30, 2025, a true and correct copy of the foregoing **STIPULATION REGARDING DISCOVERY DISPUTE** was electronically served via the United States District Court CM/ECF system on all parties or persons registered for notice.

<u>/s/ *Marissa Vallette*</u>
An employee of SPENCER FANE LLP