NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email: nsantoro@spencerfane.com
        jdsmith@spencerfane.com
        tbthomas@spencerfane.com

PETER A. SWANSON *(pro hac vice)*
GARY M. RUBMAN *(pro hac vice)*
SIMEON BOTWINICK *(pro hac vice)*
MATTHEW KUDZIN *(pro hac vice)*
ALEXANDER TRZECIAK *(pro hac vice)*
DANIEL FARNOLY *(pro hac vice)*
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com; grubman@cov.com
        sbotwinick@cov.com; mkudzin@cov.com
        atrzeciak@cov.com; dfarnoly@cov.com

ZIWEI SONG
*(pro hac vice)*
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-Defendants*
*Aristocrat Technologies, Inc. and*
*Aristocrat Technologies Australia Pty Ltd.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., | |
| Plaintiffs/Counterclaim-Defendants, | Case No. 2:24-cv-00382-GMN-MDC |
| v. | **FIRST AMENDED STIPULATED PROTECTIVE ORDER** |
| LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, | |
| Defendants/Counterclaim-Plaintiffs. | |

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. and Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation, by and through their respective counsel, hereby stipulate and agree that discovery in the above-captioned action ("Action") may involve the disclosure of certain documents, things, and information that are alleged to constitute or contain trade secrets, financial records, or other proprietary and confidential research, development, or commercial information within the meaning of Rule 26(c), and that must be protected in order to preserve legitimate business interests. Good cause exists for the entry of this First Amended Protective Order pursuant to Rule 26(c) because it protects against improper disclosure or use of such trade secrets, financial records, and proprietary and confidential information produced or disclosed in this case. The parties therefore further stipulate and agree, subject to the approval of the Court, that the terms and conditions of this First Amended Protective Order shall supersede the Protective Order previously entered at ECF No. 50 and shall govern the handling of documents, depositions, pleadings, exhibits and all other information exchanged by the parties in this Action, or provided by or obtained from non-parties in this Action. The parties agree to comply with the terms and conditions of this First Amended Protective Order (hereinafter the "Protective Order") pending approval by the Court.

## SCOPE

1.      This Protective Order shall apply to all documents, electronically stored information, tangible things, testimony, or other discovery material in this Action, including responses to requests for production of documents, answers to interrogatories, responses to requests for admissions, deposition testimony, expert testimony and reports, exhibits and all other discovery taken pursuant to the Federal Rules of Civil Procedure, matters in evidence and any other information hereafter furnished, directly or indirectly, by or on behalf of any party, non-party or witness in connection with this Action ("Discovery Material").

2.      As used herein, "Producing Party" shall refer to any party to this Action and to any non-party who produces Discovery Material, and "Receiving Party" shall refer to any individual who properly receives or is shown Discovery Material.

**DESIGNATION**

3.    A Producing Party may designate Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" (materials so designated are "Confidentially Designated") in accordance with this Protective Order if the party in good faith believes that such Discovery Material contains CONFIDENTIAL or HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY information as defined in Paragraph 4. The burden of establishing that Discovery Material is CONFIDENTIAL or HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY as defined herein shall be on the Producing Party. The designation of any Discovery Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY shall be deemed effective unless and until the Court orders otherwise or the Producing Party withdraws the designation.

4.    CONFIDENTIAL and HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY Discovery Material shall be construed as follows:

a.    **CONFIDENTIAL** Discovery Material refers to information that reflects marketing information, contacts, financial information, proprietary business information, and/or similar commercially sensitive business information or data which the designating party in good faith believes in fact is confidential or that unprotected disclosure might result in economic or competitive injury, and which is not publicly known.

b.    **HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY** Discovery Material refers to any Confidential information (as defined in Section 4(a) above), trade secrets, know-how, proprietary data, technical information relating to a trade secret, or other confidential research or development information that, if disclosed to the other party, non-parties, or the public, would cause substantial risk of competitive, business, or personal injury to the Producing Party or others. This includes, without limitation, information that may be subject to an existing obligation of confidentiality by the Producing Party or its affiliates, financial information (e.g., detailed

nonpublic financial information such as information relating to sales, sales volume, profits, account balances, and money transfers), game design and development information, strategic business plans, forecasts, and other commercial, marketing or technical information that the Producing Party reasonably believes would provide significant technical or business advantage to the Receiving Party.

**FORM AND TIMING OF DESIGNATION**

5.     Confidentially Designated documents shall be so designated by placing or affixing the wording "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" on each page of the document in a manner that will not interfere with the legibility of the document, or through other means reasonable in the circumstances for noting the appropriate confidentiality designation for electronic documents. Documents shall be designated CONFIDENTIAL or HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY prior to, or contemporaneously with, the production or disclosure of the documents.

