NICHOLAS J. SANTORO (NBN 532)
JASON D. SMITH (NBN 9691)
TYLER B. THOMAS (NBN 16637)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400 / Fax: (702) 938-8648
Email: nsantoro@spencerfane.com
      jdsmith@spencerfane.com
      tbthomas@spencerfane.com

PETER A. SWANSON (*pro hac vice*)
GARY M. RUBMAN (*pro hac vice*)
MATTHEW KUDZIN (*pro hac vice*)
ALEXANDER TRZECIAK (*pro hac vice*)
DANIEL FARNOLY (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com; grubman@cov.com
mkudzin@cov.com; atrzeciak@cov.com
dfarnoly@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION,<br><br>Defendants. | Civil Case No. 2:24-cv-00382-GMN-MDC<br><br>**PLAINTIFFS' MOTION TO MODIFY SECOND AMENDED STIPULATED DISCOVERY PLAN AND SCHEDULING ORDER**<br><br>**(Second Request)** |

Pursuant to Federal Rule of Civil Procedure 16(b)(4) and Local Rules IA 6-1 and LR 26-3, Aristocrat hereby moves to modify the Second Amended Discovery Plan and Scheduling Order, ECF No. 230. Aristocrat respectfully submits that there is good cause to extend the schedule by 10 weeks in order to provide sufficient time to complete fact discovery, as set forth herein. The parties previously stipulated to an extension of the schedule, which the Court granted, *see* ECF No. 230, and this is the second request for an extension. Counsel for Aristocrat conferred with counsel for Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (together, "L&W"). Declaration of Peter A. Swanson ("Swanson Decl.") ¶ 3. L&W stated that it opposes any extension of the discovery deadline.[1] *Id.*

## I. Introduction

A modest extension of the schedule is warranted because it is not practical to complete fact discovery under the current schedule in light of critical discovery that L&W has failed to provide, including discovery on the central issue of L&W's misappropriation of Aristocrat's trade secrets. Since filing the complaint in February 2024, Aristocrat has diligently sought to conduct discovery.

---

[1] Aristocrat's understanding is that a disputed request to modify deadlines in the Scheduling Order is properly raised by motion pursuant to Federal Rule Civil Procedure 16(b), LR IA 6-1, and LR 26-3, rather than the discovery dispute procedure in Magistrate Judge Couvillier's Standing Order ("Standing Order"), § II.B. The October 2024 Scheduling Order in this case requires a "motion or stipulation to extend any date" to comply with LR IA 6-1 and LR 26-3, and does not indicate that such motions must comply with § II.B of the Standing Order (which is instead referenced in a separate section on discovery disputes). *See* ECF No. 153 at 4. Section II.B of the Standing Order requires compliance with the procedures therein before filing a "discovery motion," but does not refer to motions to modify scheduling orders pursuant to Rule 16(b) and LR 26-3. Indeed, it includes mandatory provisions inapplicable to such motions. *See* Standing Order § II.B.2.ii (requiring restatement of the "full text of the discovery requests, or deposition question, in dispute"); *id.* § IIB.2.iv (listing examples of "the disputed discovery" as "request, interrogatory, deposition question"). To the extent § II.B of the Standing Order is intended to apply to this type of motion, Aristocrat respectfully requests leave to file this request as a motion instead of a § II.B stipulation, as restarting the process would be prejudicial in light of the significant time pressures under the current schedule. If the Court prefers a § II.B stipulation, Aristocrat requests that the parties be permitted up to five pages to state their positions (rather than two) and that the Court set an expedited schedule for submitting and, if necessary, hearing the stipulation (*e.g.*, the joint stipulation must be filed within one week).

*See, e.g.*, ECF No. 3 (Aristocrat's motion for expedited discovery, filed the same day as the complaint). L&W, however, has erected roadblocks throughout, including by seeking to stay discovery, failing to produce and delaying the production of key documents, reneging on agreements to produce information, incorrectly representing that important documents had been produced when they had not been, and demanding overly broad discovery from Aristocrat.

