HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
**CAMPBELL & WILLIAMS**
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

NEAL MANNE *(pro hac vice)*
nmanne@susmangodfrey.com
JOSEPH GRINSTEIN *(pro hac vice)*
jgrinstein@susmangodfrey.com
ROCCO MAGNI *(pro hac vice)*
rmagni@susmangodfrey.com
ASHLEY MCMILLIAN *(pro hac vice)*
amcmillian@susmangodfrey.com *(pro hac vice)*
MEGAN E. GRIFFITH *(pro hac vice)*
mgriffith@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

ERIK WILSON *(pro hac vice)*
ewilson@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

DINIS CHEIAN *(pro hac vice)*
dcheian@susmangodfrey.com
ANDREW NASSAR *(pro hac vice)*
anassar@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, New York 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

*Attorneys for Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD.,<br><br>Plaintiff,<br>v.<br><br>LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION,<br><br>Defendant. | Case No. 2:24-cv-00382-JCM-MDC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY SECOND AMENDED STIPULATED DISCOVERY PLAN AND SCHEDULING ORDER** |

**HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

INTRODUCTION .......................................................................................................................... 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

    I. An Extension Will Cause Substantial Prejudice to L&W. ............................................. 3

    II. Aristocrat Seeks More Time to Relitigate Issues This Court Has Already
        Rejected. ......................................................................................................................... 5

    III. L&W Has Diligently Complied With Its Discovery Obligations, Despite
         Aristocrat's Failure to Do the Same. ........................................................................... 6

        A.     L&W Is Diligent in Producing Documents and Has Produced
              20 Time More Documents Than Aristocrat. ................................................ 7

        B.     Aristocrat's Complaints About Written Discovery Are Baseless. ............. 10

        C.     Aristocrat Has Engaged in Gamesmanship to Support Its Instant
              Motion. .......................................................................................................... 10

        D.     Depositions Are Not a Basis for an Extension of All Discovery. .............. 12

CONCLUSION ............................................................................................................................ 13

CERTIFICATE OF SERVICE ................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ctr. for Biological Diversity v. Salazar,*
  706 F.3d 1085 (9th Cir. 2013) ............................................................................... 4

*D.S. v. Clark Cnty. Sch. Dist.,*
  2023 WL 5748720 (D. Nev. May 22, 2023) ......................................................... 2

*Derosa v. Blood Sys., Inc.,*
  2013 WL 3975764 (D. Nev. Aug. 1, 2013) ........................................................... 8

*DeRubeis v. Witten Techs., Inc.,*
  244 F.R.D. 676 (N.D. Ga. 2007) ........................................................................... 6

*Espinosa v. Corr. Corp. of Am.,*
  2021 WL 4186694 (D. Nev. Aug. 23, 2021) ......................................................... 2

*Fernandez-Gonzalez v. Valdes-Garcia,*
  2023 WL 6121804 (D. Nev. Sept. 18, 2023) ......................................................... 2

*Garvey Corp. v. Barry-Wehmiller Design Grp., Inc.,*
  365 F. Supp. 2d 893 (N.D. Ill. 2005) ..................................................................... 4

*Givaudan Fragrances Corp. v. Krivda,*
  2013 WL 6230498 (D.N.J. Dec. 2, 2013) .............................................................. 6

*Henderson v. Aria Resort & Casino Holdings, LLC,*
  2023 WL 3007914 (D. Nev. Mar. 31, 2023) ..................................................... 2, 3

*Janicki Logging Co. v. Mateer,*
  42 F.3d 561 (9th Cir. 1994) ................................................................................... 2

*Johnson v. Mammoth Recreations, Inc.,*
  975 F.2d 604 (9th Cir. 1992) ............................................................................. 2, 3

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.,*
  2014 WL 1922744 (E.D. Wash. May 14, 2014), *aff'd in part, modified in part,*
  602 F. App'x 669 (9th Cir. 2015) .......................................................................... 5

*Rocketfuel Blockchain, Inc. v. Page,*
  2021 WL 5404670 (D. Nev. Nov. 12, 2021) ....................................................... 16

*Smith v. Las Vegas Metro. Police Dep't,*
  2024 WL 4046295 (D. Nev. July 29, 2024)
  *report and recommendation adopted*, 2024 WL 4615860 (D. Nev. Oct. 30,
  2024) ................................................................................................................. 2, 3

*Sports Mktg. Monterrey Grp. LLC v. Socios Servs. US Inc.*,
   2023 WL 2671379 (N.D. Cal. Mar. 27, 2023), *vacated pursuant to parties'
   stipulation settling the case*, 2023 WL 3184399 (N.D. Cal. Apr. 25, 2023) ........................... 4

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981) ............................................................................................................ 4

*Williams v. James River Grp. Inc.*,
   627 F. Supp. 3d 1172 (D. Nev. 2022) ............................................................................ 2, 3, 8

**Rules**

Fed. R. Civ. P. 16 .................................................................................................................... 2

L.R. 26-3 ................................................................................................................................. 3

**HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY**

Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation ("L&W") respectfully file this Opposition to Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.'s ("Aristocrat") Motion to Modify the Second Amended Stipulated Discovery Plan and Scheduling Order ("Motion"), ECF No. 252.[1] This Court should deny Aristocrat's motion because it lacks good cause to justify a discovery extension.

