NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email: nsantoro@spencerfane.com
       jdsmith@spencerfane.com
       tbthomas@spencerfane.com

PETER A. SWANSON
(*pro hac vice*)
GARY M. RUBMAN
(*pro hac vice*)
ALEXANDER TRZECIAK
(*pro hac vice*)
DANIEL J. FARNOLY
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.:  (202) 662-6000
Email:  pswanson@cov.com
        grubman@cov.com
        atrzeciak@cov.com
        dfarnoly@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-Defendants*
*Aristocrat Technologies, Inc. and*
*Aristocrat Technologies Australia Pty Ltd.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Plaintiffs/Counterclaim-Defendants, <br> v. <br><br> LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Defendants/Counterclaim-Plaintiffs. | Case No. 2:24-cv-00382-GMN-MDC <br><br> **STIPULATION REGARDING DISCOVERY DISPUTE** <br><br> **ORAL ARGUMENT REQUESTED** |

Pursuant to Paragraph II.B.2 of Judge Couvillier's Standing Order, Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. (together, "Aristocrat") and Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (together, "L&W"), respectfully submit this stipulation regarding Aristocrat discovery requests that remain in dispute following the parties' good-faith efforts to resolve the dispute informally.

## I.  JOINT SUMMARY OF DISCOVERY DISPUTE

This discovery dispute relates to Aristocrat's request for identification and production of additional L&W games and math. First, the parties dispute whether L&W must identify hold-and-spin games on which L&W game designers and mathematicians worked after the dates on which their names appeared on audit logs associated with certain accused L&W games. Aristocrat contends that (a) such identification is relevant and tailored to identifying additional trade secret misappropriation, as it is limited to games developed *after* the logs show employees accessed math files that are copied or derived from Aristocrat math; and (b) L&W is reneging on its agreement to provide the identification. L&W contends that (a) Aristocrat's demand for "identification" of games is an end run around this Court's recent ruling because the request essentially covers L&W's entire portfolio of hold-and-spin games and is actually a request for production of the game math for those games, and (b) Aristocrat mischaracterizes the relevance of the audit logs on which they base this renewed request, and also mischaracterizes L&W's consistent position on this issue.

Second, the parties dispute whether L&W must produce the final or latest game math for those identified games. Aristocrat contends that this request—a subset of what Aristocrat previously requested—is (a) narrowly tailored both in time and scope based on specific evidence of employees accessing and working with Aristocrat's trade secret math (not L&W's "entire portfolio"), and (b) necessary to identify misappropriation given the significant limitations of keyword searches, including the *impossibility* of comprehensively searching L&W's primary math database and the *inability* of such searches to identify non-verbatim uses of Aristocrat math (as the law does not limit misappropriation to copying "specific math code"). L&W contends that (a) this is not a subset of the prior request, it is the exact same expansive pursuit of L&W's game math that was already presented to the Court (including Aristocrat's incorrect arguments about search

capabilities), and that this Court rejected at the June 23 hearing; (b) the logs on which Aristocrat bases this "new" dispute do not show actual access or use of any of Aristocrat's alleged trade secrets and were already discussed with the Court; and (c) the proper way to identify use of Aristocrat math is by searching for "specific math code" from its trade secrets once Aristocrat has properly identified them, as the Court has directed. ECF No. 249 at 69:15–19.

## II.     RESTATEMENT OF DISCOVERY REQUESTS AND RESPONSES AT ISSUE

The present dispute concerns the following discovery requests and responses:

**REQUEST FOR PRODUCTION NO. 84:**

Documents sufficient to describe the complete mathematical and game design of any L&W game (whether or not released to the public) that (a) has a "hold and spin" feature (including variations on that feature) and (b) was developed in whole or in part after June 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Defendants object to this Request as overbroad, not proportional to the needs of the case, and seeking irrelevant information. Defendants further object to this request on the grounds that it does not define "hold and spin" or put any limits on what a "variation" of hold and spin might constitute. Without waiving the foregoing objections, Defendants have already agreed to provide information on the mathematical and game design of Dragon Train, Huff N More Puff (U.S. Version) and Monopoly Take a Chance (ANZ Version). By so doing, Defendants do not concede that any of the foregoing games employ the undefined "hold and spin" concept.

