NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400
Email: nsantoro@spencerfane.com
        jdsmith@spencerfane.com
        tbthomas@spencerfane.com

PETER A. SWANSON (*pro hac vice*)
GARY M. RUBMAN (*pro hac vice*)
MATTHEW KUDZIN (*pro hac vice*)
ALEXANDER TRZECIAK (*pro hac vice*)
DANIEL FARNOLY (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com;
grubman@cov.com
mkudzin@cov.com; atrzeciak@cov.com
dfarnoly@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-Defendants*
*Aristocrat Technologies, Inc. and*
*Aristocrat Technologies Australia Pty Ltd.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., | Case No. 2:24-cv-00382-GMN-MDC |
| Plaintiffs/Counterclaim-Defendants, | **STIPULATION REGARDING DISCOVERY DISPUTE** |
| v. | |
| LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, | **ORAL ARGUMENT REQUESTED** |
| Defendants/Counterclaim-Plaintiffs. | |

Pursuant to Paragraph II.B.2 of Judge Couvillier's Standing Order, Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. (together, "Aristocrat") and Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (together, "L&W"), respectfully submit this stipulation regarding certain of Aristocrat's discovery requests that remain in dispute following the parties' good-faith effort to resolve the dispute informally.

## I.    JOINT SUMMARY OF DISCOVERY DISPUTE

This discovery dispute concerns L&W's claims of attorney-client privilege and work product protections relating to its attorneys' investigation into Aristocrat's allegations of trade secret misappropriation following Aristocrat's September 23, 2023 letter to L&W concerning Aristocrat's trade secret claims.

One issue in this case is whether, after receiving the September 23 letter, L&W knew or had reason to know of any use of Aristocrat trade secrets to develop Dragon Train. L&W contends that it is not liable for misappropriation because, *inter alia*, "L&W did not know, or have reason to know, that any Aristocrat information had been inserted into Dragon Train during the game creation process following receipt of Aristocrat's September 23, 2023 letter." *Infra* § II.

The parties dispute whether this contention impliedly waived L&W's attorney-client privilege and work product protections over certain withheld trade secret investigation materials.

Aristocrat contends: L&W's arguments about its subjective beliefs concerning the use of Aristocrat information give rise to a waiver under the case law because L&W has admitted those beliefs were formed at least in part based on its attorneys' investigation, and therefore certain materials relating to the investigation, such as documents reflecting steps L&W took to investigate the claims and documents assessing the plausibility and veracity of employees' statements, are necessary to test L&W's contentions about those beliefs.

L&W contends: There was never any implied waiver. Privileged information never has been nor will be "at issue" in the trial. L&W produced some privileged factual investigation materials to explain its withdrawal of the Charles and Soo declarations, along with all information fairly required under FRE 502(a) (a point Aristocrat concedes by abandoning all such arguments). L&W also redacted all opinion work product and has disavowed any use of the substance of its

- 1 -

investigation unless Aristocrat introduces it first (and never refers to such information in its contention interrogatory responses). No cases support Aristocrat's arguments, which would create privilege waivers in nearly every misappropriation case. After L&W explained all this, Aristocrat abandoned the stipulation for nearly five weeks despite agreeing to a one-week limit for exchanging drafts. Aristocrat dusts it off now to gin up support for its pending discovery extension.

## II. RESTATEMENT OF DISCOVERY REQUESTS AND RESPONSES AT ISSUE

Aristocrat states that the following discovery requests and responses apply to the dispute as to the scope of L&W's waiver of attorney-client privilege and work product protections:

**REQUEST FOR PRODUCTION NO. 80:**

All Documents and Things concerning Your investigation into the subject matter of Aristocrat's allegations of trade secret misappropriation in the Current Litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

Defendants object to this Request as seeking privileged information protected by attorney-client privilege and/or the attorney work product doctrine as it relates to Defendants' litigation strategy and steps taken in pursuit of their defenses. Without waiving the foregoing objection, Defendants will produce documents relating to their investigation that are either non-privileged or for which Defendants have narrowly waived privilege.

* * *

**REQUEST FOR PRODUCTION NO. 81:**

All Documents and Things concerning actions taken by You as a result of Your investigation into the subject matter of Aristocrat's allegations of trade secret misappropriation in the Current Litigation, including the withdrawal of the declarations of Emma Charles and William Soo (ECF No. 170).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

Defendants object to this Request as seeking privileged information protected by attorney-client privilege and/or the attorney work product doctrine. Without waiving the foregoing objection, Defendants will produce documents concerning the basis for Defendants' withdrawal of the Charles and Soo affidavits.

* * *

**INTERROGATORY NO. 8:**

Describe in detail the factual and legal bases for any contention that You are not liable for misappropriation of any Aristocrat Trade Secret, including any contention that Aristocrat does not own any particular Aristocrat Trade Secret, that any Aristocrat Trade Secret lacks independent economic value, that any Aristocrat Trade Secret is generally known or readily ascertainable, that Aristocrat has not made reasonable efforts to maintain the secrecy of any Aristocrat Trade Secret, that You acquired any Aristocrat Trade Secret through proper means, that You have not used or disclosed any Aristocrat Trade Secret, or that You did not know or have reason to know that You used or disclosed Aristocrat Trade Secrets or that you acquired Aristocrat Trade Secrets by improper means.

