PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

NEAL MANNE *(pro hac vice)*
nmanne@susmangodfrey.com
ROCCO MAGNI *(pro hac vice)*
rmagni@susmangodfrey.com
JOSEPH GRINSTEIN *(pro hac vice)*
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

ERIK WILSON *(pro hac vice)*
ewilson@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

DINIS CHEIAN *(pro hac vice)*
dcheian@susmangodfrey.com
ANDREW NASSAR *(pro Hac Vice)*
anassar@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

*Attorneys for Defendants Light & Wonder, Inc.,
LNW Gaming, Inc., and SciPlay Corporation*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Plaintiffs/Counterclaim-Defendants, <br><br> v. <br><br> LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Defendants/Counterclaim-Plaintiffs. | Case No. 2:24-cv-00382-GMN-MDC <br><br> **REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS** |

**EXHIBIT A-1**

In conformity with Article 3 of The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention"), the undersigned applicant has the honor to submit this request on behalf of Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (collectively "L&W" or "Requestors") in the above-captioned action.

The United States District Court for the District of Nevada presents its compliments to the Attorney-General's Department of the Commonwealth of Australia and requests international judicial assistance to obtain evidence from Alexander Bitterlin, Naomi Hall, and Matt Oberg (collectively, the "Respondents") to be used in civil proceedings before this Court in the above-captioned action (the "U.S. Action").

The evidence the Requestors seek is intended for use at trial, and in the view of this Court, will be relevant to the Requestors' defenses in the U.S. Action.

This Court requests the assistance described herein as necessary in the interests of justice. The assistance requested is for the appropriate judicial authority of Australia to compel the appearances of Mr. Bitterlin, Ms. Hall, and Mr. Oberg to give oral testimony relevant to the to the claims and defenses in the U.S. Action. The requested evidence is intended for use at trial.

## 1. Sender

The Honorable Maximiliano D. Couvillier III
The United States District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101
United States of America
Tel: +1 (702) 464-5400
Email: helpdesk_vegas@nvd.uscourts.gov

## 2. Central Authority of Australia

Australian Government Attorney-General's Department
Private International and Commercial Law Section
Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

## 3. Persons to whom the executed request is to be returned:

Mark Wilks

**EXHIBIT A-2**

1    David Fixler
     CORRS CHAMBERS WESTGARTH
2    Quay Quarter Tower Level 3
     7/50 Bridge St Sydney NSW 2000
3    Tel.: +61 2 9210 6500
     Email: mark.wilks@corrs.com.au
4            david.fixler@corrs.com.au

5    Philip R Erwin
     CAMPBELL & WILLIAMS
6    710 S. 7th St., Ste. A
     Las Vegas, NV 89101
7    United States of America
     Tel: +1 (702) 382-5222
8    Email: pre@cwlaw.com

9    Neal Manne
     Joseph Grinstein
10   Rocco Magni
     SUSMAN GODFREY L.L.P.
11   1000 Louisiana, Suite 5100
     Houston, TX 77002
12   United States of America
     Tel: +1 (713) 651-9366
13   Email: nmanne@susmangodfrey.com
             jgrinstein@susmangodfrey.com
14           rmagni@susmangodfrey.com

15   Erik Wilson
     SUSMAN GODFREY L.L.P.
16   1900 Avenue of the Stars, Suite 1400
     Los Angeles, CA 90067
17   United States of America
     Tel: +1 (310) 789-3100
18   Email: ewilson@susmangodfrey.com

19   Dinis Cheian
     Andrew Nassar
20   SUSMAN GODFREY L.L.P.
     One Manhattan West, 50th Fl.
21   New York, NY 10001
     United States of America
22   Tel: +1 (212) 336-8330
     Email: dcheian@susmangodfrey.com
23           anassar@susmangodfrey.com

24

25   **4.      Specification of the date by which the requesting authority requires receipt of
             the response to the Letter of Request:**

26

27   A response is requested as soon as reasonably practicable as this request pertains to an

28   ongoing civil litigation in which fact discovery is scheduled to conclude September 30, 2025.

- 2 -

5.      In conformity with Article 3 of the Hague Evidence Convention, the undersigned applicant has the honor to submit the following request:

    a.    **Requesting judicial authority:**

The Honorable Maximiliano D. Couvillier III
The United States District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101
United States of America
Tel: +1 (702) 464-5400
Email: helpdesk_vegas@nvd.uscourts.gov

    b.    **To the competent authority of Australia:**

Australian Government Attorney-General's Department
Private International and Commercial Law Section
Australian Government
Attorney-General's Department
3-5 National Circuit
BARTON ACT 2600
Australia

    c.    **Name of case and number**

*Aristocrat Technologies, Inc. et al. v. Light & Wonder, Inc. et. al.*, Civil Action No. 2:24-cv-00382-GMN-MDC, in the United States District Court for the District of Nevada

6.      **Names and addresses of the parties and their representatives:**

    a.    **Plaintiff Aristocrat Technologies, Inc.:**

Aristocrat Technologies, Inc.
10220 Aristocrat Way
Las Vegas, NV 89135
United States of America

**Representatives:**

Peter Swanson
Gary Rubman
Simeon Botwinick
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
United States of America
Tel.: +1 (202) 662-6000

Ziwei Song
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400

- 3 -

**EXHIBIT A-4**

San Francisco, CA 94105-2533
United States of America
Tel.: +1 (415) 591-6000

Nicholas J. Santoro
Jason D. Smith
Tyler B. Thomas
SPENCER FANE LLP
300 South 4th Street, Suite 1600
Las Vegas, NV 89101
United States of America
Tel.: +1 (702) 408-3400

b.  **Plaintiff Aristocrat Technologies Australia Pty Ltd:**

Aristocrat Technologies Australia Pty Ltd
Building A, Pinnacle Office Park
85 Epping Road, North Ryde, NSW 2113
Australia

**Representatives:**

Peter Swanson
Gary Rubman
Simeon Botwinick
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW, Washington, DC 20001
United States of America
Tel.: +1 (202) 662-6000

Ziwei Song
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
United States of America
Tel.: +1 (415) 591-6000

Nicholas J. Santoro
Jason D. Smith
Tyler B. Thomas
SPENCER FANE LLP
300 South 4th Street, Suite 1600
Las Vegas, NV 89101
United States of America
Tel.: +1 (702) 408-3400

c.  **Defendant Light & Wonder, Inc.**

Light & Wonder, Inc
6601 Bermuda Road
Las Vegas, NV 89119
United States of America

**EXHIBIT A-5**

1    **Representatives:**

2    Philip R Erwin
     CAMPBELL & WILLIAMS
3    710 S. 7th St., Ste. A
     Las Vegas, NV 89101
4    United States of America
     Tel: +1 (702) 382-5222
5    Email: pre@cwlaw.com

6    Neal Manne
     Joseph Grinstein
7    Rocco Magni
     SUSMAN GODFREY L.L.P
8    1000 Louisiana, Suite 5100
     Houston, TX 77002
9    United States of America
     Tel: +1 (713) 651-9366
10

     Erik Wilson
11   SUSMAN GODFREY L.L.P
     1900 Avenue of the Stars, Suite 1400
12   Los Angeles, CA 90067
     United States of America
13   Tel: +1 (310) 789-3100

14   Dinis Cheian
     Andrew Nassar
15   SUSMAN GODFREY L.L.P
     One Manhattan West, 50th Fl.
16   New York, NY 10001
     United States of America
17   Tel: +1 (212) 336-8330

18        d.  **Defendant LNW Gaming, Inc.**

19   LNW Gaming, Inc
     6601 Bermuda Road
20   Las Vegas, NV 89119
     United States of America
21

     **Representatives:**
22

     Philip R Erwin
23   Campbell & Williams
     710 S. 7th St., Ste. A
24   Las Vegas, NV 89101
     United States of America
25   Tel: +1 (702) 382-5222

26   Neal Manne
     Joseph Grinstein
27   Rocco Magni
     SUSMAN GODFREY L.L.P
28   1000 Louisiana, Suite 5100

- 5 -

**EXHIBIT A-6**

1     Houston, TX 77002
United States of America

2     Tel: +1 (713) 651-9366

3     Erik Wilson
SUSMAN GODFREY L.L.P

4     1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

5     United States of America
Tel: +1 (310) 789-3100

6

7     Dinis Cheian
Andrew Nassar

8     SUSMAN GODFREY L.L.P
One Manhattan West, 50th Fl.

9     New York, NY 10001
United States of America

10    Tel: +1 (212) 336-8330

11    **e.   Defendant SciPlay Corporation**

12    SciPlay Corporation
6601 Bermuda Road

13    Las Vegas, NV 89119
United States of America

14

15    **Representatives:**

16    Philip R Erwin
Campbell & Williams

17    710 S. 7th St., Ste. A
Las Vegas, NV 89101

18    United States of America
Tel: +1 (702) 382-5222

19    Neal Manne
Joseph Grinstein

20    Rocco Magni
SUSMAN GODFREY L.L.P

21    1000 Louisiana, Suite 5100
Houston, Texas 77002

22    United States of America
Tel: +1 (713) 651-9366

23

24    Erik Wilson
SUSMAN GODFREY L.L.P

25    1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

26    United States of America
Tel: +1 (310) 789-3100

27    Dinis Cheian
Andrew Nassar

28    SUSMAN GODFREY L.L.P

**EXHIBIT A-7**

One Manhattan West, 50th Fl.
New York, NY 10001
United States of America
Tel: +1 (212) 336-8330

**7.     Nature and summary of the proceedings**

The U.S. Action is an intellectual property dispute between Aristocrat and L&W. A copy of the Second Amended Complaint in this action is attached as **Exhibit A-1**. In the Second Amended Complaint, Aristocrat asserts claims against L&W for misappropriation of Aristocrat's alleged trade secrets under the federal Defend Trade Secrets Act and Nevada Uniform Trade Secrets Act, copyright infringement under the federal Copyright Act, trade dress infringement under the federal Lanham Act, and deceptive trade practices under Nevada law.

Aristocrat and L&W provide games, gaming machines, social gaming apps, games accessible in real-money online gaming apps, and casino management systems. Aristocrat alleges that L&W misappropriated trade secrets and other intellectual property from Aristocrat's Dragon Link game and its predecessor Lightning Link. Aristocrat alleges that L&W has copied the name, appearance, sounds, and gameplay of Aristocrat's Dragon Link in L&W games, including Dragon Unleashed Link, Jewel of the Dragon, and Dragon Train. Aristocrat also claims that L&W misappropriated Aristocrat's alleged trade secrets in L&W's games, including Dragon Train and Jewel of the Dragon.

L&W denies these allegations. A copy of L&W's Answer to the Second Amended Complaint in this action is attached as **Exhibit A-2**. L&W seeks assistance to compel the appearances of Mr. Bitterlin, Ms. Hall, and Mr. Oberg to give oral testimony. Aristocrat has identified Mr. Bitterlin, Ms. Hall, and Mr. Oberg as individuals who participated in the mathematical design of Dragon Link and Lightning Link—two games from which Aristocrat alleges L&W misappropriated trade secrets.

Aristocrat alleges the existence of valuable trade secrets in the form of mathematical information underlying its Lightning Link and Dragon Link games. Mr. Bitterlin, Ms. Hall, and Mr. Oberg were all members of the studio that designed the Dragon Link game and consequently they possess knowledge about the mathematical design of the games. This includes whether the

**EXHIBIT A-8**

mathematics of Dragon Link or Lightning Link originates from public or readily-accessible sources; the time and effort Aristocrat expended on developing these games; the extent to which these games reflect a substantial derivation from existing Aristocrat games; and, among other things, the incremental value the mathematics added to the game in light of other features.

Aristocrat claims that its own former employees took with them valuable intellectual property when they departed from the company. As a result, Aristocrat has put at issue its practices relating to safeguard its proprietary information and what, if any, measures it takes when employees privy to confidential information depart Aristocrat for one of its competitors. The Respondents whose testimony L&W seeks worked directly on Dragon Link on the same team as Ms. Charles.

### 8.   Summary of Request

#### a.  Evidence to be obtained

The Requestors seek oral testimony located within the Commonwealth of Australia from the Respondents for use at trial to support Requestors' counterclaims and defenses. Justice cannot be fully achieved among the parties without such evidence.

**Exhibits A-3, A-4, and A-5** set forth the testimony requested to be provided by Mr. Bitterlin, Ms. Hall, and Mr. Oberg, respectively, and anticipated to be used at trial. Aristocrat has identified Mr. Bitterlin, Ms. Hall, and Mr. Oberg as having worked on the development of Aristocrat's Dragon Link and Lightning Link games. Each of these individuals has, accordingly, been privy to information Aristocrat claims is confidential and has knowledge about the source of development of these games, including whether any other games' math or design information was used in its development or whether any public or readily-accessible information was used to develop the games' math. This information is important to evaluating Aristocrat's claim that the mathematics underlying its Dragon Link and Lightning Link games constitutes a unique and valuable trade secret which cannot be replicated. As former Aristocrat employees, Mr. Bitterlin, Ms. Hall, and Mr. Oberg also possesses knowledge about the measures, if any, Aristocrat uses to safeguard its purportedly confidential information. Furthermore, because all of these individuals

**EXHIBIT A-9**

are no longer employed by Aristocrat, they possess information about the policies, if any, that Aristocrat has instituted to prevent the unauthorized use or disclosure of its trade secrets.

### b. Purpose of the evidence sought:

The evidence is sought for use at trial to support the Requestors' claims. Specifically, as set forth above, the Requestors expect that the testimonial evidence sought from Mr. Bitterlin, Ms. Hall, and Mr. Oberg will be relevant to Requestors' defenses that Aristocrat's allegedly confidential math information does not qualify as a valid trade secret and that L&W's games differ markedly from Aristocrat's games.

### 9. Identity and address of the persons to be examined

Alexander Bitterlin
135 Fisher Street
Oak Flats, NSW 2529
Phone: 0419-244-219
Email: alexbitterlin@gmail.com

Naomi Hall
16 Surrey Place
Kareela, NSW 2232
Phone: 02 9576 5620; 0420 726 494

Matthew Oberg
13 Mills Place
Beacon Hill, NSW, 2100
Phone: 0422-494-157
Email: matt_moberg_@msn.com

### 10. Statement of the subject-matter about which the above-identified person will be examined

This Court requests that Mr. Bitterlin, Ms. Hall, and Mr. Oberg be questioned by counsel for the Requestors, or by the appropriate person appointed by the appropriate Australian authority, with respect to the topics set forth in **Exhibits A-3, A-4, and A-5**, respectively.

### 11. Any requirement that the evidence be given on oath or affirmation and any special form to be used

- 9 -

**EXHIBIT A-10**

This Court respectfully requests that Respondents testify under oath or affirmation. This Court further requests that you require that the testimony given during the depositions be given under the following oath: "I [name of the deponent] swear (or affirm) that the testimony I am about to give is the truth, the whole truth, and nothing but the truth." In the event that Respondents cannot testify under oath or affirmation, it is requested that they answer questions in such manner as would be required at an Australian trial, including those provisions intended to ensure the veracity of oral testimony.

**12.  Special methods or procedure to be followed**

a.  This Court requests that each deposition shall be taken under the Federal Rules of Civil Procedure of the United States of America, except to the extent such procedure is incompatible with the internal laws of Australia.

b.  It is respectfully requested that counsel for the Requestors be permitted to attend and conduct the examination of the Respondents.

c.  It is respectfully requested that the Requestors' United States counsel be permitted to conduct the examination. Corrs Chambers Westgarth, Australian counsel for the Requestors, will assist in the process of securing this deposition and will be present at the deposition.

d.  It is respectfully requested that counsel for Aristocrat be permitted to attend the deposition, and that Aristocrat's United States Counsel be permitted to conduct an examination of the Respondents immediately following the conclusion of Requestors' examination.

e.  Respondents shall be permitted to be represented by their own counsel at the deposition. At the deposition, Respondents shall be allowed to take legal advice in order to prevent the disclosure of privileged information and to claim privileges under both the laws of the United States and those of Australia.

f.  It is respectfully requested that the testimony of the Respondents be videotaped and recorded verbatim in writing, and that a videographer and a stenographer

**EXHIBIT A-11**

licensed in the United States as a court reporter be permitted to attend each deposition in order to record the testimony.

g.  It is respectfully requested that each deposition be allowed to continue until completed.

**13.  Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified**

### a.  Time and place

Subject to the above methods and procedures, it is requested that each deposition take place as soon as can practicably be arranged, and continue day by day until completed. It is requested that each deposition be conducted at the office of Corrs Chambers Westgarth, Quay Quarter Tower Level 37/50 Bridge St Sydney NSW 2000, or at a location mutually agreed upon by the Requestors and the Respondents.

### b.  Persons to be notified

It is respectfully requested that the Respondents, and the counsel listed below be notified of the date, time and place of the deposition as soon as convenient. If possible, it is requested that notice be furnished to the Respondents and counsel at least thirty days prior to the deposition.

Mark Wilks
David Fixler
CORRS CHAMBERS WESTGARTH
Quay Quarter Tower Level 3
7/50 Bridge St Sydney NSW 2000
Tel.: +61 2 9210 6500
Email: mark.wilks@corrs.com.au
        david.fixler@corrs.com.au

Philip R Erwin
CAMPBELL & WILLIAMS
710 S. 7th St., Ste. A
Las Vegas, NV 89101
United States of America
Tel: +1 (702) 382-5222
Email: pre@cwlaw.com

Neal Manne
Joseph Grinstein
Rocco Magni
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002

**EXHIBIT A-12**

United States of America
Tel: +1 (713) 651-9366
Email: nmanne@susmangodfrey.com
        jgrinstein@susmangodfrey.com
        rmagni@susmangodfrey.com

Erik Wilson
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
United States of America
Tel: +1 (310) 789-3100
Email: ewilson@susmangodfrey.com

Dinis Cheian
Andrew Nassar
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Fl.
New York, NY 10001
United States of America
Tel: +1 (212) 336-8330
Email: dcheian@susmangodfrey.com
        anassar@susmangodfrey.com

**14.    Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request**

No attendance of judicial personnel is requested.

**15.    Specification of privilege or duty to refuse to give evidence under the law of the United States**

All claims of privilege or duty to refuse to give evidence shall be governed by any applicable United States law(s). As such, Respondents may refuse to provide testimony and to answer any question propounded by a representative of the Requestors if their answers thereto (1) would subject them to a real and appreciable danger of criminal liability in the United States, (2) would disclose the substance of a confidential communication between them and their attorneys, or (3) is protected from disclosure under any applicable privilege, protection or immunity under Australian law.

**16.    Fees and costs**

The fees and costs incurred which are reimbursable under the second paragraph of article 14 or under article 26 of the Hague Evidence Convention shall be borne by the Requestors.

. . . .

**EXHIBIT A-13**

**17.    Conclusion**

This Court expresses its appreciation for the assistance and courtesy of the courts of Australia in this matter, and states that it shall be ready and willing to assist the courts of Australia in a similar manner when required.

DATE:    11/6/25

Signature and Seal of the Requesting Authority:

_____

The Honorable Maximiliano D. Couvillier III
United States District Court for the District of Nevada
333 Las Vegas Blvd South
Las Vegas, NV 89101
United States of America

**EXHIBIT A-14**

# EXHIBIT A-1

*Plaintiffs' Second Amended Complaint*

NICHOLAS J. SANTORO
(Nevada Bar No. 532)
JASON D. SMITH
(Nevada Bar No. 9691)
TYLER B. THOMAS
(Nevada Bar No. 16637)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, NV 89101
Tel.: (702) 408-3400
Email:  nsantoro@spencerfane.com
        jdsmith@spencerfane.com
        tbthomas@spencerfane.com

PETER A. SWANSON
(*pro hac vice*)
GARY M. RUBMAN
(*pro hac vice*)
SIMEON BOTWINICK
(*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-6000
Email:  pswanson@cov.com
        grubman@cov.com
        sbotwinick@cov.com

ZIWEI SONG
(*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.: (415) 591-6000
Email: ksong@cov.com

*Attorneys for Plaintiffs/Counterclaim-Defendants*
*Aristocrat Technologies, Inc. and*
*Aristocrat Technologies Australia Pty Ltd.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., | Case No. 2:24-cv-00382-GMN-MDC |
| Plaintiffs/Counterclaim-Defendants, | **SECOND AMENDED COMPLAINT** |
| v. | **JURY DEMAND** |
| LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, | |
| Defendants/Counterclaim-Plaintiffs. | |

Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. (together, "Aristocrat") bring this second amended complaint for trade secret misappropriation, copyright infringement, trade dress infringement and unfair competition, and deceptive trade practices, with a request for monetary damages, an injunction, and other relief, against Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation (together, "L&W"). Aristocrat alleges as follows:

## INTRODUCTION

1. Aristocrat brings this complaint to stop L&W from free-riding on the significant time, effort, and creativity Aristocrat has devoted over many years to developing innovative and award-winning games that bring joy to players around the world.

2. Aristocrat makes, markets, sells, and leases electronic gaming machines ("EGMs"). One of its most successful games—in Nevada and worldwide—is Dragon Link. Dragon Link combines innovative and exciting game mechanics, which operate based on complex math models implemented at the code level to create a uniquely compelling player experience, with visually striking imagery and audiovisual effects—centered around an Asian theme—that consumers have come to associate with Dragon Link and Aristocrat.

3. Aristocrat has invested substantial time, effort, and creativity in developing and popularizing the gameplay, imagery, audiovisual effects, and logos of Dragon Link and its predecessor, Lightning Link, which is also one of the most popular games in the world.

4. Aristocrat owns trade secrets relating to the development and operation of the game mechanics for Dragon Link and Lightning Link, including the underlying math and implementing source code. In addition to the substantial time, effort, and resources that went into its development, the game math for Dragon Link and Lightning Link is the product of significant creativity and innovation, and the continued success of both games many years after their initial release demonstrates that the math is unique, difficult (if not impossible) for others to replicate, and highly valuable.

5. Aristocrat also owns copyrights in Dragon Link's original artwork, animations, and sounds, which help make Dragon Link unique.

1

**EXHIBIT A-1 - 16**

6. In addition, distinctive aspects of the imagery, effects, logos, and arrangement of game elements create a readily identifiable trade dress that consumers associate with their positive impressions of Dragon Link.

7. Unwilling (or unable) to compete fairly with Aristocrat, L&W has engaged in a wide-ranging campaign to copy Dragon Link that coincides with the hiring of multiple former Aristocrat executives and game designers. This campaign began in 2022 with L&W renaming one of its games—from Dragon Unleashed to Dragon Unleashed *Link*—in a transparent attempt to sow confusion with, and trade on Aristocrat's goodwill in, Dragon Link.

8. Later in 2022, L&W released a game, Jewel of the Dragon, that copied (among other things) Dragon Link's original audiovisual elements and distinctive trade dress, resulting in a game whose artwork, animations, and sounds are strikingly similar to Dragon Link. L&W's intent was clear: rather than try to develop its own successful game, L&W sought to confuse players about whether L&W's Jewel of the Dragon game comes from or is related to Aristocrat, whose Dragon Link game consumers know and enjoy.

9. But Jewel of the Dragon was a cheap knock-off. Despite copying the graphics, sounds, and trade dress of Dragon Link, and despite including similar game features as Dragon Link, Jewel of the Dragon failed to capture the unique player experience created by the underlying Dragon Link math. So L&W tried to more closely emulate the underlying mathematical design. This effort took the form of a game that L&W released in Australia in 2023, and in the United States in 2024, called Dragon Train.

10. L&W's lead developer for Dragon Train was a former Aristocrat game designer, Emma Charles, who had worked on Dragon Link and Lightning Link and was intimately familiar with the math models on which those games are based. L&W knew when it hired her that Ms. Charles had prior experience with and exposure to Aristocrat's confidential Dragon Link and Lightning Link game math, yet failed to implement reasonable safeguards to ensure that she would not use that information for L&W. To the contrary, L&W specifically tasked Ms. Charles with developing a game that would directly compete with Dragon Link by utilizing the same or a substantially similar mathematical design. The resulting Dragon Train game, which L&W

**EXHIBIT A-1 - 17**

developed using Ms. Charles's knowledge about how Dragon Link and Lightning Link work and documents taken from Aristocrat, provides a very similar gameplay experience as Dragon Link and appears to have significant similarities to the Dragon Link math—similarities that seemingly cannot be explained by any legitimate reverse engineering or independent development.

11.     Dragon Train has enjoyed considerable success in Australia, and, even after Aristocrat commenced the present action, L&W launched and continued to aggressively commercialize the game in the United States, in an attempt to harm Aristocrat's strong market position as well as its reputation as an innovator.  Even after the Court preliminary enjoined commercialization of the original Dragon Train game, L&W has continued to knowingly reap the benefits of its misappropriation, including by developing replacement, follow-on, or other new versions of Dragon Train games, such as online free-to-play game called Dragon Train Grand Central, that seek to capitalize on the brand recognition, goodwill, and reputational benefits that L&W improperly acquired via the original game.

12.     L&W's misappropriation of Aristocrat trade secrets extends well beyond the use of confidential Aristocrat math information to develop Dragon Train. Aristocrat's information has been widely disseminated throughout L&W and has been used by L&W employees to develop other games, including, but not limited to, Jewel of the Dragon, Double Dragon, and at least one unreleased game.

