UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Aristocrat Technologies, Inc., et al, <br><br>                    Plaintiff(s), <br><br> vs. <br><br> Light & Wonder, Inc., et al, <br><br>                    Defendant(s). | 2:24-cv-00382-GMN-MDC <br><br><br> **REDACTED ORDER PER ECF NO. 334** |

The parties filed *Joint Stipulations Regarding Discovery Disputes* (referred to individually as (1)"Stipulation Regarding Privilege Issue," (2)"Stipulation Regarding Discovery Topic," and (3)"Stipulation Regarding Apex Witness")(ECF Nos. 275, 295, 296, 305, and 306) and multiple *Motions to Seal* ("Motions")(ECF Nos. 297, 304, and 307). The Court **GRANTS AND DENIES** the Stipulations in part and **GRANTS** the Motions.

**I.   BACKGROUND**

Plaintiffs Aristocrat Technologies, Inc. and Aristocrat Technologies Australia Pty Ltd., ("Aristocrat") and Defendants Light & Wonder, Inc., LNW Gaming, Inc., and SciPlay Corporation, ("L&W") are competitors in the electronic gaming space. *ECF No. 206*. Aristocrat alleges that L&W copied Aristocrat's game design and underlying math algorithms. *Id.*

**II.   DISCUSSION**

  **A.  Legal Standard**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…." *See* FRCP 26(b)(1). However, the "court has wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). The court may limit discovery

that is unreasonably cumulative or duplicative. *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994). The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* FRCP 1.

The attorney-client privilege protects confidential communications between a client and his or her attorney for the purpose of obtaining or dispensing legal advice. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). Federal privilege law applies where the court's jurisdiction is based on a federal question. *Nat'l Labor Relations Bd. v. N. Bay Plumbing, Inc.*, 102 F.3d 1005, 1009 (9th Cir. 1996) (citing Fed. R. Evid. 501)).

The burden of establishing the attorney-client relationship and the privileged nature of each communication lies with the party claiming privilege. *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997). "One of the elements that the asserting party must prove is that it has not waived the privilege." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). Waiver may be express or implied. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003)(Noting that "[t]he court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. Essentially, the court is striking a bargain with the holder of the privilege by letting him know how much of the privilege he must waive in order to proceed with his claim."). "The privilege is waived only when a party chooses to utilize the [privileged] information to advance a claim or defense." *Sorensen v. Black & Decker Corp.*, No. 06cv1572-BTM (CAB), 2007 WL 1976652, at *2 (S.D. Cal. Apr. 9, 2007). *See also Bittaker,* 331 F.3d at, 719 ("In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot

adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege.").

It is well established that voluntary disclosure of the content of a privileged attorney communication constitutes a waiver of the privilege as to all other such communications on the same subject. *United States v. Gann*, 732 F.2d 714, 723 (9th Cir.), cert. denied, 469 U.S. 1034, 105 S. Ct. 505, 83 L. Ed. 2d 397 (1984). "Consideration of whether work product protection has been waived requires a court to balance competing interests: 'the need for discovery' with 'the right of an attorney to retain the benefits of his own research.'" *SNK Corp. of America v. Atlus Dream Entertainment Co., Ltd.*, 188 F.R.D. 566, 571 (N.D. Cal. 1999) (quoting *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 932 (N.D. Cal. 1976)). However, even when a court orders disclosure of work product material, it must protect against the disclosure of so-called "opinion work product" -- that is, "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Under Ninth Circuit law, opinion work product is discoverable only if it is "at issue in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins*. Co., 976 F.2d 573, 577 (9th Cir. 1992) ("[a] party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product."); *Verigy US Inc. v. Mayder*, No. C07-04330 RMW (HRL), 2008 U.S. Dist. LEXIS 111512, at *5-6 (N.D. Cal. Nov. 7, 2008). Unless a particular court record is one "traditionally kept secret," a "strong presumption in favor of access" is the starting point. *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1135 (9th Cir. 2003).

The Court has discretion to prohibit the deposition of a high-level corporate executive, or "apex" deponent, given the "tremendous potential for abuse or harassment" that exists for such discovery. *Int'l Game Tech. v. Illinois Nat'l Ins. Co*., 2018 U.S. Dist. LEXIS 228393, 2018 WL 7499823, at *2 (D. Nev. Apr. 6, 2018)(internal citations omitted). A deponent's status as a high-level executive alone is not a

reason to prohibit his deposition. Courts within the Ninth Circuit consider two factors when deciding whether or not to allow the deposition of a high-level executive: (1) whether the executive has unique, personal knowledge of relevant information; and (2) whether the party seeking the information has exhausted other less intrusive discovery methods. *See Apple v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *see also Luangisa v. Interface Operations*, 2011 U.S. Dist. LEXIS 139700, 2011 WL 6029880 (D. Nev. Dec. 5, 2011). Knowledge is personal if the individual at issue was involved to some degree in the subject matter. *See Int'l Game Tech.*, 2018 U.S. Dist. LEXIS 228393, 2018 WL 7499823, at *4. Knowledge is unique if it is unavailable from less intrusive discovery. *Id.*