6.     Portions of depositions shall be deemed Confidentially Designated if designated as such when the deposition is taken or within fourteen (14) calendar days after receipt of the transcript. Depositions shall be automatically treated as HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY for fourteen (14) calendar days after receipt of the transcript.

7.     Information from inspection of things and premises shall be deemed Confidentially Designated if designated as such at the time of the inspection or within fourteen (14) calendar days after the inspection. All information gleaned from inspection of things and premises shall be automatically treated as HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY for fourteen (14) calendar days after the day of inspection.

8.     To the extent that any party wishes to file or submit for filing as part of the Court record any Discovery Materials subject to this Protective Order, or any pleading, motion or memorandum referring to them, the party wishing to do so shall cause to be filed a motion for leave to file such materials under seal pursuant to the Court's local rules and any other applicable rules governing sealed documents. If a non-designating party is filing Confidentially Designated

Discovery Material, then the non-designating party shall file the material under seal and shall reference the fact that the material was designated under this Protective Order. A non-designating party may make a written request to have the material unsealed, and if the designating party does not agree to the request within ten (10) calendar days, the non-designating party may file an appropriate motion or application as provided by the Court's procedures that shows good cause to unseal the material.

## USE

9.     Confidentially Designated Discovery Material under this Protective Order may be used only for purposes of this Action; the action pending in the Federal Court of Australia titled *Aristocrat Technologies Australia Pty Limited v Light & Wonder, Inc. & Ors* (NSD 1410/2024) (the "Australian Proceeding"); and any appeal from either this Action or the Australian Proceeding; and shall not be used for any other purpose, including, but not limited to, any business, proprietary, commercial, governmental or other legal purpose, including in connection with any other litigation, arbitration or claim. Nothing in this Protective Order precludes a Producing Party from using or disseminating its own Confidentially Designated Discovery Material. Nothing herein shall prevent disclosure beyond the terms of this Protective Order if the Producing Party consents in writing to such disclosure, or if the Court or the court hearing the Australian Proceeding, after notice to all affected parties, orders or permits such disclosure. Notwithstanding the foregoing, this Protective Order does not preclude any individual who has received Confidentially Designated Discovery Material from discussing such material with individuals authorized to access such Discovery Material in any other legal proceeding relating to the same underlying dispute. Any use or disclosure of Confidentially Designated Discovery Material for purposes of the Australian Proceeding shall be governed by confidentiality protections at least as strict as the protections in this Protective Order. The provisions of this Protective Order concerning the use and disclosure of Confidentially Designated Discovery Material in connection with the Australian Proceeding shall not eliminate or limit any obligation of a party to provide discovery in either this Action or the Australian Proceeding (including the provision of a verified list of documents in Australia), and no party shall invoke, refer to, or otherwise rely on such provisions

as a basis for opposing discovery in either this Action or the Australian Proceeding. However, any party may invoke the provisions of this Protective Order to avoid having to produce the same documents twice if those documents can instead be shared between this Action and the Australian Proceeding pursuant to this provision. The parties agree that any pleading or other paper filed under seal in this Action or the Australian Proceeding on the basis that it contains a party's Confidentially Designated Discovery Material may be used and disclosed in connection with either proceeding under the terms and conditions of this Protective Order governing the use and disclosure of Discovery Material designated as HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY.

10.    Confidentially Designated Discovery Material shall be protected from disclosure as specified herein, unless a party obtains an order of the Court declaring that all or certain portions of such Discovery Material are not, in fact, protected and may be disclosed.

11.    Non-parties may designate as CONFIDENTIAL or HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY transcripts of depositions of their witnesses and any documents or information they produce, whether voluntarily or by subpoena, to the same extent and in the same manner as parties to this Action, and any such Discovery Material shall be treated by parties to this Action in the same manner as materials and information so designated by a party. Non-parties shall have the same rights and obligations under this Protective Order as parties and may move the Court to enforce the provisions of this Protective Order. A non-party's use of this Protective Order to protect its own information does not entitle that third party access to Confidentially Designated Discovery Material produced by any party in this case.