Two months ago, L&W agreed that a discovery extension was warranted in light of the significant remaining work to be done, including document productions and depositions, and the need to substantially complete document production before taking further depositions. *See* ECF No. 225 at 3–5. Following that submission, L&W's document production ground to a near-halt (until Aristocrat signaled its intent to seek an extension). As a result, even though the parties are now eleven weeks from the close of fact discovery, Aristocrat still does not have many of the documents cited as a reason for the previous extension, thereby impairing Aristocrat's ability to evaluate the full scope of L&W's use of Aristocrat's trade secrets (including identifying which additional L&W games should be included in this litigation), identify which L&W witnesses need to be deposed (let alone review the documents, many of which L&W has not yet produced, that will be important to prepare for their depositions), propose additional searches for ESI pursuant to the parties' ESI stipulation, and prepare Aristocrat's damages case. In view of the outstanding document discovery, neither side has taken a single deposition since the previous extension, and only a handful of depositions are in the process of being scheduled (for mid to late August, only a month before the current close of discovery).

The importance of the discovery L&W has failed to provide—and the prejudice and inefficiency of moving forward with depositions before obtaining such discovery—has not changed since L&W sought the previous discovery extension. What *has* changed is that L&W now believes it is in L&W's interest to try to run out the clock on Aristocrat. L&W should not benefit from its strategic delay in providing discovery that it promised long ago. Accordingly, Aristocrat moves for a modest extension of the case schedule.

## II.   Statement of Discovery Completed

Since the Court entered the Second Amended Discovery Plan and Scheduling Order on May 2, 2025, the parties have continued to serve and respond to written discovery requests, supplement or amend interrogatory responses, negotiate ESI searches, produce documents, and meet and confer on discovery disputes. Despite Aristocrat's diligent efforts, however, the parties have not made as much progress as Aristocrat expected at the time.

In particular, L&W made only five document productions totaling 688 documents between May 2 and July 3—the date on which Aristocrat informed L&W that it intended to seek an extension.[2] Swanson Decl. ¶ 4. After Aristocrat's July 3 communication, L&W made additional productions, although it has not produced numerous categories of key documents, as discussed below. *Id.* ¶ 5. Since May 2, Aristocrat has made seven productions totaling 4,633 documents. *Id.* ¶ 6.

With regard to ESI discovery, it took many weeks for the parties to complete negotiations regarding the search terms proposed to date pursuant to the Stipulated Order on Discovery of Electronically Stored Information (ECF No. 209) ("ESI Stipulation"), with the parties reaching agreement on a number of L&W search terms within just the past few weeks. As a result, both sides are continuing to run search terms, review the results, and produce responsive, non-privileged ESI for these searches—which constitute only a subset of the searches permitted under the ESI Stipulation.

No additional progress has been made on depositions. Aristocrat has deposed two fact witnesses (in January and February), while L&W has not yet taken any.[3] The parties are working to schedule several depositions that will take place in Australia in mid to late August, including depositions pursuant to Aristocrat's request for international judicial assistance for the taking of

---

[2] L&W has also produced documents from third parties that L&W received in response to subpoenas it served.

[3] The parties' previous request for an extension refers to a third deposition that had been noticed. ECF No. 225 at 2. L&W subsequently withdrew that deposition notice.

evidence abroad, ECF No. 178. L&W has informed Aristocrat that L&W's request to take international depositions remains pending. ECF Nos. 224, 231.

The Court held a hearing on June 23, 2025, regarding several discovery disputes. ECF No. 247. The Court ordered L&W to produce certain documents by July 31, 2025, and ordered the parties to meet and confer regarding Aristocrat's supplementation of its trade secret identification and certain Aristocrat requests for documents. ECF No. 249, Hr'g Tr. at 66:24–69:19. The parties have been meeting and conferring, and Aristocrat has provided a supplemental trade secret identification spanning approximately twelve pages and including detailed citations to Aristocrat math files. L&W has already complained that this meticulous identification remains inadequate.

### III.    Description of Discovery That Remains to Be Completed

Extensive fact discovery remains to be completed.