## INTRODUCTION

Aristocrat's motion to extend discovery should be denied for three reasons.

First, delaying this case will cause substantial prejudice to Light & Wonder. L&W is subject to a preliminary injunction that imposes significant hardship on L&W during the pendency of this litigation. The longer it takes L&W to secure a ruling on the merits and present its arguments to a jury, the greater that hardship becomes. Despite the burdens an injunction imposes, L&W agreed to Aristocrat's first request to extend discovery by three months. But now Aristocrat comes back with the same request for the same reasons. If the last three-month extension was enough to address Aristocrat's scheduling concerns, another one now is unnecessary.

Second, Aristocrat's basis for an extension is contrived and improper. A few weeks ago, this Court denied Aristocrat's sweeping request for all of L&W's hold-and-spin game math. Since then, Aristocrat has refused to move forward with discovery following the process the Court laid out. Aristocrat instead demanded that L&W produce the same expansive information the Court denied, re-urges the *same* issues this Court has already decided, and is now requesting a discovery extension to accommodate its own deliberate delay.

Third, Aristocrat's conduct throughout discovery does not merit an extension. To show good cause, Aristocrat must show its own diligence. But Aristocrat has only been diligent when it serves

---

[1] During the parties' meet-and-confer, L&W requested that Aristocrat follow the discovery dispute protocol in Magistrate Judge Couvillier's Standing Order ("Standing Order"). *See* Standing Order, § II.B (requiring a joint stipulation for "any discovery dispute" and stating that "[n]o discovery motion may be filed until the following procedure has been followed and such motion is ordered"). In L&W's view, a dispute over whether to extend fact discovery constitutes a "discovery dispute" and therefore requires a joint stipulation. Aristocrat disagreed and filed this motion, necessitating this formal opposition from L&W. L&W maintains, however, that Aristocrat has violated the Standing Order by filing this motion. Aristocrat's motion should be denied on this procedural ground alone. *See* Declaration of Andrew Nassar ("Nassar Decl."), ¶ 4.

**HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY**

Aristocrat's agenda. It waited until after the last discovery extension to make meaningful document productions, and as soon as it filed this motion, has pursued expansive, unnecessary, and improper discovery in a transparent attempt to bolster its motion. That is not "diligence." It is gamesmanship.

## LEGAL STANDARD

In this Circuit, "[a] scheduling order is not a frivolous piece of paper." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (citation omitted) (internal quotation marks omitted). On the contrary, "[d]ecades of Ninth Circuit precedent reflect that case management deadlines . . . must be taken seriously." *D.S. v. Clark Cnty. Sch. Dist.*, 2023 WL 5748720, at *2, n.4 (D. Nev. May 22, 2023) (collecting cases). Courts in this District heed that instruction, making it no small feat to overcome opposition and obtain a discovery extension. *See, e.g.*, *Williams v. James River Grp. Inc.*, 627 F. Supp. 3d 1172, 1177 (D. Nev. 2022) ("Rule 16 of the Federal Rules of Civil Procedure, as well as the scheduling orders entered pursuant to that rule, must 'be taken seriously.'") (quoting *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994)); *Espinosa v. Corr. Corp. of Am.*, 2021 WL 4186694 (D. Nev. Aug. 23, 2021) (denying opposed motion to extend discovery).[2]

The standard to extend a discovery deadline is "good cause." Fed. R. Civ. P. 16(b); L.R. 26-3. The Ninth Circuit has interpreted this standard through the lens of diligence: courts may extend a deadline "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609 (citation omitted). Accordingly, the moving party must show that it has been diligent "throughout the entire period of time already allowed." *Williams*, 627 F. Supp. 3d at 1177.

After diligence, courts also consider prejudice to the non-moving party, "which can provide an additional ground for refusing to modify the case management schedule." *See Smith v. Las Vegas Metro. Police Dep't*, 2024 WL 4046295, at *3 & n.8 (D. Nev. July 29, 2024), *report and*

---

[2] *See also, e.g.*, *Smith v. Las Vegas Metro. Police Dep't*, 2024 WL 4046295 (D. Nev. July 29, 2024), *report and recommendation adopted*, 2024 WL 4615860 (D. Nev. Oct. 30, 2024) (enforcing case management deadline under Rule 16(b)); *Fernandez-Gonzalez v. Valdes-Garcia*, 2023 WL 6121804 (D. Nev. Sept. 18, 2023) (same); *Henderson v. Aria Resort & Casino Holdings, LLC*, 2023 WL 3007914 (D. Nev. Mar. 31, 2023), *report and recommendation adopted*, 2023 WL 3007895 (D. Nev. Apr. 18, 2023) (same).