**REQUEST FOR PRODUCTION NO. 87:**

Documents sufficient to identify all L&W games (whether or not released to the public) on which any individual has worked after having had access to any Aristocrat Trade Secrets in connection with their work for L&W.

**RESPONSE:**

Defendants object to this Request as overbroad and seeking irrelevant information. Defendants further object to this request on the grounds that the term "access" is overbroad and undefined, and could mean either the capability to open a particular file (without actually opening it) or the occurrence of actually opening the file. Without waiving the foregoing objections, Defendants have already identified to Plaintiffs the games on which Ms. Charles and Mr. Sefton worked (without conceding that both such individuals had access to Aristocrat's alleged trade secrets in their work for L&W). Defendants are willing to meet and confer to understand the basis of Plaintiffs' Request and the use of the term "access."

## III.    JOINT SUMMARY OF MEET-AND-CONFER EFFORTS

The parties, including their lead counsel, met and conferred via teleconference regarding the issues discussed herein most recently on July 10, 2025, at 2:00 p.m. ET. Peter Swanson, Kanu Song, Jesse Chang, and Jason Smith attended for Aristocrat, and Neal Manne, Rocco Magni, Dinis Cheian, Andrew Nassar, and Philip Erwin attended for L&W.

**RFP 87**. The parties first met and conferred regarding this request on January 27, 2025. Aristocrat explained the basis for it and later agreed to "limit this request to games on which game designers, mathematicians, or anyone else who contributes to the mathematical design of games has worked." Declaration of Peter Swanson ("Swanson Decl."), Ex. A at 4. On February 14, L&W stated that it "agrees in principle to this request. Once we have collected and produced audit logs for files, we are willing to discuss which individuals on those lists contributed to mathematical design." Ex. A at 1, 4. In a 26-page attachment to an April 22 email covering over 65 RFPs, L&W stated for RFP 87 that it was "working on putting together audit logs/game lists and will be in touch." Ex. B; Ex. C at 22.

L&W produced certain audit logs on Friday, June 20, including a 4-page letter explaining how to interpret them. Ex. D. At the Monday, June 23 hearing before this Court, Aristocrat argued that L&W's production of the audit logs—which Aristocrat states include thousands of entries that it had not been able to fully review—reveal that many employees across L&W accessed the math at issue. ECF No. 249 at 63:3–15. L&W responded that appearance on a log does not mean that an individual used, or even looked at, any math to develop another game. ECF No. 249 at 65:7–11.

A week later, Aristocrat sent L&W a preliminary list of over 50 individuals who appear on the audit logs and asked L&W to identify the games those individuals worked on, which Aristocrat stated L&W had agreed to do in response to RFP 87, and produce the game math for each such game. Ex. E at 2–3; Ex. F. L&W responded that this was an attempt to sidestep the Court's ruling. Ex. E at 1–2. On the July 10 meet-and-confer, L&W stated that it would not produce any documents in response to this request. Aristocrat contended that L&W agreed on February 14 to provide a list of games worked on by mathematicians and game designers who accessed the relevant math files, as confirmed by L&W's April 22 status update. L&W contended that its February 14 statement agreed to discuss individuals on the access logs, not to identify every game the majority of L&W's mathematicians and designers has ever worked on and produce the game math for all such games, and that the April 22 status update did not change that position.

**RFP 84**. The history of the parties' initial meet-and-confer efforts is summarized in a prior stipulation. ECF No. 232 at 1–3. Following the June 23 hearing, Aristocrat proposed narrowing

this request to game math for "each L&W hold-and-spin game designed, developed, modified, or otherwise worked on by any individual who accessed, received, printed or reviewed math files for the accused games or who were otherwise exposed to Aristocrat trade secrets." Ex. E at 2–3. Aristocrat further offered to exclude individuals whose work does not involve reviewing, analyzing, creating, modifying, commenting on, or contributing to game math. *Id.* L&W replied that this "proposed narrowing" did not comply with the Court's Order and that Aristocrat was "transparently using different RFPs to achieve exactly what the Court rejected." L&W reiterated that it will adhere to the Court's Order to identify documents "contain[ing] specific math code" that Aristocrat must first identify in its response to L&W's Interrogatory No. 1. Ex. E at 1–2.

The parties met and conferred via teleconference on July 1, 2025, at 3:00 p.m. ET, regarding Aristocrat's forthcoming supplementation to its identification of trade secrets and Aristocrat's request for game math. L&W stated that it is willing to consider targeted searches of its Perforce game math repository.