**SECOND AMENDED RESPONSE TO INTERROGATORY NO. 8:**

Defendants object to this contention Interrogatory as overly broad and unduly burdensome because it seeks all factual and legal bases for "any contention" related to any aspect of Aristocrat's trade secret claims without any reasonable limitations as to scope or otherwise, and does not serve to clarify issues or narrow the scope of this litigation. Requesting Defendants to marshal all of their evidence at this early stage, while discovery is ongoing, is premature, not proportional, and imposes substantial burdens on Defendants who are still investigating Aristocrat's allegations, and because much of the evidence relevant and material to Aristocrat's trade secret claims remains solely in the possession, custody, and control of Aristocrat. Additionally, this Interrogatory is unduly burdensome because it seeks to improperly shift the burden of proof for Aristocrat's trade secret misappropriation claims—which lies solely with Aristocrat—to Defendants. This Interrogatory is further premature, overly broad, unduly burdensome, and vague because it seeks information regarding Aristocrat's alleged trade secrets which Aristocrat has not identified with particularity sufficient to separate the information from general knowledge in the trade or special knowledge of persons skilled in the trade. Defendants also object to this Interrogatory to the extent it contends that Aristocrat has established any protectable trade secret under either the Defend Trade Secrets Act ("DTSA") or the Nevada Uniform Trade Secrets Act ("NUTSA"). Defendants further object to this Interrogatory as compound, because it contains at least nine separate interrogatories. Defendants shall consider each Interrogatory individually for purposes of the twenty-five interrogatory limit under the Federal Rules of Civil Procedure. Defendants also object to any meaning, interpretation, or definition of any term in this Interrogatory in any manner other than how that term is used, interpreted, or defined in the DTSA or NUTSA, and Defendants shall interpret those terms consistent with their meaning under the DTSA or NUTSA and relevant case law.

Subject to and without waiving any of the foregoing objections, Defendants respond as follows: Based on Defendants' reasonable and diligent investigation to date, Aristocrat will be unable to prove its trade secret misappropriation claims at trial.

First, Aristocrat has not identified its alleged trade secrets with sufficient particularity to establish the information is subject to trade secret protection. That is independently sufficient to preclude liability.

Second, the information Aristocrat describes in its various pleadings and discovery responses comprises information, methods, and techniques that are: (1) generally known in the industry (including because it is widely circulated to the public and industry through PAR sheets, patents, and patent applications); and (2) within the special knowledge of persons involved in this industry, including casino game developers. Additionally, certain math information is readily shared publicly, including with customers. Moreover, by the time Emma Charles began working at L&W, Dragon Link and Lightning Link had been in the market for over 4 years, and many of the once-unique features of those games (such as the hold and spin feature and ███████████████████ ███████████████████████████████████████████████████████████) had been widely recognized and/or adopted in games pre-dating Dragon Train and Ms. Charles's employment at L&W.

Third, Aristocrat's alleged trade secret information is readily ascertainable, including by reverse engineering. Reverse engineering competing games is a standard practice that is common in the industry. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████



Fourth, Aristocrat failed to take reasonable measures to protect its trade secrets, many of which are disclosed in PAR sheets which have been widely disseminated, offered for sale, and/or posted publicly on the internet. Aristocrat has failed to take reasonable measures by failing to: (1) ensure that third parties without confidentiality agreements could not receive Aristocrat PAR sheets; (2) reasonably discover when its PAR sheets had been publicly posted to or sold on the internet or otherwise been made publicly available; (3) reasonably discover when any confidentiality provision applicable to its PAR sheets had been breached, or were imminently about to be breached; (4) enforce confidentiality provisions applicable to its PAR sheets; (5) implement sufficient digital or physical security to prevent its alleged trade secrets from being removed from its systems into the public domain; (6) not encourage or allow its employees working with its alleged trade secrets to use personal devices and email to store and transmit alleged trade secrets; (7) appropriately tailor the disclosures of its alleged trade secrets so that parties only received the minimum amount of trade secret information required; (8) reasonably control which employees and third parties had access to its trade secret information (and the degree of information they had access to); (9) enact sufficient policies, procedures, and training to protect its alleged trade secrets; and (10) take prompt action to remove its alleged trade secrets from the internet and other public sources after its alleged trade secrets were publicly disclosed.  Aristocrat also widely disseminated its PAR sheets to so many people and entities that unauthorized disclosure was a foregone conclusion, particularly in combination with Aristocrat's insufficient and unreasonable protective measures.

Fifth, any misappropriation of any Aristocrat Trade Secret with respect to Dragon Train must have occurred by Emma Charles while she worked at Aristocrat, independent of L&W. The insertion of such misappropriated Aristocrat Trade Secrets would have been by Emma Charles and/or Wil Soo individually, as rogue employees, without L&W's knowledge or authorization, and in violation of company policy, such that their actions cannot be imputed to L&W. For example, Ms. Charles signed confidentiality agreements with Aristocrat and L&W, which are generally required of all game designers in the industry. Mr. Soo signed one for L&W. All L&W employees—including Ms.

Charles and Mr. Soo—must agree to be bound with a Code of Conduct that expressly forbade using other companies' confidential materials. ██████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ The misappropriation and insertion of any alleged Aristocrat Trade Secrets was performed solely by rogue employees without L&W's knowledge or authorization, and in violation of company policy, such that their misappropriation and insertion of any Aristocrat Trade Secrets into game math cannot be imputed to L&W.