13.     Through this course of action, L&W has (1) misappropriated Aristocrat's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Nevada Uniform Trade Secrets Act, Nev. Rev. Stat. § 600A.030; (2) infringed Aristocrat's copyright in the audiovisual elements of Dragon Link in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*; (3) infringed Aristocrat's federal trade dress and related rights in Dragon Link, and thereby committed unfair competition and false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*; and (4) engaged in deceptive trade practices in violation of Nevada Revised Statutes §§ 41.600 & 598.0915.  L&W's misappropriation, infringement, and deceptive acts undermine Aristocrat's significant investment in its intellectual property and irreparably harm

**EXHIBIT A-1 - 18**

1  Aristocrat's brand and its relationship with customers and players. L&W should be enjoined, and
2  Aristocrat should be awarded full monetary relief.

3  ## JURISDICTION AND VENUE

4       14.    This Court has original jurisdiction over Aristocrat's claims pursuant to
5  15 U.S.C. § 1121, 17 U.S.C. § 501, 18 U.S.C. § 1836, and 28 U.S.C. §§ 1331 and 1338. The Court
6  also has supplemental jurisdiction over Aristocrat's state law claims under 28 U.S.C. § 1367(a).

7       15.    L&W is subject to personal jurisdiction within the District of Nevada
8  because it conducts business in, has a principal place of business in, is incorporated in, and resides
9  in, this District. In addition, L&W has committed acts of infringement, unfair competition, and
10 deceptive trade practices in this District.

11      16.    Venue is proper under 28 U.S.C. §§ 1391(b) and (c) because, on information
12 and belief, all or a substantial part of the events or omissions giving rise to Aristocrat's claims
13 occurred in the District of Nevada. Venue is also proper under 28 U.S.C. § 1400(a) with respect
14 to Aristocrat's claims for copyright infringement because L&W may be found in this District and
15 is subject to personal jurisdiction in this District.

16 ## THE PARTIES

17      17.    Aristocrat Technologies, Inc. ("ATI") is a Nevada corporation with its
18 principal place of business at 10220 Aristocrat Way, Las Vegas, Nevada 89135.

19      18.    Aristocrat Technologies Australia Pty Ltd. ("ATA") is an Australian
20 corporation with its principal place of business at Building A, Pinnacle Office Park, 85 Epping
21 Road, North Ryde, New South Wales, Australia 2113.

22      19.    On information and belief, Light & Wonder, Inc. is a gaming company
23 based at 6601 Bermuda Road, Las Vegas, Nevada 89119.

24      20.    On information and belief, LNW Gaming, Inc. is a gaming company based
25 at 6601 Bermuda Road, Las Vegas, Nevada 89119. On information and belief, LNW Gaming,
26 Inc. is a wholly owned subsidiary of Light & Wonder, Inc.

27

28

21.     On information and belief, SciPlay Corporation is a digital gaming company based at 6601 Bermuda Road, Las Vegas, Nevada 89119.  On information and belief, SciPlay Corporation is a wholly owned subsidiary of Light & Wonder, Inc.

22.     On information and belief, L&W manufactures, uses, distributes, offers, provides, and sells or leases gaming machines, servers, systems, websites, online apps, and supporting software, in Nevada and elsewhere in the United States.

## FACTS ENTITLING ARISTOCRAT TO RELIEF

### A.     Aristocrat and Its Dragon Link Product

23.     Aristocrat is a leading provider of games, gaming machines, social gaming apps, games accessible in real-money online gaming apps, and casino management systems. Aristocrat's product portfolio includes gaming machines with mechanical reels, EGMs with video displays, and digital games featured in social gaming apps and real-money gaming apps.  EGMs run on sophisticated computer programs that, among other things, implement the underlying game math and control the mechanics of the game, the display of graphics and animations, and the play of music and sound effects associated with various game features.  These programs let developers like Aristocrat create unique gaming experiences for their customers.

24.     One of Aristocrat's most successful games is Dragon Link.  Released in the United States in 2017, Dragon Link is the successor to Lightning Link, an earlier family of Aristocrat games that pioneered many of the key features present in both games.  Both Lightning Link and Dragon Link are multi-denomination, meaning players can choose different amounts to bet, and linked progressive jackpot games, meaning that each EGM with the game installed is part of a network of EGMs that all contribute to a total jackpot accumulated by multiple players.  Both Lightning Link and Dragon Link are among the most successful games Aristocrat has ever released, and both have been flagships for Aristocrat in terms of popularity and commercial performance around the world.

25.     When it launched in 2014, Lightning Link introduced to the gaming market an innovative "Hold & Spin" bonus feature that offers players free spins during which symbols with designated prize amounts are collected and counted on screen.  This "Hold & Spin" feature

**EXHIBIT A-1 - 20**

was unique to Lightning Link when first released and has since been imitated by many other games in the industry because of its proven success for Aristocrat.

26.   The popularity of this and other unique gameplay features in Lightning Link proved enduring, spanning four initial game themes and several new themes, or game titles, that Aristocrat later released under the Lightning Link umbrella brand.

27.   Dragon Link features similar gameplay to Lightning Link, is based on similar underlying math models, and incorporates—and expands upon—many of the signature features that made Lightning Link so popular, including its jackpot tiers and the signature "Hold & Spin" feature.  Dragon Link enjoyed exceptionally strong uptake in both the United States and international markets, spanning a collection of ten Asian-themed games that are all built on the successful formula first developed in Lightning Link.  Dragon Link remains Aristocrat's highest-performing game to this day.

28.   When Dragon Link is installed on an EGM, the cabinet—which contains the electronics that run the game's software and the displays players see and interact with when playing or deciding whether to play the game—prominently shows certain design features and layouts that make Aristocrat's Dragon Link EGMs recognizable and inherently distinctive across all ten game titles.

29.   These distinctive design features include the DRAGON LINK logos.  These logos appear on a rectangular landscape topper above the various displays that comprise the gaming cabinet used for the DRAGON LINK game, as well as on signage used in connection with the game.  The primary variation of the DRAGON LINK logo (the "Dragon Link Standard Logo") consists of the words DRAGON LINK in a red-to-black fade, superimposed on a gold orb with a bright, fiery outline, ringed with flames.   Below is an image of the Dragon Link Standard Logo:

6

30.     The primary game display for Dragon Link has multiple uses.[1]  The lower portion of the display shows the reels on which the games are played.  The upper portion of the display features a screen that incorporates the DRAGON LINK name and shows the game's jackpots and bonuses (the "Dragon Link Jackpot Display").  The features of the Dragon Link Jackpot Display are:

- An animated DRAGON LINK logo in which a red flame flares through the DRAGON LINK wording.

- A tiered list of gaming jackpots and bonuses, which appear below the DRAGON LINK name.

- Each list level is outlined on each side by the same gold orb with a bright, fiery outline that appears on the Dragon Link Standard Logo, with the words GRAND, MAJOR, MINOR, and MINI (for jackpot sizes).

- The prize amounts of each jackpot appear in the same color as their corresponding jackpot title (for example, the word GRAND for the grand jackpot is red, so the prize for the grand jackpot is also red).

- Each jackpot prize amount appears against a black background.

- The names of the jackpots and the prize amounts are outlined in gold.

- All of the foregoing elements are set in front of a background that fades to black at the top of the display where the DRAGON LINK name appears.

---

[1] Dragon Link is offered in multiple types of cabinets, including a cabinet with a single large, concave display (the "Arc" cabinet) and a cabinet that includes two smaller displays, one above the other.  This amended complaint includes images from the Arc cabinet, but the gameplay and audiovisual elements are substantially similar regardless of the cabinet on which the game appears, giving all versions of the game a consistent look and feel.

**EXHIBIT A-1 - 22**

1    These elements are visible in the image below:



9    31.    Gold orb designs (the "Dragon Link Orb Design") appear consistently
10   throughout the following aspects of the Dragon Link games: behind the Dragon Link Standard
11   Logo on the landscape topper, around the jackpot amounts on the Dragon Link Jackpot Display,
12   as bonus symbols in the base game, as bonus symbols in the Dragon Link "Hold & Spin" bonus
13   feature (the "Dragon Link Hold & Spin Bonus Feature"), and directly above the reels in the Dragon
14   Link Hold & Spin Bonus Feature.  These instances of the Dragon Link Orb Design are all visually
15   similar.  All are gold, are surrounded by a bright, fiery outline around the orb's circumference.

16   32.    The Dragon Link Hold & Spin Bonus Feature allows players to accumulate
17   bonus symbols in a series of free spins.  These bonus symbols display either a credit value or one
18   of the game's jackpots inside a gold orb with a bright, fiery outline, surrounded by an additional
19   ring of fire.  The appearance of six or more bonus symbols on a single spin in the base game
20   triggers the Dragon Link Hold & Spin Bonus Feature, which awards the player three free spins.
21   During the bonus feature, the symbols that triggered the bonus, along with any additional bonus
22   symbols collected during the bonus, are held in place on each spin.  Any additional bonus symbols
23   that are collected during the bonus reset the number of free spins to three.

24   33.    The upper display in the Dragon Link Hold & Spin Bonus Feature contains
25   a large gold orb with a bright, fiery outline that says "HOLD & SPIN" when the bonus is first
26   activated, and then when the bonus game is in progress, the orb includes a count of the bonus
27   symbols, along with the message "15 WIN GRAND JACKPOT."  Each time a bonus symbol

**EXHIBIT A-1 - 23**

appears on the reels, flames flare around the bonus symbol on the lower display and around the gold orb on the upper display.

34.     An image of the Dragon Link Hold & Spin Bonus Feature when first triggered is below, left, and an image of the Dragon Link Hold & Spin Bonus Feature in progress is below, right.

 

35.     At the end of the bonus game, a flame flares out of each bonus symbol and flies along a curving trajectory towards a meter on the upper display that keeps track of the total credits won, activating a gong sound when the flame hits the meter.  Directly above the meter is the word "WINNER," which appears in a similar font and with a similar red-to-black gradient as the Dragon Link Standard Logo.  After all the bonus awards have been tallied, animated coins appear to fly upward from the bottom display.  This animation is referred to as a "Coin Shower." The images below left and center show the flame flare effect when bonus symbols are tallied, while the image below right shows the Coin Shower at the bonus game's conclusion.

  

36.     The presentation of the Dragon Link Hold & Spin Bonus Feature contains several fanciful and arbitrary design aspects that distinguish the bonus feature from those of competitors and allow consumers easily to recognize a Dragon Link game, whether on the casino floor, online, or elsewhere.  These design aspects consist of the following: the use of the Dragon Link Orb Design as a bonus symbol, the appearance of a single large Dragon Link Orb Design directly above the reels, the flame flares that burst out of the bonus symbols when the bonus amounts are tallied, the gong sound that plays when the bonus amounts are tallied, and the Coin Shower at the conclusion of the bonus feature (together, these elements are the "Dragon Link Hold & Spin Design").

37.     The Dragon Link games are also available in digital format on various mobile applications (*i.e.*, apps).  Users can download free-to-play versions of Dragon Link to their mobile phones, to play and win virtual tokens.  Mobile applications where Dragon Link can be played include Heart of Vegas, Cashman Casino, Lightning Link, and Mighty Fu Casino, which together have been downloaded by over 25 million users.  The gameplay features and audiovisual elements that appear in the Dragon Link digital games are materially the same as those that appear in the Dragon Link EGMs.

38.     The game mechanics of the Dragon Link series embody Aristocrat's trade secret information, including without limitation the underlying game math and functionality that

1    control the gameplay and the timing, frequency, and amount of payouts in both the base game and

2    the bonuses (*e.g.*, the Dragon Link Hold & Spin Bonus Feature).

3        39.    For example, the game math and functionality includes, among other things,

4    the composition and operation of reel strips, symbols, and other game features; the combinations,

5    pathways, and probabilities for winning or triggering particular outcomes (*e.g.*, activation of the

6    "Hold & Spin" feature); the assignment of payouts per win; the magnitude of risk or potential

7    reward associated with the game (*i.e.*, volatility); and the percentage of wagered money returned

8    to players (*i.e.*, "return to player" or "RTP").  The game math and functionality also include

9    Aristocrat's proprietary implementation of the "Hold & Spin" bonus game, which relies on unique

10   and complicated math models.  These and other trade secrets, including the source code that

11   implements the game math and functionality, contribute to the overall excitement, experience, and

12   "feel" of playing a game and are integral to the game's commercial success.

13       40.    As noted above, Dragon Link includes similar gameplay features as

14   Lightning Link and is based on similar math models.  Aristocrat invested considerable time, effort,

15   and resources in developing the underlying game math and functionality for the Dragon Link and

16   Lightning Link games.  The development of Lightning Link took a substantial amount of time, in

17   part because of the complexity of the math.

18       41.    The underlying game math and functionality also reflect significant

19   creativity and innovation on the part of Aristocrat.  In developing Lightning Link and Dragon Link,

20   the team of Aristocrat game designers made innumerable choices resulting in the creation of unique

21   and innovative techniques for implementing the game mechanics and features (*e.g.*, the "Hold &

22   Spin" feature), including, for example, innovative techniques for controlling probabilities and the

23   volatility of the game.

24       42.    This information is not generally known to the public or in the industry.  It

25   is also particularly complex—even compared to other casino games—and cannot be ascertained

26   through proper means (including reverse engineering) from merely observing or playing the games

27   themselves, as illustrated by the fact that many companies have tried and failed to mimic the

28   signature gameplay elements of Dragon Link and Lightning Link over time.  For example, IGT's

Fireball game, and L&W's Dragon Unleashed, Kraken Unleashed, and Jewel of the Dragon games, utilized similar features—including their own versions of a "Hold & Spin" feature—but failed to replicate the uniquely appealing "feel" and commercial success of Dragon Link and Lightning Link. Both Dragon Link and Lightning Link have been successful in part because competitors do not know, and cannot emulate through proper means, the underlying math and functionality of the games.

43.     Aristocrat owns all rights in and to the confidential and trade secret information associated with Dragon Link's and Lightning Link's underlying game math, functionality, and source code. Since the secrecy of this information is integral to the continued commercial success and competitive advantage of these games, Aristocrat keeps the information highly confidential and subject to tight controls and protections even within the company.

44.     For example, Aristocrat has adopted strict practices, policies, and procedures to protect its trade secrets, including by requiring employees and contractors to enter into written agreements setting forth material obligations and restraints (which continue even after termination) against the unauthorized disclosure or use of Aristocrat's confidential and proprietary information. Aristocrat also provides employees with regular training and has implemented physical and technical security measures designed to secure and safeguard its intellectual property, including trade secrets. Aristocrat's security measures include system access restrictions tailored to specific personnel, mandatory passwords, and an internal policy prohibiting the use of any devices or equipment that have not been authorized for use by Aristocrat or that do not meet Aristocrat's technical security requirements. Aristocrat has also regularly taken legal action to enforce its intellectual property rights throughout the world, including in numerous proceedings in recent years in the United States and Australia.

45.     The audiovisual elements of the Dragon Link games (the "Dragon Link Audiovisual Elements") are original works of authorship entitled to copyright protection. The Dragon Link Audiovisual Elements include, but are not limited to, original artwork, animations, and computer-generated graphics that appear on the game displays, along with original sounds that are played on the game speakers. Examples of the Dragon Link Audiovisual Elements are

described and shown herein. Unless otherwise noted, these examples are present in all of the individual Dragon Link game titles.

46.    Aristocrat owns the copyright in the Dragon Link Audiovisual Elements and has obtained copyright registrations covering at least certain of those elements. *See* Ex. A. More particularly, the copyright in the Dragon Link Audiovisual Elements is assigned to ATA, which has granted an exclusive license to ATI for use in the United States. This copyrighted work was first published in Australia.

47.    The combined design elements of the Dragon Link Standard Logo, Dragon Link Jackpot Display, Dragon Link Orb Design, and Dragon Link Hold & Spin Design (collectively, the "Dragon Link Trade Dress"), make the Dragon Link games instantly recognizable to consumers and are protected as trade dress.[2] Consumers encounter the collection of features comprising the Dragon Link Trade Dress when they view and interact with the Dragon Link games, and recognize and rely on the Dragon Link Trade Dress as a distinctive indicator of source separate from the underlying game mechanics. The Dragon Link Trade Dress is present across all ten of the Dragon Link game titles and is readily visible together on casino floors, in online videos, in advertising, on websites and social media, and elsewhere.[3]

48.    Aristocrat owns the Dragon Link Trade Dress and has used it exclusively and continuously in commerce in Australia since at least 2016, and in the United States since at least 2017. More particularly, all U.S. rights in the Dragon Link Trade Dress either are owned by ATI or are owned by ATA and exclusively licensed to ATI.

49.    Each component of the Dragon Link Trade Dress is fanciful, arbitrary and non-functional. The Dragon Link Standard Logo is a design whose sole function is to identify the Dragon Link product. The Dragon Link Orb Design is a design element that provides the Dragon

---

[2] The individual elements of the Dragon Link Trade Dress, as well as other aspects of the Dragon Link games, may be protected under trademark and trade dress law. Aristocrat reserves the right in other cases or as to other parties to rely on other aspects of its rights.

[3] The Dragon Link Audiovisual Elements include many audiovisual elements that are not part of the Dragon Link Trade Dress—*e.g.*, reel symbols in the base game, music, messages and other text that appear on the displays, and screen layout and other user interface elements.

EXHIBIT A-1 - 28

Link games with a consistent, recognizable look and feel across its various titles. And the Dragon Link Jackpot Display and Dragon Link Hold & Spin Design are each comprised of an interwoven collection of fanciful and arbitrary elements that contribute to the Dragon Link games' distinctive look and feel.  None of these elements is essential to the operation or design of a slot machine game—to the contrary, each element represents just one of countless design options available to distinguish competing games.  Indeed, Aristocrat's competitors use a wide variety of alternative design elements for their competing games.

50.    Because the Dragon Link Trade Dress is a fanciful, arbitrary, and non-functional manner of packaging the Dragon Link games, the Dragon Link Trade Dress is inherently distinctive and has become an indicator that the product is made by Aristocrat.

51.    Even if the Dragon Link Trade Dress were not inherently distinctive, it has acquired distinctiveness through its widespread use and success and its association with Aristocrat. Dragon Link has achieved worldwide popularity, and Aristocrat's advertising and promotional efforts for Dragon Link heavily feature the Dragon Link Trade Dress.  Dragon Link has achieved widespread public recognition of its distinctive trade dress, as well as critical acclaim in the industry.  Players recognize the Dragon Link Trade Dress across Dragon Link game titles, and look for the Dragon Link Trade Dress they have previously seen when they return to casinos and gaming mobile applications.  Aristocrat has heavily invested in the marketing of Dragon Link, and the industry and customers have come to recognize the Dragon Link Trade Dress as deriving from a single source and serving as identifiers of the Dragon Link game series.

52.    Aristocrat has made enormous investments in developing and marketing its Dragon Link games and expended resources fostering the reputation, recognition, and goodwill associated with the games.  This includes millions of dollars spent on various marketing avenues, including social media advertising, online search advertising, player promotion partnerships, casino promotion partnerships, and apparel promotions.  Aristocrat's advertising for Dragon Link prominently features the Dragon Link Trade Dress elements.  See, for example, the following two images of promotions at Wheeling Island Casino, West Virginia, featuring the Dragon Link Standard Logo and Dragon Link Orb Design:

**EXHIBIT A-1 - 29**

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26
27



28

**EXHIBIT A-1 - 30**

53.     Similarly, Aristocrat uses the Dragon Link Trade Dress to advertise its Dragon Link games, as seen in the following screenshot of Aristocrat's website[4]:



54.     As shown above, the website specifically mentions the "beautiful Orb trigger symbol," which "mak[es] it easy to recognize regardless of the game you're enjoying."

55.     As a result of Aristocrat's investments in development and marketing, Dragon Link has been very successful around the world, including in the United States and Nevada in particular.  There currently are thousands of Dragon Link EGMs available in casinos across more than 35 states, including Nevada.

56.     Since its launch, Dragon Link has received a significant amount of publicity, including awards and recognition of the game as a unique industry-leading product. These awards include *Casino Journal*'s Top 20 Most Innovative Gaming Technology Awards for

---

[4] *See* Aristocrat, *Dragon Link*, ARISTOCRAT GAMING (last visited February 24, 2024), https://www.aristocratgaming.com/us/slots/game-groups/dragon-link.

**EXHIBIT A-1 - 31**

2016,[5] the EKG Slot Awards Top Performing Premium Game for the years 2021[6] and 2022,[7] the EKG Slot Awards Top Performing Proprietary Branded Game for the years 2021[8] and 2023,[9] and the EKG Slot Awards Top Performing New Premium Game for 2022 (for a new Dragon Link game variation).[10]  ReelMetrics, a data science and market research firm, found that Dragon Link games were the top five best performing premium slot games on the market.[11]  Seminole Casino

---

[5] *See* Marketwired, *Aristocrat's New Dragon Link(TM) and Fast Cash(TM) Slot Games Named to Casino Journal's Top 20 Most Innovative Gaming Technology Products List*, YAHOO FINANCE (Mar. 28, 2017), https://finance.yahoo.com/news/aristocrats-dragon-tm-fast-cash-151843771.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAADQpSUO4mG8-gI1P8afGkJfD_cBocLHO2z67hlyC1oF4M02a-ZQQX3XNSVDlT5Vzh6MKsUPPETLkO0YFezWsuHo3Xujjt_gqES452vU0p_Ldzv7_crXulFeJzDh783vlXlOxGfozXoyNlTJiwf65OHZ0Ozy0YQBz326rxBNfo5eW (Ex. B at 1–2).

[6] *See Aristocrat Gaming™ Repeats "Best Overall Supplier of Slot Content" Win at EKG Slot Awards*, PR NEWSWIRE (Apr. 7, 2021), https://www.prnewswire.com/news-releases/aristocrat-gaming-repeats-best-overall-supplier-of-slot-content-win-at-ekg-slot-awards-301264528.html (Ex. C at 1–3).

[7] *See Aristocrat Gaming™ Three-peats "Best Overall Supplier of Slot Content" Win at EKG Slot Awards*, PR NEWSWIRE (Mar. 7, 2022), https://www.prnewswire.com/news-releases/aristocrat-gaming-three-peats-best-overall-supplier-of-slot-content-win-at-ekg-slot-awards-301496886.html (Ex. D at 1–2).

[8] *See Aristocrat Gaming™ Repeats "Best Overall Supplier of Slot Content" Win at EKG Slot Awards*, PR NEWSWIRE (Apr. 7, 2021), https://www.prnewswire.com/news-releases/aristocrat-gaming-repeats-best-overall-supplier-of-slot-content-win-at-ekg-slot-awards-301264528.html (Ex. C at 3).

[9] *See* PR Newswire, *Casino Industry Experts Honor Aristocrat Gaming™ with "Best Overall Supplier" at EKG Slot Awards*, YAHOO FINANCE (Mar. 1, 2023), https://finance.yahoo.com/news/casino-industry-experts-honor-aristocrat-140000033.html (Ex. E at 1–2).

[10] *See Aristocrat Gaming™ Three-peats "Best Overall Supplier of Slot Content" Win at EKG Slot Awards*, PR NEWSWIRE (Mar. 7, 2022), https://www.prnewswire.com/news-releases/aristocrat-gaming-three-peats-best-overall-supplier-of-slot-content-win-at-ekg-slot-awards-301496886.html (Ex. D at 1).

[11] *See Aristocrat Gaming Keeps On Leading the Way In Core and Premium Slots*, G&M NEWS (Jan. 27, 2023), https://g-mnews.com/en/aristocrat-gaming-keeps-on-leading-the-way-in-core-and-premium-slots/ (Ex. F at 4).

1 Hotel Immokalee opened a lounge dedicated exclusively to Dragon Link and Lightning Link,
2 recognizing that Dragon Link is one of "the most popular games in the industry."[12]

3       57.    Much of this publicity explicitly highlights the Dragon Link Audiovisual
4 Elements and the Dragon Link Trade Dress.  For example, *Casino Review*, in recognizing Dragon
5 Link's player interest and awards, declared that Dragon Link "is breathing a fire of excitement on
6 casino floors across North America"—a reference to the various Dragon Link audiovisual
7 elements that incorporate fire imagery and graphics.[13]  *Casino Review* further recognized that
8 Dragon Link's "orb" graphic element "makes it simple for players to easily recognise the Hold &
9 Spin trigger across all game themes."[14]  Similarly, another article, noting Dragon Link's "premium
10 appeal," specifically pointed to its "common trigger symbol," which "makes it easy for players to
11 recognize the Hold & Spin mechanic, regardless of which [Dragon Link] game they are
12 enjoying."[15]  And another article touted Dragon Link's "rich audio-visual elements," including
13 noting that its bonus feature "fires up the entire screen in a frenzy of glittering golden pyrotechnics"
14 and that the "musical score and in-game mechanics perfectly complement the action."[16]

15       58.    Dragon Link's popularity has expanded worldwide.  One publication,
16 covering Dragon Link's expansion into Manila, specifically noted the game's "phenomenal

---

[12] *See Seminole Casino Hotel Immokalee Opens Florida's First Aristocrat Lightning Link Lounge*, INDIAN GAMING (Dec. 15, 2022), https://www.indiangaming.com/seminole-casino-hotel-immokalee-opens-floridas-first-aristocrat-lightning-link-lounge/ (Ex. G at 1).

[13] *See Aristocrat's Dragon Link™ Flies Into North America*, CASINO REVIEW (December 21, 2017) (Ex. H at 1).

[14] *Id.* at 2.

[15] *See* Marketwired, *Aristocrat's New Dragon Link(TM) and Fast Cash(TM) Slot Games Named to Casino Journal's Top 20 Most Innovative Gaming Technology Products List*, YAHOO FINANCE (Mar. 28, 2017), https://finance.yahoo.com/news/aristocrats-dragon-tm-fast-cash-151843771.html?guccounter=1 (Ex. I at 1).