Sealing is warranted upon a showing of "good cause" where, as here, the sealing relates to a "discovery motion unrelated to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097–98 (9th Cir. 2016); see also ECF No. 195 at 1 ("Since this is a discovery issue, the lower "good cause" standard applies in this instance to seal the information in question.") (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006)). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

**B. Analysis of Stipulation Regarding Privilege Issue (ECF Nos. 275)**

This discovery dispute concerns L&W's claims of attorney-client privilege and work product protections relating to its attorneys' investigation into Aristocrat's allegations of trade secret misappropriation. Aristocrat sent L&W a 09/23/23 letter concerning its trade secret claims. L&W's primary defenses are that it did not know or have reason to know that (a) Aristocrat trade secrets were being used to develop L&W games; or (b) that L&W employees went rogue and used Aristocrat trade secrets to develop L&W games. L&W asserts that "there is strong evidence that" to support these defenses based in large part on an investigation that it conducted following the receipt of Aristocrat's

09/23/23 letter. *See L&W Response to Interrogatory No. 8, at ECF No. 275 at 6.*[1] That investigation involved the participation of L&W's attorneys and the parties dispute whether this contention impliedly waived L&W's attorney-client privilege and work product protections over certain withheld trade secret investigation materials. To find out what L&W knew or had reason to know, L&W investigated with the involvement of counsel.

L&W argues that Emma Charles ("Charles") denied to L&W employees, including Richard Schneider, that she took anything from Aristocrat. *ECF No. 275 at 5*. L&W further states that William Soo ("Soo") hired his own independent lawyer and Soo's lawyer told L&W a host of facts purporting to disavow using any Aristocrat trade secrets. *Id*. L&W argues that when it determined that Charles and Soo were lying and had in fact used Aristocrat trade secrets, it now blames them for any misappropriation as rogue employees. *Id. at 5-6*. L&W, however, does not disclose how it made that determination or the extent of all of the claimed "strong evidence" in support of its defenses. L&W also does not disclose what other L&W employees to whom Charles denied using Aristocrat trade secrets, and the context in which such denial would have come up. For example, as an investigation by counsel interviewing employees.

In further responding to Interrogatory No. 19, L&W further places at issue the investigation it made following Aristocrat's 9/23/23 letter. *ECF No. 275 at 8-9*. L&W says it conducted follow up interviews of Soo and Charles and uncovered that they were lying. L&W then directs Aristocrat to certain documents they produced in discovery to show information they learned in their investigation, which documents redact work product.

The Court agrees with Aristocrat's position that L&W cannot use the privilege as a shield and sword. If L&W is relying on the investigation following the 9/23/23 letter as a defense – and that

---

[1] In relevant part, L&W's response to Interrogatory No. 8 states: "There is strong evidence that L&W did not know, or have reason to know, that rogue employees had misappropriated Aristocrat information and inserted such information into Dragon Train during the game creation process."

investigation that was done in part by their counsel – then L&W has waived and must disclose. Although L&W tried to do only a limited waiver, the interrogatory responses and the instant Stipulation (ECF No. 275) shows that L&W's knowledge of Soo and Charles' actions and that they were seemingly acting alone, and rogues, derives from the knowledge of L&W's counsel. The Court agrees that L&W is imputing the knowledge of its counsel as L&W's knowledge. Aristocrat has made a substantial showing and is entitled to discovery of the full extent of that knowledge and foundation for L&W's defense.

L&W's promise not to use the privilege information/documents to support its defense (that it did not know or have reason to know that Aristocrat trade secrets, see ECF No. 275 at 19) is not reasonable. L&W's position is not realistic since the fingerprints of counsel seem to cover most of the evidence that L&W would use. For example, the documents that L&W identifies in Interrogatory No. 19 contains privileged information, with opinions redacted. L&W's promise would create an untenable situation at trial. For example, if L&W relied on the redacted opinion at trial, Aristocrat would have no way to challenge L&W's assertion that it is not relying on opinion portion of a document when Aristocrat does not know what the opinion is. The Court finds that L&W waived because its defense is based on the investigation of its counsel; and the defense of what L&W knew or did not know following the 9/23/23 letter is based, in part, on what LW's counsel knew or uncovered.

**C. Analysis of Stipulation Regarding Discovery Topic (ECF Nos. 295 and 296)**

The parties dispute Rule 30(b)(6) deposition Topic 11, which asks the deponent "to identify each of the alleged Trade Secrets that you contend Defendants misappropriated, including the precise information that constitutes each alleged Trade Secret." *ECF No. 295 at 3*. L&W deposed Matt Dietz, Aristocrat's 30(b)(6) witness, on 11/27/25 in Australia. L&W alleges that it is necessary to re-depose Dietz because he did not answer certain questions.

The Court finds that L&W's request is unreasonably duplicative. L&W argues that it cannot be expected to rebut Aristocrat's trade secrets claim without reasonably a concrete definition of the alleged

1  trade secrets. *See Loop AI Labs Inc. v. Gatti,* 195 F. Supp. 3d 1107, 1114-15 (N.D. Cal 2016).