## DISCLOSURE

12.    Unless otherwise directed by the Court or authorized in writing by the Producing Party, Discovery Material designated as CONFIDENTIAL may be disclosed by the Receiving Party only to the following persons:

      a.    outside attorneys of record for each party in this Action, including any attorneys employed by firms of record who are representing a party in this Action even if not otherwise identified specifically on pleadings, provided

the attorneys are working on this Action. Support personnel for these outside attorneys (e.g., law clerks, analysts, paralegals, litigation assistants, secretaries and support staff) also are allowed access under this provision;

b.    outside attorneys of record for each party (including barristers) in the Australian Proceeding, including any attorneys employed by firms of record who are representing a party in the Australian Proceeding even if not otherwise identified specifically on pleadings, and any independent consultants or expert witnesses (including partners, associates and employees of the firm which employs such consultant or expert) retained by a party for purposes of the Australian Proceeding, provided that the attorneys, independent consultants, or expert witnesses are working on the Australian Proceeding and have also signed the agreement to be bound by the terms of this Protective Order in the form of Exhibit A attached hereto. Support personnel for the outside attorneys (e.g., law clerks, analysts, paralegals, litigation assistants, secretaries and support staff) also are allowed access under this provision;

c.    subject to the disclosure requirements set forth in Paragraph 14 below, three (3) designated in-house counsel for each party who are responsible for managing this Action, and support personnel for the in-house counsel, such as law clerks, analysts, paralegals, litigation assistants, secretaries and support staff, provided the in-house counsel does not actively participate in the conception, design, development, and marketing of electronic gaming machines;

d.    subject to the disclosure requirements set forth in Paragraph 14 below, up to three (3) designated employee representatives for each party to the extent reasonably necessary for the litigation of this Action, and provided the employee representatives do not actively participate in the conception, design, development, and marketing of electronic gaming machines;

e.   subject to the disclosure requirements set forth in Paragraph 14 below, independent consultants or expert witnesses (including partners, associates and employees of the firm which employs such consultant or expert) retained by a party or its attorneys for purposes of this Action;

f.   the Court (including the court hearing the Australian Proceeding) and its personnel, and all appropriate courts of appellate jurisdiction, including, but not limited to, stenographic reporters regularly employed by the Court and stenographic reporters not regularly employed by the Court who are engaged by the Court or the parties in connection with this Action, the Australian Proceeding, or any appeal;

g.   service contractors such as document copy services, e-discovery vendors, trial technology consultants, jury consultants, translators, and graphic artists;

h.   employees of copy services, e-discovery vendors, design services (including graphics services), microfilming or database services, trial support firms (including mock jurors) and/or translators who are engaged by the parties during the litigation of this Action, the Australian Proceeding, or any appeal;

i.   the authors and the original recipients of the document;

j.   any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

k.   such other persons as hereafter may be designated by written agreement between the parties in this Action or by the order of the Court.

13.   Unless otherwise directed by the Court or authorized in writing by the Producing Party, Discovery Material designated as HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY may be disclosed by the Receiving Party only to the persons listed in Paragraphs 12(a) – (b) and (e) – (k).

14.     Prior to disclosing a Producing Party's Confidentially Designated Discovery Material to any person under Paragraphs 12(c) – (e), the Receiving Party shall provide written notice to the Producing Party that includes: (i) the name of the person, (ii) the present employer and title of the person, and (iii) a signed agreement to be bound by the terms of this Protective Order in the form of Exhibit A attached hereto. For persons under Paragraph 12(e), the Receiving Party shall also provide an up-to-date curriculum vitae, and written disclosure of the proposed consultant/expert's prior and current employment or consulting for any party; any current work for any other slot machine manufacturer; and any specific future employment or consulting opportunities that the consultant/expert has accepted or intends to accept for any party or any other slot machine manufacturer. Within seven (7) calendar days of receiving the information required to be provided under this paragraph, the Producing Party may object in writing to the disclosure. In the absence of any objection at the end of the seven (7) day period, the individual shall be deemed approved under this Protective Order. If an objection is made, the parties shall meet and confer within four (4) calendar days after the objection and attempt in good faith to resolve the dispute informally. If the dispute is not resolved, the party objecting to the disclosure will have seven (7) calendar days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If relief is sought, Confidentially Designated Discovery Material shall not be disclosed until the objection is resolved by the Court. Counsel for the Receiving Party shall retain the signed agreement for a period of five years after the conclusion of the action, including all appeals.

15.     Prior to disclosing a Producing Party's Confidentially Designated Discovery Material to mock jurors under Paragraph 12(h), the Receiving Party shall require the mock jurors to sign a confidentiality agreement that prohibits any use or disclosure of the Confidentially Designated Discovery Material outside of the mock jury exercise, and counsel for the Receiving Party shall retain the signed agreements for a period of five years after the conclusion of the action, including all appeals.

16.    In the event of an unauthorized disclosure of Confidentially Designated Discovery Material, the Producing Party may make a reasonable request for the signed agreements, and upon receipt of such request, counsel for the Receiving Party shall produce the signed agreements.

17.    Whenever information that is Confidentially Designated pursuant to this Protective Order is to be discussed by a party or disclosed in a deposition, hearing, or pre-trial proceeding, the Producing Party may exclude from the room any person, other than persons designated in Paragraphs 12-13, as appropriate, for that portion of the deposition, hearing or pre-trial proceeding.

18.    The recipient of any Confidentially Designated Discovery Material that is provided under this Protective Order shall maintain such information in a secure and safe area and shall exercise reasonable and proper care with respect to the storage, custody, use and/or dissemination of such information.

## EXEMPTED MATERIALS

19.    None of the provisions of this Protective Order shall apply to the following categories of documents or information, and any party may seek to remove the restrictions set forth herein on the ground that Confidentially Designated information has or had been:

    a.    available to the public at the time of its production hereunder;

    b.    available to the public after the time of its production through no act, or failure to act, on behalf of the Receiving Party, its counsel, representatives or experts;

    c.    known to the Receiving Party, or shown to have been independently developed by the Receiving Party, prior to its production hereunder without use or benefit of the information; and/or

    d.    obtained outside of this Action by the Receiving Party from the Producing Party without having been Confidentially Designated and without otherwise being subject to any obligation of confidentiality.

20.    While the Producing Party has the burden of proof of establishing that Discovery Material is CONFIDENTIAL or HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY as set forth in Paragraph 4, the Receiving Party shall have the burden of proof to establish that any

otherwise valid claims of confidentiality have been vitiated based on any of the grounds set forth in Paragraph 19

## INADVERTENT PRODUCTION/DESIGNATION

21.    The inadvertent production of any document or information subject to attorney-client privilege or work product immunity will not waive attorney-client privilege or work product immunity in this Action or any other action or proceeding before any court, agency, or tribunal. In addition, the fact that a document or information was inadvertently produced shall not be used in any manner as evidence in support of any alleged waiver of attorney-client privilege or work product immunity. If a party has inadvertently produced a document or information subject to a claim of attorney-client privilege or work product immunity, upon written request, the document or information, and all copies thereof, shall be returned or destroyed promptly, and in no event later than seven (7) calendar days, after a written request is made by the producing party, and the receiving party shall otherwise comply with Rule 26(b)(5)(B). Moreover, any notes or summaries referring to or describing any inadvertently produced document or information subject to a claim of attorney-client privilege or work product immunity shall be destroyed. After return or destruction of the document or information, the receiving party may challenge the producing party's claim of attorney-client privilege or work product immunity by making a motion to the Court.

22.    The inadvertent failure to designate Discovery Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY prior to disclosure shall not operate as a waiver of the party's right to later designate the material in this Action or any other action or proceeding before any court, agency, or tribunal.

23.    In the event of disclosure of Confidentially Designated Discovery Material to any person not authorized to access such Discovery Material under this Protective Order, the party responsible for having made such disclosure, and each party with knowledge thereof, shall immediately inform counsel for the Producing Party of all known relevant information concerning the nature and circumstances of the disclosure. The party responsible for improperly disclosing such Discovery Material shall also promptly take all reasonable measures to retrieve the

improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made.

24.   Nothing in this Protective Order shall waive or limit any protections afforded the parties under Federal Rule of Evidence 502.

## OBJECTION TO DESIGNATIONS

25.   Any party may object to the designation by the Producing Party of any Confidentially Designated Discovery Material. The process for making such an objection and for resolving the dispute shall be as follows:

    a.   The objecting party shall notify the Producing Party in writing as to its objection(s) to the designations. This notice shall include, at a minimum, a specific identification of the designated Discovery Material objected to as well as the reason(s) for the objection.

    b.   The objecting party shall thereafter have the burden of conferring within seven (7) calendar days, either in person or by telephone, with the Producing Party, as well as any other interested party, in a good faith effort to resolve the dispute.

    c.   Failing agreement, the objecting party may move the Court for a ruling that the Discovery Material sought to be protected is not entitled to such designation. The Producing Party bears the burden to establish that the Discovery Material is CONFIDENTIAL or HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY and entitled to such protection under this Protective Order.

26.   Notwithstanding any such challenge to the designation of Discovery Material, all Confidentially Designated Discovery Material shall be treated as such and shall be subject to the provisions of this Protective Order until either the party who designated the Discovery Material withdraws such designation in writing or the Court rules that the designation is not proper and that the designation be removed.

27.    Any failure to object to any Discovery Material being Confidentially Designated shall not be construed as an admission by any non-producing party that the material constitutes or contains a trade secret or other confidential information.

28.    Not later than sixty (60) calendar days after the termination of this Action or the Australian Proceeding, whichever comes later, including all appeals, all Confidentially Designated Discovery Material, including all copies thereof, shall be returned to the Producing Party or destroyed, such election to be made by the Receiving Party, except that each party's outside counsel may retain all papers filed with the Court, transcripts and videos of testimony and exhibits, expert reports, discovery requests and responses, correspondence and their own work product containing Confidentially Designated Discovery Material for archival purposes, and provided that such counsel shall not disclose any party's Confidentially Designated Discovery Material contained therein to any person or entity except pursuant to a written agreement with the Producing Party or as otherwise provided in this Protective Order. Not later than seventy-five (75) calendar days after the termination of this Action or the Australian Proceeding, whichever comes later, including all appeals, the party receiving any Confidentially Designated Discovery Material shall certify in writing that all such material has been returned or destroyed.

## MISCELLANEOUS PROVISIONS

29.    This Protective Order is without prejudice to the right of any party to seek further or additional protection of Discovery Material for which the protection of this Protective Order is not believed by such party to be adequate. Nothing in this Protective Order shall be deemed to bar or preclude any Producing Party from seeking such additional protection, including, without limitation, an order that certain information may not be discovered at all.

30.    The entry of this Protective Order shall not be construed as a waiver of any right to object to the furnishing of information in response to discovery and, except as expressly provided, shall not relieve any party of the obligation of producing information in the course of discovery.

31.    If at any time Confidentially Designated Discovery Material is subpoenaed by any court, or any arbitral, administrative or legislative body, or is subject to a discovery request in another proceeding, the person to whom the subpoena or request is directed shall immediately give

written notice thereof to counsel for every party who has produced such Confidentially Designated Discovery Material and shall provide each such party with an opportunity to object to the production of such materials prior to their disclosure. If the Producing Party does not move for a protective order within seven (7) calendar days of the date written notice is given, the party to whom the referenced subpoena or request is directed may produce, on or after the date set for production in the subpoena or request but not prior to the end of the seven (7) calendar day notice period, such material in response thereto. Any such production shall be made pursuant to confidentiality protections at least as strict as the protections in this Protective Order.

32.    All notices required by any provision of this Protective Order are to be made by email to counsel representing the noticed party. The date by which a party receiving notice shall respond or otherwise take action shall be computed from the date of receipt of the notice. Any of the notice requirements herein may be waived in whole or in part, but only in a writing signed by counsel for the Producing Party. For the avoidance of doubt, no notice is required to use or disclose Confidentially Designated Discovery Material from this case in the Australian Proceeding.

33.    Nothing in this Protective Order shall bar or otherwise restrict counsel from rendering advice to his or her client with respect to this Action and, in the course thereof, relying in a general way upon his or her examination of Confidentially Designated Discovery Material in this Action; provided, however, that in rendering such advice and in otherwise communicating with a person not entitled to view Confidentially Designated Discovery Material, counsel shall not disclose the contents of Confidentially Designated Discovery Material produced by any other party or non-party.

34.    Execution of this Protective Order shall not constitute a waiver of the right of any party to claim in this Action or otherwise that any document, or any portion thereof, is protected by the attorney-client privilege or work product immunity or is otherwise not discoverable or admissible in evidence in this Action or any other proceeding.

35.    This Protective Order shall remain in full force and effect until modified, superseded, or terminated on the record by agreement of the parties or by an order of the Court. At the conclusion of the present Action, the Court shall retain jurisdiction to enforce the terms of this

Protective Order. Each person or entity who receives Confidentially Designated Discovery Material agrees to subject himself or herself to the jurisdiction of this Court for the purpose of any proceedings relating to the performance under, compliance with or violation of this Protective Order.

### *Source Code Addendum to Protective Order*

Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. and Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation, by and through their respective counsel, hereby stipulate and agree to this Addendum to Protective Order ("Addendum"). Any capitalized terms not defined herein shall have the meaning ascribed to them in the Protective Order. The above-captioned action ("Action") may involve inspection of the parties' Source Code. Source Code warrants the highest degree of protection and security to protect the parties' legitimate interests. The protocols set forth in this Addendum are warranted under Federal Rule of Civil Procedure 26(c) in order to preserve the parties' legitimate business interests. Good cause exists for the entry of this Addendum pursuant to Rule 26(c). The terms and conditions of this Addendum shall govern the handling of Source Code that the parties or the Court may allow to be inspected.  The parties shall comply with the terms and conditions of this Addendum.

1.      To the extent the parties agree or the Court allows inspection of Source Code, a Producing Party may designate Source Code as "HIGHLY CONFIDENTIAL—SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code. Any Source Code so designated shall constitute Confidentially Designated Discovery Material under the Protective Order and shall be subject to all of the terms and conditions therein, as supplemented and modified by this Addendum. Nothing in this Addendum shall be construed as a representation or admission that Source Code is properly discoverable, or shall obligate any Party to produce any Source Code. The term "Source Code" as used herein means human-readable programming language text that defines software. Text files containing Source Code shall hereinafter be referred to as "Source Code files." Source Code files include, but are not limited to, files containing Source Code in "C," "C++," BREW, Java ME, J2ME, Visual C, Visual Basic, assembler programming languages, and other human readable text programming languages. Source Code files further include ".include files," "make" files, "link" files, and other human-readable text files used in the generation and/or building of software directly executed on a microprocessor or micro-controller. Unless otherwise ordered by the Court or permitted in writing by the Producing Party, Discovery Material designated as "HIGHLY CONFIDENTIAL—SOURCE CODE" shall be subject to the provisions

set forth herein, and may be disclosed, subject to the provisions set forth below, solely to the persons identified in the following paragraphs of the Protective Order:

    a.    Paragraphs 12(a) and (b), provided that (1) the persons are not involved in competitive decision-making, as defined by *Brown Bag Software v. Symantec Corp*., 960 F.2d 1465, 1470 (9th Cir. 1992), (as opposed to legal advice) on behalf of a party or a competitor of a party; and (2) it is reasonably necessary to disclose the information to them for this Action;

    b.    Paragraph 12(e), provided that (1) disclosure is only to the extent necessary to perform such work; (2) the consultant or expert has been disclosed and approved in accordance with Paragraph 14; and (3) the consultant or expert is not involved in competitive decision-making, as defined by *Brown Bag Software v. Symantec Corp*., 960 F.2d 1465, 1470 (9th Cir. 1992), on behalf of a party or a competitor of a party;

    c.    trial technology consultants, jury consultants, and graphic artists, provided that disclosure is reasonably necessary for this Action and the consultants or artists have signed Exhibit A to the Protective Order;

    d.    Paragraph 12(f), provided that any court reporters and their staff have signed Exhibit A to the Protective Order (which is amended to govern obligations under this Addendum), with the exception that printouts of Source Code used as exhibits in a deposition shall not be provided to the court reporter or their staff;

    e.    Paragraph 12(j); and

    f.    any other person with the prior written consent of the Producing Party.

2.    Any Source Code files that are produced by the Producing Party will be made available for inspection at the offices of counsel of record for the Producing Party in Washington, DC or Las Vegas, Nevada (at the Receiving Party's request, provided it can be reasonably accommodated), or any other location agreed by the parties. Source Code will be made available for inspection between the hours of 9:00 a.m. and 5:00 p.m. local time on business days (i.e., weekdays that are not Federal holidays). The Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

3.    Prior to the first inspection of Source Code, the Receiving Party shall provide twenty-one (21) days' notice of the Source Code that it wishes to inspect. Subsequent requests by the Receiving Party for additional Source Code may be made on five (5) days' notice, and the parties will work together to accommodate the Receiving Party's request and the Producing Party's needs in making the requested Source Code available in a timely manner.

4.    For Source Code that has already been made available for review, the Receiving Party shall provide two (2) days' notice prior to any additional requests to review that Source Code, although more notice is preferred, and less notice will be considered by the Producing Party if circumstances allow the Producing Party to make such accommodation.

5.    Source Code shall be made available by the Producing Party to the Receiving Party's counsel and/or experts in a secure room on a secured computer in a configuration deemed secure by the Producing Party, as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). The Producing Party shall install tools that are sufficient for viewing and searching the Source Code produced. The Receiving Party's counsel and/or experts or consultants may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; and (b) the Producing Party approves such software tools, which approval shall not be unreasonably withheld. The Receiving Party must provide the Producing Party with access to such licensed software tool(s) at least seven (7) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.

6.    No recordable media or recording devices, including without limitation sound recorders, computers, tablets, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room.

7.    The Receiving Party's counsel and/or experts or consultants shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take

such notes electronically on the Source Code Computer itself or any other computer. Each page of any such notes containing Source Code information or (and any additional notes, analyses, or descriptions relating thereto) must be marked as "HIGHLY CONFIDENTIAL—SOURCE CODE".

8.      The Producing Party may visually monitor the activities of the Receiving Party's representatives during any Source Code review, but only to ensure that no unauthorized electronic records of the Source Code are being created or transmitted in any way.

9.      Access to and review of the Source Code shall be strictly for the purposes of investigating the claims and defenses at issue in this Action. Unless otherwise agreed by the parties in writing, no person shall review or analyze any Source Code for purposes unrelated to this Action, and no person may use any knowledge gained as a result of reviewing the Source Code in this Action in any other pending or future dispute, proceeding or litigation (although Source Code can be used in appeal or writ proceedings arising from this Action).

10.      The Producing Party will provide means for the Receiving Party to identify printouts requested during the review, including by filename, line number, page number, or other similar means. For example, the Source Code Computer shall be equipped with a text editor to create PDF copies of the Source Code so that the Receiving Party can designate the portions of the Source Code for which it would like hard-copy printouts to be printed by Producing Party on Bates numbered and watermarked or colored paper clearly labeled HIGHLY CONFIDENTIAL – SOURCE CODE on each page. Counsel for the Producing Party shall produce printouts to the Receiving Party's outside counsel within three (3) business days of the Receiving Party's notification of the designation of Source Code portions. Access to the source code printouts shall be limited to the persons named in paragraph 1 above. The Receiving Party shall ensure that any copies of printed source code are kept in a secured locked area in the offices of those outside counsel, consultants, or experts qualifying under this Addendum. The Receiving Party also may keep the printouts at: (i) the site of any deposition relating to the source code; (ii) any intermediate location necessary to transport the printouts (e.g., a hotel prior to a Court proceeding or deposition, using secure measures such as a hotel safe); and (iii) the Court for trial or any proceeding(s) relating to the source code.

11.     Printouts may be made only when necessary to prepare a party's claims or defenses in this Action, and shall not be for the purpose of reviewing and inspecting the Source Code elsewhere in the first instance—i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere. Counsel may request up to 5 copies of each original printout. All printed Source Code shall be logged by Receiving Party's counsel. No additional electronic copies of the Source Code shall be provided by the Producing Party. Any printed portion that consists of more than twenty-five (25) pages of a continuous block of Source Code shall be subject to the Receiving Party demonstrating good cause, and the burden shall be on the Receiving Party to demonstrate need for such a printed copy. The Receiving Party may print out no more than 5% or two hundred (200) pages of the total Source Code, whichever is greater, absent good cause. If the Receiving Party deems it necessary to print more than 5% or two hundred (200) pages of the total Source Code, whichever is greater, or more than twenty-five (25) pages of a continuous block of Source Code, the Receiving Party and the Producing Party shall meet and confer to determine the appropriate amount of additional pages to be printed. If, after meeting and conferring, the Producing Party and the Receiving Party cannot come to an agreement as to whether the requested additional pages of printed Source Code are narrowly tailored for a permitted purpose, the Receiving Party shall be entitled to raise the issue with the Court. The burden shall be on the Receiving Party to demonstrate good cause for the requested additional pages. The printed pages shall constitute part of the Source Code produced by the Producing Party.

12.     All persons who will review Source Code on behalf of a Receiving Party in the Source Code Review Room, including a Receiving Party's counsel, shall be identified in writing to the Producing Party at least three (3) days in advance of the first time that such person reviews such Source Code. Such identification shall be in addition to any other disclosure required under this Addendum. All persons viewing the Source Code in the Source Code Review Room shall sign a log that will include the names of persons who enter the Source Code Review Room to view the Source Code and when they enter and depart.

13.     Unless otherwise agreed in advance by the parties in writing, following each day on which inspection is done under this Addendum, the Receiving Party's counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room. Proper identification of all authorized persons shall be provided prior to any access to the Source Code Review Room or the Source Code Computer. Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the Source Code Review Room or the Source Code Computer may be denied, at the discretion of the Producing Party, to any individual who fails to provide proper identification.

14.     Other than as provided above, the Receiving Party will not copy, remove, or otherwise transfer any Source Code from the Source Code Computer including, without limitation, copying, removing, or transferring the Source Code onto any recordable media or recordable device. The Receiving Party will not transmit any Source Code in any way from the Producing Party's facilities hosting the Source Code Computer.

15.     The Receiving Party's counsel may not make paper copies of any portions of the Source Code received from a Producing Party, except for copies attached to court filings, expert reports, or used at depositions, hearings or the trial, and shall maintain a log of all paper copies of the Source Code. The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored. Upon one (1) business day's advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

16.     The Receiving Party's counsel and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code or any notes, analyses, or descriptions of Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the copies of the Source Code in a locked room or cabinet at all times when not in use. No more than a total of ten (10) individuals identified by the Receiving Party shall have access to the printed portions of the Producing Party's Source Code (except insofar as such code appears in any court filing or expert report).

17.    For depositions, the Receiving Party may bring printed copies of specific portions of the Source Code it wishes to use at the deposition for the witness and counsel for the Parties. Copies of Source Code that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts. Counsel for the party taking the deposition shall keep any Source Code deposition exhibits in a secure location and shall provide copies of such exhibits to the opposing counsel upon request.

18.    Except as provided herein, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF, photograph the Source Code, or scan the Source Code using optical character recognition ("OCR")). Subject to the foregoing exceptions, images or copies of Source Code shall not be included in correspondence between the parties (references to production numbers may be used instead). If a Receiving Party reasonably believes that it needs to submit a portion of Source Code as part of a filing with the Court, then the Receiving Party shall file such Source Code under seal. Access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials containing any portion of Source Code (paper or electronic) shall at all times be limited solely to individuals who are expressly authorized to view Source Code under the provisions of this Addendum. The Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the locations and manner in which the electronic copies are stored. Additionally, any such electronic copies must be labeled "HIGHLY CONFIDENTIAL— SOURCE CODE" as provided for in this Addendum.

**IT IS SO ORDERED.** Any party, whether designating or non-designating, must comply with the following when seeking to seal filed documents: Fed. R. Civ. P. 5.2 and LR IA 10-5, and *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178- 79 (9th Cir. 2006) and its progeny.

_____
UNITED STATES MAGISTRATE JUDGE
6/16/25

IT IS SO STIPULATED this 12th day of June, 2025.


/s/ *Philip R. Erwin*

PHILIP R. ERWIN, ESQ.
(Nevada Bar No. 11563)
**CAMPBELL & WILLIAMS**
710 South Seventh Street
Las Vegas, NV 89101
Tel.: (702) 382-5222
Email: pre@cwlawlv.com


NEAL MANNE
(*pro hac vice*)
JOESEPH GRINSTEIN
(*pro hac vice*)
ROCCO MAGNI
(*pro hac vice*)
ASHLEY MCMILLIAN
(*pro hac vice*)
MEGAN E. GRIFFITH
(*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, Texas 77002
Tel.: (713) 651-9366
Email: nmanne@susmangodfrey.com
        jgrinstein@susmangodfrey.com
        rmagni@susmangodfrey.com
        amcmillian@susmangodfrey.com
        mgriffith@susmangodfrey.com


ERIK WILSON
(*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel.: (310) 789-3100
Email: ewilson@susmangodfrey.com


DINIS CHEIAN
(*pro hac vice*)
ANDREW NASSAR
(*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West

/s/  *Jason D. Smith*

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email: nsantoro@spencerfane.com
        jdsmith@spencerfane.com
        tbthomas@spencerfane.com


PETER A. SWANSON *(pro hac vice)*
GARY M. RUBMAN *(pro hac vice)*
SIMEON BOTWINICK *(pro hac vice)*
MATTHEW KUDZIN *(pro hac vice)*
ALEXANDER TRZECIAK *(pro hac vice)*
DANIEL FARNOLY *(pro hac vice)*
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.:  (202) 662-6000
Email: pswanson@cov.com;
grubman@cov.com; sbotwinick@cov.com;
mkudzin@cov.com; atrzeciak@cov.com;
dfarnoly@cov.com


ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com


*Attorneys for Plaintiffs/Counterclaim-
Defendants Aristocrat Technologies, Inc. and
Aristocrat Technologies Australia Pty Ltd.*

New York, New York 10001-8602
Tel.: (212) 729-2077
Email: dcheian@susmangodfrey.com
        anassar@susmangodfrey.com

*Attorneys for Defendants/Counterclaim-*
*Plaintiffs Light & Wonder, Inc., LNW Gaming,*
*Inc., and SciPlay Corporation.*

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

ARISTOCRAT TECHNOLOGIES, INC. and
ARISTOCRAT TECHNOLOGIES
AUSTRALIA PTY LTD.,

        Plaintiffs/Counterclaim-Defendants,

        v.

LIGHT & WONDER, INC., LNW GAMING,
INC., and SCIPLAY CORPORATION,

        Defendants/Counterclaim-Plaintiffs.

Case No. 2:24-cv-00382-GMN-MDC

**DECLARATION AND UNDERTAKING
TO BE BOUND BY STIPULATED
PROTECTIVE ORDER**

I, _____, declare that:

1.      My residence address is

_____.

2.      My current employer is

_____,

and the address of my current employment is

_____.

3.      My current occupation or job description is

_____.

4.      [Experts Only] A copy of my current curriculum vitae is attached hereto.

5.      I have received and read the Stipulated Protective Order in this Action dated

_____, and I understand its provisions. I agree (a) to be bound by the

terms of the Stipulated Protective Order, (b) to use Confidentially Designated Discovery

Material solely for this Action or the Australian Proceeding, and (c) not to disclose any

Confidentially Designated Discovery Material to any person, firm, corporation or other entity not qualified to have access to such information pursuant to the terms of the Stipulated Protective Order.

6.      Upon termination of this Action or the Australian Proceeding, whichever comes later, including all appeals, I will destroy or return to retaining counsel all Confidentially Designated Discovery Material and summaries, abstracts and indices thereof that come in my possession, and documents that I have prepared relating thereto.

7.      I hereby submit to the jurisdiction of the United States District Court for the District of Nevada for the purpose of enforcement of the Stipulated Protective Order. I understand that if I violate the provisions of the Stipulated Protective Order, I will be in violation of a Court Order and subject to sanctions or other remedies that may be imposed by the Court and may be liable in civil action by one or more of the parties in this Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _____ day of _____ 2025 at

_____

in the State of _____.


_____
                            (signature)

_____
                            (print name)