**Document Discovery.** Both sides are in the process of collecting, reviewing, and producing documents in response to hundreds of document requests both sides have served. Aristocrat has been waiting for months for L&W to produce many categories of documents that go to core disputed issues in this case, including documents necessary to understand the extent of L&W's use of Aristocrat's trade secrets. The following are examples of documents L&W has not yet produced:

- On December 19, 2024, L&W agreed to produce (without qualification) all documents identified in L&W's October 23 and November 7, 2024 preliminary injunction accountings of documents reflecting Aristocrat's trade secrets—which span ▮▮▮▮▮▮▮▮▮ entries and are key to understanding the spread and usage of Aristocrat's secrets within L&W. After L&W represented on multiple occasions that it had done so—a representation that Aristocrat questioned—L&W admitted in mid-June that it had produced only some of the documents Swanson Decl. ¶ 7. Nearly a month after that admission, L&W still has not explained which documents it has and has not produced from the accountings.

- After Aristocrat notified L&W that its Jewel of the Dragon game was developed using Aristocrat trade secrets, L&W agreed to treat the game as subject to the preliminary injunction,

provide an updated accounting of documents, and produce those documents. In the parties' joint request to extend the discovery deadline, L&W stated that it would provide these accountings and documents by "mid-June 2025." ECF No. 225 at 4. L&W still has not done so.

- L&W has not produced any results from keyword searches that Aristocrat first proposed on April 2, 2025, for certain L&W servers that house game design and development material, including game math files. Swanson Decl. ¶ 8. Nor has L&W produced the complete results from over a dozen other ESI keyword searches of its ESI custodians first proposed by Aristocrat on April 4, 2025. Despite stating on June 11, 2025 that it "expect[ed] to begin producing responsive results next week on a rolling basis," *id.* ¶ 9, L&W did not begin to produce the results until July 8, 2025, several days after Aristocrat proposed this extension. L&W has not stated when it expects to complete its production.

- L&W has not produced source code for all versions of the accused games (to Aristocrat's knowledge).

- L&W has not produced the math files for all games developed based on Dragon Train, despite telling Aristocrat and the Court that L&W is willing "to produce math for any game 'that was designed or developed using, or that otherwise incorporates, any math information provided by Emma Charles, any math information related to Dragon Train, any of the Aristocrat Trade Secrets, or any other confidential information of Aristocrat,'" ECF No. 232 (quoting Aristocrat RFP 73). For example, Aristocrat has identified to L&W evidence from L&W's own files indicating that its ▮▮▮▮▮ game may have been developed using math information from Dragon Train.

- In February, L&W agreed to produce documents sufficient to show all games on which any game designer, mathematician, or anyone else who contributes to the mathematical design of games has worked after having accessed Aristocrat's trade secrets, with L&W stating that it would consider which individuals fall within this category following L&W's production of server logs showing access to game math files. Ex. A. Despite telling Aristocrat in April that L&W was working on compiling "game lists" in response to this request, Swanson Decl. ¶ 13, and despite

Aristocrat following up after L&W's production of access logs (which did not occur until June 20, 2025), L&W has not provided these documents.

- Following the June 23 hearing, Aristocrat asked L&W to provide a list of game designers from other studios during the relevant time period so that Aristocrat can craft appropriate search terms for RFPs 9 and 56. Ex. B. L&W agreed to look into this but has not provided the list or said whether or when it will do so.

- L&W has not produced data showing the number of placements and sales of the accused games and related financial data—which Aristocrat requested in RFPs and interrogatories long ago. Although the Court ordered L&W to produce this data for the Australian market by July 31, L&W subsequently told Aristocrat that the forthcoming production would likely not include the data for other markets, including the United States. L&W has not given a timetable for providing the non-Australian data. Also, until Aristocrat knows the full list of L&W games at issue in this case, it will be impossible to determine the full set of relevant financial data that will be necessary to determine damages.

- Although L&W has requested voluminous information from Aristocrat regarding the efforts it takes to maintain the confidentiality of its trade secrets, L&W has thus far failed to produce information about the steps L&W itself takes to maintain confidentiality of its game math, including L&W's agreements with its customers and documents showing the disclosures that L&W makes to customers. This information is necessary to contextualize L&W's anticipated challenges to Aristocrat's confidentiality measures and to demonstrate the reasonableness of those measures under the circumstances of this case.

- L&W has not produced development documents regarding an ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which L&W first disclosed on May 30, 2025. L&W promised to provide the documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C. Aristocrat has followed up multiple times.

Aristocrat also intends to request additional ESI searches pursuant to the ESI Stipulation once Aristocrat receives certain of the discovery above. Under the ESI Stipulation, Aristocrat may

request up to seven additional custodians and dozens of additional searches. The documents and other discovery that Aristocrat has requested, but not received (*e.g.*, game math documents and Charles's communications), is critical to identifying additional custodians and formulating additional searches.

Aristocrat is working diligently to complete its document productions. Much of Aristocrat's efforts were delayed by L&W's insistence on overly broad search terms for ESI discovery, some of which resulted in hundreds of thousands of hits and a high rate of false positives. Swanson Decl. ¶ 10. As the parties only recently reached agreement on L&W's initial search terms, Aristocrat is working to run the search terms, review the documents with hits, and produce responsive, non-privileged documents. This process likely will take at least a few more weeks, and L&W has not represented that it is done requesting ESI under the ESI Stipulation. If L&W identifies additional custodians or requests additional searches, this will require additional time to negotiate search terms and to review and produce the search results.

At the same time, Aristocrat is continuing to search for and produce other documents in response to L&W's wide-ranging requests for production. For example, L&W has requested that Aristocrat collect and produce its agreements with any customers who received confidential information about Aristocrat's games. L&W rejected Aristocrat's request to produce representative agreements and demanded that Aristocrat collect and produce all responsive agreements— ███████████████████████████████████████████████████████████████████████ It is not clear how long it will take to complete this burdensome process.

Neither side has produced any privilege logs for any withheld documents. This often leads to disputes over whether certain documents were improperly withheld as privileged.

**Written Discovery.** L&W has yet to provide complete responses to several written discovery requests, including basic information about L&W's core positions in this case, which prejudices Aristocrat's ability to seek further discovery and prepare for depositions. To list just a few examples:

█████████████████████████████████████████

1  • L&W has provided incomplete lists of the employees who worked on the accused
2  games, including all versions of the games—which is information responsive to an Aristocrat
3  interrogatory served in April 2024.

4  • Although it has been over three months since L&W agreed to cease commercialization
5  of Jewel of the Dragon in response to Aristocrat's accusations against that game, L&W has yet to
6  provide any explanation of how Aristocrat's math came to be used in the development of that game
7  (which is responsive to Aristocrat's Interrogatory No. 20). This is despite repeated assurances that
8  L&W is investigating and will supplement its responses to provide responsive information that it
9  learns.

10  • L&W's contention interrogatory response on trade secret misappropriation does not
11  identify the evidence on which it plans to rely, citing a meager four documents and fifteen lines of
12  deposition testimony. For example, L&W has provided no evidence to support its assertion that
13  ████████████████████████████████████████████████████████████████████████
14  ██████████████████ Ex. D at 17–18. Aristocrat has repeatedly followed up on this.

15  • On July 12, 2024, Aristocrat requested L&W's contentions on Aristocrat's copyright
16  infringement claim. After twelve months and multiple meet-and-confers, L&W has yet to provide
17  *any* explanation of its (apparent) position that the accused version of Jewel of the Dragon does not
18  infringe Aristocrat's copyrights.[4]

19  • Although L&W contends that ███████████████████████████████
20  █████████████████████████████████████ Ex. D at 18, L&W has not provided
21  a complete response to an Aristocrat interrogatory seeking the identification of documents showing
22  the complete mathematical design of each version of the accused games and a description of any
23  differences. L&W's most recent communication on this issue stated that it was working to provide
24  responsive documents. Swanson Decl. ¶ 11.

---

[4] L&W's interrogatory response is limited to discussing a redesigned version of Jewel of the Dragon that L&W created after Aristocrat notified L&W of the infringement. Ex. D at 20–30.

- 8 -

**Depositions.** In this case, the parties are allowed a total of fifteen depositions per side without consent or leave of Court. ECF No. 230 at 7. As noted above, only two depositions have taken place to date (both by Aristocrat), so under the current schedule, up to twenty-eight depositions (several of which will be in Australia or of Australian witnesses) would have to take place over the next ten weeks. As there are no depositions scheduled for the next several weeks, this means there could be as many as twenty-eight depositions in six weeks—an average of more than four depositions per week.

Only five depositions are in the process of being scheduled (for mid to late August). This is not surprising, as the parties cannot identify which witnesses to depose, let alone prepare for those depositions, until document and written discovery is closer to completion. For example, until Aristocrat knows the full list of L&W games developed using Aristocrat's trade secrets and obtains Ms. Charles's communications with other game developers, it cannot determine which L&W game developers need to be deposed. Likewise, given the significant uncertainty that exists today about the scope of the litigation, neither side has been able to serve Rule 30(b)(6) deposition notices, conduct a meet-and-confer regarding the scope of the topics, or begin to prepare for those depositions.[5] Moreover, the process of scheduling the remaining depositions will be complicated by the fact that two major industry trade shows will take place August 12-14 in Sydney, Australia and October 6-9 in Las Vegas, Nevada. Both shows require several of the individuals likely to be deposed and others who are extensively involved in the litigation to: (a) prepare for the show in the days and weeks leading up to the shows, (b) travel to and from the show sites, and (c) participate in show activities.

---

[5] On June 30, 2025, L&W sent by email a list of twenty "potential areas of inquiry" for Rule 30(b)(6) depositions. Ex. E. L&W explained, "With discovery closing in a few short months, we would normally serve a full list of topics to set up the required meet and confer under that rule. However, we are currently holding off on doing so until we receive your trade secret identification and a comprehensive ESI production from your side." *Id.* L&W was clear, however, that the "areas of inquiry" "are not our deposition topics" and "expressly reserve[d] the right to add areas of inquiry in [its] deposition notice." *Id.*

1  **Discovery Disputes.** At the June 23 hearing, the Court ordered the parties to meet and confer on several matters, including Aristocrat's trade secret identification and Aristocrat's request for L&W game math. ECF No. 249, Hr'g Tr. at 66:24–69:19. Aristocrat has supplemented its trade secret identification to provide additional specificity concerning its trade secrets, but L&W has complained that the identification remains inadequate and has asked for a meet-and-confer. Although Aristocrat disagrees with L&W, this ongoing dispute over Aristocrat's identification—which was first provided nearly a year ago—may require additional time to resolve.

In addition, the parties have been unable to reach agreement over the production of math for other L&W games, with L&W rejecting a narrower request for game math that Aristocrat made following the June 23 hearing. Since the hearing, L&W has also backtracked on promises to provide certain related discovery. While Aristocrat remains willing to work with L&W to resolve these issues, Aristocrat expects to file additional stipulations pursuant to the Magistrate Judge's discovery dispute procedure to the extent the parties are unable to reach agreement on these issues. The resolution of those anticipated stipulations, as well as any additional steps required to comply with the Court's rulings thereon, would likely take additional time as well.

### IV. Good Cause Exists for Aristocrat's Request for Additional Time

A party moving for an extension of the discovery schedule must show good cause. *See* Fed. R. Civ. P. 16(b)(4) ("[a] schedule may be modified only for good cause and with the judge's consent"); L.R. IA 6-1 (motions for extensions of time "must state the reasons for the extension requested"); L.R. 26-3 (motions for extension of scheduled deadlines must "be supported by a showing of good cause"). "The good cause analysis turns on whether the subject deadlines cannot reasonably be met despite the exercise of diligence." *United States v. Tucker*, 2022 WL 5264371, at *1 (D. Nev. 2022) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "This showing of diligence is measured by the parties' conduct during the entirety of the period of time already allowed." *Id.* (granting extension of discovery deadline where defendants' conduct delayed conducting depositions).

Aristocrat's request for a modest extension to the case schedule satisfies the good cause standard for several reasons.

*First*, Aristocrat has been diligent in pursing discovery. From the very first day of the litigation when Aristocrat filed a motion for expedited discovery (ECF No. 3) through the present, Aristocrat has been trying to obtain discovery from L&W.[6] *See* ECF No. 100 at 2 (granting Aristocrat's motion for supplemental briefing and noting "Plaintiffs have demonstrated diligence in their efforts to obtain [the math files for L&W's Dragon Train game]"). L&W, however, has strategically delayed discovery with respect to many of the key issues in the case.

For example, as the Court recognized in granting Aristocrat's preliminary injunction motion, L&W waited until "[a]fter briefing on th[e] Motion concluded, [to] produce[] documents providing additional evidence that Ms. Charles based the Dragon Train game math on Aristocrat's game math files she created while employed there." ECF No. 125 at 13. L&W produced this critical evidence on the Friday evening before the Monday morning preliminary injunction hearing. *See* ECF No. 112 (ordering the filing of documents produced by L&W on September 6, 2024 and cited by Aristocrat at the September 9, 2024 hearing). L&W recently engaged in a replay of this tactic, producing access logs for L&W math files—which Aristocrat had been demanding for months—on the Friday evening before the Monday morning discovery hearing (on June 23, 2025). The timing of L&W's production of the logs is likely not a coincidence, as they show ▓▓▓ game designers and mathematicians accessing Aristocrat's trade secrets and thus undermine L&W's attempt to resist discovery into other L&W games that may have been developed using Aristocrat's trade secrets.

L&W similarly delayed production of development documents for Jewel of the Dragon. After repeated requests by Aristocrat, L&W promised the documents by mid-January, but did not start producing them until mid-February—and did not produce key documents showing the use of

---

[6] L&W even accused Aristocrat of trying to "rush discovery" by filing its motion for expedited discovery. ECF No. 56 at 3.

- 11 -

1  Aristocrat trade secrets until early March (only after additional follow-up from Aristocrat).
2  Swanson Decl. ¶ 12. When Aristocrat pointed out that these documents evidence misappropriation,
3  L&W readily agreed to cease commercializing the game. As with Dragon Train, L&W's delay in
4  providing discovery on Jewel of the Dragon allowed it to continue to unjustly profit from
5  Aristocrat's trade secrets.

6  Since being forced to acknowledge that its use of Aristocrat's trade secrets was not limited
7  to Dragon Train, L&W has become even more recalcitrant in providing discovery, including by
8  refusing to produce any math for additional L&W games (beyond the ones it had previously
9  committed to produce), further delaying the production of documents that may demonstrate
10 additional misappropriation (*e.g.*, the access logs), and reneging on multiple prior promises
11 regarding the discovery it will provide (*e.g.*, an identification of games on which employees who
12 accessed Aristocrat math have worked). Nonetheless, Aristocrat continued to diligently pursue
13 discovery, including by meeting and conferring with L&W through countless emails, letters, and
14 meetings in hopes of resolving disputes without the Court's assistance. Despite these efforts, L&W
15 still has not produced large quantities of documents that are directly relevant to fundamental issues
16 in this case, including the identification of which L&W games use Aristocrat's trade secrets and
17 who has been involved in the misappropriation, issues that then drive the scope of other discovery.
18 None of L&W's delays can be fairly attributed to lack of diligence on the part of Aristocrat.

19 *Second*, as both parties jointly represented to the Court when seeking an earlier extension,
20 this is a "complex case" that has involved "extensive motions practice, including a motion to
21 dismiss, a motion to stay discovery, a motion for preliminary injunction, and a motion to enforce
22 the preliminary injunction," among other contested motions. ECF No. 225 at 2–3; *see also* ECF
23 No. 153 at 1 (Court describing this as "a complex trade secret matter that will necessitate
24 voluminous document discovery and depositions (law and expert)"). The case has become only
25 more complex since then, as Aristocrat recently received evidence that ■■■ L&W game
26 designers and mathematicians have accessed Aristocrat's trade secrets. Given the complexity—
27 and expansion—of the case, it is not surprising that more time is needed to complete discovery.
28

*Third*, an extension is necessary to ensure the orderly completion of discovery. As L&W agreed when the parties jointly requested a first extension a few months ago:

> Under the current discovery deadline, the parties would need to take the remaining depositions before the completion of much of the document discovery described above. This would be especially inefficient in this case because certain of the outstanding discovery that the parties are discussing could affect the scope of the case and could lead to additional requests for documents or ESI searches. An extension would promote efficiency by ensuring that the parties have all material information—and understand the full scope of the litigation—prior to completing depositions.

ECF No. 225 at 4. The same rationale applies now.

*Fourth*, Aristocrat will be prejudiced if the schedule is not extended and L&W is rewarded for its delay tactics. The Court already has found that Aristocrat is "extremely likely to succeed in demonstrating L&W misappropriated Aristocrat's trade secrets" and that Aristocrat likely will suffer irreparable harm "if L&W is allowed to continue profiting from a game created with the misappropriation of Aristocrat's trade secrets." ECF No. 125 at 16–17. The Court also recognized the "public interest in protecting trade secrets and preventing competitors from receiving an unfair advantage." *Id.* at 19. In such a situation, it would be highly prejudicial to Aristocrat to end fact discovery before Aristocrat is allowed an opportunity to develop a full factual record regarding L&W's misappropriation, which cannot be done if it is required to rush to take the remaining depositions before receiving or have sufficient time to analyze the remaining documents it has requested. *See Akey v. Placer County*, 2017 WL 1831944, at *3–6 (E.D. Cal. 2017) (finding good cause to extend discovery period when defendants delayed production of key documents and plaintiffs needed additional time to review other documents that raised factual questions likely requiring more discovery to resolve).

*Fifth*, the modest extension Aristocrat is requesting will not prejudice L&W, particularly given that its own delays in providing discovery have necessitated the extension. To the contrary, L&W will also benefit from a more orderly end to the fact discovery process that will not require the same witnesses to be deposed multiple times due to late-produced documents. As noted above,

1  L&W itself recognized the benefits to both parties of an orderly discovery process.[7] ECF No. 230

2  at 4.

3      *Sixth*, Aristocrat is proactively requesting this extension well before the current deadline

4  for the close of fact discovery.

5  **V.    Conclusion**

6      For good cause shown above, Aristocrat respectfully requests that the Court grant a modest

7  extension to the case schedule, as set forth in Appendix A, to allow for the orderly completion of

8  discovery in this complex case.

9  Dated: July 15, 2025

/s/ *Jason D. Smith*
NICHOLAS J. SANTORO (NBN 532)
JASON D. SMITH (NBN 9691)
TYLER B. THOMAS (NBN 16637)
**SPENCER FANE LLP**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400 / Fax: (702) 938-8648
Email:   nsantoro@spencerfane.com
         jdsmith@spencerfane.com
         tbthomas@spencerfane.com

PETER A. SWANSON (*pro hac vice*)
GARY M. RUBMAN (*pro hac vice*)
MATTHEW KUDZIN (*pro hac vice*)
ALEXANDER TRZECIAK (*pro hac vice*)
DANIEL FARNOLY (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com
       grubman@cov.com
       mkudzin@cov.com

---

[7] The October 2024 Scheduling Order included a deadline for substantial completion of document production that was several months before the completion of discovery. ECF No. 153 at 1. As the case expanded to include additional L&W games, and as L&W began to request voluminous and burdensome discovery from Aristocrat, it became evident that this deadline was not workable for either party. But it confirms the importance of completing document productions in advance of depositions.

- 14 -

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

        atrzeciak@cov.com
        dfarnoly@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.*

# Appendix A

## Aristocrat's Proposed Modified Schedule

| Deadline | Current Date | Proposed Date |
|---|---|---|
| Close of fact discovery | September 29, 2025 | December 15, 2025 (approximately nineteen (19) months from date of the LR 26(f) conference) |
| Deadline for disclosures concerning burden of proof experts | October 31, 2025 | January 16, 2026 (approximately two (2) months before expert discovery deadline) |
| Deadline for disclosures of rebuttal experts | December 5, 2025 | February 17, 2026 (approximately one (1) month before expert discovery deadline) |
| Close of expert discovery | January 16, 2026 | March 16, 2026 (approximately twenty-two (22) months from date of LR 26(f) conference) |
| Deadline for filing dispositive motions | February 17, 2026 | April 15, 2026 (approximately one (1) month after the expert discovery deadline) |
| Deadline for filing joint pretrial order (which shall include the disclosures required pursuant to Fed. R. Civ. P. 26(a)(3), and any objections thereto)[8] | March 13, 2026 | May 15, 2026 (approximately one (1) month after the deadline for filing dispositive motions) |

---

[8] If dispositive motions are filed, the deadline for filing the joint pretrial order shall be suspended until thirty (30) days after decision on the dispositive motions or until further order of the Court.

**CERTIFICATE OF SERVICE**

I hereby certify that on this July 15, 2025, a true and correct copy of the foregoing PLAINTIFFS' MOTION TO MODIFY SECOND AMENDED STIPULATED DISCOVERY PLAN AND SCHEDULING ORDER was electronically filed and served upon the parties registered for service with the Court's Case Management and Electronic Case Filing (CM/ECF) system.

/s/ *Marissa Vallette*
An employee of SPENCER FANE LLP