*recommendation adopted*, No. 2:23-CV-00092-JAD-NJK, 2024 WL 4615860 (D. Nev. Oct. 30, 2024) (citation omitted).[3]

## ARGUMENT

### I. An Extension Will Cause Substantial Prejudice to L&W.

Extending discovery will prejudice L&W by delaying an adjudication on the merits. As Aristocrat knows, L&W is subject to a preliminary injunction. *See* ECF No. 125. Though L&W does not agree with the Court's ruling about the preliminary merits of Aristocrat's trade-secret claims, L&W has always respected it.[4] However, L&W intends to vigorously defend itself against Aristocrat's claims at trial.

The longer this case goes on, the greater the prejudice to L&W in being able to timely secure a ruling on the merits. Federal courts, inside and outside of this Circuit, emphasize the urgency of reaching the merits where parties like L&W are subject to preliminary injunctions. *See, e.g.*, *Sports Mktg. Monterrey Grp. LLC v. Socios Servs. US Inc.*, 2023 WL 2671379, at *1 (N.D. Cal. Mar. 27, 2023), *vacated pursuant to parties' stipulation settling the case*, 2023 WL 3184399 (N.D. Cal. Apr. 25, 2023) (setting "an aggressive pretrial schedule" to "minimize[e] any harm to defendants due to the granting of the injunction" in an IP case); *Garvey Corp. v. Barry-Wehmiller Design Grp., Inc.*, 365 F. Supp. 2d 893, 901 (N.D. Ill. 2005) ("Having entered a preliminary injunction, this Court intends to reach the merits of this case as quickly as possible.").

Principles of justice and due process mean delaying *any* case involving preliminary injunctions is problematic. Courts grant preliminary relief before the parties have "a full opportunity to present their cases" and on the basis of "evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395–96 (1981). That is why "a preliminary injunction decision is just that: preliminary." *Ctr. for Biological Diversity v. Salazar*,

---

[3] Aristocrat cites the right legal standard (good cause). But it presents arguments that have no connection to this standard. *See* Mot. at 11–14 (discussing the complexity of the case and "the orderly completion of discovery"). There is no legal support for those arguments in Aristocrat's brief. Indeed, Aristocrat cites so little law that it did not even include a table of authorities.

[4] For example, L&W opted to comply with, rather than appeal, the injunction. Moreover, L&W recently agreed to voluntarily stipulate to treating another game as subject to the Preliminary Injunction. *See* ECF No. 254.

3

706 F.3d 1085, 1090 (9th Cir. 2013).

The particular circumstances of this case make swift resolution on the merits critical. For example, mounting evidence shows that Aristocrat's claims fail for at least two independent reasons: its so-called trade secrets have been publicly-disclosed, and Aristocrat does not employ reasonable measures to safeguard them. If the factfinder determines even one of these conditions is true, Aristocrat's claims fall apart and L&W would not be subject to injunctive relief.

First, L&W has identified documents—not produced by Aristocrat—showing that Aristocrat's trade secrets have been publicly disclosed. Specifically, there are documents bearing the legend "trade secret of Aristocrat" and containing mathematical information on various games circulating on the internet for anyone to see, download, and use. *See* Ex. 1 (LNW_854161). These documents (called PAR sheets) have been disseminated via free digital libraries and offered for sale by long-standing sellers of slots-related equipment. These are not one-off instances: L&W has identified *dozens* of Aristocrat PAR sheets on the internet covering a suite of games, including several relating to the game at issue here: Dragon Link. *See* Ex. 2 (LNW_853782).[5]

Second, there is evidence that Aristocrat has not taken reasonable measures to safeguard its trade secrets. The public availability of Aristocrat material labeled "trade secret" itself gives rise to an inference that Aristocrat does not sufficiently protect its intellectual property. On top of that, Aristocrat was apparently unaware its alleged trade secrets had been posted on the internet until counsel for L&W brought it to Aristocrat's attention, after which Aristocrat tried to scrub them from the internet. *See* Ex. 3 (A. Nassar Apr. 2 Email) (identifying six Scribd URLs); Ex. 4 (ARIST_00071423) (Apr. 3 Communication from Aristocrat to Scribd Requesting Removal of Same URLs). When L&W later produced additional PAR sheets it found online, Aristocrat again sought to remove them. *See* Ex. 5 (LNW_746188) (Dragon of Destiny PAR Sheet); Ex. 6 (L&W Apr. 15 Production Letter); Ex. 7 (ARIST_00071437) (Apr. 18 Communication from Aristocrat to Scribd Requesting Removal Dragon of Destiny Sheet). Delaying this case means delaying L&W's ability

---

[5] Indeed, Aristocrat even disclosed its purported trade secrets to L&W without requiring confidentiality protections. *See* Ex. 37 (LNW_731328) (Oct. 2018 Email Chain Showing Aristocrat Employee Sending L&W Employee Dragon Link PAR Sheet). That is a plain waiver of their trade secret status.

4

to present Aristocrat's whack-a-mole approach to safeguarding its intellectual property to a jury, while remaining subject to the severe preliminary injunction.[6]

**II. Aristocrat Seeks More Time to Relitigate Issues This Court Has Already Rejected.**

Setting aside the substantial prejudice L&W will suffer, Aristocrat seeks an extension for an improper purpose: to relitigate the expansive pursuit of L&W game math that this Court has denied. On June 23, this Court ruled on Aristocrat's request for the wholesale production of game math for all L&W hold-and-spin games developed in any since 2021. On the record, the Court succinctly stated:



Ex. 8 (Excerpts of June 23 Hearing Tr.) at 69:2–19.

The instructions were clear: the way for Aristocrat to request any additional game math is for Aristocrat first to more specifically identify its trade secrets and then for L&W to search for documents REDACTED that Aristocrat identifies.[7] *Id.* These instructions were

---

[6] Extending discovery also presents knotty legal issues for this Court to address regarding the bond Aristocrat had to secure for the preliminary injunction. If the trial date is pushed out, the harm to L&W from having been wrongly enjoined increases. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 2014 WL 1922744, at *5 (E.D. Wash. May 14, 2014), *aff'd in part, modified in part*, 602 F. App'x 669 (9th Cir. 2015) *and vacated*, 743 F. App'x 771 (9th Cir. 2018) (setting bond amount at "the amount of revenue the Defendants stand to lose" from enjoined product through estimated trial date).

[7] Aristocrat has not more specifically identified its alleged trade secrets in response to Interrogatory No. 1. REDACTED *See* Ex. 9 (Counsel Correspondence Regarding Trade Secrets), at 1–2. Nonetheless, L&W has *not* used Aristocrat's failure to comply with the Court's instructions as a basis to avoid discovery, and has consistently told Aristocrat it will run requested searches across its game math files to identify any relevant documents. *See, e.g., id.*; Ex. 10 (A. Nassar July 8 Email Excerpt).

5

**HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY**

consistent with the law. Trade-secret discovery should be tailored to the specific trade secrets at issue. *See, e.g.*, *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007) (explaining that trade secret identifications inform "the outer permissible bounds of discovery"); *Givaudan Fragrances Corp. v. Krivda*, 2013 WL 6230498, at *3 (D.N.J. Dec. 2, 2013) (noting discovery "must be limited to the specific trade secrets which were allegedly misappropriated").

Aristocrat accepted Magistrate Judge Couvillier's ruling and did not appeal it to the District Court. Yet, paradoxically, Aristocrat has refused to follow the Court's instructions. During the parties' meet and confer after the June 23 hearing—and to L&W's surprise—Aristocrat persisted in making the same sort of broad demand for L&W's game math the Court had rejected. Aristocrat refused to rely on searching as the Court had directed and instead cited the same, and additional, RFPs to request L&W game math regardless of whether those games "contain[ed] specific math code" from Aristocrat. *See* June 23 Hearing Tr. at 69:15–19. As of the date of this filing, Aristocrat has proposed zero additional game math keyword searches to L&W, even though that was the exact instruction given to Aristocrat by this Court.

Aristocrat has had ample opportunity to pursue discovery into game math. Indeed, when the parties stipulated to a discovery extension a few months ago, one of the reasons was to afford Aristocrat more time to "investigate its claims" by searching L&W game math. ECF No. 225, at 3–4. L&W agreed to Aristocrat's first requested three-month extension and has (and will continue to) run searches requested by Aristocrat across its game math servers. Aristocrat is not entitled to more time to continue its efforts to improperly expand discovery on this issue.

**III. L&W Has Diligently Complied With Its Discovery Obligations, Despite Aristocrat's Failure to Do the Same.**

Throughout this case, L&W has acted in good faith. It has produced enormous amounts of documents on a rolling basis; responded to and supplemented interrogatory responses regularly; and engaged in extensive correspondence in response to dozens of Aristocrat's email requests for information outside of the formal discovery process. In short, L&W has diligently complied with its discovery obligations.

6

**HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY**

Aristocrat cannot say the same. To obtain an extension, Aristocrat must show that it has been diligent "throughout the entire period of time already allowed." *Williams*, 627 F. Supp. 3d at 1177. Aristocrat presumes, without citation to authority, that diligence is measured solely by a party's pursuit of discovery from other parties. But discovery is a two-way street, and courts consider whether the moving party has been diligent in fulfilling its own discovery obligations. *See Derosa v. Blood Sys., Inc.*, 2013 WL 3975764, at *2 (D. Nev. Aug. 1, 2013) (denying extension and noting that the moving party had provided limited discovery).

**A.    L&W Is Diligent in Producing Documents and Has Produced 20 Time More Documents Than Aristocrat.**

L&W takes its document production obligations seriously. Since discovery opened in April 2024, L&W has produced more than 340,000 documents totaling nearly 900,000 pages of discovery. *See* Ex. A (Nassar Dec.).

By contrast, Aristocrat has only produced about 16,500 documents (rounding up). *See id.* It went months without producing a single document. *See* Ex. 11 (Aristocrat Nov. 5, 2024 Volume 5 Production Letter); Ex. 12 (Aristocrat January 31, 2025 Volume 6 Production Letter). Only after L&W commented on the "glacial" pace of Aristocrat's productions, and pointed out the impending substantial completion deadline, did Aristocrat pick up the pace. Ex. 13 (E. Wilson Jan. 20 Email Excerpt).

Aristocrat boasts about how many more documents it has produced than L&W since the last discovery extension (a few thousand). *See* Mot. at 3. That is no longer true. Moreover, the only reason it was ever true is because L&W was already *hundreds of thousands of documents ahead* by the time discovery was extended. Aristocrat's motion ignores how little Aristocrat has engaged with the discovery process until just recently.

The most glaring example of Aristocrat's deficiencies is its production of ESI. Aristocrat sat on L&W's requests for ESI for *months* without searching its custodians' emails. After L&W proposed targeted keyword searches in January, it took Aristocrat until March 13 to even provide hit counts for discussion. *See* Nassar Decl., ¶ 7.

By mid-April, L&W had produced tens of thousands of emails and messages. Aristocrat had only produced 108. L&W was so surprised that it wrote to Aristocrat for confirmation that L&W wasn't missing anything (it wasn't). *See* Ex. 14 (A. Nassar Apr. 22 Email) Even among those 108 Aristocrat emails, the bulk were irrelevant: invitations to barbecues and going-away parties, notifications about computer maintenance, and legal filings from this case. *See id.*

Aristocrat's delay in producing ESI continued. On May 9, Aristocrat was still "experimenting" with search terms across its own documents, when it should have been producing results. *See* Ex. 15 (E. Wilson May 9 Email) (excerpting and responding to Aristocrat email). As late as last month, and mere weeks before the original close of discovery, Aristocrat had still made no meaningful ESI production. *See* Ex. 16 (R. Magni June 11 Letter), at 2.

Lastly, when it comes to L&W's document productions, Aristocrat either mischaracterizes or ignores the variety of materials L&W has produced.

- Aristocrat faults L&W for missing a deadline (to produce accountings for Jewel of the Dragon) that Aristocrat agreed to extend. *See* Mot. at 4–5; *see* Nassar Decl., ¶ 8.

- Contrary to Aristocrat's claims, L&W has provided *numerous* documents relating to placements and sales of the Accused Games already, and it is diligently working to complete its production. To provide a handful of examples, L&W has provided contracts and orders,[8] invoices,[9] and monthly performance reports for various customers.[10]

- Following the June 23 hearing, L&W has been diligently collecting financial information response to RFP No. 41 and Interrogatories Nos. 7 and 15 relating to Australian commercialization. During this process, L&W has *also* collected non-Australian financial information for the Accused Games across geographies and across business units, such as for iGaming and for land-based games and is working to produce the balance of documents soon.

- Aristocrat complains it has not yet received documents for REDACTED, but ignores the multiple productions L&W has made relating to various games intended to replace

---

[8] *See, e.g.*, Ex. 17 (LNW_231593); Ex. 18 (LNW_304451).

[9] *See, e.g.*, Ex. 19 (LNW_304382); Ex. 20 (LNW_304385).

[10] *See* Ex. 21 (LNW_306551).

**HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY**

Dragon Train. *See* Ex. 22 (A. Nassar Prod. Letter). In February, L&W produced math for Dragon Train Grand Central, the SciPlay replacement game, weeks before the game would launch. In March, L&W produced additional documents relating to the SciPlay version and also the land-based replacement game. *See* Ex. 23 (A. Nassar Prod. Letter). L&W expects to produce REDACTED information soon, as promised.

- Aristocrat also ignores the voluminous amount of game math L&W has provided, which includes all game math L&W is aware of that may contain Aristocrat's alleged trade secrets, or that Emma Charles worked on. L&W has produced math for not only Dragon Train and Jewel of the Dragon, but also for REDACTED ; Huff N More Puff; Monopoly Take A Chance; Double Dragon; Dragon Train Grand Central; REDACTED ; and REDACTED. *See* Nassar Decl., ¶ 9.

- Aristocrat's claims regarding Lion Link Fortune are a red herring. Each time Aristocrat has come to L&W with "evidence" suggesting the use of Aristocrat or Dragon Train math in the game, Aristocrat's claims have been debunked. First, Aristocrat claimed that emails between Emma Charles and Lion Link's game designer showed the spread of Dragon Train math. But L&W pointed to contemporaneous emails showing that Ms. Charles was only advising on features such as art. *See* Ex. 24 (A. Nassar Mar. 28 Email). Aristocrat raised Lion Link again in June, claiming that Dragon Train audit logs and instant messages revealed a Lion Link math designer using math from Dragon Train. But Aristocrat either overlooked or ignored various other pieces of evidence, such as the audit log itself, that confirmed the designer's access of Dragon Train related only to her assistance on porting the game to the South African market, and had nothing to do with Lion Link. *See* Ex. 25 (LNW_172554); Ex. 26 (LNW_172544).

- Aristocrat also ignores the source code L&W has already produced for both Dragon Train and Jewel of the Dragon. *See* Mot. at 5. *See*, *e.g.*, Nassar Decl., ¶ 10 (describing production of Dragon Train Chi Lin Wins; Dragon Train Khutulun; Jewel of the Dragon Prosperity Tortoise; Jewel of the Dragon Red Phoenix). L&W is actively assembling additional source code for the Accused Games to complete its production.

**HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY**

For any of these outstanding documents L&W has agreed to provide and is working to collect, L&W intends to produce them prior to the current close of discovery at the end of September; they are not the basis for a continuance.

**B.      Aristocrat's Complaints About Written Discovery Are Baseless.**

Aristocrat misleadingly claims that L&W "has yet to provide complete responses," Mot. at 7, when the reality is that Aristocrat refuses to accept L&W's answers as complete because it doesn't like what they say.[11] L&W has regularly and diligently supplemented its interrogatory responses when it has discovered new information.

With respect to contention interrogatories in particular, Aristocrat refuses to be satisfied, even after L&W has laid out in detail its assertions that Aristocrat's trade secrets have been publicly disclosed, that Aristocrat has not adequately guarded its trade secrets, and that, as a matter of law, a reel strip that can be easily reverse engineered is not a trade secret.

L&W is the defendant in this case, so its contentions are reactive and intimately linked to information Aristocrat must first provide. If L&W's responses to contention interrogatories are incomplete (they are not), it is only because Aristocrat has failed to produce evidence that L&W has requested, for example, documents to reconcile Aristocrat's representations about its trade secret protection measures with the public presence of those trade secrets on the internet. *See* Ex. 3 (A. Nassar Apr. 2 Email) ("It is telling that L&W is able to learn more about Aristocrat's purported security practices through a Google search than through Aristocrat's fulfillment of its discovery obligations.").

**C.      Aristocrat Has Engaged in Gamesmanship to Support Its Instant Motion.**

Aristocrat has idly waited until it filed this motion to raise multiple contrived discovery disputes to this Court. Just last week, Aristocrat resurrected a discovery "dispute" it had abandoned

---

[11] Aristocrat also regularly and incorrectly claims that L&W is withholding information, but Aristocrat does not provide any basis for its assertions. For example, Aristocrat references its recent complaint that L&W has failed to identify all individuals who worked on the Accused Games its response to Interrogatory No. 4. To understand Aristocrat's complaint, L&W asked for clarification about who, exactly, Aristocrat believed had been omitted. *See* Ex. 10 (A. Nassar July 8 Email). Aristocrat then demanded that L&W add another individual by name who it wanted included in the response, despite it being complete without him. *See* Ex. 27 (D. Farnoly July 15 Email).

10

**HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY**

*five weeks ago.* Ex. 28 (Privilege Stip. Emails). Aristocrat filed a motion to compel on March 19, withdrew it, and served L&W with a draft stipulation on March 28. *See* ECF Nos. 111–12; Nassar Decl., ¶ 11. L&W returned its portion of the stipulation one week later on April 4 (L&W). The parties exchanged drafts until April 15. *See* Nassar Decl., ¶ 11. Over seven weeks passed, then Aristocrat sent an updated version on May 27 (Aristocrat). Thereafter, the parties exchanged drafts on June 2 (L&W), June 9 (Aristocrat), and June 16 (L&W). *See id.* Rather than file the stipulation in time for the June 23 hearing before this Court, Aristocrat seemingly dropped the dispute. That is, until five weeks later, when Aristocrat sent L&W a new version of the stipulation on July 22 in a transparent attempt to manufacture outstanding discovery issues to support its instant motion. *See* Ex. 28.

  Another example of Aristocrat's gamesmanship is its recent request for the production of six terabytes of L&W data, even though Aristocrat had previously asserted it would "tailor" its requests for that data to reduce the burden on the parties. Ex. 29 (K. Song July 9 Email).[12] Last December, L&W voluntarily agreed to produce these documents from its Dragon Train preliminary injunction accountings, despite having no obligation to do so. Given the hundreds of thousands of documents L&W produced from those accountings, L&W believed it had produced everything. Once Aristocrat identified additional files it wished to be produced, L&W began a lengthy process to retrieve files that, by design, were meant to be isolated. *See* Ex. 30 (A. Nassar June 17 Email). In what appeared to be a good faith effort to work toward a solution, Aristocrat expressed its willingness to "tailor" its requests for production of these files (twice). *See* Ex. 31 (D. Farnoly June 27 Email); Ex. 29 (K. Song July 9 Email). L&W also offered to search for and produce specific items at Aristocrat's request (which it did) because Aristocrat had communicated its disinterest in the wholesale production of these documents. *See* Ex. 3 (A. Nassar June 17 Email) ("We are willing to provide Aristocrat additional documents from the accountings, but we recognize that Aristocrat may not necessarily want all such documents given (a) the nature of some types of documents, and (b) the

---

[12] It is difficult to estimate how many pages of documents make up six terabytes of data. But according to some data sources, a single terabyte can contain as much as 700 million pages of text.

volume."); Ex. 31 (D. Farnoly June 27 Email) ("[W]e are willing to work with you to avoid production of documents that may be unnecessary.").

But two days after Aristocrat filed this motion, it apparently changed its mind and asked for the "prompt" production of approximately six terabytes worth of data. *See* Ex. 32 (D. Farnoly July 17 Email); *see* Nassar Decl., ¶ 11. The newly contrived need for these files is not a proper basis to extend discovery.

**D.    Depositions Are Not a Basis for an Extension of All Discovery.**

Aristocrat's arguments regarding depositions ring hollow. It acts surprised that major industry trade shows will pose an obstacle to taking depositions, thereby justifying its request for a further extension. But these events are scheduled in the same months every year, meaning they were no secret when the parties agreed to a three-month extension.[13]

Just recently, Aristocrat even suggested *postponing* depositions that the parties have been planning to take in August in Australia. On July 1, Aristocrat informed L&W that it was "finalizing" subpoenas for three witnesses in Australia pursuant. *See* Ex. 33 (Counsel Deposition Correspondence). Since the parties would travel to Australia anyways, L&W suggested they schedule others during the same trip. *Id.* After two of the third-party witnesses objected to service of Aristocrat's subpoenas, which Aristocrat apparently did not serve on time, Aristocrat wrote to L&W to cancel all the other Australian depositions planned. *See* Ex. 34 (Letter to Gilbert + Tobin). L&W expressed its preference to proceed forward with the party depositions they were planning to take. *See* Ex. 33.  Aristocrat ultimately agreed. *Id.*

Aristocrat vaguely claims that document production must be complete before it can take additional depositions, but articulates no particular need for certain documents before taking any particular witness's deposition. As discussed above, L&W's document production to date is nearing one million pages, and includes most, if not all, of its custodians' responsive ESI that counsel would be need to prepare for most depositions. To the extent individual witnesses need to be deposed outside the discovery period, the parties can reasonably confer and cooperate on that, but Aristocrat's

---

[13] *See, e.g.*, Ex. 35 (Australasian Gaming Expo (AGE) 2024); Ex. 36 (Global Gaming Expo (G2E) 2022).

unsupported assertions that depositions cannot be taken until document discovery is complete is inaccurate and should not be the basis for an extension of the discovery deadline.

\* \* \*

Aristocrat is "facing the consequences of [its] own decision making, which does not rise to 'good cause' for extending discovery." *Rocketfuel Blockchain, Inc. v. Page*, 2021 WL 5404670, at *2 (D. Nev. Nov. 12, 2021).

This Court should deny Aristocrat's motion.

## CONCLUSION

For the above reasons, L&W respectfully requests this Court deny Aristocrat's motion to extend discovery. In the alternative, L&W proposes, as a compromise, a one-month extension to fact discovery.

Dated: July 29, 2025

By: /s/ *Philip R. Erwin*
**CAMPBELL & WILLIAMS**
PHILIP R. ERWIN, ESQ.
710 South Seventh Street
Las Vegas, Nevada 89101

**SUSMAN GODFREY L.L.P.**
NEAL MANNE (*pro hac vice*)
JOESEPH GRINSTEIN (*pro hac vice*)
ROCCO MAGNI (*pro hac vice*)
ASHLEY MCMILLIAN (*pro hac vice*)
MEGAN E. GRIFFITH (*pro hac vice*)
1000 Louisiana, Suite 5100
Houston, Texas 77002

ERIK WILSON (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

DINIS CHEIAN (*pro hac vice*)
ANDREW NASSAR (*pro hac vice*)
One Manhattan West, 50th Fl.
New York, NY 10001

*Attorneys for Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation.*

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

# CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of July, 2025, I caused a true and correct copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY SECOND AMENDED STIPULATED DISCOVERY PLAN AND SCHEDULING ORDER** to be electronically filed and served upon the parties registered for service with the Court's Case Management and Electronic Case Filing (CM/ECF), as well as via email.

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
SPENCER FANE LLP
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308
Email: nsantoro@spencerfane.com
jsmith@spencerfane.com
tbthomas@spencerfane.com

PETER SWANSON (pro hac vice)
GARY RUBMAN (pro hac vice)
MATTHEW KUDZIN (pro hac vice)
ALEXANDER TRZECIAK (pro hac vice)
DANIEL FARNOLY (pro hac vice)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com; grubman@cov.com
mkudzin@cov.com; atrzeciak@cov.com
dfarnoly@cov.com

ZIWEI SONG (pro hac vice)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

/s/ *Philip R. Erwin*
CAMPBELL & WILLIAMS

14

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

## INDEX OF EXHIBITS

| Exhibit No. | DESCRIPTION | Page Nos. |
|---|---|---|
| - | Declaration of Andrew Nassar *(FILED UNDER SEAL)* | - |
| 1 | LNW_854161 (screenshot showing search results for "trade secret of Aristocrat" on Scribd) *(FILED UNDER SEAL)* | 001 |
| 2 | LNW_853782 (screenshot showing Scribd page for Dragon Link Cash PAR Sheet) | 002 |
| 3 | Email from Andrew Nassar to counsel for Aristocrat (Apr. 2, 2025) *(FILED UNDER SEAL)* | 003 – 006 |
| 4 | ARIST_00071423 (email showing communications to Scribd on April 3, 2025) *(FILED UNDER SEAL)* | 007 – 010 |
| 5 | LNW_746188 (screenshot showing Scribd page for Dragon of Destiny PAR Sheet) | 011 – 012 |
| 6 | L&W Production Letter (April 15, 2025) | 013 – 014 |
| 7 | ARIST_00071437 (email showing communications to Scribd on April 18, 2025) *(FILED UNDER SEAL)* | 015 – 018 |
| 8 | Excerpts of June 23, 2025 Hearing Transcript *(FILED UNDER SEAL)* | 019 – 022 |
| 9 | Counsel Correspondence Regarding Trade Secrets *(FILED UNDER SEAL)* | 023 – 035 |
| 10 | Excerpt of Email from Andrew Nassar to Counsel for Aristocrat (July 8, 2025) *(FILED UNDER SEAL)* | 036 |
| 11 | Aristocrat Production Letter, Vol. 5 (Nov. 4, 2024) | 037 |
| 12 | Aristocrat Production Letter, Vol. 6 (January 31, 2025) | 038 |
| 13 | Excerpt of Email from Erik Wilson to Counsel for Aristocrat (January 20, 2025) *(FILED UNDER SEAL)* | 039 |
| 14 | Email from Andrew Nassar to Counsel for Aristocrat (April 22, 2025) *(FILED UNDER SEAL)* | 040 – 041 |
| 15 | Excerpts of Email from Erik Wilson to Counsel for Aristocrat (May 9, 2025) *(FILED UNDER SEAL)* | 042 – 045 |
| 16 | Letter from Rocco Magni to Peter Swanson (June 11, 2025) | 046 – 048 |
| 17 | LNW_231593 (L&W Customer Contract) *(FILED UNDER SEAL)* | 049 – 054 |
| 18 | LNW_304451 (L&W Customer Order) *(FILED UNDER SEAL)* | 055 – 056 |
| 19 | LNW_304382 (L&W Invoice) *(FILED UNDER SEAL)* | 057 – 058 |
| 20 | LNW_304385 (L&W Invoice) *(FILED UNDER SEAL)* | 059 – 060 |
| 21 | LNW_306551 (Email regarding performance report) *(FILED UNDER SEAL)* | 061 – 062 |
| 22 | L&W Production Letter (February 13, 2025) | 063 – 064 |
| 23 | L&W Production Letter (March 7, 2025) | 065 – 066 |

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY

| Exhibit No. | DESCRIPTION | Page Nos. |
|---|---|---|
| 24 | Email from Andrew Nassar to Counsel for Aristocrat (March 28, 2025) *(FILED UNDER SEAL)* | 067 – 068 |
| 25 | LNW_172544 (L&W Email Excerpts) *(FILED UNDER SEAL)* | 069 |
| 26 | LNW_172544 (L&W Email Excerpts) *(FILED UNDER SEAL)* | 070 |
| 27 | Excerpt of Email from Dan Farnoly to Counsel for L&W (July 15, 2025) *(FILED UNDER SEAL)* | 071 – 079 |
| 28 | Counsel Correspondence Regarding Privilege Waiver Stipulation | 080 |
| 29 | Excerpt of Email from Kanu Song to Counsel for L&W (July 9, 2025) *(FILED UNDER SEAL)* | 081 |
| 30 | Email from Andrew Nassar to Counsel for Aristocrat (March 28, 2025) *(FILED UNDER SEAL)* | 082 – 083 |
| 31 | Excerpt of Email from Dan Farnoly to Counsel for L&W (June 27, 2025) | 084 |
| 32 | Excerpt of Email from Dan Farnoly to Counsel for L&W (July 17, 2025) | 085 – 086 |
| 33 | Counsel Deposition Correspondence | 087 – 091 |
| 34 | Letter to Gilbert + Tobin from Deutsch Miller *(FILED UNDER SEAL)* | 092 – 094 |
| 35 | Australasian Gaming Expo (AGE) 2024 Web Page | 095 – 096 |
| 36 | Global Gaming Expo (G2E) 2022 | 097 – 101 |
| 37 | LNW_731328 (Oct. 2018 Email Chain Showing Aristocrat Employee Sending L&W Employee Dragon Link PAR Sheet) *(FILED UNDER SEAL)* | 102 – 108 |