At the July 10 meet-and-confer, Aristocrat reiterated that its narrower request appropriately seeks relevant and proportional discovery: the math for hold-and-spin games on which an employee worked after having accessed Aristocrat math. Aristocrat also offered to work with L&W to refine Aristocrat's preliminary list of individuals and to consider any proposals by L&W on how to further tailor RFP 84. In response, L&W maintained that it would run keyword searches provided by Aristocrat after specifying its trade secrets in accordance with the Court's instructions. Aristocrat stated that keywords are insufficient on their own.

Counsel for the parties certify that, despite a sincere effort, the parties are unable to resolve or further narrow this dispute without the Court's assistance.

IV.   **THE PARTIES' POSITIONS**

   A.   **ARISTOCRAT'S POSITION**

   **(1) New evidence confirms the widespread dissemination and use of Aristocrat math in L&W games**. After the June 23 hearing, and for the ***third*** time since the preliminary injunction ruling, L&W was forced to admit that another game besides Dragon Train was developed using Aristocrat math. Ex. G at 9. L&W's assurances—including in this Stipulation—that it can reliably

investigate its misconduct ring hollow given (1) L&W's failure to identify the latest game in compliance with the preliminary injunction, *see* ECF No. 125 at 20–21, (2) L&W's false assertion to Aristocrat that there were no games based on Dragon Train math, *e.g.*, Ex. C at 2; Ex. H at 3, and (3) L&W's statement to this Court that "L&W has reviewed the hold-and-spin games Aristocrat seeks through this request and determined that they do not reflect the use of Aristocrat's game math," ECF No. 232 at 9.[1] L&W's disclosure came only after ***Aristocrat*** repeatedly asked L&W about L&W files suggesting the game was based on Dragon Train math. *See* Ex. Z at 1.

In addition, on the business day before the June 23 hearing, L&W produced partial audit logs for its "Perforce" game math repository. The logs reveal that over four hundred L&W employees viewed, edited, or otherwise accessed files for the accused games as well as a "prototype" file built using Aristocrat's math. Ex. D; Swanson Decl. ¶¶ 30–32. These logs confirm widespread dissemination of that math within L&W and suggest (along with other evidence) that the math was used to develop even more games than L&W has acknowledged. *See* Exs. I–T, AA.

**(2) Aristocrat's requests are narrowly tailored**. Where an L&W employee received game math reflecting Aristocrat trade secrets, Aristocrat is entitled to know what the employee did with it. Aristocrat analyzed the recently produced access logs and other evidence to generate a targeted list of about fifty L&W employees who accessed Aristocrat's math[2] and have the knowledge to exploit it (*e.g.*, mathematicians, game designers). Ex. X; Swanson Decl. ¶ 33. Aristocrat's request is narrowly tailored: it seeks a list of games developed by those employees ***after*** they accessed the trade secrets (narrowed RFP 87)[3] and the final (or latest non-final) game math for those games (narrowed RFP 84).

L&W complains that these tailored requests still cast too wide a net. But that so many L&W employees accessed the trade secrets demonstrates the ***need*** for this discovery. Moreover,

---

[1] L&W's claim that this "game concept" was never commercialized neither (a) makes its representation to the Court accurate, as the math "Aristocrat seeks through [RFP 84]," includes non-final game math; nor (b) justifies L&W's delay in disclosing it.

[2] L&W hypothesizes that an employee may have searched for, but did not access, Aristocrat's trade secrets, but L&W offers no evidence that this ever happened. Aristocrat is willing to discuss any individuals that L&W contends should be removed from the list.

[3] L&W previously agreed to provide this indisputably relevant information once it produced the access logs, Ex. A at 4, and even represented to Aristocrat in April that it was working on "game lists," Ex. C at 22. L&W has now reneged on its promise.

1  Aristocrat has supplemented its trade secret identification to comply with the Court's June 23
2  ruling, including by providing citations to specific cells in Aristocrat's math files and substantially
3  narrowing the number of cited documents, thereby mooting any concern that Aristocrat would
4  "mold" its trade secrets based on L&W's documents. Ex. U at 14–27. L&W's meritless objections
5  to this detailed identification of trade secrets that have been litigated for over a year should be seen
6  for what it is: an effort to prevent further evidence of misappropriation from coming to light.

**(3) Keyword searches cannot fully identify misappropriation**. Aristocrat has followed the Court's ruling on RFP 84 by supplementing its trade secret identification, narrowing the request, and trying to work with L&W to identify relevant game math. *See* ECF No. 249 at 69:15–19. L&W, however, continues to insist on keyword searches, misinterpreting the Court's ruling to mean that discovery is limited to L&W documents "contain[ing] specific math code" from *Aristocrat* files. That is contrary to well-established law that misappropriation encompasses non-verbatim uses of trade secrets. ECF No. 125 at 15 ("In the context of trade secret misappropriation, information may be improperly 'used' in that it is unlawfully acquired and then built upon or modified before being disclosed or benefit derived."). Contrary to L&W's suggestion, its employees' access to and use of the final Dragon Train math (and other files based on stolen math) is of critical importance, given that the final Dragon Train math reflects Aristocrat's trade secrets (as the Court found). *Id.* at 15 ("the games are still materially similar").[4] Further, L&W does not deny that other files in the logs do reflect the trade secrets. Keyword searches—and any other method that looks only for specific language in Aristocrat files—cannot identify all such uses of those trade secrets and would improperly limit the scope of relevant discovery.

B.   **L&W'S POSITION**

**(1) Aristocrat ignores this Court's ruling**. On June 23, this Court denied Aristocrat's nearly identical request for production of L&W's game math and ruled Aristocrat must "first identify with reasonable particularity" its trade secrets, and after it does so, the parties could work together to "identify any documents that contain specific math code" reflecting those trade secrets.

---

[4] L&W baselessly manufactures questions about the relevance of the Court's clear finding. *See* n.7, *infra*. In no way is Aristocrat's updated identification inconsistent with its extensive preliminary injunction briefing and presentation, and L&W tellingly cites no example otherwise.

- 6 -

ECF No. 249 at 69.[5] Aristocrat ignored these instructions for over a month. Aristocrat first supplemented its discovery responses to add examples of alleged trade secrets, but refused to remove many thousands of cited pages, spreadsheet tabs, cross references, and open-ended language that formed the basis of L&W's challenges. ECF No. 217, at 25–27; Ex. V at 1–2. After weeks of meet-and-confers and exchanges of stipulations regarding Aristocrat's failure to properly identify its trade secrets following the Court's ruling, Aristocrat finally abandoned its original improper disclosures on August 6, 2025. But Aristocrat has still made no effort to follow the process directed by the Court. Instead, Aristocrat again makes a blanket demand: produce all game math touched on by over 50 L&W game designers (essentially **all** hold-and-spin games), even if there is no evidence that any part of the math reflects Aristocrat's alleged trade secrets or that the designers actually viewed any trade secrets.[6]

**(2) The logs do not show access to trade secrets**. It is not true, as Aristocrat claims, that the audit "logs confirm widespread dissemination of [Aristocrat's] math within L&W." *First*, many of the audited files, such as the final game math for Dragon Train, do not contain any alleged trade secrets, as L&W understands them.[7] Thus, an employee reviewing those files would not have access to any trade secrets. *Second*, even if all audited files contained trade secrets, a user's name on a log entry does not mean the user accessed that file. Ex. D. For example, if a user runs a search and a subject file is in the search results, that user appears in an audit log whether or not the file was viewed. *Third*, even if a file contains alleged trade secrets, Aristocrat incorrectly asserts a user accessed that file to look at those trade secrets, rather than other parts of the math.

Despite these realities, Aristocrat points to the logs as a "new" basis to argue L&W must

---

[5] Aristocrat articulates no "extraordinary circumstances" warranting reconsideration of this Court's ruling. *See, e.g.*, *Dixon v. Baker*, 2024 WL 915494, at *2 (D. Nev. Mar. 4, 2024).

[6] Aristocrat's quibble that L&W's 26-page status document referenced "game lists" is a distraction. The games that have been worked on by the 50 individuals on Aristocrat's "preliminary" list would amount to a list of all L&W hold-and-spin games. L&W did offer, and remains willing, to discuss with Aristocrat specific individuals who appear in the audit logs and their contribution to other games. But L&W has never agreed to—and this Court rejected—what Aristocrat is asking for here: not a "list" of games, but wholesale production of all L&W game math.

[7] Aristocrat says Dragon Train reflects its alleged trade secrets by referencing the Court's preliminary injunction ruling. But since then, Aristocrat has amended its trade secrets after the Court found its identification insufficient twice, including in that same ruling. *See* ECF 125 at 9; ECF 247. And although it has had access to Dragon Train final math for months, Aristocrat tellingly does not present a single example of where in that math its trade secrets are reflected.

produce all hold-and-spin game math. Aristocrat also misleadingly refers to L&W's recent production of files for a game concept *that was never commercialized* that contained Dragon Train math as new evidence of "widespread dissemination" Aristocrat deliberately confuses released games with game concepts. As L&W told the Court, L&W's review of its hold and spin games confirmed no use of Dragon Train math. And when L&W located files for an abandoned game concept that did contain Dragon Train math, L&W produced them. Indeed, L&W's production of these non-final files (that Aristocrat did not even ask for) proves the very point Aristocrat is fighting: keyword searches are an effective way to identify files that use specific game math.

**3) L&W is not solely relying on keyword searches**. L&W has not refused to entertain proposals other than keyword searches. The fact is Aristocrat's only proposal following the Court's ruling is for L&W to produce essentially all game math without consideration of whether it contains any alleged trade secrets. Ex. E at 1–2. Aristocrat relies on the word "otherwise" to inject ambiguity where there is none: the Court ordered the parties to "work together [] on a key search basis or otherwise for Light & Wonder to identify any documents **that contain specific math code**." ECF No. 249 at 70:15-17 (emphasis added). The reference (below) to reel strips exemplifies a non-keyword "otherwise" search L&W can employ. If Aristocrat defines locations of symbols or strip lengths it claims to be trade secrets, L&W can identify reel strips that contain those characteristics without keywords. Other trade secrets, like weights, are numbers that lend themselves to keyword searches. L&W can work with Aristocrat on other content to search beyond keywords. "Otherwise" cannot mean Aristocrat is entitled to what the Court just denied.

V.     **THE PARTIES' PROPOSED COMPROMISE OR RESOLUTION**

    A.     **ARISTOCRAT'S PROPOSED COMPROMISE OR RESOLUTION**

With respect to RFP 87, L&W should provide—as it promised to do several months ago—an identification of all games on which any game designer, mathematician, or anyone else who contributes to the mathematical design of games has worked after having accessed the Aristocrat math at issue (including through the accused games). Understanding the spread of misappropriated trade secrets is a routine step in these types of cases. To facilitate L&W's identification, Aristocrat has provided a list of approximately fifty such employees who accessed the math. *See* Ex. F.

With respect to RFP 84, L&W should produce the final or latest game math for any hold-and-spin game developed by any individual who accessed, received, or reviewed math files for the accused games or was otherwise exposed to Aristocrat trade secrets. Aristocrat has limited its request to (a) the final or latest game math, not all of the math files used in the development of the game; (b) games developed in whole or in part after June 2021; and (c) games developed after the relevant individuals accessed Aristocrat's game math (limitations that L&W ignores in mischaracterizing the request as seeking the math for "all hold-and-spin games"). As the Court recognized at the June 23 hearing, inspecting the math will allow for a determination of whether specific trade secrets have been misappropriated. ECF No. 249 at Tr. 14:18–22. Again, Aristocrat's list should greatly assist L&W in identifying and producing the requested math, all of which L&W already collected (among presumably other math outside the scope of Aristocrat's request) when its expert in this case, Mark Nicely, supposedly performed a "broad third-party audit" of all L&W hold-and-spin games. Ex. W at 4.

L&W should also have to abide by the commitment it previously made to produce certain game math irrespective of any keyword searches: "When discovery or L&W's investigation has suggested that Aristocrat's trade secrets may have played a role in the development of a game, L&W has agreed to produce that math. L&W will continue to do so." ECF No. 232 at 7; *see also id.* at 9 (proposing to produce math responsive to RFP 73, which requests, *inter alia*, the math for games developed using "any math information related to Dragon Train"). When asked on the July 10 meet-and-confer, L&W refused to say whether or not it would adhere to this commitment.

L&W's proposal would unduly restrict the scope of proper discovery. L&W primarily agrees to (1) "perform targeted keyword searches" on two of its databases and (2) produce documents resulting from those searches only if, in L&W's opinion, the documents "arguably suggest the use of Aristocrat's game math." The problems with L&W's proposal are several.

First, keyword searches are not adequate to thoroughly detect instances of misappropriation. As L&W has admitted, keywords are incapable of identifying even *verbatim* copies of certain trade secrets, such as base game reel strips. Moreover, the Aristocrat math documents that L&W acquired comprise numerous math values, and it is not practical or

appropriate for Aristocrat to have to guess which values L&W may have copied from. In addition to specific math values, Aristocrat's trade secrets also include game logic that can be described in numerous ways. *See* ECF No. 125 at 8 ("the exact logic and probabilities used by Aristocrat can constitute a trade secret"). Inspection is the only feasible method for detecting its use.

Second, misappropriation encompasses non-verbatim uses of trade secrets. Keyword searches, however, are likely to miss instances where L&W started from an Aristocrat file (or an L&W file derived therefrom) but made modifications unknown to Aristocrat. *See, e.g.*, ECF No. 125 at 13–14 (noting that L&W game designers "tweaked of few numbers," "but much of the underlying math and probabilities remained the same" as in Aristocrat's math files). L&W has, for example, made non-substantive changes to Aristocrat's trade secrets (*e.g.*, changing "9" to the letters "NI" and "10" to the letters "TE"), which would frustrate any keyword search.

Third, L&W's Perforce repository does not permit content-based searches of Excel spreadsheets, which L&W uses to create and document its game math.

Fourth, it is improper to allow L&W to decide for itself whether or not a game reflects the use of Aristocrat trade secrets (particularly where L&W has repeatedly failed at this exercise). *See, e.g.*, *Nielsen Co. (US), LLC v. Tvision Insights, Inc.*, 2022 WL 20402682, at *1 (D. Del. Sept. 2, 2022) (defendant could not resist discovery based on its opinion that product did not infringe).

L&W's latest offer to "negotiat[e]" non-keyword searches is unhelpful and appears designed to further kick the can toward the rapidly approaching close of fact discovery. Aristocrat has articulated for months "why keyword searches are insufficient," and Aristocrat's requests are more than appropriately tailored as discussed above.

### B.  L&W'S PROPOSED COMPROMISE OR RESOLUTION

L&W proposes that the parties follow the Court's procedure for producing game math by using "key search[es]" or "otherwise . . . identif[ing] any documents that contain specific math code that" Aristocrat has "identified in response to Interrogatory Number 1." ECF No. 249 at 69:15-19.

Specifically, just as it has proposed in response to Aristocrat's initial game math stipulation, *see* ECF 232, L&W agrees:

- to perform targeted keyword searches across its primary math development platform, Perforce, and the files it collected from the predecessor math development platform, SVN;
- to review the results of those keyword searches; and produce to Aristocrat any resulting documents that arguably suggest the use of Aristocrat's game math.

L&W has engaged, and will continue to engage, in good faith negotiation with Aristocrat over non-keyword searches to locate responsive documents if (1) Aristocrat can articulate a reason why keyword searches are insufficient and (2) propose a way to perform the searches that is proportional to the needs of this case.

Aristocrat's proposed resolution is inadequate and ignores the Court's prior ruling, as discussed above. In addition:

- Aristocrat portrays a technical limitation on searching as a reason to abandon it altogether. This was already addressed by the parties at the hearing on the last stipulation. ECF No. 249. L&W cannot search the contents of encoded files, like Excel files, on Perforce. But L&W *can* search (and is searching) the contents of text-based files, such as .txt and .csv files, which contain the same math. Moreover, to the extent Excel files exist in emails or OneDrive, they are collected in custodians' ESI and are able to be searched. Indeed, many of the documents on which Aristocrat has relied heavily on in this case are Excel files found in those locations. As L&W has explained, if its searches reveal the use of Aristocrat's alleged trade secrets in the files for a game, then it will turn over all math for that game—not just the select files. If Aristocrat's alleged trade secrets were indeed used to develop an L&W game, Aristocrat gives no reason why such alleged trade secrets would appear *only* in Excel files on Perforce but none of the text-based files used to implement that math and none of the custodial ESI L&W has collected.
- It is also worth noting that L&W has not used technical search limitations as an excuse to search its math. An earlier math development platform called SVN does not allow native content-based searching. So rather than skip SVN altogether, L&W

- 11 -

embarked on an extremely burdensome task to collect *all* .xl*, .csv, and .txt files from SVN, resulting in a collection of approximately 650,000 files, or 250 GB of data. Then, L&W performed the keyword searches (that Aristocrat proposed) on its e-discovery platform.

- Regarding searches for base game reels, L&W will continue its discussion with Aristocrat as to how to provide any responsive documents in a way proportional to the needs of this case. L&W does not concede that it cannot identify verbatim base game reel copying using merely search terms. Instead, such copying can be readily detected by searching for the names of the symbols as they appear in Aristocrat's reels (e.g., SCAT1, SCAT2, WILD, or REVEAL).

- Aristocrat's concern about "non-verbatim" uses of its alleged trade secrets demonstrates Aristocrat's inability to accurately define its trade secrets, as was discussed before the Court at the June 23 hearing. ECF No. 249. And to the extent that L&W uses letters to signify numbers in its game math, as Aristocrat suggests, those letters could easily be searched for with keywords (L&W does not, in fact, do this and doing so would make some math code non-functional).

- As to the alleged "game logic," Aristocrat has not identified any trade secret that can be characterized as a stand-alone game logic. Instead, most of its trade secrets are tied to specific values that can be easily located using keyword searches, such as numeric values.

Dated: August 12, 2025

/s/ *Philip R. Erwin*

PHILIP R. ERWIN, ESQ.
(Nevada Bar No. 11563)
**CAMPBELL & WILLIAMS**
710 South Seventh Street
Las Vegas, NV 89101
Tel.: (702) 382-5222

Dated: August 12, 2025

/s/ *Jason D. Smith*

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)

| | |
|---|---|
| Email: pre@cwlawlv.com<br>NEAL MANNE<br>(*pro hac vice*)<br>JOESEPH GRINSTEIN<br>(*pro hac vice*)<br>ROCCO MAGNI<br>(*pro hac vice*)<br>**SUSMAN GODFREY L.L.P.**<br>1000 Louisiana, Suite 5100<br>Houston, Texas 77002<br>Tel.: (713) 651-9366<br>Email: nmanne@susmangodfrey.com<br>      jgrinstein@susmangodfrey.com<br>      rmagni@susmangodfrey.com<br><br>ERIK WILSON<br>(*pro hac vice*)<br>**SUSMAN GODFREY L.L.P.**<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, California 90067<br>Tel.: (310) 789-3100<br>Email: ewilson@susmangodfrey.com<br><br>DINIS CHEIAN<br>(*pro hac vice*)<br>ANDREW NASSAR<br>(*pro hac vice*)<br>**SUSMAN GODFREY L.L.P.**<br>One Manhattan West<br>New York, New York 10001-8602<br>Tel.: (212) 729-2077<br>Email: dcheian@susmangodfrey.com<br>      anassar@susmangodfrey.com<br><br>*Attorneys for Defendants/Counterclaim-Plaintiffs Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation.* | **SPENCER FANE LLP**<br>300 South 4th Street, Suite 1600<br>Las Vegas, Nevada 89101<br>Tel.: (702) 408-3400<br>Email: nsantoro@spencerfane.com<br>      jdsmith@spencerfane.com<br>      tbthomas@spencerfane.com<br><br>PETER SWANSON<br>(*pro hac vice*)<br>GARY RUBMAN<br>(*pro hac vice*)<br>ALEXANDER TRZECIAK<br>*(pro hac vice)*<br>DANIEL J. FARNOLY<br>*(pro hac vice)*<br>**COVINGTON & BURLING LLP**<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001<br>Tel.: (202) 662-6000<br>Email: pswanson@cov.com<br>      grubman@cov.com<br>      atrzeciak@cov.com<br>      dfarnoly@cov.com<br><br>ZIWEI SONG<br>(*pro hac vice*)<br>**COVINGTON & BURLING LLP**<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105-2533<br>Tel.: (415) 591-6000<br>Email: ksong@cov.com<br><br>*Attorneys for Plaintiffs/Counterclaim-Defendants Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2025, a true and correct copy of the foregoing **STIPULATION REGARDING DISCOVERY DISPUTE** was electronically served via the United States District Court CM/ECF system on all parties or persons registered for notice.

/s/ *Marissa Vallette*
An employee of SPENCER FANE LLP