Accordingly, there is strong evidence that L&W did not know, or have reason to know, that rogue employees had misappropriated Aristocrat information and inserted such information into Dragon Train during the game creation process.

Sixth, L&W did not know, or have reason to know, that any Aristocrat information had been inserted into Dragon Train during the game creation process following receipt of Aristocrat's September 23, 2023 letter. ████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████

After L&W determined that Ms. Charles and Mr. Soo had used information from Aristocrat in part of the development of Dragon Train, their employment with L&W was terminated.

Seventh, the game math for Dragon Train and Jewel of the Dragon is materially different from Dragon Link's game math, such that a player would not genuinely confuse the two games. Indeed, Dragon Train contains distinct features—such as a hold-and-spin-within-a-hold-and-spin—that make it impossible for the two games' math to be identical. ████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████.

Eighth, Aristocrat has also failed to show that it has been damaged or irreparably harmed, or that L&W has been unjustly enriched, as a result of any alleged misappropriation. Aristocrat has shown no evidence that competition from Dragon Train has diminished or affected Aristocrat's reputation, goodwill, or market share. Indeed, statements by Aristocrat's Board Chairman regarding Aristocrat's financial performance and position illustrate that Dragon Train has not impacted Aristocrat's earnings and reputation. Aristocrat's earnings report demonstrates the opposite—an increase in Aristocrat's market share since the release of Dragon Train. Likewise, independent market share data shows that Aristocrat increased its unit placements for both Dragon Link and Lightning Link after Dragon Train's U.S. release. Aristocrat has not shown that Dragon Train's popularity has resulted in less floor space for Dragon Link, particularly as these games are not in direct competition for floor space. Moreover, Aristocrat has not identified any customer that displaced Dragon Link in favor of Dragon Train. And to the extent Aristocrat could show such harm, there is no evidence to suggest that the harm is a result of alleged misappropriation of trade secrets, as opposed to the myriad of other factors contributing to Dragon Train's success. There is also no evidence that: (1) L&W has disclosed any allegedly secret Aristocrat information publicly or (2) any conduct by L&W has diluted the value of Aristocrat's alleged trade secrets.

Further, Aristocrat's alleged trade secrets do not have any independent economic value. Even if Aristocrat math, weight tables, and numerical values were trade secrets, it would take a playtime far exceeding the average user's playtime for the player to experience the particular math values Aristocrat claims are trade secrets. The average player is therefore unable to discern any material difference between a game containing Aristocrat's alleged trade secrets and a game containing similar, but materially different math, weight tables, and numerical values. If players are unable to tell or "feel" whether and when specific math, weight tables, and numerical values are being used in a game, then those specific items do not have any discernable or compensable market value to that player (or the casino that purchases or leases the games). Additionally, pseudorandom number generators can materially impact the expression of the math and whether that math will ever actually be expressed, even after millions of spins. Additionally, completely independent factors, such as the placement of a slot machine on a casino floor, have large materials impacts on the performance of a game. Thus, the demand for, and the amount of money deposited into, the machine will be: (1) the same regardless of whether that specific information—or some roughly similar information—was used; or (2) dependent on factors that have nothing to do with the alleged math values, weight tables, and numerical values.

Aristocrat also has no evidence of damages stemming from L&W allegedly using Aristocrat Trade Secrets to develop: (1) an unreleased game (which was never commercialized and therefore cannot be subject to a trade secret misappropriation claim); (2) Double Dragon (which Aristocrat alleges used a turnover value it concedes is not a trade secret and a public-facing and readily ascertainable increment rate); and (3) Jewel of the Dragon (because Aristocrat has admitted does not replicate the math or "feel" of Dragon Link).

Aristocrat's inability to prove that L&W knowingly misappropriated and used any Aristocrat Trade Secret, or that L&W caused Aristocrat any harm or damages, will be dispositive of its trade secret claims at trial.

Pursuant to F.R.C.P. 33(d), the following documents contain information responsive to this Interrogatory: LNW_025610, LNW_025611, LNW_025625, LNW_025620.

Defendants reserve the right to supplement or amend this response throughout the course of discovery in this litigation, including after all deposition testimony is received.

* * *

- 6 -

**INTERROGATORY NO. 19:**

Describe Your investigation into the subject matter of Aristocrat's allegations of trade secret misappropriation in the Current Litigation (whether that investigation took place in connection with the Current Litigation, the Australian Proceedings, any pre-suit correspondence, or otherwise), including a description or identification of (1) all steps You have taken as part of Your investigation, (2) when You took each step in Your investigation, (3) who was involved in and responsible for each step of Your investigation, (4) all documents or materials You reviewed as part of Your investigation, (5) all factual findings in connection with Your investigation, and (6) all assertions, allegations, or denials of allegations that You have made, all discovery responses You have provided, and all evidence that You have submitted in the Current Litigation that You know to be false or inaccurate as a result of Your investigation.

**AMENDED RESPONSE TO INTERROGATORY NO. 19:**

Defendants object that this Interrogatory is overbroad and compound because it consists of at least three separate interrogatories which request information about discrete topics and details that do not fall within the scope of those topics, such as: (1) Defendants' investigations "in connection with the Current Litigation, the Australian Proceedings, any pre-suit correspondence, or otherwise" (four separate types of investigations requiring four separate interrogatories); (2) all factual findings in connection with the investigations; and (3) "all assertions, allegations or denials of allegations"; "all discovery responses"; and "all evidence" made or provided in this litigation (three separate categories requiring three separate interrogatories) that Defendants know to be false or inaccurate as a result of their investigations. Defendants shall consider each Interrogatory individually for purposes of the twenty-five interrogatory limit under the Federal Rules of Civil Procedure. Defendants also object that this Interrogatory seeks privileged information protected by attorney-client privilege and/or the attorney work product doctrine as it relates to Defendants' litigation strategy and steps taken in pursuit of their defenses.

Subject to and without waiving their objections, Defendants respond as follows: ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

████████████████████████████ Defendants determined that statements made by Emma Charles and William Soo in their declarations accompanying Defendants' opposition briefing are untrue. See ECF Nos. 77-1 and 106-1 (Charles declarations); 77-8 (Soo declaration). Defendants notified opposing counsel and withdrew the declarations. See ECF No. 169.

Apart from the above-described information, which is either not privileged or within the scope of information for which Defendants have narrowly waived privilege, the balance of Defendants' investigation is privileged.

* * *

**DEPOSITION OF FORMER L&W EMPLOYEE YURI LEONTIEV:**

**Leontiev Dep. Tr. at 238:21–25**

Q. [Ms. Song, Counsel for Aristocrat] ████████████████████████

████████████████████████████████████████

MR. MAGNI [Counsel for L&W]: I instruct the witness not to answer that.

**Leontiev Dep. Tr. at 242:2–7**

MS. SONG [Counsel for Aristocrat]: All right. Just to be clear, you're instructing the witness not to answer any questions about ████████████████████████████████

████████████████, is that correct?

MR. MAGNI [Counsel for L&W]: That's right.

## III.    JOINT SUMMARY OF MEET-AND-CONFER EFFORTS

Pursuant to Paragraph II.B.2 of Judge Couvillier's Standing Order and Chambers Practices and LR IA 1-3(f), counsel for Aristocrat and L&W certify that they have engaged in sincere, good-faith efforts to resolve or narrow the dispute. As the parties were unable to resolve the dispute, Aristocrat now seeks the Court's assistance.

On February 13, 2025, at 2:00 pm ET, counsel for Aristocrat and L&W met and conferred via teleconference and videoconference regarding the scope of L&W's waiver of attorney-client privilege and work product protections. Present for Aristocrat were Peter Swanson, Matthew Kudzin, and Jesse Chang; present for L&W were Rocco Magni, Erik Wilson, and Andrew Nassar. On March 24, 2025, at 1:00 pm ET, counsel for Aristocrat and L&W met and conferred again via teleconference. Present for Aristocrat were Peter Swanson, Ziwei Song, Jesse Chang, and Jason

Smith; present for L&W were Neal Manne, Joseph Grinstein, Rocco Magni, Erik Wilson, Dinis Cheian, Andrew Nassar, and Philip Erwin. The parties also exchanged several letters and emails regarding this dispute between January 22 and June 2, 2025.

After the Court granted Aristocrat's motion for a preliminary injunction, L&W "terminated [Emma] Charles and [William] Soo's employment for cause." ECF No. 170. Citing Rule 11, L&W also withdrew the declarations from these former employees, stating that L&W "no longer believe[d] those declarations to be fully truthful after learning of additional facts." *Id.* (withdrawing ECF Nos. 77-1, 77-8, 106-1). L&W later made productions of documents constituting or reflecting certain factual statements made by Charles and Soo to L&W's counsel concerning the development of L&W's Dragon Train game (and other materials referenced within those documents). Ex. A. In these documents, L&W redacted instances of information over which it claims opinion work product privilege. *See, e.g.*, Ex. B; Ex. C.

L&W also provided a response to Aristocrat's Interrogatory No. 19, which seeks non-contention information about L&W's investigation. In the response, L&W stated that ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ *See supra* § II.

Following receipt of this discovery, Aristocrat requested the production of additional materials relating to L&W's investigation into Aristocrat's trade secret claims on the ground that L&W had waived attorney-client privileges and work product protections over its trade secret investigation. Ex. D. L&W disagreed and stated that it had produced (or would produce) everything required under Federal Rule of Evidence 502(a). Ex. E. Following a teleconference, additional correspondence, and the exchange of an initial draft of this stipulation, the parties engaged in discussions over: (a) the extent to which L&W would rely on its post-September 2023 investigation (including any of the documents and information for which L&W expressly waived privilege); and (b) what information L&W will rely on to support its alleged lack of knowledge of the alleged misappropriation, particularly after the September 2023 notice letter. Ex. F; Ex. G.

L&W stated that it would not use any "previously-privileged information" at trial unless Aristocrat used that information first. Ex. G at 17. Aristocrat inquired whether L&W would rely on the investigation at all and, if not, how L&W would support "its argument that it did not know or have reason to know of the use of Aristocrat information following the September 2023 letter." *Id.* at 16. L&W clarified it "will not use privileged/previously-privileged information to prove any facts at trial" or "refer to or rely on the substance of the investigation to prove any facts at trial unless Aristocrat does so first." *Id.* at 15. At Aristocrat's request, L&W subsequently identified the "previously privileged information" that L&W agreed not to rely on, *id.* at 12–14, and served an amended response to Interrogatory No. 8 on May 30. L&W's amended response contends that it "did not know, or have reason to know, that any Aristocrat information had been inserted into Dragon Train during the game creation process following receipt of Aristocrat's September 23, 2023 letter." *Supra* § II. L&W's response purports to identify supporting facts that are ██████ ████████████████████████████ *Id.*

The parties have been unable to agree on whether L&W's alleged lack of knowledge of any purported misconduct after receiving the September 23, 2023 letter amounts to a waiver of privileges and protections over additional documents and information relating to L&W's privileged investigation into the development of Dragon Train.

## IV.    THE PARTIES' POSITIONS

### A.    ARISTOCRAT'S POSITION

L&W argues it lacks the requisite knowledge for trade secret misappropriation—*i.e.*, it "did not know, or have reason to know, that any Aristocrat information had been inserted into Dragon Train during the game creation process," even "following receipt of Aristocrat's September 23, 2023 letter." *Supra* § II, Second Am. Resp. to Interrog. No. 8; *see also* ECF No. 220 at 24 (similar argument in Ninth Affirmative Defense). While L&W now purportedly intends to base its argument on non-privileged information, ███████████████████████████████ ████████████████████████████████████████. *Supra* § II, Resp. Interrog. No. 19. Yet L&W refuses to disclose all investigation materials that bear on this issue.

The law is clear that by affirmatively advancing an argument about L&W's subjective

beliefs that are based on privileged information, L&W has waived attorney-client privilege and work product protection with respect to materials that are vital for Aristocrat to test those beliefs. *See, e.g.*, *3D Sys., Inc. v. Wynne*, 2024 WL 940318, at *5–7 (S.D. Cal. Feb. 21, 2024) (finding waiver where party relied on internal investigation to argue that it did not know or have reason to know of a claim). L&W cannot avoid waiver by seeking to rely on non-privileged information to prove its beliefs, given that they were admittedly based on privileged information. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *2 (N.D. Cal. Aug. 9, 2016) (finding waiver where "defendants *actually relied* on attorney advice in reaching their subjective beliefs" despite defendants' offer to rely "solely on non-legal justifications for certain subjective beliefs"). As the court in *Lidoderm* explained, "if defendants inject their subjective beliefs on specific topics as part of their defense . . . where evidence *establishes* that the subjective belief was also informed by attorney advice, it would be unfair to not allow plaintiffs access to defendants' contemporaneous attorney-client information to test the veracity of the defendants' justifications." *Id*. at *5.

Here, L&W's interrogatory responses ███████████████████████████████████████ ██████████████████████████████████████████████████████████████████████. *Supra* § II, Second Am. Resp. Interrog. No. 19 (████████████████████████████████████████████ ███████████████████████). L&W cannot brush aside the role this investigation played ██ ████████████████████████████████████████████████████[1,2] *Supra* § II, Second Am. Resp. Interrog. No. 8; *see also Lidoderm*, 2016 WL 4191612, at *5 ("[D]efendants cannot avoid waiver by offering to rely at summary judgment or trial solely on non-legal justifications for certain subjective beliefs.").

L&W's "sky-is-falling protest" that Aristocrat's position requires any defendant faced with a misappropriation accusation to forego a lack of knowledge defense or waive all privileges related to any investigations, "ignores the unique circumstances of this case," where L&W seeks to make

---

[1] L&W's promise not to rely on the "substance of the investigation" is insufficient. *See United States v. Ormat Indus., Ltd.*, 2016 WL 4107682, at *4 (D. Nev. 2016) ("asserting party need not make actual use of the privileged communications" in order for court to find waiver).

[2] L&W's vague and open-ended reservation of rights to "rebut" Aristocrat's use of previously-privileged information calls into question the extent of L&W's "disavowal." *See* Ex. G at 15.

affirmative arguments about its subjective beliefs *after* receiving a notice letter and where ███

████████████████████████████████████████████████████████. *Id.* at

*6. L&W's withholding of this information puts Aristocrat in "a truly untenable posture – requiring

[Aristocrat] to challenge the subjective beliefs defendants assert . . . without access to the

contemporaneous information and documents defendants *actually* relied on." *Id.* This includes

opinion work product, such as evaluations of the veracity of the employees' statements. Aristocrat

has a compelling need for such contemporaneous documents to assess L&W's position that it

believed the employees and acted in good faith. *See Ivy Hotel San Deigo, LLC v. Houston Cas.

Co.*, 2011 WL 4914941, at *8 (S.D. Cal. Oct. 17, 2011) (finding waiver where attorney mental

impressions and opinions were put at issue by party's denial that it acted in bad faith).

There is strong reason to suspect the withheld information undermines that position. In

finding Aristocrat is "extremely likely to succeed" in proving misappropriation, ECF No. 125 at

12–16, the Court observed that multiple L&W documents contradicted Charles's assertion that she

"never sought to copy from Aristocrat's Dragon Link or Lightning Link games," *id.* at 14. L&W

had all of this information *during* its investigation. Remarkably, neither of Charles's declarations

denied having used Aristocrat math to develop Dragon Train—which suggests that L&W knew

any such denial would have been untrue and implausible. It is patently unfair for L&W to withhold

evidence that could reveal it had such knowledge while affirmatively arguing the opposite.

## B.    L&W'S POSITION

**This stipulation has little or nothing to do with L&W's voluntary privilege waiver.**

The lead counsel meet and confer conducted ***nearly five months*** before this stipulation was filed

focused on Aristocrat's assertions that L&W's partial waiver of privilege should be involuntarily

expanded. Since then, Aristocrat has essentially abandoned that position, because L&W has made

it clear it will not refer to or rely on any previously privileged information for ***any*** of its defenses.[3]

That precludes waiver. *Orthopaedic Hosp. v. DJO Glob., Inc.*, 2020 WL 5363307, at *9 (S.D. Cal.

Sept. 8, 2020) (waiver applies only if party "fail[s] to disavow" reliance on privileged

information); *Ormat*, 2016 WL 4107682, at *4 (waiver if party "affirmatively assert[s] good faith"

---

[3] Unless Aristocrat first uses such evidence against L&W; L&W can then rebut that evidence.

or fails to disavow reliance); *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1327 (9th Cir. 1995) (no waiver where party proved case "without relying on privileged communications"). Speculation that L&W will introduce expressly disavowed arguments at trial is not enough. *Somers v. QVC, Inc.*, 2021 WL 3487315, at *5-6 (E.D. Pa. Aug. 9, 2021) ("speculation about what Defendant may or may not argue at trial is not a basis for holding that the privilege has been waived," including "[a]dvice of counsel" defenses). And even if such evidence was offered, the remedy is preclusion, not a broad preemptive waiver. *Id.*

**Denying knowledge does not waive privilege.** L&W's disclaimer of any use of the investigation should have resolved this dispute entirely, but instead Aristocrat has repeatedly shifted its arguments and now seeks a wholesale waiver of the substance of the privileged investigation based solely on L&W's defense that it had no knowledge of misappropriation (a defense L&W could assert without the limited privilege waiver). The thrust of Aristocrat's new argument is that L&W's denial of knowledge puts its good faith belief in the basis for its denial at issue, and thus, L&W has affirmatively inserted its good faith beliefs into this case, and has therefore waived all opinion and fact work product protections over its investigation. But courts in this District have already explained that nearly this exact same argument "turns at-issue waiver on its head." *Garcia v. Serv. Emps. Int'l Union*, 2018 WL 6566563, at *3–4 (D. Nev. Sept. 6, 2018) ("Attorney-client communications do not become discoverable simply because they are related to issues in the litigation."). Indeed, if Aristocrat's argument were the law, ***any*** defendant faced with a misappropriation accusation would either need to forego a lack of knowledge defense or waive all privileges related to any investigations of the claims; that is plainly not the law. *See id.*

**L&W's Interrogatory responses do not create a waiver.** Aristocrat cites L&W's response to Interrogatory ("ROG") 19—in which Aristocrat only requests information about the investigation—to unremarkably point out that L&W says certain information was obtained during its investigation. But ROG 19 is not a contention interrogatory and L&W's response describes the investigation *without providing any of L&W's trial arguments or the bases for them*. Aristocrat's own case holds this fails to create a broader waiver. *3D Sys.*, 2024 WL 940318, at *6 (based on statements like the ROG 19 response, "the Court d[id] not find that the waiver exten[ded] to the

full scope of the [trade secret] investigation"). Aristocrat also says L&W's ROG 8 response creates a waiver—but all information referenced in that response is not, and never was, privileged.

**There is no opinion work product waiver.** L&W never disclosed opinion work product and will not rely on any at trial. L&W is not affirmatively "inject[ing] [its] subjective beliefs" or attorney advice into the case, and Aristocrat does not "establish[]" that L&W has done so; thus, there is no waiver. *See Lidoderm*, 2016 WL 4191612, at *5-6 (no waiver if case is provable through "objective evidence"). Aristocrat obviously has, and is able to introduce at trial, the "multiple L&W documents [that] contradicted" Charles's declaration from the preliminary injunction hearing. It can also introduce the notice letter itself, and other evidence produced since the hearing that Aristocrat claims shows L&W should have known of the alleged misappropriation. Thus, Aristocrat does not have the required "compelling need" to invade the most sacrosanct privilege. *See Server Tech., Inc. v. Am. Power Conversion Corp.*, 2011 WL 1447620, at *10 (D. Nev. Apr. 14, 2011) (no waiver despite "mental impressions [being] at issue"; no "compelling need" for such evidence when other evidence gave plaintiff "the materials it needs to prepare its case"); *Lidoderm*, 2016 WL 4191612, at *3-4, n.6 ("a simple showing of relevance to a case will not suffice").[4]

## V.    THE PARTIES' PROPOSED COMPROMISE OR RESOLUTION

### A.    ARISTOCRAT'S PROPOSED COMPROMISE OR RESOLUTION

While L&W can forgo its argument that it did not know or have reason to know of the misappropriation to preserve privilege, it should not be allowed to "narrow" the scope of its defense while still maintaining privilege. *See Ormat Indus.*, 2016 WL 4107682, at *5 (finding "in accordance with Ninth Circuit precedent" that defendant "may proceed with its good faith defenses and produce the relevant documents . . . or preserve the communications' confidentiality by abandoning the defenses that giving rise [*sic*] to the waiver"). To the extent L&W continues to argue that it did not know or have reason to know of the misappropriation (or seeks to rely on its investigation for any other purpose in this case), Aristocrat is entitled to additional discovery

---

[4] Both cases Aristocrat cites to argue for an opinion work product waiver recognize a party must demonstrate a compelling need for the opinions, and both cases involve claims where—unlike here—attorney opinions were ***a central issue in the case***. *See Ivy Hotel*, 2011 WL 4914941, at *8 (decision limited to bad faith insurance claims); *Lidoderm*, 2016 WL 4191612, at *1 ("Attorney-client privilege issues lie at the heart of litigation over a settlement alleged to be anticompetitive").

concerning L&W's investigation into the misappropriation.[5] The select documents that L&W has produced thus far include numerous redactions[6] and are otherwise insufficient because they do not include memorialization documents from discussions with all implicated employees, L&W's notes and impressions from those discussions, documents relating to the drafting and vetting of the untruthful declarations withdrawn by L&W, documents reflecting L&W's subjective beliefs about what its employees said, and documents reflecting any review of Aristocrat and L&W files relating to the games at issue. Such documents are necessary to evaluate the reasonableness and sincerity of L&W's beliefs.

Accordingly, Aristocrat proposes that L&W produce all documents relating to (a) communications with employees (or former employees) regarding the acquisition or use of Aristocrat's information, (b) any other steps L&W took to investigate this issue (including any review of documents), (c) L&W's findings from these investigative steps, or (d) L&W's subjective views regarding whether Aristocrat's information had been used and the plausibility and truthfulness of any employee statements on this matter.[7] With regard to timeframe, Aristocrat proposes that L&W produce the foregoing categories of documents from the time of Aristocrat's September 2023 notice letter until L&W terminated Charles effective October 1, 2024. For the period between the October 1, 2024 and the termination of Soo, effective November 20, 2024, Aristocrat proposes that L&W need only produce (a) communications with Soo, (b) notes and memorializations of such communications, and (c) documents reflecting L&W's subjective views

---

[5] L&W mischaracterizes the history of this dispute. From the beginning, Aristocrat has consistently taken the position that L&W improperly seeks to introduce evidence of its knowledge formed from its investigation while withholding relevant information about the investigation. Ex. D. Indeed, it is L&W, not Aristocrat, that has changed and obfuscated its position, thereby delaying the dispute. After the meet-and-confers, and after Aristocrat sent L&W an initial draft of this stipulation, L&W stated *for the first time* that it would not rely on the previously privileged information to prove its subjective beliefs. Ex. G at 20–21. L&W then dragged its feet for weeks in disclosing how it intended to prove those beliefs without the use of such information.

[6] These include certain redactions purportedly made for attorney-client privilege or work product generally. *See* Ex. B at LNW_600395–396.

[7] Aristocrat does not concede that L&W has produced all documents within the scope of its "limited fact waiver." L&W has not provided a privilege log, which would be necessary to test L&W's representations.

regarding the plausibility and truthfulness of Soo's statements on this matter.[8]

To further clarify Aristocrat's proposal, Aristocrat does not propose that L&W produce all documents and information relating to its investigation into Aristocrat's claims. Instead, Aristocrat only seeks documents and information regarding L&W's investigation into the acquisition and use of Aristocrat confidential information. Aristocrat does not seek in this stipulation discovery into L&W's investigation or evaluation of other issues in the case, any analysis or explanation of the relevant law by L&W's counsel, or the impressions of L&W's legal counsel on the status of the litigation as a whole.

Aristocrat also proposes that L&W supplement its interrogatory responses to describe all steps L&W took to investigate the acquisition and use of Aristocrat confidential information and its findings from these steps. Aristocrat further proposes that it be allowed to re-depose Yuri Leontiev regarding his discussions with counsel relating to the development of Dragon Train.

In the alternative, the Court should order (a) complete briefing on this issue and (b) L&W to provide the requested documents to the Court, along with a privilege log identifying each document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii), so that the Court may conduct an *in camera* review.[9]

## B.    L&W'S PROPOSED COMPROMISE OR RESOLUTION

Aristocrat claims in its compromise section that it "does not propose that L&W produce all documents and information relating to its investigation into Aristocrat's claims"—just all the privileged documents and information (including opinion work product) relating to its investigation into Aristocrat's *misappropriation* claims. This type of "compromise" is no compromise at all.

L&W cannot compromise on the additional production of privileged documents without risking the creation of privilege waivers that do not currently exist, as L&W has already disclosed

---

[8] Aristocrat understands L&W's good-faith defense as related to the misappropriation concerning Dragon Train. If L&W raises a similar defense as to other instances of misappropriation (*e.g.*, for games other than Dragon Train), Aristocrat reserves the right to seek additional discovery, including outside of this time period.

[9] *See, e.g.*, *Server Tech.*, 2011 WL 1447620, at *10 (performing *in camera* review of unredacted document to determine whether redactions were directed to waived lines of inquiry).

everything within the scope of its limited fact waiver (which was limited to producing evidence of why the Charles and Soo declarations were withdrawn under Rule 11). Because L&W has disavowed any reliance on information subject to that limited fact privilege waiver, no additional productions, interrogatory supplementations, or depositions to disclose privileged information are warranted or required. The privileged information Yuri Leontiev declined to disclose in his deposition [*supra* § II] has nothing to do with L&W's defenses and remains outside the scope of the waiver. Aristocrat implicitly concedes all this because it makes no argument regarding either.

Aristocrat also improperly violates the pages limits of this stipulation by making numerous *new substantive arguments* in its *compromise/resolution* portion of the stipulation. *Supra* § IV.A at ¶ 1 and n.5 (incorrectly arguing that L&W cannot narrow defenses and maintain privilege). L&W briefly responds to the narrowing issue below.

Contrary to Aristocrat's arguments, L&W has not improperly "narrowed" its defenses (*supra* § V.A.)—Aristocrat has strategically misunderstood them since day one, and L&W has simply clarified that Aristocrat's self-serving interpretations are wrong. Indeed, that is the reason Aristocrat is now on its (at least) *sixth* iteration of this motion/stipulation, and has left behind a trail of abandoned arguments predicated on other mischaracterizations of L&W's defenses.[10] This iteration is no different. Indeed, that is also why it took Aristocrat *nearly five weeks* to re-write its prior stipulation after receiving L&W's responses to its fourth iteration (even though the parties are supposed to return edits to the other within *one week*). This stipulation is likely being resurrected not because Aristocrat thinks it has merit, but because Aristocrat thinks it will lend support to its pending motion to extend the discovery deadline (which was already extended barely two months ago).

There is one clear and fair "compromise" to this dispute. At bottom, Aristocrat seeks an unwarranted, sweeping intrusion into L&W's privilege because L&W has privileged information that Aristocrat wants, but that L&W has exhaustively promised it will not introduce, rely on, or otherwise use at trial. As caselaw makes clear, the solution is to hold L&W to its promise and, to

---

[10] The Court need only compare ECF No. 211 (Aristocrat's privilege waiver motion to compel) with this stipulation to see the difference in the alleged bases, arguments, scope of the waiver, etc.

the extent L&W attempts to prove its defense by disclosing or describing an attorney client communication or advice of counsel (it will not), preclude that use at trial. Indeed, if an implied waiver is found, the Court must provide L&W with an opportunity to withdraw or narrow the relevant defense or interrogatory response in order to avoid waiver. *Somers*, 2021 WL 3487315, at *5; *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) ("The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. Essentially, the court is striking a bargain with the holder of the privilege by letting him know how much of the privilege he must waive in order to proceed with his claim.") (citations omitted). L&W has already clarified the narrow scope of its defenses, asserted that it will not use any privileged or previously privileged information to support them, and disavowed any use of the substance of its investigation. Thus, the solution cannot be to preemptively expand the scope of the waiver, but rather to enforce L&W's disavowal if that scope ever changes.

L&W also does not believe that further briefing is necessary. Aristocrat's requests are ultimately based on defenses L&W has not and will not assert, and the introduction of evidence that will never be introduced.

Dated:  August 29, 2025

/s/ *Philip Erwin*
_____

PHILIP R. ERWIN, ESQ.
(Nevada Bar No. 11563)
**CAMPELL & WILLIAMS**
710 South Seventh Street
Las Vegas, NV 89101
Tel.: (702) 382-5222
Email: pre@cwlawlv.com

NEAL MANNE
(*pro hac vice*)

Dated:  August 29, 2025

/s/ *Jason D. Smith*
_____

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400

JOESEPH GRINSTEIN
(*pro hac vice*)
ROCCO MAGNI
(*pro hac vice*)
**SUSMAN GODFREY L.L.P**
1000 Louisiana, Suite 5100
Houston, Texas 77002
Tel.: (713) 651-9366
Email: nmanne@susmangodfrey.com
        jgrinstein@susmangodfrey.com
        rmagni@susmangodfrey.com

ERIK WILSON
(*pro hac vice*)
**SUSMAN GODFREY L.L.P**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel.: (310) 789-3100
Email: ewilson@susmangodfrey.com

DINIS CHEIAN
(*pro hac vice*)
ANDREW NASSAR
(*pro hac vice*)
**SUSMAN GODFREY L.L.P**
One Manhattan West
New York, New York 10001-8602
Tel.: (212) 729-2077
Email: dcheian@susmangodfrey.com
        anassar@susmangodfrey.com

*Attorneys for Defendants/Counterclaim-Plaintiffs Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation*

Email: nsantoro@spencerfane.com
       jdsmith@spencerfane.com
       tbthomas@spencerfane.com

PETER A. SWANSON (*pro hac vice*)
GARY M. RUBMAN (*pro hac vice*)
MATTHEW KUDZIN (*pro hac vice*)
ALEXANDER TRZECIAK (*pro hac vice*)
DANIEL FARNOLY (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email: pswanson@cov.com;
grubman@cov.com
mkudzin@cov.com; atrzeciak@cov.com
dfarnoly@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-Defendants Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2025, a true and correct copy of the foregoing **STIPULATION REGARDING DISCOVERY DISPUTE** was electronically served via the United States District Court CM/ECF system on all parties or persons registered for notice.

                                        /s/ Marissa Vallette
                                        An employee of SPENCER FANE LLP