[16] *See* 888 Casino, *What's Hot About Dragon Link Slot*, CASINO BLOG (July 14, 2020), https://us.888casino.com/blog/dragon-link-slot (Ex. J at 1–2).

success" globally.[17]  And as the trade publication *Gaming America* concluded, "Dragon Link is one of the most popular slot games in the world."[18]

59.    As a result of Dragon Link's popularity, many casinos in the United States explicitly advertise the fact that they carry Dragon Link slot machines to attract customers.  Such casinos have included Seminole Hard Rock Hotel & Casino of Tampa,[19] Hollywood Casino at Kansas Speedway,[20] Seminole Casino Coconut Creek,[21] Plainridge Park Casino,[22] and Bristol Casino.[23]

60.    Dragon Link is an extremely valuable asset for Aristocrat—and Aristocrat continues to invest in the brand.  In response to Dragon Link's immense popularity, Aristocrat continues to develop new Dragon Link games and variations, all of which employ the core aspects of the Dragon Link Trade Dress that make the game so easily recognizable to and popular with customers.

61.    Because of Dragon Link's widespread success, consumers recognize the Dragon Link Trade Dress and favorably associate it with Aristocrat.  This contributes to Aristocrat's goodwill and reputation.  For instance, on a discussion forum on Vegas Fanatics, a user posted a video of themselves playing Dragon Link with the caption "Some HUGE ORBS with

---

[17]  Ben Blaschke, *Chasing the Dragon*, INSIDE ASIAN GAMING (July 28, 2022), https://www.asgam.com/index.php/2022/07/28/chasing-the-dragon/ (Ex. K at 3).

[18] *Product Review: Dragon Link $1m Slot by Aristocrat*, GAMING AMERICA (Jan. 16, 2023), https://gamingamerica.com/magazine/6852/product-review-dragon-link-1m-slot-by-aristocrat (Ex. L at 3).

[19] *See Slots*, SEMINOLE HARD ROCK TAMPA (last visited February 24, 2024), https://www.seminolehardrocktampa.com/casino/slots.

[20] *See Casino*, HOLLYWOOD CASINO AT KANSAS SPEEDWAY (last visited February 24, 2024), https://www.hollywoodcasinokansas.com/casino/slots.

[21] *See Slots*, SEMINOLE CASINO COCONUT CREEK (last visited February 24, 2024), https://www.seminolecoconutcreekcasino.com/casino/slots.

[22] *See Casino*, PLAINRIDGE PARK CASINO (last visited February 24, 2024), https://www.plainridgeparkcasino.com/casino/slots.

[23] *See Slots*, BRISTOL CASINO (last visited February 24, 2024), https://www.hardrockhotelcasinobristol.com/casino/slots.

**EXHIBIT A-1 - 34**

1    live play! . . . #Aristocrat."[24]   "HUGE ORBS" here appears to refer to the "orbs" that form a

2    prominent visual element of the Dragon Link Trade Dress.

3            62.    Similarly, *This Week in Gambling*, a gambling news website, posted a video

4    publicizing Dragon Link titled "Dragon Link Slot Bank from Aristocrat."[25]   The video informs

5    viewers that "Aristocrat's new Dragon Link slot bank has been named to Casino Journal's list of

6    the Top 20 Most Innovative Gaming Technology Products for 2016."

7            63.    Likewise, a *Gaming America* review of Dragon Link wrote "Aristocrat

8    breathes (fiery) new life into high denomination slots," and said that "Aristocrat's Dragon Link

9    jackpot brand has long been a favorite among slot machine fanatics."[26]

10           64.    The Dragon Link Trade Dress is thus well known by consumers and serves

11   as indication to consumers of the source of the Dragon Link games.

12       **B.    L&W's Repeated Efforts to Copy Dragon Link**

13           65.    L&W competes with Aristocrat.  On information and belief, L&W is aware

14   of Dragon Link's success and has targeted it in designing competing products.  But instead of

15   creating its own unique games to compete with Aristocrat's games, L&W has copied the name,

16   appearance, sounds, and gameplay of Aristocrat's Dragon Link in a series of L&W games,

17   including Dragon Unleashed Link, Jewel of the Dragon, and Dragon Train.

18           66.    In its Annual Financial Report for the year ended December 31, 2021, L&W

19   reported that it was shifting away from lottery and sports betting businesses in order to focus on

20   gaming.  *See* Ex. O at 8.  In the same report, L&W stated that "the gaming machine sector is highly

21   competitive," and identified Aristocrat as one of its primary competitors.  *Id.* at 9.

22

23   _____
     [24] *Holy! Huge Orbs! Dragon Link Golden Century Live Play*, VEGAS FANATICS (Sep. 28, 2019),
24   https://vegasfanatics.com/index.php?threads/holy-%E2%98%80%EF%B8%8Fhuge-orbs-
     %E2%98%80%EF%B8%8F-dragon-link-golden-century-live-play.7018/ (Ex. M at 1).
25
     [25] *Dragon Link Slot Bank From Aristocrat*, THIS WEEK IN GAMBLING (Apr. 5, 2017),
26   https://www.thisweekingambling.com/dragon-link-slot-bank-aristocrat/ (Ex. N at 1).

27   [26] *Product Review: Dragon Link $1m Slot by Aristocrat*, GAMING AMERICA (Jan. 16, 2023),
     https://gamingamerica.com/magazine/6852/product-review-dragon-link-1m-slot-by-aristocrat
28   (Ex. L at 2).

67.     This shift has coincided with L&W's hiring of a number of former Aristocrat executives and game designers.  As *Global Gaming Business Magazine* recognized, since 2020 L&W has hired "many executives . . . who formerly were with Aristocrat."[27]  These executives include Jamie Odell, Executive Chairman of L&W, formerly CEO of Aristocrat; Matt Wilson, Director and CEO of L&W, formerly President and Managing Director, Americas, at Aristocrat; Toni Korsanos, Executive Vice-Chair of L&W, formerly Chief Financial Officer and Head of Strategy at Aristocrat; Siobhan Lane, Executive Vice President and CEO of Gaming of L&W, formerly Senior Vice President of Marketing and Gaming Operations at Aristocrat; Ted Hase, Senior Vice President, Game Design, of L&W, formerly Senior Vice President of R&D at Aristocrat; Victor Blanco, Chief Technology Officer of L&W, formerly Chief Technology Officer of Aristocrat; Oliver Chow, Chief Financial Officer of L&W, formerly Chief Financial Officer, Americas, of Aristocrat; Anthony Firmani, Chief Operations Officer of L&W, formerly Senior Vice President, Operations, at Aristocrat; and Nathan Drane, Senior Vice President, Global Product Management, at L&W, formerly Vice President, Commercial Strategy, at Aristocrat.

68.     In addition to these former employees, Rich Schneider joined L&W as Chief Product Officer in July 2021, hired directly from his job as Chief Product Officer of Aristocrat.  Mr. Schneider's L&W biography states that he "oversees L&W's land-based gaming product strategy,"[28] which, on information and belief, includes the Jewel of the Dragon slot machine.  Mr. Schneider's biography also states that he was hired because of his "product expertise," including from his experience at Aristocrat, where he held the same role.  Based on his experience, Mr. Schneider "knows what makes a good game."  Mr. Schneider was Chief Product Officer of Aristocrat when Dragon Link was developed, and he has firsthand knowledge of Dragon Link's and Lightning Link's success and features.

---

[27] Frank Legato, *Light & Wonder*, GLOBAL GAMING BUSINESS MAGAZINE (Sep. 27, 2022), https://ggbmagazine.com/article/light-wonder-2/ (Ex. P at 2).

[28] *Rich Schneider*, LIGHT & WONDER (last visited February 24, 2024), https://explore.lnw.com/about/our-leadership/rich-schneider/ (Ex. Q at 1).

69.     Emma Charles is another former Aristocrat employee who, until being terminated in October 2024, worked for L&W.  Ms. Charles was a senior game designer at Aristocrat from around December 2008 to October 2012, and from October 2012 to July 2017, she worked on secondment to High Roller Gaming Pty Ltd. ("HRG")—which develops games exclusively for Aristocrat, including Lightning Link and Dragon Link.[29]  While at Aristocrat and HRG, Ms. Charles worked extensively on Lightning Link and Dragon Link and thus had unfettered access to, and was knowledgeable about, highly confidential information relating to these games, including details of the underlying math and functionality.  Ms. Charles has firsthand knowledge of Lightning Link and Dragon Link's success and the features responsible for that success.

70.     Ms. Charles's employment agreement with Aristocrat includes standard confidentiality obligations, including obligations, during her employment and thereafter, not to (a)  disclose Aristocrat's confidential information, or (b) use or facilitate, or allow others to use, Aristocrat's confidential information.

71.     Another former Aristocrat employee, Lloyd Sefton, worked for L&W until recently as an artist.  Mr. Sefton was previously employed by Aristocrat for around 15 years, from around May 2001 to February 2016.  Mr. Sefton was initially a Graphics Designer/Illustrator, and then became a Lead Artist.  During that time, he had access to highly confidential information relating to Lightning Link and other Aristocrat games.  Under Mr. Sefton's employment contract with Aristocrat, he was subject to the same restraint as Ms. Charles prohibiting disclosure or use of Aristocrat's confidential information following his employment.

72.     In addition to the individuals identified above, Dinh Toan Tran worked for Aristocrat as a game designer since 2008.  Under Mr. Tran's employment contract with Aristocrat, he was subject to the same restraint as Ms. Charles and Mr. Sefton prohibiting disclosure or use of Aristocrat's confidential information following his employment.   Mr. Tran resigned from Aristocrat at the end of 2023 and notified Aristocrat that he would be joining L&W.  Before leaving

---

[29] Aristocrat is the owner of all IP in the games created by HRG, including Lightning Link and Dragon Link.

EXHIBIT A-1 - 37

Aristocrat, Mr. Tran allegedly downloaded to a personal device, without authorization, an extensive cache of Aristocrat trade secrets and proprietary information, including over **6,800** files. Aristocrat is currently pursuing legal recourse against Mr. Tran in Australia, and a court has ordered the seizure and inspection of his devices.[30]

### 1. *Dragon Unleashed Link*

73.     L&W's improper efforts to capitalize on Dragon Link's success hit the market in March 2022, when L&W unveiled a game it called DRAGON UNLEASHED LINK at the annual Australasian Hospitality and Gaming Expo, a premier showcase for the gaming industry.  The game was a repurposed version of a previously deployed L&W game called DRAGON UNLEASHED, with the addition of the word LINK at the end of the title giving it a confusingly similar title to Aristocrat's Dragon Link game.  Aristocrat promptly contacted L&W objecting to the infringement of Aristocrat's DRAGON LINK trademark due to the obvious similarity between the two games' prominent use of both DRAGON and LINK in their titles, and demanding that L&W cease use of the name DRAGON UNLEASHED LINK.  But the copying did not stop there.

### 2. *Jewel of the Dragon*

74.     After its initial attempt to copy Dragon Link's name, L&W then decided to copy (among other things) Dragon Link's distinctive audiovisual and trade dress elements.

75.     In or around June 2021, around the time that Ms. Charles and Mr. Schneider joined the company, L&W began designing and developing a new slot machine game called Jewel of the Dragon.  On information and belief, L&W's Studio Heads UP design team, which is based in Las Vegas and led by Christopher Guerrero, was primarily responsible for developing the game. This game was an extensive redesign of an older L&W slot machine game also called Jewel of the

---

[30] *See* Sarah Danckert, *Pokies Giant Gets Orders Against Senior Staffer Who Allegedly Downloaded Cache of Company Documents*, THE SYDNEY MORNING HERALD (Jan. 11, 2024), https://www.smh.com.au/business/companies/pokies-giant-gets-orders-against-senior-staffer-who-allegedly-downloaded-cache-of-company-documents-20240111-p5ewho.html (Ex. R 1–3).

Dragon.  The new game bore little resemblance to the old Jewel of the Dragon game and instead copied heavily from Aristocrat's Dragon Link game.

76.  On information and belief, L&W's development of Jewel of the Dragon continued from June 2021 until the game was approved for release in the United States in 2022.

77.  Much like Dragon Link, Jewel of the Dragon is a game series that appears on EGMs with linked progressive jackpots and that offers multiple game themes under the name JEWEL OF THE DRAGON (A Thousand Warriors, Valley of the Tiger, Red Phoenix, and Prosperity Tortoise).  Unless otherwise noted, on information and belief, the elements that L&W copied from Dragon Link, as described herein, are present in all four of these game titles, as originally developed and released by L&W.  On information and belief, a digital version of Jewel of the Dragon has been offered, promoted, or displayed in substantially the same form through Defendant SciPlay, Inc.'s Jackpot Party mobile app and/or website.

78.  Jewel of the Dragon uses a logo (the "Jewel of the Dragon Standard Logo") consisting of the words JEWEL OF THE DRAGON written in all capital letters, in a red-to-black fade, with the word DRAGON far larger and more prominent than the other words.  The words are superimposed on a gold orb, including a bright, fiery outline around the orb's circumference. The orb is ringed with flames, and the entire logo appears on a rectangular landscape cabinet topper lit with a bright red border.  Many striking similarities between L&W's Jewel of the Dragon Standard Logo and Aristocrat's Dragon Link Standard Logo may be seen below:





**Aristocrat's Dragon Link**            **L&W's Jewel of the Dragon**

79.    These similarities include the words "Dragon" written in red-to-black fade text coloring, central placement of the words on a gold orb with a bright, fiery outline, and a lit, bright red border around the landscape topper.

80.    The two games' logos even include similar detailing resembling dragon scales:





**Aristocrat's Dragon Link**                    **L&W's Jewel of the Dragon**

81.    The large, prominent presentation of the word DRAGON in the Jewel of the Dragon Standard Logo is particularly noteworthy given that dragons do not appear in or play any significant role in the Jewel of the Dragon game.

82.    Also much like Dragon Link, Jewel of the Dragon features a display showing the game's jackpots and bonuses (the "Jewel of the Dragon Jackpot Display") and including the following features (compared side-by-side further below to Aristocrat's Dragon Link Jackpot Display):

**EXHIBIT A-1 - 40**

- A Jewel of the Dragon logo in a red-to-black fade, with the word DRAGON far larger and more prominent than the other words in the logo.

- A tiered list of gaming jackpots and bonuses, which appears below the Jewel of the Dragon logo.

- The top list level is outlined on each side by the same gold orb with a bright, fiery outline that appears on the cabinet topper, and the other list levels are outlined by similar glowing orbs, with the words GRAND, MAJOR, MINOR, and MINI (for jackpot sizes).

- The prize amounts of each jackpot appear in the same color as their corresponding jackpot title (for example, the word GRAND for the grand jackpot is red, so the prize for the grand jackpot is also in red).

- Each jackpot prize amount appears against a black background.

- All of the foregoing elements are set in front of a background that fades to black at the top of the display where the Jewel of the Dragon logo appears.

83.    The Jewel of the Dragon Jackpot Display (below left) is strikingly similar to the Dragon Link Jackpot Display (below right).  These similarities include a tiered list of gaming jackpots and bonuses appearing below the game name, each list level being surrounded by glowing, animated gold orbs with bright, fiery outlines, the same words for each jackpot/bonus (GRAND, MAJOR, MINOR, and MINI), each jackpot/bonus appearing in a different color, three of the four colors, including the most prominent (*i.e.*, the GRAND jackpot), being identical, and each jackpot/bonus amount appearing on a black background, outlined in gold.  The foregoing elements are set in front of a background that fades to black at the top of the display where game logos appear.



**Aristocrat's Dragon Link**



**L&W's Jewel of the Dragon**

26

84.     Jewel of the Dragon offers a "Hold & Spin" bonus feature that incorporates several features highly similar to the Dragon Link Hold & Spin Bonus Feature, including the Dragon Link Hold & Spin Design that customers associate with Aristocrat's games.  Like Dragon Link, the upper display contains a large gold orb with a bright, fiery outline that says "HOLD & SPIN" when the feature is first activated, and then, when the bonus game is in progress, includes a count of the bonus symbols collected.  The lower display contains reels on which the bonuses (either credit values or one of the four jackpots/bonuses) appear inside gold orbs with bright, fiery outlines, just like Dragon Link.  Each time a bonus symbol appears on the reels, a drum sounds and a flame flares around the bonus symbol on the lower display and around the gold orb on the upper display.  Also like Dragon Link, a dark gradient appears over the positions in the reels that do not contain bonus symbols.  Below are images of the Jewel of the Dragon "Hold & Spin" bonus feature when first activated (left) and when in progress (right).

 

85.     As in the Dragon Link Hold & Spin Design, at the end of the Jewel of the Dragon "Hold & Spin" bonus feature, a flame flares out of each bonus symbol and flies in a curved trajectory towards a meter on the upper display that keeps track of the total credits won, activating a gong sound when the flame hits the meter.  After all the bonus awards have been tallied, the Coin Shower animation is displayed.  The image below left shows the flame flare effect when bonus

symbols are tallied, while the image below right shows the Coin Shower at the bonus game's conclusion.



86.     The similarities between Jewel of the Dragon's Hold & Spin bonus feature and the Dragon Link Hold & Spin Bonus Feature (including the Dragon Link Hold & Spin Design) are readily apparent when viewing images of each side-by-side, including but not limited to those listed below (Jewel of the Dragon on the left and Dragon Link on the right):

- Both games feature a large gold orb with a bright, fiery outline over a red and black background, superimposed with the words HOLD & SPIN.

- Above the orb, rectangular meter boxes with gold orbs at the sides with bright, fiery outlines, and labels appearing in the circles where the color of the label matches the color of the jackpot amount (including identical jackpot labels and three of the four same colors).  The meter boxes have gold borders, and the jackpot amounts are outlined in gold.

- Below the orb, a 3 x 5 grid of boxes with gold borders.





- During the game, the gold orb changes to a symbol counter, with a large numeral showing the number of bonus symbols that have appeared on the reels, directly above the word COLLECTED and text indicating that 15 symbols result in the GRAND JACKPOT, where GRAND appears in red and JACKPOT appears in yellow.

- The bonus game features gold bonus symbols with bright, fiery outlines displaying numerical values or jackpot/bonus names, surrounded by a ring of fire. A dark gradient appears over the reel positions that do not contain bonus symbols.

- A small rectangular box with gold borders that overlays the top edge of the grid and indicates the number of FREE SPINS REMAINING, which appears in yellow.





**EXHIBIT A-1 - 44**

- Reddish-gold fire bolts that arc off of the gold bonus symbols and up to a total win box, where they explode to the sound of a gong as the score accumulates.  The word WINNER appears in all caps directly above the win box, which is surrounded by light.

 

- A Coin Shower at the conclusion of the feature.

 

87.    Another similarity appears in the Red Phoenix version of the Jewel of the Dragon game, which prominently features a dark-haired woman in an ornate headdress facing the viewer.  This woman appears just below the Jewel of the Dragon Jackpot Display.  Rather than connecting to the game's phoenix theme, this artwork appears designed to resemble the equivalent

**EXHIBIT A-1 - 45**

artwork in the Autumn Moon version of Dragon Link, which also features a dark-haired woman in an ornate headdress facing the viewer.  See Dragon Link Autumn Moon, below left, and Jewel of the Dragon Red Phoenix, below right.

 

88.    Jewel of the Dragon's audiovisual elements are substantially similar to the Dragon Link Audiovisual Elements and copy protectable expression of Aristocrat in those elements.

89.    Beyond those similarities discussed above, other striking similarities between the audiovisual elements of Jewel of the Dragon and Dragon Link include:

    a.    similar graphics during the games' bonus features, *e.g.*, the large gold orb with bright, fiery outline graphic at the top of the screen; the yellow flaming graphics that flank the large gold orb; the gold orbs with bright, fiery outlines on which bonus amounts appear; the flame graphics that spin around the gold orbs; the synchronization between all the spinning flames on the screen at the same time; the audiovisual representation of a flaming "explosion" when gold orb bonuses appear

on the reels; the flame graphics that burst out of the gold orbs on the reels when the jackpots are tallied and curve around the screen until they collide with and appear to ignite the box containing the total jackpot amount; the flame graphics that surround the total jackpot amount; and the Coin Shower animation upon completion of the "Hold & Spin" bonus feature;

b.  similar sounds during the games' bonus features, *e.g.*, music that plays in the background; the "push" sound that plays when reels are spun; and the gong, firework, and other sounds that play when jackpot amounts are totaled; and

c.  similar reel artwork during the base game play, *e.g.*, the use of gold orbs as bonus symbols; various reel symbol graphics that spin or increase in size when activated; royal symbols; and flora and fauna symbols.

90.  The audiovisual elements that L&W copied from Dragon Link constitute protectable expression of Aristocrat.  They reflect original, creative, and expressive choices that were made in designing and developing Dragon Link.  The design choices available to L&W in creating a slot machine game, including one that has similar game mechanics as Dragon Link (*e.g.*, a hold-and-spin bonus), were virtually unlimited.  L&W had no need to appropriate substantially the same audiovisual elements as Dragon Link.  For example, a hold & spin game—even one having an Asian or dragon theme—does not require the use of gold orbs with bright, fiery outlines surrounded by rings of fire as bonus symbols, a large gold orb as a symbol counter, animated fire bolts that arc off of the bonus symbols and up to a total win box, and so on.  These elements, along with the numerous other Dragon Link Audiovisual Elements that appear in Jewel of the Dragon, are protectable expression that L&W is not entitled to copy without Aristocrat's permission.

91.  L&W has publicly distributed copies of its Jewel of the Dragon game in the United States, and around the world, at least by (a) offering EGMs containing the game to casinos, and (b) offering mobile apps and/or websites, including Jackpot Party, that contain the game.  In addition, L&W has promoted its Jewel of the Dragon games in the United States, and around the

world, through, among other channels, a publicly accessible website displaying images of the game, including the Jewel of the Dragon Standard Logo and certain of the artwork shown above.[31]

92.    L&W's use of the confusingly similar features described above also infringes the Dragon Link Trade Dress, because they give the Jewel of the Dragon games a nearly identical look and feel to the Dragon Link Trade Dress.

93.    On information and belief, L&W intentionally seeks to confuse players and to lead them to believe, incorrectly, that its Jewel of the Dragon games were developed by Aristocrat, or are otherwise from or associated with or endorsed by Aristocrat, with the goal of enticing players to play the Jewel of the Dragon games.

94.    Confusion is particularly likely in the context of casinos and social gaming apps, where players have ready access to a variety of games, often face low costs to play, and may move quickly to and between games.

95.    Indeed, L&W's plan to confuse customers appears to be working.  A video posted on YouTube by a channel devoted to slot machines questions whether Jewel of the Dragon is a "New Dragon Link?" and observes that the Hold & Spin bonus feature is "just like Dragon Link."[32]  Another video posted on YouTube by a different channel devoted to slot machines reports about Jewel of the Dragon that "[I've] never played it before, [but] I'm pretty sure it's gonna be just like a Dragon Link slot."[33]

96.    Moreover, to the extent such players have unsatisfactory experiences with the Jewel of the Dragon games, it harms the reputation of Aristocrat and its Dragon Link games.

97.    On information and belief, L&W has knowingly and for profit engaged in this infringing use of the Aristocrat trade dress to attract players, knowing that players would

---

[31] *See Jewel of the Dragon - Red Phoenix*, LIGHT & WONDER GAMING (Ex. S at 1).

[32] *See New Dragon Link? Jewel of the Dragon and Release the Kraken HOT SLOT Bonuses Yaamava' Casino*, YOUTUBE (Oct. 1, 2022), https://www.youtube.com/watch?v=xOkbStkJ5Is.

[33] *See I TRIPLED MY MONEY On This New Jewel Of The Dragon Slot Machine In Las Vegas!!*, YOUTUBE (Dec. 31, 2022), https://www.youtube.com/watch?app=desktop&v=-CqupGMUF3w.

1    wrongly believe that the games are associated or affiliated with, or sponsored or endorsed by,
2    Aristocrat.

3         98.    The likelihood of confusion created by this intentional offering of nearly
4    identical goods with confusingly similar trade dress is even greater because L&W offers its Jewel
5    of the Dragon games through identical marketing channels in direct competition with the Dragon
6    Link games, such as through EGM placements in casinos, including casinos that also feature
7    Dragon Link, and in digital format for playing on the internet and on mobile applications.

8         99.    On December 19, 2022, Aristocrat notified L&W by letter of L&W's
9    unauthorized use of Aristocrat's Dragon Link trade dress and copyrights in connection with Jewel
10   of the Dragon, and asked L&W to cease such use.  The parties engaged in discussions over several
11   months, but no resolution was reached.

12        100.   On information and belief, L&W's unauthorized use of the Dragon Link
13   Audiovisual Elements and the Dragon Link Trade Dress was continuing as of the date this action
14   was filed.

15        101.   On information and belief, L&W used Aristocrat trade secrets relating to
16   the Dragon Link and/or Lightning Link mathematical design to develop Jewel of the Dragon. On
17   information and belief, L&W obtained these trade secrets from Ms. Charles or other former
18   Aristocrat employees, knowing or having reason to know that the trade secrets were subject to
19   confidentiality obligations owed to Aristocrat and had been acquired through improper means.

20            **3.    *Dragon Train***

21        102.   After copying the Dragon Link name and audiovisual and design elements,
22   as well as using confidential Dragon Link math information, L&W's next move was to create an
23   even closer copy of Dragon Link's signature game design elements and gameplay.

24        103.   In August 2023, at the Australian Gaming Expo, L&W launched in
25   Australia a game called DRAGON TRAIN that was designed and developed by Emma Charles.
26   On information and belief, Dragon Train is an attempt to mimic many of the unique game
27   mechanics of Dragon Link, including the underlying math and functionality. Both Dragon Link
28   and Dragon Train feature Asian-inspired dragon themes, including by using a large red and gold

swirling dragon.  Both games also use DRAGON as the first word of a two-word game name and contain a number of visual similarities.  But the similarities between Dragon Link and Dragon Train go far beyond appearances.  Both Dragon Link and Dragon Train are multi-denomination games, meaning players can bet different amounts of money.  Both allow bets in the following denominations: 1 cent, 2 cents, 5 cents, 10 cents, $1, and $2.  And both utilize a 3 x 5 reel grid (*i.e.*, five reels, each of which consist of three visible symbol positions).

104.    Dragon Link and Dragon Train also have very similar symbol sets, including five royal symbols, four "picture" symbols, a scatter symbol, a wild symbol, and a "Hold & Spin" bonus symbol.

105.    Video slot machine games typically feature a "pay table," which provides an overview of payout amounts and win conditions for the various symbols that appear on the reels.  The Dragon Link and Dragon Train pay tables are highly similar.  For example, the images below show the pay tables for both games' 10-cent bets.



**Dragon Link 10-cent pay table**

**EXHIBIT A-1 - 50**



**Dragon Train 10-cent pay table**

106.    Both of these pay tables feature the identical payout amounts and win conditions, with the sole exception being one small difference in the first bullet point below:

i.    A "scatter" symbol that pays out when it appears 5, 4, or 3 times.  The amounts paid out are nearly identical: 5 symbols pay 100, 4 pay 15 (Dragon Link) or 10 (Dragon Train), and 3 pay 2.

ii.    Both feature a "substitute" (or wild) symbol that can appear on reels 2, 3, 4, and 5 only.

iii.    Both feature one picture symbol that pays out 150 when it appears 5 times, 50 when it appears 4 times, 10 when it appears 3 times, and 2 when it appears 2 times.

iv.    Both feature one picture symbol that pays out 100 when it appears 5 times, 30 when it appears 4 times, and 5 when it appears 3 times.

v.    Both feature two picture symbols that pay out 100 when they appear 5 times, 25 when they appear 4 times, and 5 when they appear 3 times.

vi.    Both feature one royal symbol that pays out 75 when it appears 5 times, 20 when it appears 4 times, and 5 when it appears 3 times.

vii.    Both feature four royal symbols that pay out 50 when they appear 5 times, 10 when they appear 4 times, and 5 when they appear 3 times.

36                                                          **EXHIBIT A-1 - 51**

107.    As a further example, the images below show the pay tables for the games' $1 bets.



**Dragon Link $1 pay table**

**Dragon Train $1 pay table**

108.    Both of these pay tables have identical payout amounts and win conditions, including:

    i.    A "scatter" symbol that pays out when it appears 5, 4, or 3 times.  The amounts paid out are identical: 5 symbols pay 100, 4 pay 10, and 3 pay 2.

    ii.    Both feature a "substitute" (or wild) symbol that can appear on reels 2, 3, 4, and 5 only.

**EXHIBIT A-1 - 52**

iii. Both feature one picture symbol that pays out 250 when it appears 5 times, 50 when it appears 4 times, 10 when it appears 3 times, and 3 when it appears 2 times.

iv. Both feature one picture symbol that pays out 150 when it appears 5 times, 30 when it appears 4 times, 5 when it appears 3 times, and 2 when it appears 2 times.

v. Both feature two picture symbols that pay out 100 when they appear 5 times, 25 when they appear 4 times, 5 when they appear 3 times, and 2 when they appear 2 times.

vi. Both feature one royal symbol that pays out 75 when it appears 5 times, 20 when it appears 4 times, and 5 when it appears 3 times.

vii. Both feature four royal symbols that pay out 50 when they appear 5 times, 10 when they appear 4 times, and 5 when they appear 3 times.

109. Like Dragon Link, Dragon Train features a "Hold & Spin" bonus feature. The two games' "Hold & Spin" features are functionally (and visually) similar, following nearly identical rules. In both games, six or more gold orb symbols trigger the "Hold & Spin" feature, which awards the player three free games. The orbs are held in place as the player enters the feature. Any additional orbs that appear during the feature are also held, and the number of spins resets to three each time a new orb lands on the reels. The orbs that appear on the reels display the bonus names and amounts, and a large gold orb in the upper display shows the number of orbs collected and the number of orbs required to win the Grand Jackpot (fifteen in both games). At the end of the feature, the value of each of the held orbs is counted, with an electrical bolt (in Dragon Train) or a flame (in Dragon Link) connecting each orb to a win meter that appears underneath the word "WINNER" in the upper display. In addition to the Grand Jackpot, there is an option to win a Major Jackpot, a Minor Bonus, and a Mini Bonus during the feature. In both games, if a player is playing a 1-cent, 2-cent, 5-cent or 10-cent denomination, the values on the orbs are displayed in credit prizes. If the player is playing a $1 or $2 denomination, the values on the orbs changes to dollar prizes.





**Dragon Link Hold & Spin**                    **Dragon Train Hold & Spin**

110.    In both games, a Coin Shower animation occurs with any win of 25 (or more) times the bet made during the base game, free games, or Hold & Spin feature.  In both games the coin image is an ancient Chinese coin, with a square shaped hole and 4 Chinese characters. The similarities are evident from the images below:





**Dragon Link Winner screen**                  **Dragon Train Winner screen**

111.    Also like Dragon Link, Dragon Train includes a separate free games feature that is triggered when three or more scatter symbols appear on the reels.

112.    Dragon Train also offers players a set of tiered jackpots or bonuses closely resembling those in Dragon Link, including a Grand Jackpot, Major Jackpot, Minor Bonus, and Mini Bonus, even featuring identical colors for three of the jackpots or bonuses.  Both games have the same win conditions for the Grand and Major Jackpots.


**Dragon Link attract screen**


**Dragon Train attract screen**

113.    In addition to the substantially similar symbol set, pay tables, game rules, and game features, including similar "Hold & Spin" and free games bonus features, Dragon Train is, on information and belief, an attempt to replicate Dragon Link's underlying math and functionality that provides the game's unique "feel."  As explained further above, the "feel" includes how players experience the underlying math of a game, such as the game's volatility— *i.e.*, how often a game pays out prizes and the amounts of those prizes.  Achieving the right feel is critical to a successful game, and is what attracts and retains player engagement above and beyond flashy visual elements.  It results from the detailed, complex, and highly confidential math and functionality that govern the game's outcomes.

114.    The underlying math and functionality of a game, and the resulting feel of the game, distinguish video slot machine games from one another that otherwise share audiovisual elements, and is frequently the reason why some games are successful while other visually similar games are not.  The success of Lightning Link and Dragon Link are due in part to their unique feel.  There have been dozens of unsuccessful competitors that have offered "Hold & Spin" games, some

1    of which incorporate visually similar elements (including L&W's Jewel of the Dragon), but failed

2    because they did not achieve a comparable feel.

3         115.    Successful replication of the player experience and "feel" of a game,

4    especially one as complex as Dragon Link or Lightning Link, requires mimicry of many different

5    components of the game mechanics (*e.g.*, the composition of reel strips and symbols;

6    combinations, pathways, and probabilities for winning or triggering particular outcomes;

7    assignment of payouts per win; overall volatility; RTP; the methodology underlying the operation

8    of the base and bonus games) that turn on sophisticated underlying game math and functionality,

9    as further described above. Merely copying the public-facing aspects of a game would be unlikely

10    to produce a cohesive, functional game that could operate in the same way and provide the same

11    player experience as the original.

12         116.    The complex and interrelated game mechanics underlying sophisticated

13    games like Dragon Link and Lightning Link are carefully designed, calibrated, and operationalized

14    to provide a seamless, attractive, and engaging player experience—including, for example, how

15    high-stakes a game appears to players, how exciting each player decision can be, how often a

16    player interacts with particular features or bonus games triggered on specific conditions, how

17    satisfying a player finds the frequency and amount of rewards, and how incentivized the player

18    feels to continue playing and coming back to the game time after time—that cannot plausibly be

19    reproduced by luck or accident.

20         117.    Dragon Train appears to replicate the experience or "feel" of Aristocrat's

21    Dragon Link and Lightning Link games to an unusual degree. As noted above, Dragon Train has

22    substantially similar functional elements, including the symbol sets, pay tables, game rules, and

23    bonus features, including the "Hold & Spin" and free games features. Further, the game appears

24    to have a highly similar mathematical implementation, resulting in similar gameplay experiences.

25    For example, Dragon Train appears to have similar volatility, and the Hold & Spin bonus symbols

26    seem to appear on the reels with similar frequency. Dragon Train also appears to implement the

27    Hold & Spin feature in a similar way as Dragon Link and Lightning Link. On information and

28    belief, and against the backdrop of L&W's seriatim efforts to piggyback on the success of Dragon

1    Link, L&W could only have achieved this degree of similarity with Dragon Link's gameplay by

2    use of Aristocrat's trade secrets.

3         118.    The many similarities between the games, including the copied feel, are no

4    surprise, given that, on information and belief, Dragon Train was the first game to be designed and

5    developed by a new L&W studio, Star Studio, that is led by former Aristocrat game designer Emma

6    Charles.  As described *supra*, paragraph 65, Ms. Charles previously worked for Aristocrat for

7    many years, including working on both Dragon Link and its predecessor, Lightning Link.  As part

8    of that work, Ms. Charles had access to the Lightning Link and Dragon Link mathematical models,

9    and worked extensively on Lightning Link's and Dragon Train's underlying mathematics and

10   technical specifications.  Under Ms. Charles's employment contract with Aristocrat, she was

11   restrained from disclosing, or using, facilitating or allowing others to use, Aristocrat's trade

12   secrets, secret formulae, game designs and game specifications.

13        119.    Also working as a member of the Star Studio team was Lloyd Sefton, who,

14   as described *supra*, paragraph 67, is a former Aristocrat artist who also worked on Lightning Link

15   and Dragon Link alongside Ms. Charles and had access to confidential information about these

16   games.

17        120.    L&W employees who formerly worked for Aristocrat, including Ms.

18   Charles and/or Mr. Sefton, used Aristocrat's confidential information to develop games for L&W,

19   including Dragon Train, and for other purposes. The confidential Aristocrat information that has

20   been improperly taken and used for L&W's benefit includes information concerning the

21   underlying math and functionality of Lightning Link and Dragon Link (*e.g.*, pay tables,

22   combination/PAR sheets, reel strips, mathematical spreadsheets, game specifications, and

23   methodologies for the operation of the Hold & Spin bonus), as well as Aristocrat's confidential

24   commercial information. The initial development of Dragon Train involved acts occurring in the

25   United States, including the storage of design and development documents on U.S. servers,

26   supervision and approval of the game development by U.S. employees, and design and

27   development-related communications with U.S. employees.

28

121. This information has, moreover, been widely disseminated, distributed, made available, or otherwise disclosed to additional L&W employees, including employees in other game studios, who have also used Aristocrat's confidential information in other game development efforts for L&W. On information and belief, these efforts span a number of L&W games, including without limitation Jewel of the Dragon and Double Dragon—the developers of which communicated with Ms. Charles during the development of the games. On information and belief, such communications were commonplace, with senior L&W management informing other game designers that Ms. Charles had worked on Dragon Link and/or Lightning Link and suggesting that they consult with her about their games. L&W has also used Aristocrat confidential information to develop at least one unreleased game.

122. In addition, confidential Aristocrat information is contained or reflected in numerous L&W documents that have been distributed or accessible to employees across L&W. Many of these documents contain no indication that they include confidential Aristocrat information, thereby increasing the risk of further dissemination and misuse.

123. On information and belief, when L&W hired Ms. Charles, it knew that she had been working with the highly confidential math for Lightning Link and Dragon Link. In fact, as noted above, L&W has used this as a major selling point to promote her "inaugural product" for L&W, Dragon Train. At a 2023 investor presentation,[34] Siobhan Lane, L&W's CEO of Gaming, introduced Ms. Charles as follows (emphasis added):

> **Emma Charles worked with Scott Olive on the Lightning Link product for many years** and she made the decision to join the Light & Wonder team and start to run her own studio, Star Studio, out of Australia. And we're proud that Emma just this week in Australia launched her inaugural product under the Light & Wonder brand, Dragon Train, you'll see it at the Star Casino on the floor today.

124. On information and belief, L&W was aware of and complicit in any use of Aristocrat's confidential information by former Aristocrat employees, including Ms. Charles and Mr. Sefton.

---

[34] Accessible at https://vimeo.com/855246637/748525a3d0#t=0m0s, at 27:55.

43                                                          EXHIBIT A-1 - 58

125.    In September 2023, Aristocrat's Australian counsel initiated discussions with L&W in which Aristocrat shared its concerns about the misappropriation of its trade secrets in connection with Dragon Train.  Aristocrat requested that L&W produce documents about the design and development of Dragon Train.  L&W provided some of the documents requested by Aristocrat to Aristocrat's Australian counsel.  Among the documents that L&W produced are files referring to "Aristocrat," "Dragon Link," and/or "Lightning Link."  L&W, however, refused to provide other key documents, including math documents, reel strip layouts, weighting tables, and source code.

126.    Given L&W's refusal to provide this key information, and based on the documents L&W did produce, in December 2023, Aristocrat filed a preliminary discovery proceeding in the Federal Court of Australia to seek further information from L&W.

127.    L&W unveiled this game to the U.S. market at the October 2023 Global Gaming Expo ("G2E") in Las Vegas, but L&W had not launched the game in the United States at that time.

128.    In January 2024, Aristocrat's U.S. counsel initiated discussions with L&W in which Aristocrat shared its concerns about Dragon Train's upcoming launch in the United States, again pointing to the apparent misappropriation of Aristocrat's trade secrets.  Aristocrat requested the same documents sought by Aristocrat's Australian counsel, including the documents L&W already shared with Aristocrat's Australian counsel pursuant to confidentiality undertakings.  L&W rejected Aristocrat's requests and would not even give Aristocrat's U.S. counsel access to the materials L&W already turned over to Aristocrat's Australian counsel.

129.    In the pre-suit correspondence, L&W did not agree to delay launch of Dragon Train in the U.S., and L&W did not deny that the launch of the game was imminent.

130.    After Aristocrat filed this action in February 2024, L&W proceeded to launch Dragon Train in the U.S. and continued to aggressively commercialize the game even as discovery revealed evidence of L&W's misappropriation.  Even after the Court preliminarily enjoined commercialization of the original Dragon Train game, L&W has continued to knowingly reap the benefits of its misappropriation, including by developing replacement, follow-on, or other

new versions of Dragon Train games, such as Dragon Train Grand Central, that seek to capitalize on the brand recognition, goodwill, and reputational benefits that L&W improperly acquired via the original. The following are images for the Dragon Train Grand Central game taken from L&W's 88 Fortunes and Quick Hits Slots apps:

 

 

131. Following Aristocrat's September 2023 correspondence, the filing of the preliminary discovery proceeding in Australia, and the filing of the present action, L&W repeatedly and falsely denied having acquired or used Aristocrat information relating to the Dragon

Link mathematical design, despite possessing substantial evidence that contradicted these denials. On information and belief, L&W either knew about the evidence of misappropriation or failed to conduct a reasonable investigation, which would have led L&W to discover this evidence. L&W maintained its false denials until the Court entered a preliminary injunction, after which L&W admitted that it had used Aristocrat math information to develop Dragon Train after all.  L&W then terminated Emma Charles, and at least one other game designer, for cause and withdrew their declarations as not "fully truthful."  ECF No. 170 at 2.

132.    The extensive use and proliferation of confidential Aristocrat information across L&W is, on information and belief, the direct result of L&W encouraging, facilitating, and/or failing to guard against the dissemination and use of Aristocrat confidential math information.  In the face of substantial evidence of misappropriation, L&W did not simply fail to take any steps to stop the misappropriation, but dramatically expanded the scope of the misappropriation through an aggressive product development and commercialization strategy, until the Court ordered L&W to cease its misconduct.

## COUNT I
## TRADE SECRET MISAPPROPRIATION IN VIOLATION OF 18 U.S.C. § 1836

133.    Aristocrat re-alleges and incorporates by reference all preceding paragraphs.

134.    As described further above, Aristocrat owned and owns valuable trade secrets in the game mechanics of the Dragon Link and Lightning Link game series, including without limitation the underlying game math and functionality that control the gameplay and the timing, frequency, and amount of payouts in both the base game and bonuses (*e.g.*, the "Hold & Spin" bonus feature).

135.    Dragon Link's and Lightning Link's underlying game math and functionality are not generally known to the public or in the industry.  This information is particularly complex (compared to other games), is highly unique and innovative, and cannot be ascertained through proper means, including through reverse engineering by observing the public game features or by playing the games themselves.

**EXHIBIT A-1 - 61**

136.    Dragon Link's and Lightning Link's underlying game math and functionality derive independent economic value from their secrecy insofar as they make up the games' signature gameplay and "feel" and are integral to the continued commercial success and competitive advantage of the games, which Aristocrat's competitors—including L&W—have repeatedly tried and failed to replicate.

137.    Aristocrat accordingly keeps this information highly confidential and subject to reasonable measures to protect its secrecy, including through internal practices, policies, and procedures; written agreements prohibiting the unauthorized disclosure or use of such information; regular employee training; physical and technical security measures; and, where necessary, legal action to enforce Aristocrat's intellectual property rights throughout the world.

138.    L&W has acquired through improper means one or more of Aristocrat's trade secrets embodied in the Dragon Link and Lightning Link games, including insofar as L&W knew or had reason to know that it had received the information from persons, including but not limited to Ms. Charles and/or Mr. Sefton, who owed a duty to Aristocrat to maintain the secrecy of the information, to not disclose the information, and to not use it for the benefit of others.

139.    As described above, L&W has used without authorization one or more of Aristocrat's trade secrets in L&W's own game development efforts, including to develop L&W's Dragon Train and Jewel of the Dragon games (which L&W intentionally designed to copy and compete with Aristocrat's Dragon Link and Lightning Link games) as well as other L&W games. At the time of the use, L&W knew or had reason to know that it had derived the information from persons, including but not limited to Ms. Charles and/or Mr. Sefton, who owed a duty to Aristocrat to maintain the secrecy of the information, to not disclose the information, and to not use it for the benefit of others.

140.    Moreover, because L&W employees, including Ms. Charles, who misappropriated Aristocrat's trade secrets did so within the scope of their employment for L&W, for L&W's benefit, and/or while under L&W's direction and control, L&W is at minimum vicariously liable for their foreseeable misappropriation.

141.    As described above, L&W committed domestic acts of misappropriation, and domestic acts in furtherance of misappropriation, by acquiring, disclosing, and/or using one or more of Aristocrat's trade secrets, including through L&W's development, promotion, and distribution of games in the United States. L&W's actions in misappropriating Aristocrat's trade secrets, however, were not limited to the United States, including because L&W also acquired, disclosed, and used Aristocrat's trade secrets outside of the United States in connection with its game development and commercialization efforts.

142.    On information and belief, as described above, absent this misappropriation of Aristocrat's trade secrets, L&W could not have replicated the signature gameplay and "feel" of Dragon Link and Lightning Link to the degree it did in Dragon Train.    Moreover, absent misappropriation of Aristocrat's trade secrets, L&W would have had to invest substantially more time, effort, and resources to develop even a pale imitation of these games—as other Aristocrat competitors and L&W itself had previously done.

143.    As described above, L&W's misappropriation of Aristocrat's trade secrets has been willful, malicious, and part of a sustained and systematic effort to rip off the signature elements—and free-ride on the commercial success—of Aristocrat's Dragon Link games.

144.    As a direct and proximate result of L&W's misappropriation, Aristocrat has suffered—and, absent prompt injunctive relief, will continue to suffer—injury in the form of lost money and market share as a result of direct competition from L&W games; lost goodwill and brand reputation as a result of customers, players, media, and industry experts comparing Dragon Link to L&W games; lost time and resources expended in trying to put a stop to L&W's blatant plagiarism; and a significant risk of further unauthorized dissemination of Aristocrat's trade secrets both within and outside of L&W.

145.    Aristocrat will also suffer harm—and L&W will unjustly benefit—from L&W's commercialization of successor or replacement Dragon Train games notwithstanding the Court's preliminary injunction.  This harm to Aristocrat and the unjust benefit to L&W are a direct and proximate result of L&W's misappropriation in connection with the original Dragon Train game.

**EXHIBIT A-1 - 63**

## COUNT II
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501

146.   Aristocrat re-alleges and incorporates by reference all preceding paragraphs.

147.   Aristocrat is the owner of the copyright in the Dragon Link Audiovisual Elements.

148.   This copyrighted work is not a United States work within the meaning of Section 101 of the Copyright Act, 17 U.S.C. § 101, and thus is not subject to the registration requirement of Section 411(a).  Aristocrat has registered copyrights in at least certain Dragon Link Audiovisual Elements (*e.g.*, Reg. Nos. PA 2-422-266, PA 2-424-274, VA 2-369-827, VA 2-372-588, VA 2-372-489, VA 2-372-589).  *See* Ex. A.

149.   On information and belief, during the development of Jewel of the Dragon, L&W had access to, and copied, the Dragon Link Audiovisual Elements.

150.   Jewel of the Dragon contains audiovisual elements (including artwork, sounds, and animations) that are substantially and strikingly similar to, and copy protectable expression from, the Dragon Link Audiovisual Elements.

151.   L&W reproduced, publicly distributed, publicly performed, and publicly displayed these copied audiovisual elements in the United States and elsewhere in the course of developing, promoting, offering, and selling or leasing Jewel of the Dragon, without Aristocrat's authorization.

152.   L&W's conduct infringes upon Aristocrat's exclusive rights granted by Section 106 of the Copyright Act, 17 U.S.C. § 106, to reproduce, prepare derivative works of, publicly display, publicly perform, and distribute its copyrighted works to the public.

153.   L&W's conduct constitutes copyright infringement under Section 501 of the Copyright Act, 17 U.S.C. § 501.  Dragon Link includes a copyright notice in screens viewable to all players.  Because L&W knew its conduct infringed Aristocrat's copyright, or alternatively L&W acted with reckless disregard for or willful blindness to Aristocrat's rights, L&W's infringement is willful under Section 504 of the Copyright Act, 17 U.S.C. § 504.

154.    As a result of the copyright infringement described above, Aristocrat is entitled to relief including, but not limited to, injunctive relief, actual or statutory damages, statutory costs and attorneys' fees, and prejudgment interest.

155.    L&W's willful and intentional acts of copyright infringement have caused and will continue to cause irreparable injury and damage to Aristocrat.  This damage cannot be quantified and, if allowed to continue, will leave Aristocrat with no adequate remedy at law.  Aristocrat is entitled to preliminary and permanent injunctive relief to prevent further acts of copyright infringement, in accordance with Section 502 of the Copyright Act, 17 U.S.C. § 502.

## COUNT III
## FEDERAL FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION, TRADEMARK, AND TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

156.    Aristocrat re-alleges and incorporates by reference all preceding paragraphs.

157.    The Dragon Link Trade Dress is a designation of origin that identifies Aristocrat as the exclusive source of its goods, and distinguishes Aristocrat's goods from the goods of others in the marketplace.

158.    The Dragon Link Trade Dress is non-functional, is inherently distinctive, and has secondary meaning.

159.    L&W's replicating the Dragon Link Trade Dress on its own gaming machines and digital games constitutes false designation of origin, false or misleading description, and/or false or misleading representation.  On information and belief, L&W's use of a confusingly similar variation of the Dragon Link Trade Dress is likely to cause, and has caused, confusion or mistake, or is likely to deceive others into believing that L&W's products or commercial activities are sponsored by, approved by, or otherwise affiliated with Aristocrat.

160.    Such false designation, description, and/or representation constitutes unfair competition and is an infringement of Aristocrat's rights in its Dragon Link Trade Dress in violation of Section 1125(a) of the Lanham Act.

161.    Aristocrat is entitled to recover L&W's profits, any damages sustained by Aristocrat, three times the greater of such profits or damages, and the costs of this action, including attorneys' fees and prejudgment interest.  *See* 15 U.S.C. § 1117.

162.    L&W's willful and intentional acts of unfair competition, false designation of origin, and false description have caused and will continue to cause irreparable injury and damage to Aristocrat's business, and to its accumulated customer goodwill and reputation.  This damage cannot be quantified and, if allowed to continue, will leave Aristocrat with no adequate remedy at law.  Aristocrat is entitled to preliminary and permanent injunctive relief to prevent further acts of unfair competition, false designation of origin, and false description, and to any other relief the Court deems appropriate, pursuant to 15 U.S.C. § 1116 and due to the irreparable injury to Aristocrat resulting from L&W's acts.

**COUNT IV**
**TRADE SECRET MISAPPROPRIATION IN VIOLATION OF NEV. REV.**
**STAT. § 600A.030**

163.    Aristocrat re-alleges and incorporates by reference all preceding paragraphs.

164.    As described further above, Aristocrat owned and owns valuable trade secrets in the game mechanics of the Dragon Link and Lightning Link game series, including without limitation the underlying game math and functionality that control the gameplay and the timing, frequency, and amount of payouts in both the base game and bonuses (*e.g.*, the "Hold & Spin" bonus feature).

165.    Dragon Link's and Lightning Link's underlying game math and functionality are not generally known to the public or in the industry.  This information is particularly complex (compared to other games), is highly unique and innovative, and cannot be ascertained through proper means, including through reverse engineering by observing the public game features or by playing the games themselves.

166.    Dragon Link's and Lightning Link's underlying game math and functionality derive independent economic value from their secrecy insofar as they make up the games' signature gameplay and "feel" and are integral to the continued commercial success and

**EXHIBIT A-1 - 66**

competitive advantage of the games, which Aristocrat's competitors—including L&W—have repeatedly tried and failed to replicate.

167.    Aristocrat accordingly keeps this information highly confidential and subject to reasonable measures to protect its secrecy, including through internal practices, policies, and procedures; written agreements prohibiting the unauthorized disclosure or use of such information; regular employee training; physical and technical security measures; and, where necessary, legal action to enforce Aristocrat's intellectual property rights throughout the world.

168.    L&W has acquired through improper means one or more of Aristocrat's trade secrets embodied in the Dragon Link and Lightning Link games, including insofar as L&W knew or had reason to know that it had received the information from persons, including but not limited to Ms. Charles and/or Mr. Sefton, who owed a duty to Aristocrat to maintain the secrecy of the information, to not disclose the information, and to not use it for the benefit of others.

169.    As described above, L&W has used without authorization one or more of Aristocrat's trade secrets in L&W's own game development efforts, including to develop  L&W's Dragon Train and Jewel of the Dragon games (which L&W intentionally designed to copy and compete with Aristocrat's Dragon Link and Lightning Link games) as well as other L&W games. At the time of the use, L&W knew or had reason to know that it had derived the information from persons, including but not limited to Ms. Charles and/or Mr. Sefton, who owed a duty to Aristocrat to maintain the secrecy of the information, to not disclose the information, and to not use it for the benefit of others.

170.    Moreover, because L&W employees, including Ms. Charles, who misappropriated Aristocrat's trade secrets did so within the scope of their employment for L&W, for L&W's benefit, and/or while under L&W's direction and control, L&W is at minimum vicariously liable for their foreseeable misappropriation.

171.    As described above, L&W committed domestic acts of misappropriation, and domestic acts in furtherance of misappropriation, by acquiring, disclosing, and/or using one or more of Aristocrat's trade secrets, including through L&W's development, promotion, and distribution of games in the United States. L&W's actions in misappropriating Aristocrat's trade

secrets, however, were not limited to the United States, including because L&W also acquired, disclosed, and used Aristocrat's trade secrets outside of the United States in connection with L&W's game development and commercialization efforts.

172.    On information and belief, as described above, absent this misappropriation of Aristocrat's trade secrets, L&W could not have replicated the signature gameplay and "feel" of Dragon Link and Lightning Link to the degree it did in Dragon Train.  Moreover, absent misappropriation of Aristocrat's trade secrets, L&W would have had to invest substantially more time, effort, and resources to develop even a pale imitation of these games—as other Aristocrat competitors and L&W itself had previously done.

173.    As described above, L&W's misappropriation of Aristocrat's trade secrets has been willful, wonton, reckless, and part of a sustained and systematic effort to rip off the signature elements—and free-ride on the commercial success—of Aristocrat's Dragon Link games.

174.    As a direct and proximate result of L&W's misappropriation, Aristocrat has suffered—and, absent prompt injunctive relief, will continue to suffer—injury in the form of lost money and market share as a result of direct competition from L&W games; lost goodwill and brand reputation as a result of customers, players, media, and industry experts comparing Dragon Link to L&W games; lost time and resources expended in trying to put a stop to L&W's blatant plagiarism; and a significant risk of further unauthorized dissemination of Aristocrat's trade secrets both within and outside of L&W.

175.    Aristocrat will also suffer harm—and L&W will unjustly benefit—from L&W's commercialization of successor or replacement Dragon Train games notwithstanding the Court's preliminary injunction.  This harm to Aristocrat and the unjust benefit to L&W are a direct and proximate result of L&W's misappropriation in connection with the original Dragon Train game.

**COUNT V**
**DECEPTIVE TRADE PRACTICES UNDER NEV. REV. STAT. §§ 41.600 & 598.0915**

176.    Aristocrat re-alleges and incorporates by reference all preceding paragraphs.

177.    L&W knowingly made false representations as to the source, sponsorship, and/or approval of goods or services for sale or lease—namely, its Jewel of the Dragon game—in violation of Nevada Revised Statute § 598.0915(2).

178.    As discussed above, L&W copied several distinctive and recognizable aspects of Dragon Link when it developed Jewel of the Dragon, including a logo that is confusingly similar to the Dragon Link Standard Logo, *see supra* ¶¶ 76–79; a jackpot display that is confusingly similar to the Dragon Link Jackpot Display, *see supra* ¶ 81; design elements in the Hold & Spin bonus that are confusingly similar to the Dragon Link Hold & Spin Design, *see supra* ¶¶ 82–84; and orb-like elements that are confusingly similar to the Dragon Link Orb Design, *see supra* ¶ 76 (orb in Jewel of the Dragon logo), ¶ 81 (orbs in Jewel of the Dragon jackpot display), ¶¶ 82–84 (orbs in Jewel of the Dragon Hold & Spin bonus feature), and ¶ 87 (orbs as reel bonus symbols in Jewel of the Dragon base game).

179.    As discussed above, on information and belief, L&W's development of Jewel of the Dragon began in or around June 2021 and continued until the game was approved for release in the United States.  *See supra* ¶ 74.  On information and belief, L&W's Studio Heads UP design team, which is based in Las Vegas and led by Christopher Guerrero, developed the game.  *See supra* ¶ 74.  On information and belief, the copying of Dragon Link was carried out under the direction of senior L&W personnel, including Rich Schneider and/or Nathan Drane.

180.    L&W's copying of Dragon Link was intentional, deliberate, and for the purpose of misleading consumers or other customers as to the source, sponsorship, and/or approval of Jewel of the Dragon.  As discussed above, at the time L&W developed Jewel of the Dragon, L&W was led by former Aristocrat executives who wanted to target Aristocrat's market-leading Dragon Link game.  *See supra* ¶¶ 63–70.  L&W had also recently copied Dragon Link's name, in connection with L&W's Dragon Unleashed Link game.  *See supra* ¶ 71.  By copying Dragon Link

**EXHIBIT A-1 - 69**

in connection with Jewel of the Dragon, L&W knowingly misrepresented the game as being made, sponsored, or approved by the same source as Aristocrat's Dragon Link game, leading customers to falsely believe that Jewel of the Dragon is associated or affiliated with Aristocrat and its Dragon Link game.

181.    On information and belief, at least Defendant LNW Gaming, Inc. knowingly made these misrepresentations in the course of distributing its Jewel of the Dragon game for play by patrons of gaming establishments in the United States, beginning in 2022. On information and belief, at least Defendant Light & Wonder, Inc. knowingly made these misrepresentations in the course of advertising and promoting the game on L&W's website, in at least 2023.[35] On information and belief, at least Defendant SciPlay Corporation knowingly made misrepresentations in the course of making the game available for play online and/or through mobile apps, including Jackpot Party, in at least 2023.

182.    As noted above, Aristocrat notified L&W of its claims against Jewel of the Dragon on December 19, 2022. *See supra* ¶ 97. After receiving this notice, L&W continued to misrepresent the source, sponsorship, and/or approval of Jewel of the Dragon, *see, e.g.*, *supra* ¶ 98, thereby confirming L&W's knowledge of the falsity of its representations.

183.    As the direct and proximate result of L&W's deceptive conduct, Aristocrat has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation and goodwill, including because players unjustly associate bad experiences with Jewel of the Dragon with Aristocrat and because L&W's deception improperly attracts customers who want to play Dragon Link.

**DEMAND FOR JURY TRIAL**

Aristocrat demands a trial by jury on all issues raised in this action that are so triable.

**RELIEF SOUGHT**

Aristocrat seeks the following relief:

---

[35] *See, e.g.*, *supra* Ex. S.

1.     That L&W be preliminarily and permanently enjoined from all trade secret misappropriation, copyright infringement, false designation of origin, unfair competition, trade dress infringement, and deceptive trade practices.

2.     That L&W be ordered to refrain from any use or disclosure of Aristocrat's trade secrets.

3.     That L&W be required to sequester and destroy any Aristocrat trade secrets, identify all individuals and entities to whom L&W has disclosed such trade secrets, and make best efforts to recover all copies of such trade secrets so disclosed.

4.     That L&W be required to deliver to Aristocrat any and all packaging, labels, displays, advertising or other materials in L&W's possession, or under its control, that include or infringe any of Aristocrat's copyrights or trade dress rights.

5.     That L&W be required to give Aristocrat a complete list of parties to whom it has sold, offered to sell, provided or offered to provide, directly or indirectly, any goods or services that infringe Aristocrat's rights.

6.     That L&W be directed to file with this Court, and serve upon Aristocrat within thirty (30) days after the entry of an injunction, a written report under oath detailing the manner and form in which L&W has complied with the injunction.

7.     That Aristocrat recover all damages suffered from L&W's acts, including any available punitive damages, federal or state statutory damages, or actual damages, and L&W's profits.

8.     That L&W be required to account for and disgorge any profits or other monetary or tangible benefits received as a result of its misappropriation and infringement.

9.     That any damages and profits be enhanced in accordance with 15 U.S.C. § 1117, 17 U.S.C. § 504, 18 U.S.C. § 1836, Nevada Revised Statute § 600A.050, and other applicable federal and state law.

10.    That Aristocrat recover pre-judgment and post-judgment interest.

11. That Aristocrat recover its reasonable attorney fees, costs and disbursements in accordance with 15 U.S.C. § 1117, 17 U.S.C. § 505, 18 U.S.C. § 1836, Nevada Revised Statutes §§ 41.600 and 600A.060, and other applicable federal and state law.

12. That Aristocrat recover such other relief as the Court deems just and proper.

March 14, 2025                                    Respectfully submitted,

                                                 /s/ *Jason D. Smith*

                                                 NICHOLAS J. SANTORO
                                                 (Nevada Bar No. 532)
                                                 JASON D. SMITH
                                                 (Nevada Bar No. 9691)
                                                 TYLER B. THOMAS
                                                 (Nevada Bar No. 16637)
                                                 **SPENCER FANE LLP**
                                                 300 South 4th Street, Suite 1600
                                                 Las Vegas, NV 89101
                                                 Tel.: (702) 408-3400
                                                 Email: nsantoro@spencerfane.com
                                                        jdsmith@spencerfane.com
                                                        tbthomas@spencerfane.com

                                                 PETER SWANSON
                                                 (*pro hac vice*)
                                                 GARY RUBMAN
                                                 (*pro hac vice*)
                                                 SIMEON BOTWINICK
                                                 (*pro hac vice*)
                                                 **COVINGTON & BURLING LLP**
                                                 One CityCenter
                                                 850 Tenth Street, NW
                                                 Washington, DC 20001
                                                 Tel.: (202) 662-6000
                                                 Email: pswanson@cov.com
                                                        grubman@cov.com
                                                        sbotwinick@cov.com

                                                 ZIWEI SONG
                                                 (*pro hac vice*)
                                                 **COVINGTON & BURLING LLP**
                                                 Salesforce Tower
                                                 415 Mission Street, Suite 5400
                                                 San Francisco, CA 94105-2533
                                                 Tel.: (415) 591-6000
                                                 Email: ksong@cov.com

                                                 *Attorneys for Plaintiffs/Counterclaim-Defendants Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.*

57                                              **EXHIBIT A-1 - 72**

# EXHIBIT A-2

*Defendants' Answer to Second Amended Complaint and Counterclaims*

PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

NEAL MANNE *(pro hac vice)*
nmanne@susmangodfrey.com
JOSEPH GRINSTEIN *(pro hac vice)*
jgrinstein@susmangodfrey.com
ROCCO MAGNI *(pro hac vice)*
rmagni@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Attorneys for Defendants Light & Wonder, Inc.,*
*LNW Gaming, Inc., and SciPlay Corporation*

ERIK WILSON *(pro hac vice)*
ewilson@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

DINIS CHEIAN *(pro hac vice)*
dcheian@susmangodfrey.com
ANDREW NASSAR *(pro hac vice)*
anassar@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Defendants. | Case No.: 24-cv-00382-GMN-MDC <br><br> **DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS** <br><br> **DEMAND FOR JURY TRIAL** |
| LIGHT & WONDER, INC., LNW GAMING, INC., and SCIPLAY CORPORATION, <br><br> Counterclaim Plaintiffs, <br><br> vs. <br><br> ARISTOCRAT TECHNOLOGIES, INC. and ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., <br><br> Counterclaim Defendants. | |

-1-

**EXHIBIT A-2 - 73**

## DEFENDANTS' ANSWER

Defendants Light & Wonder, Inc., LNW Gaming, Inc. and SciPlay Corporation (collectively, "L&W" or "Defendants") hereby file this Answer and Counterclaims to the Second Amended Complaint filed by Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd. (collectively, "Plaintiffs" or "Aristocrat"). Except as specifically admitted herein, Defendants deny all allegations and averments contained in Plaintiffs' Second Amended Complaint and otherwise respond as follows:

## INTRODUCTION

1. L&W denies the allegations in Paragraph 1 of the Second Amended Complaint.

2. L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 2.

3. L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 3.

4. L&W denies Aristocrat owns trade secrets asserted in this case and L&W denies that the alleged continued success of Dragon Link and Lightning Link "many years after their initial release demonstrates that the math is unique, difficult (if not impossible) for others to replicate, and highly valuable." L&W lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4 of the Second Amended Complaint, and therefore denies the remaining allegations in Paragraph 4.

5. L&W admits that the U.S. Copyright Office issued certain copyright registrations attached to the Second Amended Complaint, which speak for themselves. Except as so admitted, L&W denies the allegations in Paragraph 5 of the Second Amended Complaint.

6. L&W denies the allegations in Paragraph 6 of the Second Amended Complaint.

7. L&W admits that it changed the name of one of its games from "Dragon Unleashed" to "Dragon Unleashed Link" in Australia in 2022 to describe the game's placement on a linked progressive platform. Except as so admitted, L&W denies all remaining allegations and inferences

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 74**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1  in Paragraph 7 of the Second Amended Complaint.

2         8.     L&W denies the allegations in Paragraph 8 of the Second Amended Complaint.

3         9.     L&W denies the allegations in Paragraph 9 of the Second Amended Complaint.

4        10.     L&W admits that Ms. Charles had prior experience with and exposure to Dragon

5  Link and Lightning Link game math. L&W admits that Emma Charles is a former Aristocrat game

6  designer who worked on various Aristocrat games while employed by Aristocrat. L&W admits that

7  Emma Charles used certain knowledge about how Dragon Link and Lightning Link work in her

8  individual work on Dragon Train. Except as expressly admitted, L&W denies the remaining

9  allegations and inferences in Paragraph 10 of the Second Amended Complaint.

10        11.     L&W admits that Dragon Train has enjoyed considerable success in Australia.

11  L&W admits that it is developing or has developed new games to replace Dragon Train. Except as

12  expressly admitted, L&W denies the remaining allegations in Paragraph 11 of the Second Amended

13  Complaint.

14        12.     L&W admits that certain math information Aristocrat alleges is confidential has

15  been shared with and/or used by certain L&W employees involved in the development of Jewel of

16  the Dragon and one unreleased game. With respect to Double Dragon, L&W denies that Double

17  Dragon uses any math information Aristocrat claims is confidential. With respect to the unreleased

18  game, L&W's internal review process identified an early version of this game's math model

19  potentially presented issues relating to Aristocrat. These issues had been removed from later

20  versions, but L&W took a conservative approach and promptly acted to stop further development

21  of the game. Except as expressly admitted, L&W denies the remaining allegations in Paragraph 12

22  of the Second Amended Complaint.

23        13.     L&W denies the allegations in Paragraph 13 of the Second Amended Complaint.

24                     **JURISDICTION AND VENUE**

25        14.     L&W admits that this Court has original jurisdiction over Aristocrat's claims

26  pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, 18 U.S.C. § 1836, and 28 U.S.C. §§ 1331 and 1338,

27  if such claims were properly alleged or meritorious, which L&W denies.  L&W admits that this

28

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 75**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1    Court has supplemental jurisdiction over Aristocrat's state law claims under 28 U.S.C. § 1367(a),

2    if such claims were properly alleged or meritorious, which L&W denies. However, if Aristocrat's

3    federal claims fail to survive, L&W denies that this Court would have supplemental jurisdiction

4    over Aristocrat's state law claims under 28 U.S.C. § 1367(a).

5         15.    L&W admits that it conducts business in, has a principal place of business in, is

6    incorporated in, and resides in, the District of Nevada. L&W admits that, for the purposes of this

7    action only, this Court has personal jurisdiction over L&W, if the claims in the Second Amended

8    Complaint were properly alleged, which L&W denies. Except as expressly admitted, L&W denies

9    the allegations in Paragraph 15.

10        16.    L&W admits that venue is proper under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C.

11   § 1400(a). To the extent there are remaining allegations in Paragraph 16 of the Second Amended

12   Complaint, L&W denies them.

13                                    **THE PARTIES**

14        17.    L&W lacks knowledge or information sufficient to form a belief about the truth of

15   the allegations in Paragraph 17 of the Second Amended Complaint, and therefore denies the

16   allegations in Paragraph 17.

17        18.    L&W lacks knowledge or information sufficient to form a belief about the truth of

18   the allegations in Paragraph 18 of the Second Amended Complaint, and therefore denies the

19   allegations in Paragraph 18 of the Second Amended.

20        19.    L&W admits the allegations in Paragraph 19 of the Second Amended Complaint.

21        20.    L&W admits the allegations in Paragraph 20 of the Second Amended Complaint.

22        21.    L&W admits the allegations in Paragraph 21 of the Second Amended Complaint.

23        22.    L&W admits the allegations in Paragraph 22 of the Second Amended Complaint.

24                                       **FACTS**

25        23.    L&W lacks knowledge or information sufficient to form a belief about the truth of

26   the allegations in Paragraph 23 of the Second Amended Complaint, and therefore denies the

27   allegations in Paragraph 23.

28

- 4 -

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

24.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 24.

25.     L&W admits that hold and spin features are pervasive in the electronic gaming machine ("EGM") industry. Except as so admitted, L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 25.

26.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 26.

27.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 27.

28.     L&W denies the allegations in Paragraph 28 of the Second Amended Complaint.

29.     L&W denies the Dragon Link "design features" are distinctive.   L&W lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 29 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 29.

30.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30 of the Second Amended Complaint and the accompanying footnote, and therefore denies the allegations in Paragraph 30 and the accompanying footnote.

31.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 31.

32.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 32.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 77**

33.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 33.

34.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 34.

35.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 35.

36.     L&W denies the allegations in Paragraph 36 of the Second Amended Complaint.

37.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 37.

38.     The allegations in Paragraph 36 fail to identify any specific alleged trade secrets allegedly owned by Aristocrat, and L&W denies that trade secret protection exists for various game mechanics of the Dragon Link series, including at least the timing, frequency, and amount of payouts.  To the extent there are remaining allegations in Paragraph 38 of the Second Amended Complaint, L&W denies them.

39.     The allegations in Paragraph 39 fail to identify any specific alleged trade secrets allegedly owned by Aristocrat, and L&W denies that trade secret protection exists for various aspects of game math and functionality of Dragon Link included in Paragraph 39.  L&W lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 39 of the Second Amended Complaint, and therefore L&W denies the remaining allegations in Paragraph 39.

40.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 40.

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 78**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

41.     L&W lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 41.

42.     L&W denies that various information about game math and functionality is not generally known to the public or in the industry. L&W also denies the allegation that the underlying game math and functionality of Lightning Link and Dragon Link cannot be ascertained through proper means, such as reverse engineering, and L&W denies that "competitors do not know, and cannot emulate through proper means, the underlying math and functionality of the games." L&W further denies that L&W's games "utilized similar features" to Dragon Link or Lightning Link as that term is not defined, and the audiovisual aspects and other features of the games are not substantially similar. L&W lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 42 of the Second Amended Complaint, and therefore denies the remaining allegations in Paragraph 42.

43.     The allegations in Paragraph 43 fail to identify any specific alleged trade secrets allegedly owned by Aristocrat, and L&W denies that trade secret protection exists for the unidentified underlying game math and functionality of Dragon Link or Lightning Link. L&W lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 43 of the Second Amended Complaint, and therefore denies the remaining allegations in Paragraph 43.

44.     L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 44.

45.     L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 45.

46.     L&W admits that the U.S. Copyright Office issued purported registrations attached in Exhibit A to Aristocrat's Second Amended Complaint. L&W lacks knowledge or information

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 79**

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46 of the Second Amended Complaint, and therefore denies the remaining allegations in Paragraph 46.

47.    L&W denies the allegations in Paragraph 47 of the Second Amended Complaint. L&W also denies the allegations in footnote 2 of Paragraph 47 of the Second Amended Complaint. L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in footnote 3 accompanying Paragraph 47 of the Second Amended Complaint, and therefore denies the allegations in the footnote.

48.    L&W denies that the "Dragon Link Trade Dress," as defined in the Second Amended Complaint, constitutes a protectable trade dress.  L&W lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 48 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 48.

49.    L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Aristocrat's competitors use a wide variety of alternative design elements for their competing games.  L&W denies the remaining allegations in Paragraph 49 of the Second Amended Complaint.

50.    L&W denies the allegations in Paragraph 50 of the Second Amended Complaint.

51.    L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the Second Amended Complaint regarding whether "Aristocrat has heavily invested in the marketing of Dragon Link."  L&W denies  the remaining allegations in Paragraph 51 of the Second Amended Complaint.

52.    L&W denies that "Aristocrat's advertising for Dragon Link prominently features the Dragon Link Trade Dress elements" together.  L&W lacks knowledge or information  sufficient to form a belief as to the truth of the remaining allegations in Paragraph 52 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 52.

53.    L&W denies the allegations in Paragraph 53 of the Second Amended Complaint.

54.    Paragraph 54 purports to quote from an Aristocrat website, which speaks for itself, and to which no response is required.  To the extent a response is required, L&W denies the

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 80**

1    allegations in Paragraph 54 of the Second Amended Complaint.

2        55.    L&W lacks knowledge or information sufficient to form a belief as to the truth of

3    the allegations in Paragraph 55 of the Second Amended Complaint, and therefore denies the

4    allegations in Paragraph 55.

5        56.    Paragraph 56 purports to quote from a document, which speaks for itself, and to

6    which no response is required.  L&W lacks knowledge or information sufficient to form a belief as

7    to the truth of the remaining allegations in Paragraph 56 of the Second Amended Complaint, and

8    therefore denies the remaining allegations in Paragraph 56.

9        57.    L&W denies that any publicity, including the articles quotes in Paragraph 57,

10   "explicitly highlights" the Dragon Link Trade Dress as defined in the Second Amended Complaint.

11   The purported quotes in Paragraph 57 are from documents, which speaks for themselves, and to

12   which no response is required.  L&W lacks knowledge or information sufficient to form a belief as

13   to the truth of the remaining allegations in Paragraph 57 of the Second Amended Complaint, and

14   therefore denies the remaining allegations in Paragraph 57.

15       58.    Paragraph 56 purports to quote from publications, which speak for themselves, and

16   to which no response is required.  L&W lacks knowledge or information sufficient to form a belief

17   as to the truth of the remaining allegations in Paragraph 58 of the Second Amended Complaint, and

18   therefore denies the remaining allegations in Paragraph 58.

19       59.    L&W lacks knowledge or information sufficient to form a belief as to the truth of

20   the allegations in Paragraph 59 of the Second Amended Complaint, and therefore denies the

21   allegations in Paragraph 59.

22       60.    L&W lacks knowledge or information sufficient to form a belief as to the truth of

23   the allegations in Paragraph 60 of the Second Amended Complaint, and therefore denies the

24   allegations in Paragraph 60.

25       61.    L&W denies that consumers recognize the Dragon Link Trade Dress as defined in

26   the Second Amended Complaint.  Paragraph 61 of the Second Amended Complaint purports to

27   quote from a video caption, which speaks for itself, and to which no response is required; however,

28

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 81**

1   L&W denies the quote supports any consumer recognition of the purported Dragon Link Trade

2   Dress.  L&W lacks knowledge or information sufficient to form a belief as to the truth of the

3   remaining allegations in Paragraph 61 of the Second Amended Complaint, and therefore denies the

4   remaining allegations in Paragraph 61.

5        62.   Paragraph 62 of the Second Amended Complaint purports to quote from a video,

6   which speaks for itself, and to which no response is required.  L&W lacks knowledge or information

7   sufficient to form a belief as to the truth of the remaining allegations in Paragraph 62 of the Second

8   Amended Complaint, and therefore denies the remaining allegations in Paragraph 62.

9        63.   Paragraph 63 of the Second Amended Complaint purports to quote from a

10  document, which speaks for itself, and to which no response is required.  L&W lacks knowledge

11  or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph

12  63 of the Second Amended Complaint, and therefore denies the remaining allegations in Paragraph

13  63.

14       64.   L&W denies the allegations in Paragraph 64 of the Second Amended Complaint.

15       65.   L&W admits that L&W and Aristocrat are competitors in the EGM industry.  Except

16  as so admitted, L&W denies all remaining allegations or inferences in Paragraph 65 of the Second

17  Amended Complaint.

18       66.   Paragraph 66 of the Second Amended Complaint purports to paraphrase and quote

19  from L&W's Annual Financial Report, which speaks for itself, and to which no response is

20  required.  To the extent a response is required, L&W denies any allegations or inferences

21  inconsistent with the purported document as written.

22       67.   Paragraph 67 of the Second Amended Complaint purports to quote from a

23  document, which speaks for itself, and to which no response is required.  L&W admits that the

24  individuals listed in Paragraph 67 joined L&W since 2020 and currently hold the respective titles

25  as alleged in Paragraph 67, except L&W denies that Nathaniel Drane hold the job title at L&W as

26  alleged in Paragraph 67.  Mr. Drane's title is Executive Vice President and Chief Product Officer

27  of L&W.  L&W lacks knowledge or information sufficient to form a belief as to the titles of

28

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 82**

Aristocrat's former employees while at Aristocrat as alleged in Paragraph 67, and therefore denies these allegations on that basis. Except as so admitted, L&W denies the remaining allegations and inferences in Paragraph 67 of the Second Amended Complaint.

68. L&W admits that Rich Schneider joined L&W as Executive Vice President and Chief Product Officer in July 2021 and oversees L&W's land-based gaming product strategy. L&W denies that Mr. Schneider joined L&W "directly" from his role at Aristocrat. Paragraph 68 purports to quote from Mr. Schneider's biography, which speaks for itself, and to which no response is required; however, L&W denies that Aristocrat properly quotes from the biography, which does not state that Mr. Schneider "was hired because of his 'product expertise.'" L&W lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 68 of the Second Amended Complaint, and therefore denies the remaining allegations in Paragraph 68.

69. L&W admits that Ms. Charles is a former Aristocrat employee who worked at L&W until her employment was terminated in October 2024. L&W admits that that Ms. Charles had access to, and was knowledgeable about, information relating to Lightning Link and Dragon Link and had firsthand knowledge of Lightning Link and Dragon's Link features but does not endorse the characterization regarding those features. Except as so admitted, L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 of the Second Amended Complaint and accompanying footnote, and therefore denies the allegations in Paragraph 69 and the footnote.

70. L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 70.

71. L&W admits that Mr. Sefton, a former Aristocrat employee, was an employee at a subsidiary of Light & Wonder, Inc. until November 20, 2024. Except as so admitted, L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 71.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

72.    L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 72.

73.    L&W admits that it added the word "Link" to the end of its "Dragon Unleashed" game in the Australian market in 2022 to reflect the game's placement on a linked progressive platform. L&W admits that Aristocrat contacted L&W regarding this game title, and L&W denied any confusing similarity or infringement. Except as so admitted, L&W denies the allegations in Paragraph 73 of the Second Amended Complaint.

74.    L&W denies the allegations in Paragraph 74 of the Second Amended Complaint.

75.    L&W admits that Ms. Charles and Mr. Schneider joined L&W as employees around June 2021. L&W admits it began developing a new version of game called Jewel of the Dragon around that time. L&W admits that Studio Heads UP, which is based in Las Vegas and led by Christopher Guerrero, was responsible for developing Jewel of the Dragon. L&W admits that it launched Jewel of the Dragon in 2022, and that L&W previously had a slot machine game called Jewel of the Dragon.  Except as so admitted, L&W denies the allegations and inferences in Paragraph 75 of the Second Amended Complaint.

76.    L&W admits the allegations in Paragraph 76 of the Second Amended Complaint.

77.    L&W admits that Jewel of the Dragon is a linked progressive game series with four different game themes (A Thousand Warriors, Valley of the Tiger, Red Phoenix, and Prosperity Tortoise).  Except as so admitted, L&W denies the allegations in Paragraph 77 of the Second Amended Complaint.

78.    L&W denies the allegations in Paragraph 78 of the Second Amended Complaint.

79.    L&W denies the allegations in Paragraph 79 of the Second Amended Complaint.

80.    L&W denies the allegations in Paragraph 80 of the Second Amended Complaint.

81.    L&W denies the allegations in Paragraph 81 of the Second Amended Complaint

82.    L&W denies the allegations in Paragraph 82 of the Second Amended Complaint.

83.    L&W denies the allegations in Paragraph 83 of the Second Amended Complaint.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
www.campbellandwilliams.com
Phone: 702.382.5222 • Fax: 702.382.0540

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 84**

84.    L&W admits that the Jewel of the Dragon games include a hold and spin feature. Except as so admitted, L&W denies the allegations in Paragraph 84 of the Second Amended Complaint.

85.    L&W admits that its Jewel of the Dragon games include an animation of coins, but denies this animation is similar to that of Dragon Link or that such animation is protectable. L&W denies the remaining allegations in Paragraph 85 of the Second Amended Complaint.

86.    L&W denies the allegations in Paragraph 86 of the Second Amended Complaint.

87.    L&W admits that in Jewel of the Dragon Red Phoenix, a dark-haired woman in an ornate headdress and costume resembling a mythical red phoenix appears, but this artwork shares no similarities to the artwork in Dragon Link Autumn Moon other than the unprotectable idea of "a dark-haired woman" in costume. Except as so admitted, L&W denies the allegations in Paragraph 87 of the Second Amended Complaint.

88.    L&W denies the allegations in Paragraph 88 of the Second Amended Complaint.

89.    L&W denies the allegations in Paragraph 89 of the Second Amended Complaint.

90.    L&W admits that a hold and spin game "does not require the use of gold orbs with bright, fiery outlines surrounded by rings of fire as bonus symbols, a large gold orb as a symbol counter, animated fire bolts that arc off of the bonus symbols and up to a total win box," but L&W denies that these elements are protectable or that L&W appropriated substantially similar elements in Jewel of the Dragon. L&W denies the remaining allegations in Paragraph 90 of the Second Amended Complaint.

91.    L&W admits that it has distributed EGMs of its Jewel of the Dragon games to casinos in the United States and in other countries. L&W also admits that an online version of the Jewel of the Dragon titled game is offered on Jackpot Party. L&W further admits that it has a publicly accessible website that displays images of the Jewel of the Dragon games. Except as so admitted, L&W denies the allegations in Paragraph 91 of the Second Amended Complaint.

92.    L&W denies the allegations in Paragraph 92 of the Second Amended Complaint.

93.    L&W denies the allegations in Paragraph 93 of the Second Amended Complaint.

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

**EXHIBIT A-2 - 85**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

94. L&W denies the allegations in Paragraph 94 of the Second Amended Complaint.

95. Paragraph 95 purports to quote from YouTube videos, which speak for themselves, and to which no response is required; however, L&W denies that the quotes indicate any confusion, and instead demonstrate that consumers understand the games are from different sources. L&W denies any allegations of consumer confusion between Dragon Link and Jewel of the Dragon or any plan to confuse consumers, and L&W denies any remaining allegations or inferences in Paragraph 95 of the Second Amended Complaint.

96. L&W denies the allegations in Paragraph 96 of the Second Amended Complaint.

97. L&W denies the allegations in Paragraph 97 of the Second Amended Complaint.

98. L&W denies the allegations in Paragraph 98 of the Second Amended Complaint.

99. L&W admits that Aristocrat counsel sent Light & Wonder, Inc. a letter dated December 19, 2022, which speaks for itself, and that the parties engaged in confidential settlement communications for several months during which L&W maintained that all complaints by Aristocrat regarding Jewel of the Dragon were meritless. Except as so admitted, L&W denies the allegations and inferences in Paragraph 99 of the Second Amended Complaint.

100. L&W denies the allegations in Paragraph 100 of the Second Amended Complaint.

101. L&W denies the allegations of Paragraph 101 of the Second Amended Complaint.

102. L&W denies the allegations in Paragraph 102 of the Second Amended Complaint.

103. L&W admits that L&W displayed Dragon Train in August 2023 at the Australian Gaming Expo. L&W also admits that Dragon Train features a train with characteristics of a dragon. L&W admits that both Dragon Link and Dragon Train are multi-denomination games that allow bets in 1 cent, 2 cents, 5 cents, 10 cents, $1, and $2 denominations, and utilize a 3 x 5 reel grid— just like numerous competing games in the industry. Except as so admitted, L&W denies the allegations and inferences in Paragraph 103 of the Second Amended Complaint.

104. L&W denies the allegations in Paragraph 104 of the Second Amended Complaint.

105. L&W admits that many slot machine games feature a "pay table." L&W denies that the "Dragon Link and Dragon Train pay tables are highly similar," or that the images in Paragraph

1   105 of the Second Amended Complaint show any such similarity.  L&W lacks knowledge or

2   information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 105

3   of the Second Amended Complaint, and therefore denies the remaining allegations in Paragraph

4   105.

5          106.    Paragraph 106 of the Second Amended Complaint purports to refer to Dragon Link

6   or Dragon Train game-screen information viewable by players which speaks for itself, and to which

7   no response is required.  To the extent there are any remaining allegations or inferences in

8   Paragraph 106 of the Second Amended Complaint, L&W denies them.

9          107.    Paragraph 107 of the Second Amended Complaint purports to be images of pay

10  tables from games.  L&W lacks knowledge or information sufficient to form a belief as to the

11  source of the pay tables, and on that basis, denies the allegations in Paragraph 107.

12         108.    Paragraph 108 of the Second Amended Complaint purports to refer to Dragon Link

13  and Dragon Train game-screen information viewable by players which speaks for itself, and to

14  which no response is required.  To the extent there are any remaining allegations or inferences in

15  Paragraph 108 of the Second Amended Complaint, L&W denies them.

16         109.    Paragraph 109 of the Second Amended Complaint purports to refer to Dragon Link

17  and Dragon Train game-screen information viewable by players which speaks for itself, and to

18  which no response is required.  To the extent there are any remaining allegations or inferences in

19  Paragraph 109 of the Second Amended Complaint, L&W denies them.

20         110.    Paragraph 110 of the Second Amended Complaint purports to refer to Dragon Link

21  and Dragon Train game-screen information viewable by players which speaks for itself, and to

22  which no response is required.  To the extent there are any remaining allegations or inferences in

23  Paragraph 110 of the Second Amended Complaint, L&W denies them.

24         111.    Paragraph 111 of the Second Amended Complaint purports to refer to Dragon Link

25  and Dragon Train game-screen information viewable by players which speaks for itself, and to

26  which no response is required.  To the extent there are any remaining allegations or inferences in

27  Paragraph 111 of the Second Amended Complaint, L&W denies them.

28

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 87**

112.     Paragraph 112 of the Second Amended Complaint purports to refer to Dragon Link and Dragon Train game-screen information viewable by players which speaks for itself, and to which no response is required.  To the extent there are any remaining allegations or inferences in Paragraph 112 of the Second Amended Complaint, L&W denies them.

113.     L&W denies the allegations in Paragraph 113 of the Second Amended Complaint.

114.     L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 114.

115.     L&W denies that reverse engineering the public-facing aspects of a game would be "unlikely" to produce a game that could operate in the same way and provide the same player experience as the game that was reverse engineered.  L&W lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 115 of the Second Amended Complaint, and therefore denies the remaining allegations in Paragraph 115.

116.     L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 116.

117.     L&W denies the allegations in Paragraph 117 of the Second Amended Complaint.

118.     L&W admits that Ms. Charles leads Star Studio, and that she previously worked at Aristocrat and worked on various Aristocrat games while employed by Aristocrat.  L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Charles's work at Aristocrat or her employment contract, and therefore denies these allegations. L&W denies the remaining allegations in Paragraph 118 of the Second Amended Complaint.

119.     L&W admits that Mr. Sefton is a member of the Star Studio team.  L&W admits that Mr. Sefton once worked at Aristocrat.  L&W lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 119 of the Second Amended Complaint, and therefore denies the remaining allegations in Paragraph 119.

120.     L&W admits that Emma Charles used certain Aristocrat mathematics information

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 88**

1  during her work on Dragon Train. Except as expressly admitted, L&W denies the allegations in

2  Paragraph 120 of the Second Amended Complaint.

3     121.   L&W admits that certain math information Aristocrat alleges is confidential has

4  been shared with and/or used by certain L&W employees involved in the development of Jewel of

5  the Dragon and one unreleased game. L&W admits that a designer for the game Double Dragon

6  communicated with Ms. Charles and that Ms. Charles shared a handful of math values. L&W denies

7  that Double Dragon uses any math information Aristocrat claims is confidential. Except as

8  expressly admitted, L&W denies the remaining allegations in Paragraph 121 of the Second

9  Amended Complaint.

10    122.   L&W admits that information Aristocrat alleges is confidential has been distributed

11 or accessible to L&W employees and that this information has not always been marked as

12 indicating it contains information from Aristocrat and/or that Aristocrat claims it is confidential.

13 Except as expressly admitted, L&W denies the remaining allegations in Paragraph 122 of the

14 Second Amended Complaint.

15    123.   L&W admits that it was aware Ms. Charles's employment at Aristocrat included

16 work on various Aristocrat games while employed by Aristocrat.  Paragraph 123 of the Second

17 Amended Complaint purports to quote from an investor presentation, which speaks for itself, and

18 to which no response is required; however, L&W denies the characterization of the investor

19 presentation as set forth in Paragraph 123.  To the extent there are remaining allegations or

20 inferences of Paragraph 123, L&W denies them.

21    124.   L&W denies the allegations in Paragraph 124 of the Second Amended Complaint.

22    125.   L&W admits that in September 2023 Aristocrat's Australian counsel sent to L&W

23 a series of letters that purported to allege a claim of trade secret misappropriation, which L&W

24 denies.  L&W admits that it voluntarily produced documents to Aristocrat's Australian counsel on

25 four separate occasions in October and November 2023, while opposing production of other

26 documents, including but not limited to its highly confidential and proprietary source code.  To the

27 extent there are remaining allegations in Paragraph 125 of the Second Amended Complaint, L&W

28

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 89**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1    denies them.

2        126.    L&W admits that Aristocrat filed a preliminary discovery proceeding in the Federal

3    Court of Australia in December 2023, but denies any documents produced by L&W form a basis

4    for a claim.  To the extent there are remaining allegations or inferences in Paragraph 126, L&W

5    denies them.

6        127.    L&W admits that it displayed Dragon Train in October 2023 at the Global Gaming

7    Expo in Las Vegas.  L&W further admits that the game was available to play at multiple casinos

8    across the United States by March 2024.  To the extent there are remaining allegations or inferences

9    in Paragraph 127, L&W denies them.

10        128.    L&W admits that Aristocrat counsel sent Light & Wonder, Inc. a letter dated

11    January 19, 2024, which speaks for itself.  L&W's counsel responded to Aristocrat's counsel in a

12    letter dated January 24, 2024, which speaks for itself.  To the extent there are remaining allegations

13    or inferences in Paragraph 128, L&W denies them.

14        129.    L&W's counsel responded to Aristocrat's counsel in letters dated January 24, 2024

15    and February 6, 2024, which speak for themselves.  To the extent there are remaining allegations

16    or inferences in Paragraph 129, L&W denies them.

17        130.    L&W admits Aristocrat filed this action in February 2024.  L&W further admits that

18    Dragon Train games were available to play at multiple casinos across the United States by March

19    2024. L&W admits it has developed games to replace Dragon Train, such as Dragon Train Grand

20    Central, after the Court's preliminary injunction. L&W admits the images depict Dragon Train

21    Grand Central, which is available on the 88 Fortunes and Quick Hits Slots apps. Aristocrat has

22    made no allegations regarding the math of Dragon Train Grand Central or any other replacement

23    game to Dragon Train. To the extent there are remaining allegations or inferences in Paragraph

24    130, L&W denies them.

25        131.    L&W admits it terminated Emma Charles and William Soo and withdrew their

26    declarations because Ms. Charles and Mr. Soo were not fully truthful. Except as expressly admitted,

27    L&W denies the remaining allegations in Paragraph 131 of the Second Amended Complaint.

28

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

- 18 -

132. L&W denies the allegations in Paragraph 132 of the Second Amended Complaint.

## COUNT I
## TRADE SECRET MISAPPROPRIATION IN VIOLATION OF 18 U.S.C. § 1836

133. L&W re-alleges and incorporates by reference its responses to the allegations contained in Paragraphs 1 through 132 as if set forth fully herein.

134. L&W denies the allegations in Paragraph 134 of the Second Amended Complaint.

135. L&W denies the allegations in Paragraph 135 of the Second Amended Complaint.

136. L&W denies the allegations in Paragraph 136 of the Second Amended Complaint.

137. L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 137.

138. L&W denies the allegations in Paragraph 138 of the Second Amended Complaint.

139. L&W denies the allegations in Paragraph 139 of the Second Amended Complaint.

140. L&W denies the allegations in Paragraph 140 of the Second Amended Complaint.

141. L&W denies the allegations in Paragraph 141 of the Second Amended Complaint.

142. L&W denies the allegations in Paragraph 142 of the Second Amended Complaint.

143. L&W denies the allegations in Paragraph 143 of the Second Amended Complaint.

144. L&W denies the allegations in Paragraph 144 of the Second Amended Complaint.

145. L&W denies the allegations in Paragraph 145 of the Second Amended Complaint.

## COUNT II
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501

146. L&W re-alleges and incorporates by reference its responses to the allegations contained in Paragraphs 1 through 145 as if set forth fully herein.

147. L&W denies the allegations in Paragraph 147 of the Second Amended Complaint.

148. L&W admits that Exhibit A of the Second Amended Complaint consists of copyright registrations purportedly issued by the U.S. Copyright Office, which speak for themselves. L&W denies that alleged Reg. No. VA 2-372-589 relates to Dragon Link. The remaining allegations in Paragraph 148 set forth legal conclusions or arguments to which no

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 91**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1  response is required.  To the extent a response is required, L&W lacks knowledge or information

2  sufficient to form a belief as to the truth of the allegations in Paragraph 148 of the Second Amended

3  Complaint, and therefore denies the allegations in Paragraph 148.

4    149.    L&W denies the allegations in Paragraph 149 of the Second Amended Complaint.

5    150.    L&W denies the allegations in Paragraph 150 of the Second Amended Complaint.

6    151.    L&W denies the allegations in Paragraph 151 of the Second Amended Complaint.

7    152.    L&W denies the allegations in Paragraph 152 of the Second Amended Complaint.

8    153.    Regarding whether "Dragon Link includes a copyright notice in screens viewable to

9  all players," L&W lacks knowledge or information sufficient to form a belief as to the truth of this

10  allegation, and therefore denies the same.  L&W denies the remaining allegations in Paragraph 153

11  of the Second Amended Complaint.

12    154.    L&W denies the allegations in Paragraph 154 of the Second Amended Complaint.

13    155.    L&W denies the allegations in Paragraph 155 of the Second Amended Complaint.

14  **COUNT III**
**FEDERAL FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION,**
15  **TRADEMARK, AND TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(A)**

16    156.    L&W re-alleges and incorporates by reference its responses to the allegations

17  contained in Paragraphs 1 through 155 as if set forth fully herein.

18    157.    L&W denies the allegations in Paragraph 157 of the Second Amended Complaint.

19    158.    L&W denies the allegations in Paragraph 158 of the Second Amended Complaint.

20    159.    L&W denies the allegations in Paragraph 159 of the Second Amended Complaint.

21    160.    L&W denies the allegations in Paragraph 160 of the Second Amended Complaint.

22    161.    L&W denies the allegations in Paragraph 161 of the Second Amended Complaint.

23    162.    L&W denies the allegations in Paragraph 162 of the Second Amended Complaint.

24  **COUNT IV**
**TRADE SECRET MISAPPROPRIATION**
25  **IN VIOLATION OF NEV. REV. STAT. § 600A.030**

26    163.    L&W re-alleges and incorporates by reference its responses to the allegations

27  contained in Paragraphs 1 through 162 as if set forth fully herein.

28

- 20 -

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 92**

164.    L&W denies the allegations in Paragraph 164 of the Second Amended Complaint.

165.    L&W denies the allegations in Paragraph 165 of the Second Amended Complaint.

166.    L&W denies the allegations in Paragraph 166 of the Second Amended Complaint.

167.    L&W lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167 of the Second Amended Complaint, and therefore denies the allegations in Paragraph 167.

168.    L&W denies the allegations in Paragraph 168 of the Second Amended Complaint.

169.    L&W denies the allegations in Paragraph 169 of the Second Amended Complaint.

170.    L&W denies the allegations in Paragraph 170 of the Second Amended Complaint.

171.    L&W denies the allegations in Paragraph 171 of the Second Amended Complaint.

172.    L&W denies the allegations in Paragraph 172 of the Second Amended Complaint.

173.    L&W denies the allegations in Paragraph 173 of the Second Amended Complaint.

174.    L&W denies the allegations in Paragraph 174 of the Second Amended Complaint.

175.    L&W denies the allegations in Paragraph 175 of the Second Amended Complaint.

## COUNT V
## DECEPTIVE TRADE PRACTICES
## UNDER NEV. REV. STAT. §§ 41.600 & 598.0915

176.    L&W re-alleges and incorporates by reference its responses to the allegations contained in Paragraphs 1 through 175 as if set forth fully herein.

177.    L&W denies the allegations in Paragraph 177 of the Second Amended Complaint.

178.    L&W denies the allegations in Paragraph 178 of the Second Amended Complaint.

179.    L&W admits that L&W's development of new versions of Jewel of the Dragon games began in or around June 2021 and continued until the games were approved for release in the United States.  L&W admits that L&W's Studio Heads UP design team, which is based in Las Vegas and led by Christopher Guerrero, developed the games.  L&W denies any alleged "copying" of Aristocrat's Dragon Link games.  To the extent there are remaining allegations or inferences in Paragraph 179 of the Second Amended Complaint, L&W denies them.

180.    L&W denies the allegations in Paragraph 180 of the Second Amended Complaint.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 93**

181.   L&W denies the allegations in Paragraph 181 of the Second Amended Complaint.

182.   L&W admits that Aristocrat counsel sent Light & Wonder, Inc. a letter dated December 19, 2022, which speaks for itself.  L&W denies the remaining allegations in Paragraph 182 of the Second Amended Complaint.

183.   L&W denies the allegations in Paragraph 183 of the Second Amended Complaint.

## DEMAND FOR JURY TRIAL

No response is required to the demand for a jury trial.  To the extent a response is required, L&W admits that Aristocrat has demanded a jury trial.

## RELIEF SOUGHT

The prayer for relief does not require a response.  To the extent a response is required, L&W denies that Aristocrat is entitled to any relief whatsoever from L&W or this Court, either as requested in the Second Amended Complaint or otherwise.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following defenses to Plaintiffs' claims.  In asserting these defenses, Defendants do not assume the burden of proof as to those issues to which Plaintiffs bear the burden of proof as a matter of law.  Defendants reserve the right to assert such other defenses to Plaintiffs' claims as may become available or apparent to Defendants during pretrial proceedings.

## FIRST DEFENSE

(Readily Ascertainable/Reverse Engineering)

L&W cannot be liable for misappropriation of information that was readily ascertainable by proper means—through reverse engineering or otherwise.

## SECOND DEFENSE

(Independent Development/Creation)

Aristocrat's claims fail because the Dragon Train and Jewel of the Dragon games were independently created and developed.

## THIRD DEFENSE

(*Scenes a faire*)

Aristocrat's copyright claim fails because it is improperly based on audiovisual elements that constitute *scenes a faire*.

**FOURTH DEFENSE**

(Unclean Hands/Bad Faith)

The assertions and allegations made by Aristocrat in its claims for trade secret misappropriation, copyright infringement, trade dress infringement, and deceptive trade practices are objectively and/or subjectively baseless, groundless, meritless and/or frivolous, and as such, constitute unclean hands. For example, Aristocrat has overstated its trade dress rights and claims rights in elements of its games that are not subject to trademark or copyright protection, thereby attempting to improperly confer a monopoly over such elements and representing trademark and copyright misuse. Additionally, upon information and belief, Plaintiffs' claims in the Second Amended Complaint have been asserted for anti-competitive purposes and in bad faith to harass L&W and hinder a competitor in the marketplace.

**FIFTH DEFENSE**

(Invalidity of Alleged Trade Dress)

Aristocrat does not possess any valid, protectable, or enforceable trade dress rights in the purported trade dress alleged in the Second Amended Complaint. The alleged trade dress is not capable of trade dress protection and does not act as a source identifier. Aristocrat's alleged trade dress is also neither inherently distinctive, nor has it acquired distinctiveness. Further, Aristocrat's alleged trade dress is functional. For at least the foregoing reasons, Aristocrat's alleged trade dress is invalid.

**SIXTH DEFENSE**

(Acquiescence/Estoppel/Laches)

Plaintiffs' claims are barred in whole or in part by the doctrines of laches, acquiescence and/or estoppel, in that Plaintiffs unreasonably delayed in bringing suit and that delay has caused prejudice to L&W. Plaintiffs have acquiesced in and are barred by estoppel from asserting the

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 95**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1  claims alleged in their Second Amended Complaint.

## SEVENTH DEFENSE

(Copyright Preemption)

Plaintiffs' deceptive trade practices claim pursuant to the Nevada Deceptive Trade Practices Act, under Nev. Rev. Stat. §§ 41.600 & 598.0915, fails because it is preempted by the Copyright Act. The rights Plaintiffs assert under Nevada state law are rights equivalent to those protected by the Copyright Act, and the alleged work falls within the subject matter of the Copyright Act.

## EIGHTH DEFENSE

(Failure to State a Claim)

Plaintiffs fail to state a claim upon which relief can be granted. For example, Plaintiffs failed to properly state a claim that they own a valid trade dress or that a reasonable consumer could be confused based on the allegations in the Second Amended Complaint.

## NINTH DEFENSE

(Rogue Employee / Lack of Vicarious Liability / Lack of Agency)

L&W is not liable for any alleged trade secret misappropriation because, to the extent there was any misappropriation of Aristocrat's alleged trade secrets, the misappropriation was an independent act/tort committed by rogue employees who were acting outside the scope of their employment and authority, and who kept any such misappropriation secret from L&W. Accordingly, the rogue employees were not acting as agents of L&W and L&W lacked any intent (or other required mental state) to misappropriate or use such trade secrets. L&W further had no knowledge that any trade secrets had been misappropriated or used and had no reason to know or suspect that any trade secrets had been misappropriated or used by these rogue employees.

## TENTH DEFENSE

(Lack of Reasonable Measures to Protect Confidential Information)

L&W cannot be liable for misappropriation of "trade secrets" that Aristocrat has not properly safeguarded.

. . . . .

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 96**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

**ELEVENTH DEFENSE**

(Lack of Secrecy)

L&W cannot be liable for trade secret misappropriation because the information Aristocrat alleges constitutes trade secrets are publicly known or readily accessible in the public domain.

**TWELFTH DEFENSE**

(Release)

Aristocrat's claims are barred to the extent they are not authorized pursuant to Section 10 of the parties' April 3, 2017, Settlement and Patent Cross-License Agreement, and Section 7 of the parties' March 31, 2023, Third Amendment to Settlement and Patent Cross-License Agreement, which provides for a standstill to IP litigation.

**COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 13, Defendants/Counterclaimants assert counterclaims against Plaintiffs/Counterclaim-Defendants Aristocrat for a declaratory judgment that: (1) L&W's did not misappropriate any valid trade secrets in its game math for Dragon Train or Jewel of the Dragon in violation of 18 U.S.C. § 1836; (2) L&W's independently created visual and cinematographic materials in its Jewel of the Dragon games do not constitute copyright infringement or violate Aristocrat's exclusive rights under 17 U.S.C. § 106; and (3) L&W's use of the Jewel of the Dragon trademark and audiovisual elements in the Jewel of the Dragon games do not infringe any alleged common law trade dress rights Aristocrat asserts in its Second Amended Complaint under 15 U.S.C. § 1125(a). In support of its Counterclaims, L&W alleges as follows:

**INTRODUCTION**

1.      The global electronic gaming industry is a fast-moving, highly competitive market, resulting in the need for leading global gaming companies to prioritize employing top talent in order to maintain a competitive edge and drive game innovation. As a leading gaming company, L&W seeks to hire the best talent, which in the gaming industry, often correlates with experience level. Experienced game designers know what makes a game successful—they know how to find the right balance between a win versus a loss, and they know how to create the right emotional experience associated with those same wins or losses.

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 97**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

2.      In 2021, an Australian subsidiary of L&W hired Emma Charles, a top performing game designer in Australia, who led its Star Studio game design team.  Years of investment, research, and development by the Star Studio team culminated in the release of L&W's Dragon Train series of games in August 2023.  Setting the new standard for game design, Dragon Train proved to be a strong commercial success, both in Australia and the United States.

3.      Aristocrat is one of L&W's primary competitors in the electronic gaming market. Aristocrat filed this action, seeking to enjoin L&W on the basis that information in the public domain—that Aristocrat has not protected through reasonable measures—constitutes a trade secret. Aristocrat based its trade secret misappropriation claims on Ms. Charles' joining L&W. Aristocrat has recently alleged similar trade secret misappropriation against L&W's Jewel of the Dragon game based on the limited presence of certain math values in the final version of Jewel of the Dragon. In addition, Aristocrat has tagged on meritless copyright and trade dress claims regarding a different L&W game series, Jewel of the Dragon.

4.      As detailed below, L&W's Dragon Train and Jewel of the Dragon games do not impermissibly borrow or use any Aristocrat trade secrets or other intellectual property rights of Aristocrat.  Accordingly, L&W seeks a declaratory judgment that it has not misappropriated any Aristocrat trade secrets in connection with its Dragon Train and Jewel of the Dragon games, as well as a declaratory judgment of non-infringement of copyright and trade dress with respect to its Jewel of the Dragon games.

## **THE PARTIES**

5.      Counterclaimant Light & Wonder, Inc. is a Nevada corporation with its principal place of business at 6601 Bermuda Road, Las Vegas, Nevada 89119.

6.      Counterclaimant LNW Gaming, Inc. is a Nevada corporation with its principal place of business at 6601 Bermuda Road, Las Vegas, Nevada 89119.

7.      Counterclaimant SciPlay Corporation is a Nevada corporation with its principal place of business at 6601 Bermuda Road, Las Vegas, Nevada 89119.

8.      As    alleged    in    Paragraph    17    of    the    Second    Amended    Complaint,

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 98**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1    Plaintiff/Counterclaim-Defendant Aristocrat Technologies, Inc. ("ATI") is a Nevada corporation

2    with its principal place of business at 10220 Aristocrat Way, Las Vegas, Nevada 89135.

3          9.     As alleged in Paragraph 18 of the Second Amended Complaint,

4    Plaintiff/Counterclaim-Defendant Aristocrat Technologies Australia Pty Ltd. ("ATA") is an

5    Australian corporation with its principal place of business at Building A, Pinnacle Office Park, 85

6    Epping Road, North Ryde, New South Wales, Australia 2113.

7                            **JURISDICTION AND VENUE**

8          10.    L&W's counterclaims seek declaratory and other relief pursuant to the Declaratory

9    Judgment Act, 28 U.S.C. §§ 2201 to 2202, the Lanham Act, Title 15 of the United States Code,

10   §§ 1051, *et seq*., the Copyright Act, Title 17 of the United States Code, § 106, and the Defend Trade

11   Secrets Act, Title 18 of the United States Code, § 1836.

12         11.    This Court has subject matter jurisdiction over L&W's counterclaims pursuant to 15

13   U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 in that these counterclaims raise federal questions

14   arising under the Lanham Act, the Copyright Act, and the Defend Trade Secrets Act.  The Court

15   also has supplemental jurisdiction over L&W's counterclaims arising under Nevada state law

16   pursuant to 28 U.S.C. § 1367(a).

17         12.    By filing its Second Amended Complaint, Aristocrat has consented to the personal

18   jurisdiction of this Court.

19         13.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

20         14.    Aristocrat filed its Second Amended Complaint, alleging that an immediate, real

21   and justiciable controversy exists.

22         15.    An actual controversy exists warranting declaration of the rights of L&W and

23   Aristocrat.  L&W seeks a declaration of rights under the Declaratory Judgment Act which allows

24   for declaration of the rights and other legal relations of L&W and Aristocrat as a case of actual

25   controversy has arisen.  A real and substantial controversy exists warranting determination of

26   specific relief through a decree of a conclusive character, and such controversy is ripe for

27   determination as a controversy over legal rights.  A substantial controversy exists between L&W

28

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 99**

1   and Aristocrat of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

2        16.    As a consequence of the foregoing, an actual controversy has arisen and now exists

3   between L&W and Aristocrat regarding L&W's request for a declaration: (1) that L&W has

4   freedom to operate its businesses without obligation to Aristocrat for any alleged trade secret

5   misappropriation or other claim of misuse of proprietary information; (2) of non-infringement of

6   Aristocrat's alleged copyrights in its Dragon Link games; and (3) of non-infringement of

7   Aristocrat's alleged trade dress rights in its Dragon Link games.

8   **STATEMENT OF FACTS**

9   **A.    L&W Is a Global Leader in Game Experiences and Conducts Extensive Research in Connection with Its Games**

10

11        17.    L&W is a leading cross-platform global games company, which creates immersive

12   content that forges lasting connections with players, wherever players choose to engage with

13   L&W—on the casino floor, online, or on a mobile gaming application. From creating brand new

14   games, to revitalizing well-known and well-loved titles, L&W brings innovative features, unique

15   gameplay, and attractive experiences to all types of players. In doing so, L&W maintains core

16   values, such as celebrating diverse perspectives, promoting accountability and respect in order to

17   raise the bar for the industry, and relentlessly pushing forward to create the extraordinary in every

18   final detail.

19        18.    As a leader in the global electronic gaming industry, L&W conducts extensive

20   market research into the performance of its competition, including the introduction of new games

21   and game features, current and new game performance metrics, game appearance, game feature

22   functionality, game probabilities, jackpots values, other return to player ("RTP") values, and many

23   other performance characteristics. L&W's research includes the reverse engineering of competitive

24   games.

25        19.    It is common practice within the electronic gaming industry to play or observe the

26   gameplay of new or high-performing games and game functions with the goal of reverse

27   engineering game functions and values.

28

- 28 -

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 100**

20.     By playing games or observing gameplay, various functions and values of electronic games can be reverse engineered, or mathematically approximated by a model that returns the same or similar results as the observed game function or value within an acceptable degree of mathematical certainty.  This task can be undertaken by observing inputs and outputs of a particular game function or value and attempting to mathematically describe what is taking place.

21.     Electronic game functions and values that can be reasonably approximated or reverse engineered by gameplay or gameplay observation through publicly available videos include: base game reel strip functions, free game reel strip functions, hold and spin feature functions, base game RTP values, parts of the free game RTP values, feature hit rate, line hit rate, prize pools or shelving and the hit rates contained therein, prize distributions, the probability of landing scatters within a particular feature, and many other game metrics.

22.     L&W successfully reverse engineered game functions and values contained in Aristocrat's Lightning Link and Dragon Link games, and L&W did so years before it began development of the Dragon Train games.

23.     In 2014, L&W employees successfully reverse engineered the base games function, free game function, and hold and spin feature of the Lightning Link game.  L&W employees successfully determined, with an acceptable degree of mathematical confidence, certain game functions, including the reel strips and feature frequencies.  Following the release of the Dragon Link games, L&W employees reverse engineered the base game function, free game function, and hold and spin feature using the same method to determine certain game functions with an acceptable degree of mathematical confidence, including the reel strips and feature frequencies.

24.     In 2016, different L&W employees successfully reverse engineered the base game functionality of Aristocrat's Lightning Link games by observing publicly available gameplay from Lightning Link titles and reconstructing the game's reel strip function.   L&W employees successfully determined, with an acceptable degree of mathematical confidence, the RTP values and feature hit rates of the Lightning Link base game, the feature hit rates for the base games, free games, and hold and spin features, and the line hit rate.

710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com
CAMPBELL & WILLIAMS
ATTORNEYS AT LAW

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

25.     In 2017, L&W employees also successfully reverse engineered the free game functionality of Aristocrat's Tiki Fire–Lightning Link and High Stakes–Lightning Link games. They successfully determined, with an acceptable degree of mathematical confidence, the return or expected value of the free games and, through simulation, the "feel" of how the games played.

26.     In 2017, L&W employees successfully reverse engineered the functionality of the hold and spin feature and prize distribution for Aristocrat's Lightning Cash/Lighting Link and Dragon Cash/Dragon Link games.  They successfully determined, with an acceptable degree of mathematical confidence, the hold and spin reel strip functionality, the prize pools, the hit rates and estimated value ("EV") within those prize pools, the probability of how different reel strip sets were used, how the expected value of different sets affected the results of the hold and spin feature and how that created a different play experience from having one prize set, the odds of landing scatters within the feature, the distribution of prizes on reel symbols, and at what points in the game play different prizes were displayed in both the base game and the hold and spin feature.

27.     Based on L&W's reverse engineering efforts, L&W employees concluded that Aristocrat's Lightning Cash/Lightning Link games and Dragon Cash/Dragon Link games use common industry practices to achieve outcomes for the hold and spin feature, including the use of prize pools.  They also determined that the games were mathematically similar to other popular games, including L&W's 88 Fortunes game.

28.     In 2017, L&W employees successfully reverse engineered the base game of the Dragon Cash game.  Upon information and belief, the Dragon Cash game is essentially the same mathematically as the Dragon Link games aside from the hit rate to the grand progressive jackpot. L&W employees determined the reel strip functionality of Dragon Cash.

29.     Through various exercises, L&W employees then successfully determined, with an acceptable degree of mathematical confidence, the reel strip symbols, the hit rates of line and feature hits, prize pool distribution, and weighting tables for the prize pool distributions, among other mathematical data features of the Lightning Link and Lightning Cash games.

30.     As shown by the foregoing examples, various game metric information is reverse

- 30 -

1    engineerable.  Therefore, it is not eligible for trade secret protection.

2    31.    Additionally, Aristocrat has not taken reasonable measures to protect its so-called

3    trade secrets. Even if Aristocrat has taken *some* measures, those measures were not reasonable to

4    shield the disclosure of information Aristocrat claims is secret from the public domain or from

5    competitors. On information and belief, Aristocrat's allegedly confidential information has lost any

6    protection as a trade secret, to the extent it was ever entitled to such protection, due to Aristocrat's

7    failure to safeguard that information. Consequently, the information Aristocrat alleges to be trade

8    secrets does not qualify as such.

9                            **1.    L&W's Dragon Train Games**

10   32.    After years of extensive research and development, L&W released its Dragon Train

11   games to the Australian market in August 2023.  L&W then displayed the games in October 2023

12   at the Global Gaming Expo in Las Vegas, before the wider launch to the U.S. market in March

13   2024.

14   33.    Like many of L&W's games, the Dragon Train game series comprises multiple

15   distinct themes.  Specifically, Dragon Train has four themes: Chi Lin Wins, Khutulun Battle

16   Princess, Sun Shots, and Forever Emperor.

17   34.    The success of the Dragon Train games in the United States and Australia is in large

18   part due to numerous original and engaging game design elements.  First, Dragon Train's

19   "secondary" hold and spin feature is an integral part of its success, as it is one of the first of its kind

20   in the market.  The standard hold and spin game has been prolific in the industry for approximately

21   a decade and generally can be described as a "game-within-a-game."  Numerous companies

22   implement standard hold and spin games (e.g., Aristocrat, IGT, AGS, Everi, Bluberi, Playson,

23   Konami, and Novomatic), as well as dragon-themed hold and spin games where the words "Hold

24   and Spin" are displayed in the title (e.g., Pragmatic Play's "Dragon Hot Hold and Spin" game and

25   Pragmatic Play's "Floating Dragon Hold and Spin" game).  However, Dragon Train has an

26   additional hold and spin feature that is "secondary," which means that it offers an additional game

27   *within* the hold and spin game.  Upon information and belief, Aristocrat's Dragon Link games do

28

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1    not offer secondary hold and spin features.

2         35.    In Dragon Train, during the hold and spin feature, players may unlock the secondary

3    hold and spin event by triggering the hold and spin icon with a Dragon Train symbol on the reels.

4    The secondary hold and spin game features a circular grid of eight trigger symbols on the front of

5    the game's "dragon train." If the player unlocks all eight hold and spin trigger symbols, the player

6    wins the $1000 jackpot. Because the secondary hold and spin event is an additional game a player

7    may unlock during the hold and spin feature, players receive another chance to win prize money,

8    which is a reason the game is popular among players.

9         36.    Dragon Train's success is also due to the game's hardware (e.g., the EGM's

10   "cabinet"). A "cabinet" is the electronic gaming machine's external housing. The past four

11   cabinets L&W has released have been ranked number one in the market, according to data from

12   Eilers & Krejcik Gaming as of April 2024. The Dragon Train games utilize one of the most popular

13   cabinets.

14        37.    Another important reason for Dragon Train's success is the game's audiovisual

15   experience, including its artwork, which reflects the game's graphic and visual art and its audio

16   features. The top box displaying Dragon Train's jackpots is different from the industry standard

17   jackpot layouts in that the display's "dragon train" image is moving at all times throughout the

18   player experience. The sounds and graphics associated with trains also consistently reinforce the

19   "dragon train" theme throughout the entire game. Screen shots of L&W's Dragon Train game and

20   its unique and striking imagery are included for reference below.

21   . . . . .

22   . . . . .

23   . . . . .

24   . . . . .

25   . . . . .

26   . . . . .

27

28
                                                        DEFENDANTS' ANSWER TO SECOND
                                                        AMENDED COMPLAINT AND
                         - 32 -                         COUNTERCLAIMS
                                                        2:24-cv-00382-GMN-MDC

| Imagery from L&W's Dragon Train Games | | |
|---|---|---|
| **Dragon Train Game Display During Gameplay** | **Display of Dragon Train: Khutulun Battle Princess** | **"Dragon Train" Image on Top Box Display** |
|  | |  |

### 2. L&W's Jewel of the Dragon Games

38.     L&W launched its original Jewel of the Dragon games in 2011.  In connection therewith, L&W owns the JEWEL OF THE DRAGON trademark, U.S. Trademark Registration No. 4,132,968 (the "JEWEL OF THE DRAGON Mark").  This registration, which claims a first use date of September 15, 2011, was filed on March 11, 2011.  The registration issued on April 24, 2012, covering "Gaming machines, namely, devices which accept a wager and gaming software that generates or displays outcomes for gaming machines" in International Class 9.

39.     L&W subsequently launched the new Jewel of the Dragon games under the JEWEL OF THE DRAGON Mark in 2022 and 2023 as a linked progressive game series.  The Jewel of the Dragon games center around an Asian-inspired theme, which is an in-demand and well-received theme in the casino gaming industry.

40.     In designing its Jewel of the Dragon games, L&W invested significant research, time, and development initiatives into the games' creation, including research into Chinese history and art.  The game designers focused on features such as symmetry and characters based on

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

constellations.  There are currently four games in the Jewel of the Dragon series: A Thousand Warriors, Valley of the Tiger, Red Phoenix, and Prosperity Tortoise.  The base game for each Jewel of the Dragon game is depicted below.

| Different Titles Under L&W's Jewel of the Dragon Games | | | |
|---|---|---|---|
| Prosperity Tortoise | Red Phoenix | A Thousand Warriors | Valley of the Tiger |
|  |  |  |  |

41.    The Jewel of the Dragon game themes share a common constellation theme and elements like a faceted jewel bonus symbol.  However, there are also many visual differences between the Jewel of the Dragon games based on the themes, as shown above.  A Thousand Warriors incorporates a female warrior clothed in ornate gear ready for battle.  Valley of the Tiger centers on a rare white species tiger decorated in jewels.  Red Phoenix incorporates a woman wearing Asian dress styled with feathers to evoke a mythical red phoenix in the color red, which color is understood to represent luck and fortune in Asian culture.  Prosperity Tortoise features a tortoise with a gold shell—a color which similarly represents luck and fortune in Asian culture.

42.    Despite these varying themes, as part of the development of the Jewel of the Dragon games, L&W employed certain designs that are common throughout popular slot machine games, such as hold and spin features, bonuses, "wild" symbols, royal symbols, "push" sounds during a spin, flaming explosions and accompanying sounds, glowing jewels, coin animations, and jackpot displays.  Many successful games incorporate these types of stock, familiar elements.

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

**EXHIBIT A-2 - 106**

43.     In connection with developing the Jewel of the Dragon game themes, L&W's artists and animators extensively researched Chinese art, history, and design in preparation for creating the graphics in the games.  In particular, one aspect of Chinese art that is commonly used in the casino gaming industry includes dragons.  Notably, there are hundreds of trademark registrations for games that include the word "dragon" in the mark.  This is not surprising, as dragons are understood to symbolize luck and fortune, motifs for which are commonplace in the casino industry. Similarly, the colors red and gold are commonly understood to symbolize good luck, prosperity, and fortune.  This symbolism is well-recognized in not only academia and art history, but also commentary within the casino industry.

44.     It is common for new games in the market to incorporate already ubiquitous design elements such as hold and spin features, glowing orbs, coin animations, and jackpot displays, which are familiar features to players.

**B.      Aristocrat's Different Dragon Link Games**

45.     According to Aristocrat's Second Amended Complaint, Dragon Link was released in the United States in 2017.

46.     Aristocrat's Dragon Link games come in ten different themes, which are all visually different from each other.  A table reflecting the Dragon Link game themes is included below for reference:

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv-00382-GMN-MDC

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

EXHIBIT A-2 - 107

| Different Titles Under Aristocrat's Dragon Link Games | | | | |
|---|---|---|---|---|
| Autumn Moon | Genghis Khan | Golden Century | Golden Gong | Silk Road |
|  |  |  |  |  |
| Happy & Prosperous | Panda Magic | Peace & Long Life | Peacock Princess | Spring Festival |
|  |  |  |  |  |

47.     Aristocrat has alleged ownership of registered copyrights in connection with certain aspects of specific themes of its Dragon Link games.   For example, Aristocrat's asserted registrations for visual materials, along with the deposit materials submitted in connection with the registrations, are shown below:

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

. . . . .

- 36 -

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

| Aristocrat's Alleged Copyright Registrations in Visual Art | | |
|---|---|---|
| VA 2-369-827<br>Autumn Moon – Goddess | VA 2-372-588<br>Golden Century – Emperor | VA 2-372-489<br>Peacock Princess – Princess |
|  | |  |

48.     Aristocrat's copyright registrations in visual art as alleged in the Second Amended Complaint cover the discrete, two-dimensional visual artwork depicted above.  Copyright protection does not extend to ideas, concepts, or facts—only the precise *expression* of ideas, concepts, or facts.  As such, Aristocrat is the alleged copyright holder for the expression of its Autumn Moon Goddess, Golden Century Emperor, and Peacock Princess, as depicted above.

**C.     L&W's Jewel of the Dragon Games Are Not Substantially Similar to Aristocrat's Alleged Copyrights in the Dragon Link Games**

49.     None of the Jewel of the Dragon games, or protectable elements thereof, are substantially similar to the Dragon Link games, or any protectable elements thereof.  For example, L&W does not use substantially similar imagery to the visual artwork that is the subject of Aristocrat's alleged copyright registrations in its Dragon Link games.  The stark differences are shown below:

. . . . .

. . . . .

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 109**

| Aristocrat Dragon Link Deposit Materials | L&W Jewel of the Dragon Screen Shots |
|---|---|
| |  |
|  |  |
|  | *Screen Shot from Prior Version of A Thousand Warriors*<br /><br />*Screen Shot from Current Version of A Thousand Warriors*<br /> |

DEFENDANTS' ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

EXHIBIT A-2 - 110

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

50.     In the Second Amended Complaint, Aristocrat also alleges that it owns copyright registrations covering cinematographic materials from the hold and spin bonus features of two of its Dragon Link games.  As with the visual materials, the hold and spin bonus features of the Jewel of the Dragon games—which are ubiquitous throughout the industry—share no substantial similarities with the hold and spin bonus features of the Dragon Link games, as shown below:

| Aristocrat Dragon Link Hold & Spin from Second Amended Complaint | L&W Jewel of the Dragon Screen Shots |
|---|---|
|  |  |
|  |  |

51.     As shown above, audiovisual graphics in Aristocrat's Dragon Link games also contain unoriginal, standard stock elements (also known as *scenes a faire*) in the casino gaming industry, which are not subject to copyright protection.  Examples of these elements include coin animations, glowing orbs, spinning rings of fire, and flame fares—all of which are ubiquitous in

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

slot games.

52.     Furthermore, many of the audiovisual elements that are part of Aristocrat's alleged copyright registrations for the hold and spin features also appear in Dragon Link's predecessor game, Lightning Link, or the public domain.  Accordingly, Aristocrat excluded "visual material" from its copyright claim in the hold and spin features of Spring Festival and Autumn Moon.

53.     In sum, L&W's Jewel of the Dragon games are not substantially similar to any protectable expression in the Dragon Link games.

**D.     L&W's Jewel of the Dragon Games Do Not Use Elements Likely to Cause Confusion with Any Alleged Trade Dress Rights in the Dragon Link Games**

54.     There is no likelihood of confusion between L&W's Jewel of the Dragon games and any alleged trade dress in Aristocrat's Dragon Link Games.

55.     In connection with the trademarks for the titles of their respective games, and ability to use such trademarks in any stylized format, L&W has priority over Aristocrat.

56.     Aristocrat filed an application for DRAGON LINK on November 5, 2015, which issued as U.S. Trademark Registration No. 5,360,457 on December 19, 2017.  This registration, which claims a first use date for the mark of July 10, 2017, covers "Electronic gaming machines, namely, devices which accept a wager" in International Class 28.

57.     Based on L&W's U.S. Trademark Registration No. 4,132,968 for JEWEL OF THE DRAGON, L&W has priority with respect to its rights in the JEWEL OF THE DRAGON Mark as of the filing date of the application on March 4, 2011.

58.     Audiovisual elements such as jackpot displays, orbs, and hold and spin features are functional and common across slot machine games, and these elements do not serve a source-identifying function.

59.     Aristocrat does not own a valid, protectable trade dress in the combination of elements alleged in the Second Amended Complaint, namely the Dragon Link Standard Logo, Dragon Link Jackpot Display, Dragon Link Orb Design, and Dragon Link Hold & Spin Design, as defined in the Second Amended Complaint.  These elements are not subject to trade dress protection.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

- 40 -

60.     Aristocrat also does not own a protectable trade dress because the trade dress alleged in the Second Amended Complaint is not inherently distinctive, nor has it acquired distinctiveness.

61.     Aristocrat's alleged trade dress is also functional.

62.     Even if Aristocrat could claim trade dress protection over the alleged elements, which it cannot, there is no likelihood of consumer confusion with the Jewel of the Dragon games.

63.     L&W is not aware of any actual confusion resulting from the use of the accused audiovisual elements in the Jewel of the Dragon games with Aristocrat or its Dragon Link games. The lack of actual confusion despite years of concurrent use demonstrates there is no likelihood of confusion.

64.     There is also no evidence of any harm to Aristocrat resulting from L&W's use of its JEWEL OF THE DRAGON Mark and audiovisual elements in the Jewel of the Dragon games.

## FIRST COUNTERCLAIM
### Declaration of No Misappropriation of Alleged Trade Secrets

65.     L&W repeats, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1-64 as if fully set forth herein.

66.     Aristocrat alleges that an actual controversy exists based on L&W's alleged misappropriation of Aristocrat trade secrets in violation of the Defend the Trade Secret Act, 18 U.S.C. § 1836, et seq. and the Nevada Uniform Trade Secrets Act, Nev. Rev. Stat. § 600A.030, et seq.

67.     Aristocrat fails to identify any information subject to trade secret protection that L&W used in the development or production of its Dragon Train games.

68.     L&W did not use any Aristocrat trade secret in the development or production of its Dragon Train or Jewel of the Dragon games.

69.     L&W cannot be liable for misappropriation of information that was readily ascertainable by proper means—through reverse engineering or otherwise.

70.     L&W seeks a declaratory judgment from this Court that L&W has not misappropriated and is not now misappropriating any trade secret asserted by Aristocrat in its

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

development and production of L&W's Dragon Train and Jewel of the Dragon games.

## SECOND COUNTERCLAIM
### Declaration of Non-Infringement of Alleged Copyrights

71.     L&W repeats, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1-70 as if fully stated herein.

72.     Aristocrat alleges that an actual controversy exists between the parties as to whether L&W has infringed Aristocrat's alleged copyrights in its Dragon Link games.

73.     L&W game designers independently created the Jewel of the Dragon games.

74.     The Jewel of the Dragon games do not contain audiovisual elements that are substantially similar to, or otherwise copy protectable expression from, Aristocrat's Dragon Link games.

75.     L&W has not infringed any of Aristocrat's exclusive rights under 17 U.S.C. §106(1)-(6).

76.     L&W seeks a declaratory judgment from this Court that none of its Jewel of the Dragon games, including none of the different versions and themes of the Jewel of the Dragon games (nor any parts of protectable expression thereof), distributed and made available either in casinos or online, have infringed, infringe, or would infringe any valid, enforceable and/or protectable expression in Aristocrat's purported copyrights.

77.     L&W is being harmed by Aristocrat's efforts to press its baseless assertion of copyright infringement against L&W's Jewel of the Dragon games.  Absent a declaration of non-infringement, Aristocrat will continue to wrongfully allege infringement and thereby cause injury to L&W.

## THIRD COUNTERCLAIM
### Declaration of Non-Infringement of Plaintiffs' Alleged Trade Dress Rights

78.     L&W repeats, realleges, and incorporates by reference each and every allegation set forth in Paragraphs 1-77 as if fully stated herein.

79.     Aristocrat alleges that an actual controversy exists between the parties as to whether L&W has infringed Aristocrat's purported common law rights in its alleged trade dress associated

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

EXHIBIT A-2 - 114

with the Dragon Link games.

80.     Aristocrat does not own a valid, protectable trade dress in the combination of elements in the Dragon Link games as alleged in the Second Amended Complaint. The alleged trade dress is not capable of protection as trade dress and does not act as a source identifier. Additionally, the alleged trade dress is not inherently distinctive, has not acquired distinctiveness, and is functional.

81.     Aristocrat alleges that L&W's use of certain elements in its Jewel of the Dragon games, including the Jewel of the Dragon logo, jackpot display, hold and spin bonus feature design, and purported orb-like imagery violates 15 U.S.C. § 1125(a) for federal false designation of origin, unfair competition, trademark, and trade dress infringement (Count III), as well as Deceptive Trade Practices under Nev. Rev. Stat. §§ 41.600 & 598.0915 (Count V).

82.     L&W's use of the JEWEL OF THE DRAGON Mark along with other challenged audiovisual elements as set forth in the Second Amended Complaint has not caused, and is not likely to cause, confusion, mistake, or deception as to origin, sponsorship, or approval of L&W's Jewel of the Dragon games, or regarding any affiliation of the games with Aristocrat.

83.     As there is no likelihood of confusion between L&W's use of its JEWEL OF THE DRAGON Mark and audiovisual elements in its Jewel of the Dragon games and Aristocrat's alleged trade dress, and because Aristocrat does not own a valid trade dress, L&W's acts do not constitute false designation of origin, unfair competition, trademark infringement, trade dress infringement, or deceptive trade practices.

84.     Accordingly, pursuant to 28 U.S.C. §§ 2201 and 2202, L&W is entitled to a declaratory judgment that its use of the JEWEL OF THE DRAGON Mark and audiovisual elements in the Jewel of the Dragon games, as alleged in the Second Amended Complaint, does not violate Aristocrat's alleged trade dress rights, or otherwise constitute unfair competition or deceptive trade practices under federal or state law.

85.     L&W is being harmed by Aristocrat's efforts to press its meritless assertion of trade dress infringement against L&W. Absent a declaration of non-infringement, Aristocrat will

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

EXHIBIT A-2 - 115

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1    continue to assert its invalid alleged trade dress against L&W and wrongfully allege infringement,

2    thereby causing injury to L&W.

3                       **PRAYER FOR RELIEF**

4         WHEREFORE, L&W respectfully requests that this Court enter an Order:

5         1.       Dismissing the Second Amended Complaint with prejudice and entering judgment

6    against Aristocrat on all counts and requests for relief;

7         2.       Granting judgment in favor of L&W on its Counterclaims for Declaration of

8    No Misappropriation of Alleged Trade Secrets, Declaration of Non-Infringement of Alleged

9    Copyrights, and Declaration of Non-Infringement of Plaintiffs' Alleged Trade Dress Rights;

10        3.       Awarding L&W its costs and attorneys' fees incurred in this action, including in

11    accordance with 15 U.S.C. § 1117, 17 U.S.C. § 505, 18 U.S.C. § 1836(b)(3)(D); and

12        4.       Granting L&W any such other relief as the Court deems just and proper.

13                    **DEMAND FOR JURY TRIAL**

14         Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, L&W hereby demands a

15    trial by jury on all issues so triable in this action.

16    . . . . .

17    . . . . .

18    . . . . .

19    . . . . .

20    . . . . .

21    . . . . .

22    . . . . .

23    . . . . .

24    . . . . .

25    . . . . .

26    . . . . .

27    . . . . .

28

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 116**

Dated: April 11, 2025

**CAMPBELL & WILLIAMS**

By: /s/ *Philip R. Erwin*
PHILIP R. ERWIN, ESQ. (11563)
710 South Seventh Street
Las Vegas, Nevada  89101

SUSMAN GODFREY L.L.P
NEAL MANNE (*pro hac vice*)
JOESEPH GRINSTEIN (*pro hac vice*)
ROCCO MAGNI (*pro hac vice*)
1000 Louisiana, Suite 5100
Houston, Texas 77002

SUSMAN GODFREY L.L.P
ERIK WILSON (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067

SUSMAN GODFREY L.L.P
Dinis Cheian (*pro hac vice*)
Andrew Nassar (*pro hac vice*)
One Manhattan West, 50th Fl.
New York, NY 10001

*Attorneys for Defendants Light & Wonder,*
*Inc., LNW Gaming, Inc., and SciPlay*
*Corporation*

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
710 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

- 45 -

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of April, 2025, I caused a true and correct copy of the foregoing **Defendants' Answer to Second Amended Complaint and Counterclaims** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

/s/ Philip R. Erwin
An employee of Campbell & Williams

DEFENDANTS' ANSWER TO SECOND
AMENDED COMPLAINT AND
COUNTERCLAIMS
2:24-cv 00382-GMN-MDC

**EXHIBIT A-2 - 118**

# EXHIBIT A-3

*Proposed Subpoena to Alexander Bitterlin*

**EXHIBIT A-3**

**<u>DEFINITIONS</u>**

Unless the terms of a deposition topic specifically indicate otherwise, the following definitions are applicable throughout these deposition topics and are incorporated into each topic.

1.       "Document" and "Documents" are used in a comprehensive sense and mean all written or graphic matter, however produced or reproduced, in Your actual or constructive possession, custody, care or control, including, but not limited to, originals (or copies where originals are unavailable) of correspondence, e-mail, computer storage media, computer software needed to produce in human-readable form from said computer storage media, instructions for using said computer software, telegrams, notes of any type of personal or telephone conversations, or of meetings or conferences, minutes of directors or committee meetings, memoranda, inter-office communications, studies, analyses, reports, engineering drawings, results of investigations, catalogs, contracts, licenses, agreements, working papers, statistical records, ledgers, books of account, vouchers, invoices, charge slips, freight bills, time sheets or logs, stenographers' notebooks, diaries, or papers similar to any of the foregoing however denominated. "Document" shall also mean (1) any copy which is not identical to the original or to any other copy and (2) any tangible thing that is referenced in a deposition topic. "Document" also has the meaning as defined in the Australian *Evidence Act 1995* (Cth) and the *Acts Interpretation Act 1901* (Cth), that is, it means any record of information and includes:

     a.   anything on which there is writing; or

     b.   anything on which there are marks, figures, symbols or perforations having a meaning for persons qualified to interpret them, such as discs or tapes; or

      c.   anything from which sounds, images or writings can be reproduced with or without the aid of anything else, such as discs or tapes; or

      d.   a map, plan, drawing or photograph.

    2.   "Communication" and "Communications" refers to the transmittal of information, in the form of facts, ideas, inquiries, or otherwise, including any electronic written and/or oral transmission of any thought, idea, information or belief whether recorded or not recorded in any document.

    3.   "Aristocrat" means Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.; their parents, successors, predecessors, subsidiaries, affiliates, game studios (including High Roller Gaming), and assignees thereof; their present and former officers, directors, agents, representatives, consultants, employees and attorneys; and any other Persons subject to the direction and control of, or acting on behalf of, any of the foregoing, both past and present.

    4.   "L&W" means Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation; their parents, successors, predecessors, subsidiaries, affiliates (including LNW Gaming ANZ Pty Ltd.), game studios (including Star Studio), and assignees thereof; their present and former officers, directors, agents, representatives, consultants, employees, and attorneys; and any other Persons subject to the direction and control of, or acting on behalf of, any of the foregoing, both past and present.

    5.   "You," "Your," and "Yours" means Alexander Bitterlin.

    6.   "U.S. Litigation" refers to the litigation captioned, *Aristocrat Technologies, Inc. et al. v. Light & Wonder, Inc. et al*., Civil Action No. 2:24-cv-00382-GMN-MDC, pending in the United States District Court for the District of Nevada.

7.     "Australian Proceedings" refers to any legal proceedings in Australia between L&W and Aristocrat concerning the same or related underlying allegations as the U.S. Litigation, including *Aristocrat Techs. Australia Pty Ltd. v. Light & Wonder, Inc. et al.* (2023) No. NSD1576 (Fed. Ct. Austl.) and *Aristocrat Techs. Australia Pty Ltd. v. Light & Wonder, Inc. et al.* (2024) No. NSD1410 (Fed. Ct. Austl.).

8.     "Date" means the exact day, month, and year, if so ascertainable, and, if not, the best approximation of the timing (including its relationship to other events).

9.     "Person" and "Persons" mean any natural persons or any firms, partnerships, associations, joint ventures, corporations, and any other forms of business, legal, or governmental entities or associations.

10.     "Dragon Link" refers to the family of Aristocrat games offered under the name "Dragon Link," the individual game titles within this family ("Silk Road," "Golden Gong," "Peace & Long Life," "Genghis Khan," "Golden Century," "Spring Festival," "Prosperous," "Autumn Moon," "Peacock Princess," and "Panda Magic"), and any abbreviations of the foregoing (e.g., "DL").

11.     "Lightning Link" refers to the family of Aristocrat games offered under the name "Lightning Link," the individual game titles within this family ("Magic Pearl," "Sahara Gold," "Happy Lantern," "High Stakes," "Best Bet," "Moon Race," "Heart Throb," "Tiki Fire," "Bengal Treasures," "Wild Chuco," "Magic Totem," "Eyes of Fortunes," "Dragons Riches," "Raging Bull," "Mine Mine Mine," and "Fire Idol"), and any abbreviations of the foregoing (e.g., "LL").

12.     The terms "refer(ring) to," "reflecting," "relating to," "related to," and "concerning" include each other such term, constituting, comprising, containing, embodying, discussing, describing, disclosing, involving, supporting, contradicting, evidencing, regarding,

identifying, stating, reporting, referring directly or indirectly to, or in any way pertaining in whole or in part to the subject matter identified.

13.     The term "PAR Sheets" means any: (1) Probability Accounting Reports, Probability and Accounting Reports, theoretical hold worksheets, PAR sheets, game sheets, or combination sheets; (2) documents that contain information found in Probability Accounting Reports, Probability and Accounting Reports, theoretical hold worksheets, PAR sheets, game sheets, or combination sheets; (3) documents referred to as a PAR sheet; and (4) documents that contain information found in documents you have referred to as a PAR sheet.

14.     As used herein, the singular includes the plural, and the plural includes the singular, except where context does not permit. The terms "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. The terms "any" and "all" mean "any and all." The term "including" and its variants mean "including without limitation." The use of any verb in any tense shall be construed as the use of the verb in all other tenses.

## DEPOSITION TOPICS

1.      Your employment and work for Aristocrat, including Your knowledge of mathematical or game design information about Aristocrat's Lightning Link and Dragon Link games.

2.      Your possession of Aristocrat Documents or Documents containing Aristocrat information after leaving Your employment by Aristocrat.

3.      Your use or dissemination of Aristocrat Documents and any Aristocrat mathematical or other game design information.

4.      Your knowledge of any practices, procedures, or protocols by Aristocrat to safeguard information it claims, or has claimed, is confidential, proprietary, or a trade secret.

5.      Your knowledge of any practices, procedures, or protocols by Aristocrat regarding employee departures and the safeguarding of information it claims, or has claimed, is confidential, proprietary, or a trade secret.

6.      Your knowledge of the use, possession, or dissemination of PAR Sheets belonging to Aristocrat or industry competitors, such as L&W, among game designers and mathematicians.

# EXHIBIT A-4

*Proposed Subpoena to Naomi Hall*

**EXHIBIT A-4**

**DEFINITIONS**

Unless the terms of a deposition topic specifically indicate otherwise, the following definitions are applicable throughout these deposition topics and are incorporated into each topic.

1.      "Document" and "Documents" are used in a comprehensive sense and mean all written or graphic matter, however produced or reproduced, in Your actual or constructive possession, custody, care or control, including, but not limited to, originals (or copies where originals are unavailable) of correspondence, e-mail, computer storage media, computer software needed to produce in human-readable form from said computer storage media, instructions for using said computer software, telegrams, notes of any type of personal or telephone conversations, or of meetings or conferences, minutes of directors or committee meetings, memoranda, inter-office communications, studies, analyses, reports, engineering drawings, results of investigations, catalogs, contracts, licenses, agreements, working papers, statistical records, ledgers, books of account, vouchers, invoices, charge slips, freight bills, time sheets or logs, stenographers' notebooks, diaries, or papers similar to any of the foregoing however denominated. "Document" shall also mean (1) any copy which is not identical to the original or to any other copy and (2) any tangible thing that is referenced in a deposition topic. "Document" also has the meaning as defined in the Australian *Evidence Act 1995* (Cth) and the *Acts Interpretation Act 1901* (Cth), that is, it means any record of information and includes:

    a.   anything on which there is writing; or

    b.   anything on which there are marks, figures, symbols or perforations having a
           meaning for persons qualified to interpret them, such as discs or tapes; or

    c.   anything from which sounds, images or writings can be reproduced with or without the aid of anything else, such as discs or tapes; or

    d.   a map, plan, drawing or photograph.

2.      "Communication" and "Communications" refers to the transmittal of information, in the form of facts, ideas, inquiries, or otherwise, including any electronic written and/or oral transmission of any thought, idea, information or belief whether recorded or not recorded in any document.

3.      "Aristocrat" means Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.; their parents, successors, predecessors, subsidiaries, affiliates, game studios (including High Roller Gaming), and assignees thereof; their present and former officers, directors, agents, representatives, consultants, employees and attorneys; and any other Persons subject to the direction and control of, or acting on behalf of, any of the foregoing, both past and present.

4.      "L&W" means Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation; their parents, successors, predecessors, subsidiaries, affiliates (including LNW Gaming ANZ Pty Ltd.), game studios (including Star Studio), and assignees thereof; their present and former officers, directors, agents, representatives, consultants, employees, and attorneys; and any other Persons subject to the direction and control of, or acting on behalf of, any of the foregoing, both past and present.

5.      "You," "Your," and "Yours" means Naomi Hall.

6.      "U.S. Litigation" refers to the litigation captioned, *Aristocrat Technologies, Inc. et al. v. Light & Wonder, Inc. et al*., Civil Action No. 2:24-cv-00382-GMN-MDC, pending in the United States District Court for the District of Nevada.

7.      "Australian Proceedings" refers to any legal proceedings in Australia between L&W and Aristocrat concerning the same or related underlying allegations as the U.S. Litigation, including *Aristocrat Techs. Australia Pty Ltd. v. Light & Wonder, Inc. et al.* (2023) No. NSD1576 (Fed. Ct. Austl.) and *Aristocrat Techs. Australia Pty Ltd. v. Light & Wonder, Inc. et al.* (2024) No. NSD1410 (Fed. Ct. Austl.).

8.      "Date" means the exact day, month, and year, if so ascertainable, and, if not, the best approximation of the timing (including its relationship to other events).

9.      "Person" and "Persons" mean any natural persons or any firms, partnerships, associations, joint ventures, corporations, and any other forms of business, legal, or governmental entities or associations.

10.     "Dragon Link" refers to the family of Aristocrat games offered under the name "Dragon Link," the individual game titles within this family ("Silk Road," "Golden Gong," "Peace & Long Life," "Genghis Khan," "Golden Century," "Spring Festival," "Prosperous," "Autumn Moon," "Peacock Princess," and "Panda Magic"), and any abbreviations of the foregoing (e.g., "DL").

11.     "Lightning Link" refers to the family of Aristocrat games offered under the name "Lightning Link," the individual game titles within this family ("Magic Pearl," "Sahara Gold," "Happy Lantern," "High Stakes," "Best Bet," "Moon Race," "Heart Throb," "Tiki Fire," "Bengal Treasures," "Wild Chuco," "Magic Totem," "Eyes of Fortunes," "Dragons Riches," "Raging Bull," "Mine Mine Mine," and "Fire Idol"), and any abbreviations of the foregoing (e.g., "LL").

12.     The terms "refer(ring) to," "reflecting," "relating to," "related to," and "concerning" include each other such term, constituting, comprising, containing, embodying, discussing, describing, disclosing, involving, supporting, contradicting, evidencing, regarding,

identifying, stating, reporting, referring directly or indirectly to, or in any way pertaining in whole or in part to the subject matter identified.

13.    The term "PAR Sheets" means any: (1) Probability Accounting Reports, Probability and Accounting Reports, theoretical hold worksheets, PAR sheets, game sheets, or combination sheets; (2) documents that contain information found in Probability Accounting Reports, Probability and Accounting Reports, theoretical hold worksheets, PAR sheets, game sheets, or combination sheets; (3) documents referred to as a PAR sheet; and (4) documents that contain information found in documents you have referred to as a PAR sheet.

14.    As used herein, the singular includes the plural, and the plural includes the singular, except where context does not permit. The terms "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. The terms "any" and "all" mean "any and all." The term "including" and its variants mean "including without limitation." The use of any verb in any tense shall be construed as the use of the verb in all other tenses.

## <u>DEPOSITION TOPICS</u>

1.      Your employment and work for Aristocrat, including Your knowledge of mathematical or game design information about Aristocrat's Lightning Link and Dragon Link games.

2.      Your possession of Aristocrat Documents or Documents containing Aristocrat information after leaving Your employment by Aristocrat.

3.      Your use or dissemination of Aristocrat Documents and any Aristocrat mathematical or other game design information.

4.      Your knowledge of any practices, procedures, or protocols by Aristocrat to safeguard information it claims, or has claimed, is confidential, proprietary, or a trade secret.

5.      Your knowledge of any practices, procedures, or protocols by Aristocrat regarding employee departures and the safeguarding of information it claims, or has claimed, is confidential, proprietary, or a trade secret.

6.      Your knowledge of the use, possession, or dissemination of PAR Sheets belonging to Aristocrat or industry competitors, such as L&W, among game designers and mathematicians.

# EXHIBIT A-5

*Proposed Subpoena to Matthew Oberg*

**EXHIBIT A-5**

**<u>DEFINITIONS</u>**

Unless the terms of a deposition topic specifically indicate otherwise, the following

definitions are applicable throughout these deposition topics and are incorporated into each topic.

1.    "Document" and "Documents" are used in a comprehensive sense and mean all

written or graphic matter, however produced or reproduced, in Your actual or constructive

possession, custody, care or control, including, but not limited to, originals (or copies where

originals are unavailable) of correspondence, e-mail, computer storage media, computer software

needed to produce in human-readable form from said computer storage media, instructions for

using said computer software, telegrams, notes of any type of personal or telephone

conversations, or of meetings or conferences, minutes of directors or committee meetings,

memoranda, inter-office communications, studies, analyses, reports, engineering drawings,

results of investigations, catalogs, contracts, licenses, agreements, working papers, statistical

records, ledgers, books of account, vouchers, invoices, charge slips, freight bills, time sheets or

logs, stenographers' notebooks, diaries, or papers similar to any of the foregoing however

denominated. "Document" shall also mean (1) any copy which is not identical to the original or

to any other copy and (2) any tangible thing that is referenced in a deposition topic. "Document"

also has the meaning as defined in the Australian *Evidence Act 1995* (Cth) and the *Acts*

*Interpretation Act 1901* (Cth), that is, it means any record of information and includes:

    a.    anything on which there is writing; or

    b.    anything on which there are marks, figures, symbols or perforations having a

        meaning for persons qualified to interpret them, such as discs or tapes; or

    c.   anything from which sounds, images or writings can be reproduced with or without the aid of anything else, such as discs or tapes; or

    d.   a map, plan, drawing or photograph.

2.       "Communication" and "Communications" refers to the transmittal of information, in the form of facts, ideas, inquiries, or otherwise, including any electronic written and/or oral transmission of any thought, idea, information or belief whether recorded or not recorded in any document.

3.       "Aristocrat" means Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd.; their parents, successors, predecessors, subsidiaries, affiliates, game studios (including High Roller Gaming), and assignees thereof; their present and former officers, directors, agents, representatives, consultants, employees and attorneys; and any other Persons subject to the direction and control of, or acting on behalf of, any of the foregoing, both past and present.

4.       "L&W" means Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation; their parents, successors, predecessors, subsidiaries, affiliates (including LNW Gaming ANZ Pty Ltd.), game studios (including Star Studio), and assignees thereof; their present and former officers, directors, agents, representatives, consultants, employees, and attorneys; and any other Persons subject to the direction and control of, or acting on behalf of, any of the foregoing, both past and present.

5.       "You," "Your," and "Yours" means Matthew Oberg.

6.       "U.S. Litigation" refers to the litigation captioned, *Aristocrat Technologies, Inc. et al. v. Light & Wonder, Inc. et al.*, Civil Action No. 2:24-cv-00382-GMN-MDC, pending in the United States District Court for the District of Nevada.

7.      "Australian Proceedings" refers to any legal proceedings in Australia between L&W and Aristocrat concerning the same or related underlying allegations as the U.S. Litigation, including *Aristocrat Techs. Australia Pty Ltd. v. Light & Wonder, Inc. et al.* (2023) No. NSD1576 (Fed. Ct. Austl.) and *Aristocrat Techs. Australia Pty Ltd. v. Light & Wonder, Inc. et al.* (2024) No. NSD1410 (Fed. Ct. Austl.).

8.      "Date" means the exact day, month, and year, if so ascertainable, and, if not, the best approximation of the timing (including its relationship to other events).

9.      "Person" and "Persons" mean any natural persons or any firms, partnerships, associations, joint ventures, corporations, and any other forms of business, legal, or governmental entities or associations.

10.      "Dragon Link" refers to the family of Aristocrat games offered under the name "Dragon Link," the individual game titles within this family ("Silk Road," "Golden Gong," "Peace & Long Life," "Genghis Khan," "Golden Century," "Spring Festival," "Prosperous," "Autumn Moon," "Peacock Princess," and "Panda Magic"), and any abbreviations of the foregoing (e.g., "DL").

11.      "Lightning Link" refers to the family of Aristocrat games offered under the name "Lightning Link," the individual game titles within this family ("Magic Pearl," "Sahara Gold," "Happy Lantern," "High Stakes," "Best Bet," "Moon Race," "Heart Throb," "Tiki Fire," "Bengal Treasures," "Wild Chuco," "Magic Totem," "Eyes of Fortunes," "Dragons Riches," "Raging Bull," "Mine Mine Mine," and "Fire Idol"), and any abbreviations of the foregoing (e.g., "LL").

12.      The terms "refer(ring) to," "reflecting," "relating to," "related to," and "concerning" include each other such term, constituting, comprising, containing, embodying, discussing, describing, disclosing, involving, supporting, contradicting, evidencing, regarding,

identifying, stating, reporting, referring directly or indirectly to, or in any way pertaining in whole or in part to the subject matter identified.

13.     The term "PAR Sheets" means any: (1) Probability Accounting Reports, Probability and Accounting Reports, theoretical hold worksheets, PAR sheets, game sheets, or combination sheets; (2) documents that contain information found in Probability Accounting Reports, Probability and Accounting Reports, theoretical hold worksheets, PAR sheets, game sheets, or combination sheets; (3) documents referred to as a PAR sheet; and (4) documents that contain information found in documents you have referred to as a PAR sheet.

14.     As used herein, the singular includes the plural, and the plural includes the singular, except where context does not permit. The terms "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. The terms "any" and "all" mean "any and all." The term "including" and its variants mean "including without limitation." The use of any verb in any tense shall be construed as the use of the verb in all other tenses.

## DEPOSITION TOPICS

1.      Your employment and work for Aristocrat, including Your knowledge of mathematical or game design information about Aristocrat's Lightning Link and Dragon Link games.

2.      Your possession of Aristocrat Documents or Documents containing Aristocrat information after leaving Your employment by Aristocrat.

3.      Your use or dissemination of Aristocrat Documents and any Aristocrat mathematical or other game design information.

4.      Your knowledge of any practices, procedures, or protocols by Aristocrat to safeguard information it claims, or has claimed, is confidential, proprietary, or a trade secret.

5.      Your knowledge of any practices, procedures, or protocols by Aristocrat regarding employee departures and the safeguarding of information it claims, or has claimed, is confidential, proprietary, or a trade secret.

6.      Your knowledge of the use, possession, or dissemination of PAR Sheets belonging to Aristocrat or industry competitors, such as L&W, among game designers and mathematicians.