2  Aristocrat states that it had produced to L&W interrogatory responses which reasonably identify all of

3  the alleged Trade Secrets. L&W does not directly and unequivocally challenge or dispute the sufficiency

4  of Aristocrat's interrogatory responses.

5      L&W cites the following deposition exchange:
        Q. Is your understanding that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is a trade
6       secret?
        MR RUBMAN: Same objection, outside the scope. Calls for legal
7       conclusion.
        A.    Yes, I can't comment if it's a trade secret, but I believe it's
8       confidential in this case, yes.

9  ECF No. 296 at 7, citing Deposition, *ECF No. 296-10 at 100*.

10     The Court finds that Deitz did not refuse to answer the question, and that L&W did not do more

11 probing during the deposition.  L&W says there are similar confusing exchanges at deposition pages 75-

12 77. L&W asks if "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

13 ▓▓▓▓ is a trade secret" "or is it something more specific"  (ECF No. 296-10 at page 76:21-77) to which

14 Deitz answers for general "Yeah…I am not a trade secret lawyer, but this ▓▓▓▓▓▓▓▓▓▓

15 ▓▓▓▓▓▓▓▓▓▓▓ is confidential" *Id., 77:7-9*.  The Court finds that the witness did not refuse to answer.

16 The witness also provided more context, <u>e.g.,</u>

17     "Q. So, it is your understanding that if you leave HRG you can never use
       ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18     ▓▓▓▓▓▓▓▓?
        MR. RUBMAN:  The same objections.
19      THE WITNESS: Sorry, the previous question was when you said it was to
       ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and that is definitely that's why I said
20     that that is very confidential"

21 *ECF 296-10 at 79:8-18*.

22     L&W also argues in footnote four that Mr. Deitz (who was also designated on misappropriation)

23 would not testify:

24     1) whether Aristocrat claims ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is a trade secret, or whether it would be

25

7

appropriate to use that reel length if working for a competitor because "it depends;" *Ex. 7 at 28-29*;

2) when asked in what contexts it would be inappropriate to use this reel length, he "couldn't really speculate on all of them." *Id*.

3) He was also unable to testify whether the values in Aristocrat's ▮▮▮▮ were only "confidential" in the context of their association with specific prize values in ▮▮▮▮ *Id.* at *108*.

The Court is unconvinced because Aristocrat identified its trade secrets in their interrogatory responses. L&W seeks to reopen the 30(b)(6) deposition, but the Court finds that its samples and arguments are not convincing, and that a second deposition is not appropriate or necessary.

### D.  Stipulation Regarding Apex Witness (ECF Nos. 305 and 306)

The remaining stipulation pertains to an apex witness. Aristocrat seeks to take a full day deposition of L&W's President and CEO Matt Wilson ("Wilson"). Wilson is the CEO of the company, so he meets the definition of being an apex witness. Aristocrat has not shown that Wilson has unique personal knowledge of relevant information that cannot be obtained through less intrusive discovery, such as depositions of Charles or Soo (which Aristocrat does not discuss). Aristocrat's arguments, for example, that Wilson has a personal history as an employee with knowledge about the games at issue, is speculative at best. The Court thus denies, without prejudice, Aristocrat's request to depose Wilson. .

### E.  Motions to Seal (ECF Nos. 297, 304, and 307)

The parties' motions to seal argue that information contained in the discovery stipulations and/or their accompanying exhibits contain trade secrets relating to the mathematical design of various slot machines and that such information derives substantial economic value from not being generally known or readily ascertainable. The motions contend that if this information is publicly disclosed, it

would harm the competitive standing of the party to whom it belongs. The Court finds that good cause exists to seal the stipulations. The public's right of access will not be prejudiced on these facts given that the parties have shown good cause and are discussing trade secrets in a discovery dispute.

**IT IS SO ORDERED** that:

1. The parties' *Joint Stipulations Regarding Discovery Disputes* (ECF Nos. 275, 295, 296, 305, and 306) are **GRANTED and DENIED** in part, as discussed in this Order.

2. L&W must produce the following unredacted documents: (a) responsive documents to Aristocrat's Document Request Nos. 80 and 81 relative to L&W's position that it did not know or have reason to know that any Aristocrat information had been used in Dragon Train, or any other L&W game, following the receipt of Aristocrat's 09/23/2023 letter; and (b) documents that it relied on in responding to Aristocrat's Interrogatory Nos. 8 and 19, including LW 558864 to LW559041 identified in response to Interrogatory No. 19. Aristocrat will not, however, re-depose Yuri Loentiev.

3. L&W must supplement its responses to Interrogatory Nos. 8 and 19 to describe all steps that L&W took to investigate the acquisition and use of Aristocrat trade secrets following Aristocrat's 9/23/23 letter to support its defense that L&W did not know or have reason to know that L&W or its employees were using Aristocrat trade secrets.

4. L&W will not re-depose Matt Dietz.

5. Aristocrat's request in to depose L&W CEO Matt Wilson is **DENIED** without prejudice.

6. The parties' *Motions to Seal* (ECF Nos. 297, 304, and 307) are **GRANTED.**

Dated: November 24, 2025.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge